PAUL GROSSMAN (SB# 35959)
paulgrossman@paulhastings.com
DONNA M. MELBY (SB# 86417)
donnamelby@paulhastings.com
CHRIS A. JALIAN (SB# 295564)
chrisjalian@paulhastings.com
PAUL HASTINGS LLP
515 South Flower Street
Twenty-Fifth Floor
Los Angeles, California 90071-2228
Telephone: (213) 683-6000
Facsimile: (213) 627-0705

DUANE H. ZOBRIST (SB# 43813)
dzobrist@zoblaw.com
ZOBLAW
1900 Arlington Boulevard, Suite B
Charlottesville, Virginia 22903
Telephone/Facsimile: (434) 977-9666

Attorneys for Defendants
GRUMA CORPORATION;
SMART & FINAL STORES, INC.; and
STATER BROS. MARKETS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITYWIDE CONSULTANTS & FOOD MANAGEMENT, LLC, individually and on behalf of all others similarly situated, | Case No. 2:19-cv-04724-DSF (AFMx) |
| Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO COMPEL ARBITRATION** |
| vs. | |
| GRUMA CORPORATION, a Nevada corporation, dba MISSION FOODS CORPORATION; SMART & FINAL STORES, INC.; STATER BROS. MARKETS; and DOES 1 through 100, inclusive, | Date: July 29, 2019<br>Time: 1:30 p.m.<br>Dept: 7D<br>Judge: Hon. Dale S. Fischer |
| Defendants. | Complaint Filed: March 26, 2019<br>Trial Date: Not Yet Set |

# TABLE OF CONTENTS

**Page**

I.  FACTUAL AND PROCEDURAL BACKGROUND.................................... 1

II. THIS COURT SHOULD COMPEL ARBITRATION................................ 1

   A. The Federal Arbitration Act Requires Enforcement Of Arbitration Agreements According To Their Terms. ........................... 2

   B. The Agreement Covers Citywide's Claims. ........................................ 3

   C. The Agreement Is Valid. ..................................................................... 3

      1. The Agreement is an enforceable contract. ................................. 3

      2. The Agreement is not unconscionable. ....................................... 5

         a. California's unconscionability test. .................................. 5

         b. The Agreement is not procedurally unconscionable........ 6

         c. The Agreement is not substantively unconscionable. .......................................................... 8

         d. The Agreement therefore is enforceable. ......................... 8

         e. Any unconscionable provision should be severed and the remainder of the Agreement enforced. ............... 9

   D. This Court Should Order Citywide's Claim To Individual Arbitration. ....................................................................................... 10

   E. Citywide's Likely Contentions Are Without Merit. ......................... 11

      1. The FAA's exclusion of certain transportation workers does not exempt this case from arbitration.............................. 11

         a. Citywide is not "engaged in interstate commerce" for purposes of FAA Section 1....................................... 12

         b. As a distribution *company*, Citywide is not a transportation *worker* within the meaning of FAA Section 1. ...................................................................... 17

      2. The specific causes of action alleged here are arbitrable. ........ 19

         a. Antitrust claims are arbitrable. ...................................... 20

         b. Section 17200 Unfair Competition Law claims are arbitrable. ....................................................................... 20

      3. That Citywide sued two Gruma customers changes nothing. ..................................................................................... 22

III. CONCLUSION ........................................................................................ 24

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ambler v. BT Americas Inc.*,
  964 F. Supp. 2d 1169 (N.D. Cal. 2013)...................................................................4

*American Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013) ...............................................................................................20

*American Software, Inc. v. Ali*,
  46 Cal. App. 4th 1386 (1996)..............................................................................5, 6

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000)......................................................................................3, 5, 8

*Aspic Eng'g & Constr. Co. v. ECC Centcom Construs. LLC*,
  913 F.3d 1162 (9th Cir. 2019)...............................................................................20

*Asplundh Tree Expert Co. v. Bates*,
  71 F.3d 592 (6th Cir. 1995)..............................................................................13, 17

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ........................................................................................*passim*

*AT&T Techs., Inc. v. Commc'ns Workers*,
  475 U.S. 643 (1986) .................................................................................................3

*Baltazar v. Forever 21, Inc.*,
  62 Cal. 4th 1237 (2016)...................................................................................2, 7, 8

*Bernal v. Cash America Int'l, Inc.*,
  2013 WL 5313965 (N.D. Cal. Sept. 23, 2013)......................................................21

*Bolter v. Super. Ct. (Harris Research, Inc.)*,
  87 Cal. App. 4th 900 (2001)....................................................................................9

*Boucher v. Alliance Title Co.*,
  127 Cal. App. 4th 262 (2005).................................................................................23

*Broughton v. Cigna Healthplans of Cal.*,
  21 Cal. 4th 1066 (1999)..........................................................................................20

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Chico v. Hilton Worldwide, Inc.,*
   2014 WL 5088240 (C.D. Cal. Oct. 7, 2014) ........................................24

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
   207 F.3d 1126 (9th Cir. 2000).................................................................3

*Circuit City Stores, Inc. v. Adams,*
   532 U.S. 105 (2001) ............................................................... 11, 12, 13

*Circuit City Stores, Inc. v. Najd,*
   294 F.3d 1104 (9th Cir. 2002).................................................................5

*Cruz v. PacifiCare Health Sys., Inc.,*
   30 Cal. 4th 303 (2003)..........................................................................21

*Davis v. Nordstrom, Inc.,*
   755 F.3d 1089 (9th Cir. 2014).............................................................2, 3

*Davis v. O'Melveny & Myers,*
   485 F.3d 1066 (9th Cir. 2007)...............................................................21

*Dean Witter Reynolds, Inc. v. Byrd,*
   470 U.S. 213 (1985) ................................................................................2

*DIRECTV, Inc. v. Imburgia,*
   136 S. Ct. 463 (2015) ..............................................................................3

*Dryer v. L.A. Rams,*
   40 Cal. 3d 406 (1985)............................................................................23

*Epic Systems Corp. v. Lewis,*
   138 S. Ct. 1612 (2018) ..........................................................................11

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.,*
   35 Cal. 3d 312 (1983)..............................................................................3

*Farrar v. Direct Commerce, Inc.,*
   9 Cal. App. 5th 1257 (2017)....................................................................9

*Ferguson v. Corinthian Colleges, Inc.,*
   733 F.3d 928 (9th Cir. 2013)..................................................................21

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Ferguson v. Countrywide Credit Indus., Inc.*,
298 F.3d 778 (9th Cir. 2002).............................................................................. 3, 21

*Fittante v. Palm Springs Motors, Inc.*,
105 Cal. App. 4th 708 (2003)..................................................................................... 5

*Garrido v. Air Liquide Indus. U.S. LP*,
241 Cal. App. 4th 833 (2015)................................................................................... 15

*Gatton v. T-Mobile USA, Inc.*,
152 Cal. App. 4th 571 (2007)..................................................................................... 9

*Gentry v. Super. Ct. (Circuit City Stores, Inc.)*,
42 Cal. 4th 443 (2007)............................................................................................. 10

*Graham v. Scissor-Tail, Inc.*,
28 Cal. 3d 807 (1981)................................................................................................. 5

*Harden v. Roadway Package Sys., Inc.*,
249 F.3d 1137 (9th Cir. 2001)............................................................................ 11, 16

*Hill v. Rent-A-Center, Inc.*,
398 F.3d 1286 (11th Cir. 2005)................................................................................ 12

*In re Holl*,
2019 WL 2293441 (9th Cir. May 30, 2019) ............................................................. 4

*Iskanian v. CLS Transp. LA, LLC*,
59 Cal. 4th 348 (2014)............................................................................................. 10

*JSM Tuscany, LLC v. Super. Ct. (NMS Props., Inc.)*,
193 Cal. App. 4th 1222 (2011).......................................................................... 23, 24

*Kilgore v. KeyBank, N.A.*,
718 F.3d 1052 (9th Cir. 2013) (en banc).................................................................. 2

*Kinney v. United Healthcare Servs., Inc.*,
70 Cal. App. 4th 1322 (1999)..................................................................................... 6

*Lambert v. Tesla, Inc.*,
2019 WL 2147497 (9th Cir. May 17, 2019) ........................................................... 19

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Lamps Plus, Inc. v. Varela,*
　139 S. Ct. 1407 (2019) ................................................................. 11

*Lane v. Francis Capital Mgmt. LLC,*
　224 Cal. App. 4th 676 (2014) ......................................................... 2

*Laswell v. AG Seal Beach, LLC,*
　189 Cal. App. 4th 1399 (2010) ...................................................... 23

*Lee v. Postmates Inc.,*
　2018 WL 4961802 (N.D. Cal. Oct. 15, 2018) ................................. 14

*Lee v. Postmates Inc.,*
　2018 WL 6605659 (N.D. Cal. Dec. 17, 2018) ................................. 14

*Levin v. Caviar, Inc.,*
　146 F. Supp. 3d 1146 (N.D. Cal. 2015) .......................................... 13

*Liggins v. GMRI, Inc.,*
　2018 WL 7018011 (C.D. Cal. Dec. 11, 2018) ................................. 22

*Magana v. DoorDash, Inc.,*
　343 F. Supp. 3d 891 (N.D. Cal. 2018) ............................................ 14

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.,*
　89 Cal. App. 4th 1042 (2001) ................................................... 5, 8, 9

*Marmet Health Care Ctr., Inc. v. Brown,*
　565 U.S. 530 (2012) ...................................................................... 21

*McManus v. CIBC World Mkts. Corp.,*
　109 Cal. App. 4th 76 (2003) ............................................................ 6

*Metalclad Corp. v. Ventana Envtl. Org. P'ship,*
　109 Cal. App. 4th 1705 (2003) ...................................................... 24

*Miguel v. JPMorgan Chase Bank, N.A.,*
　2013 WL 452418 (C.D. Cal. Feb. 5, 2013) ..................................... 22

*Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.,*
　186 Cal. App. 4th 696 (2010) ........................................................ 24

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Morris v. Redwood Empire Bancorp,*

4

128 Cal. App. 4th 1305 (2005).................................................................8

5

*Muller v. Roy Miller Freight Lines, LLC,*

6

34 Cal. App. 5th 1056 (2019)..........................................................15, 16

7

*Muro v. Cornerstone Staffing Solutions, Inc.,*

8

20 Cal. App. 5th 784 (2018)............................................................14, 15

9

*New Prime Inc. v. Oliveira,*

139 S. Ct. 532 (2019) .......................................................................16, 18

10

11

*Nieto v. Fresno Beverage Co.,*

33 Cal. App. 5th 274 (2019)............................................................15, 16

12

*Oliviera v. New Prime Inc.,*

13

857 F.3d 7 (1st Cir. 2017) ...................................................................18

14

*Pac. Corp. Grp. Holdings, LLC v. Keck,*

15

232 Cal. App. 4th 294 (2014)...............................................................4

16

*Palcko v. Airborne Express, Inc.,*

17

372 F.3d 588 (3d Cir. 2004) ...............................................................12

18

*Performance Team Freight Sys., Inc. v. Aleman,*

19

241 Cal. App. 4th 1233 (2015)............................................................15

20

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC,*

55 Cal. 4th 223 (2012).....................................................................5, 8

21

22

*Poublon v. C.H. Robinson Co.,*

846 F.3d 1251 (9th Cir. 2017) ...............................................................9

23

*Rejuso v. Brookdale Senior Living, Inc.,*

24

2017 U.S. Dist. LEXIS 153456 (C.D. Cal. Sept. 18, 2017).................7, 9

25

*Rittmann v. Amazon.com, Inc.,*

26

2019 WL 1777725 (W.D. Wash. Apr. 23, 2019).............................15, 16

27

*RLED, LLC v. Dan Good Distrib. Co.,*

28

2008 WL 11389039 (E.D. Cal. Aug. 28, 2008) ................................17

1

## TABLE OF AUTHORITIES
(continued)

2

**Page(s)**

3

*RN Solution, Inc. v. Catholic Healthcare West,*
    165 Cal. App. 4th 1511 (2008)................................................................22

4

5

*Roman v. Super. Ct. (Flo–Kem, Inc.),*
    172 Cal. App. 4th 1462 (2009)..............................................................7, 9

6

7

*Rowe v. Exline,*
    153 Cal. App. 4th 1276 (2007)................................................................22

8

9

*Sanchez v. Valencia Holding Co.,*
    61 Cal. 4th 899 (2015)...............................................................................6

10

*Serpa v. Cal. Sur. Investigations, Inc.,*
    215 Cal. App. 4th 695 (2013)....................................................................9

11

12

*Simula, Inc. v. Autoliv, Inc.,*
    175 F.3d 716 (9th Cir. 1999)......................................................................3

13

14

*Sonic-Calabasas A, Inc. v. Moreno,*
    57 Cal. 4th 1109 (2013)..............................................................................6

15

16

*Strotz v. Dean Witter Reynolds, Inc.,*
    223 Cal. App. 3d 208 (1990), *overruled on other grounds by
    Rosenthal v. Great Western Fin. Secs. Corp.*, 14 Cal. 4th 394
    (1996).......................................................................................................4, 5

17

18

19

*Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of
    America, Local 437,*
    207 F.2d 450 (3d Cir. 1953)......................................................................13

20

21

22

*United States ex rel. Oliver v. Parsons Co.,*
    195 F.3d 457 (9th Cir. 1999)......................................................................4

23

24

*Vargas v. Delivery Outsourcing, LLC,*
    2016 WL 946112 (N.D. Cal. Mar. 14, 2016)...........................................13

25

*Veliz v. Cintas Corp.,*
    2004 WL 2452851 (N.D. Cal. Apr. 5, 2004) ......................................14, 19

26

27

*Vogel v. Vogel,*
    2014 WL 12575815 (C.D. Cal. June 23, 2014)........................................22

28

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Wallace v. GrubHub Holdings, Inc.*,
2019 WL 1399986 (N.D. Ill. March 28, 2019) .................................................... 13

STATUTES

9 U.S.C. § 1 ...........................................................................................*passim*

9 U.S.C. § 3 ........................................................................................................ 2

42 U.S.C. § 1981 ............................................................................................... 19

CAL. BUS. & PROF. CODE § 17200 .................................................... 1, 20, 22

CAL. CIV. CODE § 1550 ..................................................................................... 4

CAL. CIV. PROC. CODE § 1280 *et seq.* ....................................................... 2

1    Plaintiff Citywide Consultants & Food Management, LLC sued Gruma

2  Corporation in derogation of Citywide's contractual promise to arbitrate.  This

3  Court should compel Citywide's claims to individual arbitration.

4  **I.    FACTUAL AND PROCEDURAL BACKGROUND**

5    On March 26, 2019, Citywide sued Gruma, alleging antitrust claims under

6  the Cartwright Act (BUS. & PROF. CODE § 16720 *et seq.*) and Unfair Competition

7  Law (BUS. & PROF. CODE § 17200).  Citywide purports to bring a class action,

8  supposedly on behalf of others similarly situated.

9    Previously, however, Citywide had entered into an arbitration agreement (the

10  "Agreement"), in which Citywide agreed to "resol[ve] by arbitration . . . all claims

11  or controversies . . . past, present or future, whether or not arising out of this

12  Agreement."  Declaration of Ron Anderson ¶ 5, Exh. A, p. 9.[1]  In the Agreement,

13  Citywide **"waive[d] any right to bring on behalf of persons or entities other**

14  **than [Citywide], or to otherwise participate with other persons or entities in,**

15  **any class or collective action."**  *Id.* (boldface in original).

16    On June 4, 2019, Gruma contacted Citywide's attorney, advised him of the

17  existence of the Agreement, and informed him that Gruma would move to compel

18  individual arbitration if Citywide did not stipulate to arbitrate.  Declaration of Chris

19  A. Jalian ¶¶ 2-4.  Citywide's counsel refused.  *Id.* ¶ 4.

20  **II.    THIS COURT SHOULD COMPEL ARBITRATION**

21    A binding arbitration agreement covers the claims asserted here.  This Court

22  should compel arbitration.

23

24

25

26  ――――――――――――――

27  [1] Citywide previously had entered into a Store Door Distributor Agreement with Gruma (Anderson Decl. Exh. B); Exhibit A to the Anderson Declaration is the 2018 Amendment to Store Door Distributor Agreement (California), which contains the Agreement quoted in the text of this motion.

28

LEGAL_US_W # 98612179.7

Case No. 2:19-cv-04724-DSF (AFMx)

## A.    The Federal Arbitration Act Requires Enforcement Of Arbitration Agreements According To Their Terms.

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, permits a party to a written arbitration agreement to petition for an order compelling the parties to arbitrate.  In relevant part, the FAA provides:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

*Id.* § 4.

The FAA "reflects a 'liberal federal policy' in favor of arbitration." *Davis v. Nordstrom, Inc.*, 755 F.3d 1089, 1092 (9th Cir. 2014), *quoting AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339, 346 (2011).  Accordingly, "[u]nder the FAA, the role of the district court is to determine if a valid arbitration agreement exists, and if so, whether the agreement encompasses the dispute at issue." *Id.*, *citing Kilgore v. KeyBank, N.A.*, 718 F.3d 1052, 1057 (9th Cir. 2013) (en banc).  Where a dispute falls within the scope of a valid agreement to arbitrate, the FAA requires the district court to direct the parties to arbitrate.  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).  The FAA further directs the court to stay all proceedings pending completion of arbitration.  *See* 9 U.S.C. § 3 ("[T]he court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .").[2]

---

[2] The FAA applies here, but California state law, CAL. CIV. PROC. CODE § 1280 *et seq.*, produces the same result.  *See, e.g.*, *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1247 n.3 (2016) (enforcing agreement under state law even though FAA coverage was disputed); *Lane v. Francis Capital Mgmt. LLC*, 224 Cal. App. 4th

### B.    The Agreement Covers Citywide's Claims.

This Court should order arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 650 (1986).  Accordingly, "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."  *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999) (internal quotation marks omitted).

Here there is no doubt. The Agreement here applies to "all claims or controversies" between Gruma and Citywide that otherwise would be subject to litigation, "whether or not arising out of th[e] Agreement."  Anderson Decl. Exh. A, p. 9.

### C.    The Agreement Is Valid.

Citywide made a valid agreement to arbitrate with Gruma, as shown below.

#### 1.    The Agreement is an enforceable contract.

In determining whether a valid contract to arbitrate exists, a federal court applies ordinary state-law principles that govern contract formation.  *DIRECTV, Inc. v. Imburgia*, 136 S. Ct. 463, 473 (2015) (reversing a California state court that had failed to do so); *see also Davis*, 755 F.3d at 1093, *citing Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 782 (9th Cir. 2002).  Arbitration agreements are presumed to be valid; the party seeking to avoid arbitration bears the burden of demonstrating otherwise.  *See, e.g., Chiron Corp. v. Ortho Diagnostic*

---

676, 688, 689-93 (2014) (same).  The California Supreme Court has long recognized "this state's strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution." *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak St.*, 35 Cal. 3d 312, 322 (1983).  In *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000), the California Supreme Court reiterated:  "California law, like federal law, favors enforcement of valid arbitration agreements. . . .  California courts and its Legislature have 'consistently reflected a friendly policy toward the arbitration process.'"  *Id.* at 97 (citations omitted).

*Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000); *Ambler v. BT Americas Inc.*, 964 F.
Supp. 2d 1169, 1174 (N.D. Cal. 2013).

"The issue . . . [i]s one of basic contract formation." *In re Holl*, 2019 WL
2293441, at *4 (9th Cir. May 30, 2019) (enforcing arbitration agreement despite
terms confusingly incorporated by reference). Under California law, a contract
requires (1) the parties' consent and (2) consideration. CAL. CIV. CODE § 1550;
*United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 462 (9th Cir. 1999).
Each of these prerequisites is met here.

*First*, Gruma and Citywide consented to be bound by the Agreement. "The
manifestation of mutual consent is generally achieved through the process of offer
and acceptance[,] . . . [and] is determined under an objective standard applied to the
outward manifestations or expressions of the parties, i.e., the reasonable meaning of
their words and acts, and not their unexpressed intentions or understandings." *Pac.
Corp. Grp. Holdings, LLC v. Keck*, 232 Cal. App. 4th 294, 309 (2014) (internal
quotation marks omitted). Here, the parties manifested their assent by their
respective signatures. Anderson Decl. Exh. A, p. 7. *See Holl*, 2019 WL 2293441,
at *5 ("Here, there is no question Holl affirmatively assented to the [arbitration
agreement]. He checked a box acknowledging as much.").

*Second*, ample consideration exists to support Citywide's promise to
arbitrate. The Agreement (and the Store Door Distributor Agreement it amended)
set forth substantive terms of the parties' business relationship, in which Citywide
was paid to render services. The pay supplied consideration without more. In
addition, Gruma too was bound to arbitrate any claims it might have had against
Citywide. The agreement applies to "any dispute" between the parties, including
those that "[Gruma] may have against [Citywide]." Anderson Decl. Exh. A, p. 9.
"[T]he parties' mutual promises to forego a judicial determination and to arbitrate
their disputes provide consideration for each other." *Strotz v. Dean Witter
Reynolds, Inc.*, 223 Cal. App. 3d 208, 216 (1990), *overruled on other grounds by*

*Rosenthal v. Great Western Fin. Secs. Corp.*, 14 Cal. 4th 394 (1996); *accord, e.g.*, *Circuit City Stores, Inc. v. Najd*, 294 F.3d 1104, 1108 (9th Cir. 2002) (employer's promise to be bound by the arbitration process serves as adequate consideration).

Because all the requirements for a valid contract under California law have been met, Gruma and Citywide are bound by their mutual promises to arbitrate any claims, like the ones at issue here.

### 2.    The Agreement is not unconscionable.

Citywide cannot credibly claim that the Agreement is unconscionable.

### a.    California's unconscionability test.

Unconscionability is an affirmative defense to the enforcement of a contract. *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 820 (1981). "The party resisting arbitration bears the burden of proving unconscionability." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 246 (2012); *see also Rosenthal*, 14 Cal. 4th at 413 ("If the party opposing the petition raises a defense to enforcement . . . that party bears the burden of producing evidence of, and proving by a preponderance of the evidence, any fact necessary to the defense.").

Unconscionability has both a substantive and a procedural element. An agreement to arbitrate is unenforceable only where both substantive and procedural unconscionability exist; it is not enough that one may exist without the other. *See, e.g.*, *Armendariz v. Foundation Health Psychcare Servs.*, 24 Cal. 4th 83, 114 (2000) (both forms of unconscionability must be present to defeat contract formation); *Fittante v. Palm Springs Motors, Inc.*, 105 Cal. App. 4th 708, 723 (2003) (same).

"'With a concept as nebulous as "unconscionability," it is important that courts not be thrust in the paternalistic role of intervening to change contractual terms that the parties have agreed to merely because the court believes the terms are unreasonable.'" *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1055 (2001), *quoting American Software, Inc. v. Ali*, 46 Cal. App. 4th 1386, 1391 (1996). As the California Supreme Court reiterated,

1  "[t]he unconscionability inquiry is not a license for courts to impose their renditions

2  of an ideal arbitral scheme." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109,

3  1148 (2013).  "[C]ourts may not decline to enforce an arbitration agreement simply

4  on the ground that it appears to be a bad bargain or that one party could have done

5  better."  *Id.*; *accord Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 911 (2015)

6  ("A party cannot avoid a contractual obligation merely by complaining that the

7  deal, in retrospect, was unfair or a bad bargain.").

8      As shown below, the Agreement is neither procedurally nor substantively

9  unconscionable, and certainly not both.

10      **b.    The Agreement is not procedurally unconscionable.**

11      "Procedural unconscionability concerns the manner in which the contract

12  was negotiated and the circumstances of the parties at that time."  *Kinney v. United*

13  *Healthcare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999) (internal quotation

14  marks omitted).  Whether an agreement is procedurally unconscionable depends on

15  whether there is (i) "'oppression' arising from an inequality of bargaining power";

16  or (ii) "'surprise' arising from buried terms in a complex printed form."  *McManus*

17  *v. CIBC World Mkts. Corp.*, 109 Cal. App. 4th 76, 87 (2003).  Neither element is

18  present here.

19      **(1)    There was no oppression.**

20      Citywide is run by Randy Evans, a business professional, who makes

21  business decisions for Citywide; Mr. Evans is fully capable of evaluating his

22  options and the terms and conditions thereof.  Anderson Decl. ¶ 10.  There is no

23  oppression in arm's-length contractual negotiations between a company like Gruma

24  and its distributors.  *E.g.*, *American Software*, 46 Cal. App. 4th at 1391-92 (finding

25  no procedural unconscionability in a contract between a company and a

26  salesperson).

27      Citywide may contend that the Agreement was mandatory, but that is

28  incorrect.  Gruma presented the Agreement in 2018 to all California persons and

entities with Store Door Distributor Agreements.  Anderson Decl. ¶ 8; *see* note 1 *supra*.  Gruma certainly hoped that its distributors would find the 2018 Agreement to be mutually beneficial, and toward that end Gruma included in it numerous changes to the parties' contractual relationship that Gruma thought would be attractive to Citywide and other distributors.  *Id.* (listing the most-substantial substantive changes favorable to distributors).  That is not *coercion*, but rather (extra) legal *consideration*.  Nothing in the 2018 Agreement was mandatory.  *Id.*

But the Agreement would be enforceable even if it had been mandatory.  In the California Supreme Court's latest ruling in this area, *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237 (2016), plaintiff was given an arbitration agreement and told in a job interview, "[S]ign it or no job."  *Id.* at 1241.  The unanimous Supreme Court nevertheless enforced the agreement.  *See also Rejuso v. Brookdale Senior Living, Inc.*, 2017 U.S. Dist. LEXIS 153456, at *13-15 (C.D. Cal. Sept. 18, 2017) (Fischer, J.) (enforcing an arbitration agreement that was imposed as mandatory on new hires, even though the agreement failed to identify applicable rules; the agreement was only  "[m]arginally [p]rocedurally [u]nconscionable").

### (2)    <u>There was no surprise.</u>

"Surprise involves the extent to which the terms of the bargain are hidden in a 'prolix printed form' drafted by a party in a superior bargaining position."  *Roman v. Super. Ct. (**Flo−Kem, Inc.**)*, 172 Cal. App. 4th 1462, 1469 (2009).  In *Roman*, the court found that any procedural unconscionability was minimal because the arbitration provision "was not buried in a lengthy employment agreement"; rather, it was contained on the last page of a seven-page employment application under an appropriate heading.  *Id.* at 1470-71.

Here, the Agreement is even more transparent than the agreement enforced in *Roman*.  The arbitration promise was made in a plainly worded section entitled **"Arbitration."**  Anderson Decl. Exh. A, p. 9.  There is simply no reasonable argument that the nature or importance of the Agreement was hidden from

Citywide.  *See, e.g.*, *Pinnacle*, 55 Cal. 4th at 247 & n.12 (rejecting contention of unconscionability; "the trial court found no evidence of surprise[,]" and "[w]e agree.  The record reflects that the arbitration provisions . . . appear in a separate article under a bold, capitalized, and underlined caption . . . and within a separate section with [a] bold and underlined title . . . .").

### c.    The Agreement is not substantively unconscionable.

Even if there were some trace of procedural unconscionability (there is not, as shown above), the Agreement still is enforceable because there is no substantive unconscionability.  Substantive unconscionability focuses "on overly harsh or one-sided results."  *Baltazar*, 62 Cal. 4th at 1243.  Here, no term of the Agreement is remotely unfair.

### d.    The Agreement therefore is enforceable.

"Both procedural unconscionability and substantive unconscionability must be shown" before an agreement may be held unenforceable.  *Pinnacle*, 55 Cal. 4th at 247.  If this Court concludes, as it should, that at least one form of unconscionability is wholly absent, the Agreement is enforceable without more.

Alternatively, the Agreement should be enforced even if both forms of unconscionability were present (which is not the case here).  A reviewing court's task "is not only to determine *whether* [] unconscionability exists, but more importantly, *to what degree* it may exist."  *Morris v. Redwood Empire Bancorp*, 128 Cal. App. 4th 1305, 1319 (2005).  Where there is minimal procedural unconscionability, the party opposing arbitration must show a high level of substantive unconscionability (or vice versa).  *E.g.*, *Armendariz*, 24 Cal. 4th at 114 ("[T]he more substantively oppressive the contract term[s], the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.").

In *Marin*, 89 Cal. App. 4th at 1056, the court found that "procedural unconscionability, although extant, was not great" in light of all the circumstances.

1    "In light of the low level of procedural unfairness, we conclude that a greater

2    degree of substantive unfairness than has been shown here was required before the

3    contract could be [invalidated]." *Id.* The court therefore enforced the agreement.

4    *See also Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013)

5    ("When, as here, there is no other indication of oppression or surprise, 'the degree

6    of procedural unconscionability of an adhesion agreement is low, and the

7    agreement will be enforceable unless the degree of substantive unconscionability is

8    high.'") (citation omitted); *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571,

9    586 (2007) (in light of the minimal degree of procedural unconscionability, plaintiff

10    was required to "make a strong showing of substantive unconscionability").

11         The Agreement is not unconscionable at all, but even assuming otherwise

12    *arguendo*, it should be enforced under California's sliding-scale test.

13                    **e.    Any unconscionable provision should be severed and**

14                          **the remainder of the Agreement enforced.**

15         California law abhors "throw[ing] the [arbitration] baby out with the bath

16    water." *Bolter v. Super. Ct. (Harris Research, Inc.)*, 87 Cal. App. 4th 900, 910

17    (2001). "[T]he strong legislative and judicial preference is to sever the offending

18    term and enforce the balance of the agreement . . . ." *Roman*, 172 Cal. App. 4th at

19    1477; *see Farrar v. Direct Commerce, Inc.*, 9 Cal. App. 5th 1257, 1275 (2017)

20    (compelling arbitration after severing the "aspect in which the arbitration provision

21    is substantively unconscionable"). The Ninth Circuit in *Poublon v. C.H. Robinson

22    Co.*, 846 F.3d 1251, 1273 (9th Cir. 2017), enforced an agreement following

23    severance of multiple provisions: "Poublon argues that an agreement is necessarily

24    permeated by unconscionability if more than one clause in the agreement is

25    unconscionable or illegal. We disagree . . . ." *Id.* at 1273. *See also Rejuso*, 2017

26    U.S. Dist. Lexis 153456, at *15-16 (Fischer, J.) (enforcing arbitration agreement

27    after severing a then-unenforceable term).

28

1   If this Court were to find one (or more) unconscionable provisions in the

2   arbitration agreement, the appropriate remedy would be to sever or limit it (or

3   them) and then enforce the rest of the Agreement.

4   **D.    This Court Should Order Citywide's Claim To Individual**

5   **Arbitration.**

6   Citywide incorrectly claims that the Agreement's class-action waiver is

7   unenforceable.  Complaint ¶¶ 67-68.  Citywide should be ordered to arbitrate its

8   claim individually and not on a class basis, because the Agreement includes a

9   lawful class-action waiver.  Anderson Decl. Exh. A, p. 9.

10  In *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), the Supreme

11  Court held that federal law preempted a California state doctrine that deemed

12  unenforceable a class-action waiver in an arbitration agreement.  That state-law rule

13  "stands as an obstacle to the accomplishment and execution of the full purposes and

14  objectives of Congress" and thus "is pre-empted by the [Federal Arbitration Act]."

15  *Id.* at 351 (citation omitted) (internal quotation marks omitted).  The reason is that

16  class arbitration "sacrifices the principal advantage of arbitration," is "poorly suited

17  to the higher stakes of class litigation," forces defendants to "bet the company with

18  no effective means of review," and is "not arbitration as envisioned by the FAA."

19  *Id.* at 348, 350, 351.  The Court held that California must enforce arbitration

20  agreements even if such agreements require that claimants arbitrate their claims

21  individually, instead of on a class basis.  Parties to arbitration agreements have

22  "discretion in designing arbitration processes," because "[a]rbitration is a matter of

23  contract, and the FAA requires courts to honor parties' expectations."  *Id.* at 344,

24  351.  In *Iskanian v. CLS Transp. LA, LLC*, 59 Cal. 4th 348, 366 (2014), the

25  California Supreme Court confirmed that, under *Concepcion*, the FAA preempts the

26  rule of *Gentry v. Super. Ct. (Circuit City Stores, Inc.)*, 42 Cal. 4th 443 (2007),

27  which had invalidated certain class waivers.

28

1    The U.S. Supreme Court recently has twice reaffirmed the *Concepcion* rule.
2    First, in *Epic Systems Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018), the Court
3    reiterated that, "In the [FAA], Congress has instructed . . . courts to enforce
4    arbitration agreements according to their terms — including terms providing for
5    individualized proceedings."  Even more recently, the Court held that an arbitration
6    agreement required individualized arbitration, even if the agreement did not
7    explicitly say so.  Even "ambiguous" agreements require individualized arbitration,
8    the Court held.  *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1415, 1417, 1419
9    (2019).

10       **E.    Citywide's Likely Contentions Are Without Merit.**

11       Citywide's Complaint reveals its contentions.  They are readily dispatched.

12            **1.    The FAA's exclusion of certain transportation workers does**
13                    **not exempt this case from arbitration.**

14       In its Complaint, Citywide argues that it need not honor its agreement to
15    arbitrate because of the FAA's "transportation worker" exemption.  *See* Compl.
16    ¶ 25; *see also* 9 U.S.C. § 1 (excluding from the FAA "contracts of employment of
17    seamen, railroad employees, or any other class of workers engaged in foreign or
18    interstate commerce").  The FAA section 1 exemption is narrow; it covers only a
19    narrow class of transportation workers.  *Circuit City Stores, Inc. v. Adams*, 532 U.S.
20    105, 109 (2001) ("[T]he better interpretation is to construe the statute, as most of
21    the Courts of Appeals have done, to confine the exemption to transportation
22    workers.").  The term "transportation worker" applies to individuals whose primary
23    responsibility is the interstate delivery of goods; for example, interstate truck
24    drivers.  *Harden v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1140 (9th Cir.
25    2001) (FAA did not apply because, "[a]s a delivery driver for RPS, Harden

26
27
28

1  contracted to deliver packages 'throughout the United States, with connecting

2  international service.'") (record citation omitted).[3]

3      Citywide's invocation of the transportation-worker exemption fails for two

4  reasons.  First, Citywide operates (as its name suggests) only *citywide,* in a small

5  geographic area solely within the state of California, selling products manufactured

6  in California.  As shown in subsection "a" below, Citywide therefore is not

7  "engaged" in interstate commerce as required by the transportation-worker

8  exemption.  Second, as shown in subsection "b" below, Citywide is a limited

9  liability *company* — not a "worker" at all, let alone a "transportation worker"

10  subject to the transportation-worker exception — distributing Gruma products

11  under an independent distributor agreement.

12          **a.**    **Citywide is not "engaged in interstate commerce" for**

13                  **purposes of FAA Section 1.**

14      Citywide is not "engaged in interstate commerce"; Citywide operates solely

15  within California, and indeed within and around the City of Moreno Valley.

16  Anderson Decl. Exh. B, p. 36.  As the Complaint and the accompanying Anderson

17  Declaration (¶ 11) make clear, Citywide purchased products from Gruma that were

18  made within California, it took title to those goods in California, and its customers

19  were all located within a small geographic area in California.

20

21

---

22  [3] Some circuits have also applied the exemption to other individuals who work in

23  the transportation industry when their positions are "so closely related to the
     transport of the goods as to be in practical effect part of the shipping of the goods."

24  *Palcko v. Airborne Express, Inc.,* 372 F.3d 588, 593 (3d Cir. 2004) (finding an

25  employee who directly supervised delivery drivers for an interstate transportation
     and delivery company qualified as a "transportation worker"); *see also Hill v. Rent-*

26  *A-Center, Inc.,* 398 F.3d 1286, 1289-90 (11th Cir. 2005) ("The emphasis [of *Circuit*

27  *City*] . . . was on a class of workers in the transportation industry, rather than on
     workers who incidentally transported goods interstate as part of their job in an

28  industry that would otherwise be unregulated.").

**(1)** **The FAA covers those who make short-haul, intrastate deliveries.**

In *Circuit City*, the U.S. Supreme Court held that the transportation-worker exemption was narrow. 532 U.S. at 118. Courts long have held that the exemption applies to "only those other classes of workers who are actually engaged in the movement of *interstate or foreign commerce*[.]" *Asplundh Tree Expert Co. v. Bates*, 71 F.3d 592, 598 (6th Cir. 1995) (emphasis supplied), *quoting Tenney Eng'g, Inc. v. United Elec. Radio & Mach. Workers of America, Local 437*, 207 F.2d 450, 452 (3d Cir. 1953).

Numerous cases have found that local delivery drivers do not fit within the transportation-worker exemption. *Levin v. Caviar, Inc.*, 146 F. Supp. 3d 1146 (N.D. Cal. 2015), is illustrative. In that case, the court enforced arbitration against a food delivery driver stating, "Plaintiff has not shown that his deliveries to San Francisco Bay Area customers of food prepared by San Francisco Bay Area restaurants constitute 'engaging in interstate commerce.'" *Id.* at 1152 (citation omitted). The court concluded: "Plaintiff's argument that local delivery drivers are 'engaged in interstate commerce' asks this Court to adopt a broad reading of that term, despite the fact that the Supreme Court has made clear that this term must be narrowly construed. The Court declines to do so." *Id.* at 1154.

The court held similarly recently in *Wallace v. GrubHub Holdings, Inc.*, 2019 WL 1399986 (N.D. Ill. March 28, 2019). That court rejected the contention that short-haul food-delivery drivers for Grubhub were exempt from the FAA. *Id.* at *4 ("[E]ven though the milk used to make the ice cream came from out of state[,] the ice-cream maker made only *intrastate* sales . . . .").

Other courts within the Ninth Circuit similarly have concluded that intrastate drivers are not exempt from the FAA. *See, e.g.*, *Vargas v. Delivery Outsourcing, LLC*, 2016 WL 946112, at *5 (N.D. Cal. Mar. 14, 2016) (the transportation-worker exemption did not apply to a driver for a luggage delivery service that delivered

delayed luggage locally to airline passengers; "Under the appropriate, narrower construction [of the FAA exemption], Plaintiff has not shown that the intrastate delivery of luggage is an activity 'within the flow of interstate commerce.'"); *Veliz v. Cintas Corp.*, 2004 WL 2452851, at *3, 10 (N.D. Cal. Apr. 5, 2004) (the exemption did not apply to employees who drove trucks and "pick[ed]-up used or dirty products such as uniforms and mats and replace[d] them with new ones"; "[plaintiff's] broad definition [of transportation workers] could include every employee from a trucker for a grocery store to a pizza deliveryman"); *Magana v. DoorDash, Inc.*, 343 F. Supp. 3d 891, 899, 900 (N.D. Cal. 2018) ("Courts in this district have declined to find that a delivery driver engaged in interstate commerce where he did not allege that he made interstate deliveries"; it is not enough that drivers "facilitate the transportation of goods that originated across state lines"); *Lee v. Postmates Inc.*, 2018 WL 4961802, at *8 (N.D. Cal. Oct. 15, 2018) ("The Court is aware of no authority holding that couriers who deliver goods from local merchants to local customers are 'engaged in . . . interstate commerce' . . . merely because some such deliveries might include goods that were manufactured out of state . . . .") (first alteration in original); *Lee v. Postmates Inc.*, 2018 WL 6605659, at *7 (N.D. Cal. Dec. 17, 2018) (same; "Plaintiffs . . . do not cite any case holding that making only local deliveries . . . constitutes engaging in interstate commerce within the meaning of the statute.").

## (2) The cases Citywide may cite do not exempt Citywide from the FAA.

Several cases have found the FAA inapplicable to long-haul truck drivers involved in interstate shipments, but those cases are inapposite. In *Muro v. Cornerstone Staffing Solutions, Inc.*, 20 Cal. App. 5th 784 (2018), for example, plaintiff drove trucks in interstate commerce. "[H]e had routes . . . across state lines. He made frequent trips [from Fontana, California] to or through Arizona,

Nevada, Utah, Oregon, Washington, New Mexico, Idaho, and Wyoming." *Id.* at 788.

In *Garrido v. Air Liquide Indus. U.S. LP*, 241 Cal. App. 4th 833 (2015), similarly, the plaintiff "transported Air Liquide gases to locations in . . . neighboring states from Air Liquide's Santa Fe Springs production and distribution center." *Id.* at 838. He "worked as a truck driver transporting Air Liquide gases frequently across state lines." *Id.* at 840. That company's motion to compel arbitration was denied because the company could "cite[] to no authority holding that a truck driver whose responsibility is to move products across state lines" is covered by the FAA. *Id. Garrido* therefore has nothing to do with this case.

In *Performance Team Freight Sys., Inc. v. Aleman*, 241 Cal. App. 4th 1233 (2015), the court similarly stated: "Truck drivers who cross interstate lines usually are considered transportation workers." *Id.* at 1240.

Citywide may point to a few cases that have applied the transportation-worker exception to long-haul truck drivers who did not personally cross state lines. Those cases are inapposite as well. In each of those cases, the court relied heavily on the fact that drivers were long-haul drivers who primarily transported goods that originated out of state. *See, e.g.*, *Rittmann v. Amazon.com, Inc.*, 2019 WL 1777725, at *3 (W.D. Wash. Apr. 23, 2019) (FAA did not cover drivers who delivered packages for Amazon, which "akin to UPS and FedEx" is "widely known as a company able to transport goods across the country to consumers in a couple of days"); *Muller v. Roy Miller Freight Lines, LLC*, 34 Cal. App. 5th 1056, 1069 (2019) (FAA did not cover trucker whose "employer is in the transportation industry and over 99 percent of the goods he transported originated outside California"); *Nieto v. Fresno Beverage Co.*, 33 Cal. App. 5th 274, 284 (2019) (plaintiff was a driver whose "deliveries, although intrastate, were essentially the last phase of a continuous journey" of goods that originated out of state).

1       These cases specifically differentiated between "a delivery driver who

2  delivers goods only locally" and "a trucker whose *primary purpose* is to continue

3  the flow of interstate commerce by transporting out-of-state freight and cargo to

4  their intended destination."  *Muller*, 34 Cal. App. 5th at 1068 (emphasis added); *see*

5  *also Nieto*, 33 Cal. App. 5th at 284 n.3 (noting a distinction between "purely local

6  delivery of goods" and "transportation work [that] was clearly part of the

7  continuation of the flow of interstate commerce"); *Rittmann,* 2019 WL 1777725, at

8  *2 ("in order for a delivery driver to qualify for the transportation worker

9  exemption, the delivered good must have originated, or transformed into its final

10  condition, in a different state than the delivery state.").

11       Here, unlike in *Rittman*, *Nieto*, or *Muller*, Citywide's primary purpose was

12  not to continue the flow of goods manufactured out of state.  The goods Citywide

13  distributed were made in California, not out of state.  *See* Anderson Decl. ¶ 9.

14  Citywide's distribution territory did not cross Riverside County lines, let alone

15  California's borders.  The Store Door Distribution Agreement gave Citywide an

16  exclusive territory within a portion of the borders of Moreno Valley:  from

17  Alessandro Boulevard to Iris Avenue (so, about two miles from north to south), and

18  from the 215 freeway to Lasselle Street (so, approximately five miles from east to

19  west).  Anderson Decl. ¶ 11 & Exh. B, p. 36.  Because Citywide performed local

20  deliveries only, operating solely within California and delivering goods made in

21  California, the transportation-worker exemption does not apply.

22       Citywide also has invoked the Supreme Court's recent decision in *New*

23  *Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019).  But "New Prime is an *interstate*

24  trucking company and [plaintiff] Oliveira work[ed] as one of its drivers."  *Id.* at 536

25  (emphasis added).  *See also Harden*, 249 F.3d at 1140 (FAA did not apply because,

26  "[a]s a delivery driver for RPS, Harden contracted to deliver packages 'throughout

27  the United States, with connecting international service.'") (record citation

28  omitted).

Such cases are a world apart from this one.  Citywide, a local distributor, did not carry goods any substantial distance, and never over California state lines.  The FAA therefore applies.  Because it does, this motion should be granted.[4]

### b.    As a distribution *company*, Citywide is not a transportation *worker* within the meaning of FAA Section 1.

Even laying aside all of the foregoing, Citywide's claim of an FAA exemption fails for a wholly separate reason:  Citywide is a *distribution company*, not a *transportation worker*.  Each of the two key words — "distribution" and "company" — separately takes Citywide out of the FAA exemption.

First, consider the word "company."  As a corporate entity, Citywide by definition is not a "worker" or "class of workers."  The text of the "transportation worker" exemption, which is to be narrowly construed, simply exempts "contracts of employment" with *individuals*:  seaman, railroad employees, or other "class of workers" engaged in interstate commerce.  9 U.S.C. § 1; *see Asplundh*, 71 F.3d at 601 ("The history of the treatment of the Arbitration Act in the Supreme Court of the United States reflects a clear disposition to liberalize and expand its application.").  A plain reading of this text simply does not support expanding the definition of "worker" to include contracts with corporate entities like Citywide.

Expanding the transportation worker exemption to cover contracts between corporate entities would produce illogical results.  For example, it would expand the transportation worker exemption to shipping contracts between a manufacturer and a commercial carrier such as FedEx or UPS or, like here, to commercial distribution contracts between two corporate entities.  Courts have not applied the transportation worker exemption in this way.  *See, e.g.*, *RLED, LLC v. Dan Good Distrib. C*o., 2008 WL 11389039, at *7 (E.D. Cal. Aug. 28, 2008) (ordering

---

[4] Alternatively, even if the FAA for some reason did not apply, the same result follows under California law.  *See* note 2 *supra*.

arbitration pursuant to a distribution agreement that included deliveries of an energy drink to commercial venues).[5]

Second, even laying aside Citywide's corporate status, consider the word "distribution."  Citywide was not a mere trucker.  Citywide is an independent distribution company responsible for much more than just the transportation of goods:

- Citywide had the exclusive right to sell to any customer within its geographic territory;
- Citywide was responsible for soliciting and contracting direct sales to new customers within its territory and could work to increase sales to existing customers;
- Citywide determined the quantity of products it believed it would be able to sell, and then ordered and purchased those products from Gruma;
- Citywide took title to the products when Gruma delivered them to Citywide's warehouse, and then Citywide sold the products to nearby retail stores;
- At those stores, Citywide was solely responsible for stocking the display areas and rotating expired products, which requires determining the number of units to deliver;

---

[5] Citywide's reliance on *New Prime* on this issue is misplaced.  The only question before the Supreme Court was whether a long-haul trucker's independent-contractor agreement could qualify as a "contract of employment."  139 S. Ct. at 541, 543-44 (stating that "contracts of employment" captures contracts "for the performance of work by workers" and holding that an individual truck driver who was an "independent contractor" for a trucking company was not subject to the FAA).  *New Prime* specifically did not reach the issue here:  whether a corporate entity can qualify as a "transportation worker."  *See, e.g.*, *Oliviera v. New Prime Inc.*, 857 F.3d 7, 17 (1st Cir. 2017) ("[B]ecause the parties do not dispute that Oliveira is a transportation worker under § 1, we need not address whether an LLC or other corporate entity can itself qualify as a transportation worker.").

1      • Citywide generated its own invoices for the retail locations;

2      • After Citywide took title to Gruma's products, Citywide assumed the

3          risk of loss for any product that was damaged or unsold;

4      • Citywide was responsible 24/7 for responding to all customer-service

5          requests from the retail locations in its geographic area;

6      • Citywide was not obligated to perform these duties itself; it was free

7          to, and did, engage employees to perform these duties on its behalf;

8          and

9      • Citywide's own name — "Citywide Consultants & Food Management,

10         LLC" — belies any claim that Citywide was "just a trucker."

11  Anderson Decl. ¶¶ 11-19.

12         Because delivering products was only one of Citywide's overall sales and

13  service duties as an independent distributor, Citywide was not a "transportation

14  worker" under the FAA.  In *Veliz*, 2004 WL 2452851, for example, the court

15  looked at the applicability of the transportation-worker exemption to Sales Service

16  Representatives ("SSRs") whose duties included "driving, restocking supplies, []

17  receiving orders [and] facilitating sales for more supplies."  *Id.* at *9.  After

18  reviewing prior cases to determine the "characteristics of a transportation worker,"

19  the court declined to apply the transportation worker exemption to the SSRs, even

20  though their duties included the delivery of goods.  *Id.* at *3, 9.  Rather, the court

21  found that these employees were "more akin to customer service agents" who

22  "deliver[ed] products as part of their customer service duties."  *Id.* at *10.  Here,

23  like the SSRs in *Veliz*, the service and sales duties Citywide performed under the

24  distribution agreement went far beyond the mere delivery of goods.  Citywide

25  therefore is not a "transportation worker" under FAA section 1.

26         **2.**    <u>**The specific causes of action alleged here are arbitrable.**</u>

27         "'We have become an arbitration nation.'"  *Lambert v. Tesla, Inc.*, 2019 WL

28  2147497, at *2 (9th Cir. May 17, 2019) (holding that claims under 42 U.S.C.

1  § 1981 are arbitrable), *quoting Aspic Eng'g & Constr. Co. v. ECC Centcom*

2  *Construs. LLC*, 913 F.3d 1162, 1169 (9th Cir. 2019).

3      The two causes of action alleged here both are arbitrable, as shown below.

4          **a.**    **Antitrust claims are arbitrable.**

5      The U.S. Supreme Court has already held plaintiffs cannot bypass an

6  arbitration agreement simply by alleging antitrust claims.  In *American Express Co.*

7  *v. Italian Colors Rest.*, 570 U.S. 228 (2013), the Supreme Court reiterated that

8  courts may not invalidate arbitration agreements because they do not permit class

9  arbitration, even of Sherman Antitrust Act claims that commonly are enforced in

10  class actions.  *Id.* at 235-38.  The Court explained that, in *Concepcion*, "[W]e

11  invalidated a law conditioning enforcement of arbitration on the availability of class

12  procedure because that law 'interfered with fundamental attributes of arbitration.'

13  . . .  We specifically rejected the argument that class arbitration was necessary to

14  prosecute claims 'that might otherwise slip through the legal system.'"  *Id.* at 238

15  (citation omitted) (emphasis added).

16      The Sherman Act claim thus was held subject to individual arbitration in

17  *Italian Colors*; the Cartwright Act antitrust claim at issue here likewise is

18  individually arbitrable.

19          **b.**    **Section 17200 Unfair Competition Law claims are**

20          **arbitrable.**

21      Citywide also has claimed that its section 17200 claim is not arbitrable.

22  Complaint ¶ 86.  This appears to be an attempt to invoke the discredited *Broughton-*

23  *Cruz* rule.  In two older cases, the California Supreme Court had held that

24  injunctive-relief claims under the Consumer Legal Remedies Act and equitable

25  actions under the Unfair Competition Law (including section 17200) were not

26  arbitrable.  *Broughton v. Cigna Healthplans of Cal.*, 21 Cal. 4th 1066, 1082 (1999)

27  (CLRA case; the "judicial forum has significant institutional advantages over

28

arbitration in [such cases]"); *Cruz v. PacifiCare Health Sys., Inc*., 30 Cal. 4th 303, 315-16 (2003) (UCL case; same).

Those cases, however, preceded the more-recent United States Supreme Court cases holding that the FAA preempts any state public policy prohibiting arbitration of categories of claims.  In *Concepcion*, 563 U.S. 333, the Supreme Court held that "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:  The conflicting rule is displaced by the FAA."  *Id*. at 341.  The next year, in *Marmet Health Care Ctr., Inc. v. Brown*, 565 U.S. 530 (2012), the Court summarily reversed a decision of the West Virginia Supreme Court.  That court had applied West Virginia public policy to declare unenforceable an arbitration contract purporting to cover personal-injury or wrongful-death claims against nursing homes.  Applying *Concepcion*, the U.S. Supreme Court unanimously said that West Virginia public policy succumbed to FAA preemption.  *Id*. at 532-33.

Thereafter, courts have held that the *Broughton-Cruz* rule is an FAA-preempted dead letter.  In *Ferguson v. Corinthian Colleges, Inc*., 733 F.3d 928 (9th Cir. 2013), the court considered claims by students of a for-profit school for unfair competition, false advertising, and CLRA violations.  The defendant moved to compel arbitration.  The trial court denied the motion in relevant part, but the Ninth Circuit reversed.  The court held that the *Broughton-Cruz* rule is FAA-preempted, because it unlawfully "prohibits outright arbitration of a particular type of claim." *Id*. at 934.  In doing so, the Ninth Circuit overruled one of its own cases that had applied the *Broughton-Cruz* rule, *Davis v. O'Melveny & Myers*, 485 F.3d 1066 (9th Cir. 2007), because that case was "'clearly irreconcilable with the reasoning or theory of [the] intervening higher authority'" from the U.S. Supreme Court. *Ferguson,* 733 F.3d at 933 (citation omitted).  Even before *Ferguson*, numerous other courts had held similarly.  *E.g*., *Bernal v. Cash America Int'l, Inc*., 2013 WL 5313965, at *3 (N.D. Cal. Sept. 23, 2013) (agreeing with the numerous "courts that

1  have . . . concluded that the *Broughton-Cruz* rule . . . is clearly preempted by the

2  FAA"); *Miguel v. JPMorgan Chase Bank, N.A.*, 2013 WL 452418, at \*10 (C.D.

3  Cal. Feb. 5, 2013) (". . . *Broughton-Cruz* is preempted by the FAA because of the

4  Supreme Court's holding in *Concepcion*.").

5       The section 17200 claim therefore is arbitrable.

6              **3.    That Citywide sued two Gruma customers changes nothing.**

7       Citywide also claims that it cannot be required to arbitrate because it sued

8  other defendants — supermarket chains Stater Bros. and Smart & Final (the

9  "Supermarkets").  *See* Complaint ¶ 68(d).  But this changes nothing.

10      The Supermarkets join in this motion.  "The right of a nonsignatory to

11 enforce an arbitration clause is a question of state law."  *Vogel v. Vogel*, 2014 WL

12 12575815, at \*2 (C.D. Cal. June 23, 2014) (Fischer, J.).  California recognizes

13 several doctrines allowing nonsignatories to enforce an arbitration agreement, and

14 two apply here.

15      First, the Complaint (¶ 16) pleads that the Supermarkets are Gruma's agents.

16 "Under California law, 'a nonsignatory . . . agent of a signatory may enforce an

17 arbitration agreement.'"  *Vogel*, 2017 WL 12575815, at \*2 (citation omitted)

18 (enforcing agreement based on an allegation of agency); *Liggins v. GMRI, Inc.*,

19 2018 WL 7018011, at \*3 (C.D. Cal. Dec. 11, 2018) (Fischer, J.) ("allegations in

20 [the] complaint that defendants acted as agents of one another [are] sufficient to

21 allow [the] alleged agent/nonsignatory to compel arbitration").  This Court's

22 statement of California law is correct.  *See, e.g.*, *Rowe v. Exline*, 153 Cal. App. 4th

23 1276, 1285 (2007) ("By suing [the nonsignatories] . . . on the ground that they are

24 Initiatek's alter egos, . . . [the nonsignatories] are 'entitled to the benefit of the

25 arbitration provisions.'"); *RN Solution, Inc. v. Catholic Healthcare West*, 165 Cal.

26 App. 4th 1511, 1520 (2008) (the moving party, Robertson, was not a signatory to

27 the arbitration agreement that Woo had signed, but "[t]he complaint alleges that

28 [Robertson] was a managing agent and vice-president of human resources [of the

1    defendant entity],” so he too was entitled to invoke it based on Woo’s allegation of

2    agency); *Dryer v. L.A. Rams*, 40 Cal. 3d 406, 418 (1985) (nonsignatory defendants

3    could enforce an arbitration agreement where the complaint alleged that they were

4    “agents” of the signatory).

5        Second, even laying aside the agency allegation, “a nonsignatory defendant

6    may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its

7    claims when the causes of action against the nonsignatory are ‘intimately founded

8    in and intertwined’ with the underlying contract obligations.” *Boucher v. Alliance

9    Title Co.*, 127 Cal. App. 4th 262, 271-72 (2005) (reversing trial court’s denial of

10   motion to compel arbitration as to a co-defendant transferee company which was

11   not a signatory to the employment contract containing the arbitration provision).

12       In *Laswell v. AG Seal Beach, LLC*, 189 Cal. App. 4th 1399 (2010), for

13   example, plaintiff entered into a contract with AG Seal Beach, which owned a

14   nursing home.  Plaintiff sued AG Seal Beach, alleging inadequate patient care.  She

15   also named as defendants the parent company and an affiliate that managed the

16   nursing home.  All defendants moved to compel arbitration even though only AG

17   Seal Beach was a signatory to the arbitration contract.  The trial court denied the

18   motion to compel arbitration, saying that the nonsignatories were not entitled to

19   invoke the agreement.  The court of appeal reversed.  “[T]he substance of [plaintiff]’s

20   allegations is that all of the defendants are responsible for the improper care she

21   received . . . , demonstrating her claims against all defendants are based on the same

22   facts and theory and are inherently inseparable.  Under these circumstances, [the

23   nonsignatory entities] can enforce the arbitration agreement . . . .” *Id.* at 1407.

24       In *JSM Tuscany, LLC v. Super. Ct. (NMS Props., Inc.)*, 193 Cal. App. 4th

25   1222 (2011), similarly, the court reversed the trial court’s denial of a motion to

26   compel arbitration as to co-defendant entities who were not signatories to the

27   arbitration agreement.  The court explained that its holding followed from “‘the

28   nexus between the contract and the causes of action asserted.  . . .  Claims that rely

upon, make reference to, or are intertwined with claims under the subject contract are arbitrable.'" *Id.* at 1238-39 (citations omitted).

Courts, in sum, do not allow "a party [who] has signed an agreement to arbitrate . . . to avoid arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants." *Metalclad Corp. v. Ventana Envtl. Org. P'ship*, 109 Cal. App. 4th 1705, 1713 (2003) (internal quotation marks omitted); *accord Molecular Analytical Sys. v. Ciphergen Biosystems, Inc.*, 186 Cal. App. 4th 696, 717 (2010) (reversing trial court's denial of motion to compel arbitration as to non-signatory putative assignee because all the claims "derive[] from, rel[y] on, or [are] intimately intertwined with the subject contract containing the arbitration agreement"); *Chico v. Hilton Worldwide, Inc.*, 2014 WL 5088240, at *13-14 (C.D. Cal. Oct. 7, 2014) (co-defendant corporations who were not parties to the arbitration agreement could equally enforce the arbitration agreement).

Here, as in each of the above-cited cases, Citywide's claims against the Supermarkets are founded upon, and inextricably intertwined with, its claims against Gruma.

Under two well-established rules, therefore, the Supermarkets, along with Gruma, are entitled to compel arbitration.

## III.   **CONCLUSION**

Citywide contractually promised to individually arbitrate any disputes it might have with Gruma. Accordingly, Gruma respectfully requests that this Court enforce the Agreement and order Citywide to submit its claims to individual arbitration.

Dated:  June 5, 2019

PAUL HASTINGS LLP
PAUL GROSSMAN
DONNA M. MELBY
CHRIS A. JALIAN

ZOBLAW
DUANE H. ZOBRIST


By:_____/s/ Paul Grossman_____
PAUL GROSSMAN

Attorneys for Defendants
GRUMA ENTERPRISES, INC.;
SMART & FINAL STORES, INC.; AND
STATER BROS. MARKETS