# EXHIBIT A

**6**

Jeffrey K. Compton (SBN 142969)
Email:  jcompton@mzclaw.com
Daria Dub Carlson (SBN 150628)
Email:  dcarlson@mzclaw.com
MARKUN ZUSMAN FRENIERE & COMPTON LLP
17383 W. Sunset Blvd., Suite A380
Pacific Palisades, CA 90272-4181
Telephone:  (310) 454-5900
Facsimile:   (310) 454-5970

Jonathan Weiss (SBN 143895)
Email:  jw@lojw.com
LAW OFFICE OF JONATHAN WEISS
10576 Troon Ave.
Los Angeles, CA  90064-4436
Telephone:  (310) 558-0404

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CITYWIDE CONSULTANTS & FOOD MANAGEMENT, LLC, and RANDY H. EVANS, individually and on behalf of all others similarly situated, <br><br>      *Plaintiffs*, <br><br> vs. <br><br> GRUMA CORPORATION, a Nevada corporation, dba MISSION FOODS CORPORATION; SMART & FINAL STORES, INC.; and STATER BROS. MARKETS, <br><br>      *Defendants*. | Case No.:  2:19-cv-04724-DSF-AFM <br><br> CLASS ACTION <br><br> FIRST AMENDED CLASS ACTION COMPLAINT FOR: <br><br> 1. VIOLATION OF THE CARTWRIGHT ACT (Bus. & Prof. Code, § 16720 et seq.); <br><br> 2. FAILURE TO PAY MINIMUM WAGE (Labor Code, § 1197 AND 1197.1); <br><br> 3. FAILURE TO PAY OVERTIME COMPENSATION (Labor Code, § 1194 and 1198); |

1

4. FAILURE TO PROVIDE MEAL PERIODS (Labor Code, § 226.7 and 512);

5. FAILURE TO PROVIDE REST PERIODS (Labor Code § 226.7 and 512);

6. FAILURE TO PROVIDE PAID SICK LEAVE (Labor Code, § 245, et seq.);

7. UNLAWFUL WAGE DEDUCTIONS;

8. FAILURE TO PROVIDE ITEMIZED STATEMENTS (Labor Code, § 226);

9. FAILURE TO TIMELY PAY WAGES
(Labor Code, § 201, 202 and 203);

10. PRIVATE ATTORNEYS GENERAL ACT (Labor Code § 2699, et seq.);

11. UNLAWFUL BUSINESS PRACTICES (Bus. & Prof. Code, § 17200 et seq.)

Plaintiffs Citywide Consultants & Food Management, LLC and Randy H. Evans ("Plaintiffs") allege as follows on information and belief against Gruma Corporation, a Nevada corporation, doing business as Mission Foods Corporation, Smart & Final Stores, Inc. and Stater Bros. Markets as follows:

## SUMMARY OF ACTION

1.    Plaintiffs bring this action against Gruma Corporation, a Nevada corporation, doing business as Mission Foods Corporation ("Gruma"), Smart & Final Stores, Inc. and Stater Bros Markets (collectively, the "Chain Store Defendants") for violations of the Cartwright Act (Bus. & Prof. Code, § 16720 et seq), and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.)

2

1   ("UCL").  Plaintiffs also bring additional claims against Gruma for violations of

2   various wage and hour laws as a result of Gruma's misclassification of Plaintiffs

3   and other class members as independent contractors rather than employees, and

4   for UCL and Private Attorneys General Act representative claims based on these

5   wage and hour violations.

6       2.    Gruma, the world's largest tortilla maker, contracts with hundreds of

7   delivery drivers to get its goods to market in California.

8       3.    To avoid employment-related expenses (such as 40-hour work

9   weeks, days off, Social Security, and disability insurance) for its delivery drivers,

10  Gruma uses what is purportedly an independent distributor model, effectuated

11  through a so-called "Store Door Distribution Agreement" ("SDDA").

12      4.    Whether the class member delivery driver/distribution workers

13  ("Class," "Class Members" or "Distributors") are classified as employees or

14  independent contractors, Gruma's distribution model has one fatal flaw: the

15  Distributors, who buy the products from Gruma before reselling them to Chain

16  Stores, must resell the products at prices negotiated between Gruma and the

17  Chain Stores.  In other words, Gruma and the Chain Stores require Resale Price

18  Maintenance, which is vertical price-fixing in per se violation of the Cartwright

19  Act and the UCL.

20      5.    One antitrust commentator describes the fatal flaw in Defendants'

21  scheme:

> A supplier selling products or services through independent
> distributors may face a practical problem in dealing with large
> national accounts or multi-regional retail accounts.  Many such
> chain dealers desire, and often require, that purchase contracts
> be negotiated and approved centrally for all of their individual
> locations.  Further, such retailers often prefer to deal with and
> pay a single vender – generally the manufacturer – so as to
> reduce transaction costs and be able to hold a single party
> responsible for any marketing problems that might arise.
> Therefore, suppliers selling through independent distributors
> seeking to respond to the realities of serving national accounts

must cope with antitrust risks.[1]

6.     Gruma acknowledges exactly this: "large and multi-regional accounts," [2] which "require central purchasing and billing," [3] may "choose to negotiate with [Gruma] regarding suggested mark-ups and/or other terms and conditions of sale, *pricing*, invoicing, allowances, promotions, and similar matters pertaining to the sale of Products from Distributor." (SDDA, Spring 2018 Amendment, emphasis added.) In fact, those Material Customers, the Chain Stores, only negotiate with Gruma.

7.     To meet the Material Customers' requirements of central purchasing and billing, Gruma follows a scan-based trading ("SBT") model. Under SBT, for each product a retail customer has *scanned* at the store checkout, the Chain Stores pay Gruma the "resale price" they have agreed to (i.e., fixed) and have input into a database.

8.     For each item scanned, Gruma passes the "resale price" to its Distributors, who have previously purchased Gruma's products from Gruma at a lower "distributor price." The difference between the distributor price and the resale price is the "mark-up" percentage set forth in the SDDA. (The mark-up varies from product to product, and Gruma has the sole prerogative to change it. *See* SDDA, ¶ 4.b.)

9.     The Distributors cannot change the resale prices to Chain Stores, i.e., the prices in the database, and the Chain Stores simply will not negotiate with Distributors.

10.     In addition, among other things, Gruma does not pay Distributors minimum wage or overtime compensation, does not provide legally mandated

---

[1] Irving Scher, *Antitrust Advisor* (5th ed. 2017 update) § 3:27 (Scher).

[2] Gruma uses the term, "Material Customers (i.e. national or regional chains)." (SDDA Amendment Summary, California.)

[3] *Id.*

4

meal and rest periods, does not provide paid sick leave, does not provide itemized wage statements and does not timely pay wages. Gruma also makes improper deductions from Distributors' wages and fails to reimburse them for ordinary business expenses.

11. Plaintiffs bring this action on behalf of themselves and the members of a putative class consisting of all persons or entities who, between four years before the date of the initial Complaint's filing, through to the present and continuing to the time of trial (the "Class Period"), are or were signatories to an agreement with Gruma for the distribution of Products within California (the "Class").

## THE PARTIES

### A. **Plaintiffs**

12. At all relevant times, Plaintiff Citywide Consultants & Food Management, LLC ("Citywide"), was and is a Nevada corporation, with offices in the County of San Bernardino, and a signatory to one or more agreements with Gruma for the distribution of goods within California during the Class Period. Citywide was damaged and lost money or property as a result of the counts alleged herein.

13. At all relevant times, Plaintiff Randy H. Evans ("Evans"), was and is an individual residing in the County of San Bernardino, the sole proprietor and member of Citywide, who personally provided substantially all of the services under the above-alleged agreements. Evans was damaged and lost money or property as a result of the counts alleged herein.

### B. **Gruma**

14. Defendant Gruma is, and at all times mentioned herein was, a Nevada corporation with its principal place of business in Irving, Texas. Gruma does business as "Gruma" and "Mission Foods," within the State of California.

//

5

**11**

**C.    Chain Grocer Defendants**

15.    Defendant Smart & Final is, and at all times mentioned herein was, a Delaware corporation, with its principal place of business in Los Angeles County, California.  Smart & Final is warehouse-style food and supply chain operating 326 stores in California and the western United States.

16.    Defendant Stater Bros. is, and at all times mentioned herein was, a California corporation with its principal place of business in San Bernardino County, California.  Stater Bros. is a privately held supermarket chain, consisting of 172 stores located throughout Southern California.

17.    At all times mentioned herein, each Defendant was the agent, servant, and/or co-conspirator of the other Defendants and in acting and omitting to act as alleged herein did so within the course and scope of that agency and/or conspiracy.

## GENERAL ALLEGATIONS

**A.    Gruma's Business**

18.    Gruma manufactures and distributes baked goods, such as tortillas, under brand names including Mission, Guerrero, and Calidad.

19.    Gruma is among the world's largest producers of flatbread, tortilla and corn flour products with factories in Los Angeles County, including the world's largest tortilla plant in Los Angeles, California.

20.    Throughout this Complaint, unless otherwise required by context, the term "Products" shall include:  corn and flour tortillas, tortilla chips, and other food products manufactured or sold by Gruma to Class Members.

21.    Gruma contracts with Class Members to distribute Products.  The written agreement is entitled a Store Door Distribution Agreement and includes amendments thereto (herein "SDDA").

22.    The SDDA provides that "Title and risk of loss to the Products shall pass to Distributor upon delivery of the Products to Distributor."  (SDDA, ¶ 4.a.)

23.     Virtually all of the retail sales of Defendants' Products to consumers take place through third-party chain stores, such as supermarkets, food stores, warehouse stores, or convenience stores.  These entities are referred to herein as "Chain Stores" and include Smart & Final and Stater Bros., and other similar stores.

24.     With so-called "direct store delivery" (also known as "DSD"), the Chain Stores allocate a certain space and location within their establishments for the display of Gruma's products.  Gruma's Products are distributed to the Chain Stores during the stores' receiving hours by Class Members, who may also arrange the product on the shelves and displays.

25.     The SDDA explicitly states that Gruma's distributors, including Plaintiffs and other Class Members, are workers "engaged in … interstate commerce."  In accordance with the United States Supreme Court decisions in *New Prime, Inc. v. Oliveira* (2019) 586 U.S.___, 139 S. Ct. 532, 536, *Circuit City Stores v. Adams*, 532 U.S. 105, 112 (2001), and *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568, 63 S. Ct. 332, 335 (1943) they are exempt from the Federal Arbitration Act.

**B.     Gruma's "Supplier Agreements" with Chain Stores**

26.     Gruma enters into agreements with Chain Stores, sometimes known as supplier agreements, slotting fee agreements, authorization agreements, and/or customer marketing agreements (herein generally "Supplier Agreements") whereby Gruma commits to sell, deliver, market, and merchandise Products and the Chain Stores agree to provide shelf space for Gruma's products.  (To "merchandise" means to arrange products on shelves in a way that is generally attractive to customers, e.g., with labels readable and products filling the shelves' visible areas.)

27.     Gruma negotiates the terms in the Supplier Agreements, including the price at which the Chain Stores purchase Products, without the involvement of the Plaintiffs or the Class.

7

28.    The Supplier Agreements are generally confidential and not known or available to Class Members, who are effectively kept in the dark as to their existence and terms.

29.    Supplier Agreements are not always signed agreements.  In some circumstances, Gruma and the Chain Stores perform based on oral proposals as if a fully executed agreement were in place.

30.    Gruma introduces Products, sets prices, obtains authorizations, arranges for displays, obtains more space, determines the type and frequency of promotions, deals and in-store demonstrations, and deals with grocer and retail customer complaints.

31.    The prices fixed by Gruma and the Chain Stores are maintained in computerized databases which form the basis for Chain Stores' payments to Gruma for Products.

32.    Class Members cannot sell Products to some Chain Stores without using SBT.

33.    The SBT system does not allow Class Members to change the prices to Chain Stores.

34.    Based on the databases maintained by Defendants, including the computerized accounting system that the Class Members are required to use, Chain Stores pay Defendants directly for the Products sold and delivered to them by the Class Members, and then Gruma pays the Class Members the price fixed between Gruma and the Chain Stores.

C.    **Gruma's "Distribution Agreements" with Class Members**

35.    Gruma distributes Products through Distributors who sign SDDAs whereby they agree to buy Products from Gruma and resell them to retailers, including the Chain Stores.

36.    The SDDAs are standardized agreements drafted entirely by Gruma and, at least as to the terms described herein, Class Members are not able to

8

**14**

negotiate their terms.

37.    Through the SDDAs, Class Members receive a specific geographic area, known as a "Sales Area" or "Route," in which they are to distribute Gruma's Products to retail stores.  Class Members are not permitted to distribute Gruma's Products outside their designated areas.

38.    Class Members generally obtain the contractual right to buy then sell Gruma's Products by purchasing a Route from another distributor or, if the route has been abandoned or otherwise forfeited or is new, from Gruma.  The purchase price for the right to enter into a Distribution Agreement can range from approximately $20,000 to $120,000, with the route purchase price generally based on a multiple of (often ten times) the Route's average weekly gross sales.

39.    The SDDAs state that Class Members are independent contractors: "Distributor agrees that he or she is not an employee of Company for any purpose, but is an independent sales and distribution contractor. …. Distributor shall in no event purport to be an employee of Company, but shall under all appropriate circumstances make it clear to interested parties that Distributor is an independent contractor."  (SDDA ¶ 11 ["Relationship Created."])  Gruma consistently insists on the independent contractor classification in litigation, arbitration and before governmental authorities.

**D.    Class Members Are Required to Sell Products to Chain Stores at Prices Set by Defendants and the Chain Stores**

40.    Class Members sell Products to Chain Stores and other retail stores. They are required to sell Gruma's Products to the Chain Stores at prices that are set between Gruma and the Chain Stores.

41.    Despite the fact that Class Members purchase the Products from the Defendants and take title to the products, Class Members have no ability to negotiate the price at which they sell Products to the Chain Stores.

42.    Chain Stores would refuse to do business with an independent

9

**15**

1   distributor if the distributor somehow offered a different price than that set with

2   Gruma.

3       43.     Defendants require Class Members to comply with the fixed prices

4   in at least the following ways:  (1) through express provisions in the SDDA

5   requiring the Class to sell Products on the terms fixed by Defendants and the

6   Chain Stores; (2) by requiring Class Members to use computer systems that are

7   pre-programmed with the prices fixed by Defendants and the Chain Stores and

8   which prices cannot be altered by Class Members; and (3) through other coercive

9   conduct such as Defendants' ability to terminate Class Members' distribution

10  rights or selling Products directly in Class Members' routes.

11      44.     Defendants are the only source for Products in the Distribution

12  Agreements, so Class Members cannot (or are not permitted to) obtain Products

13  for sale at the same or any lower price from any other source.

14      45.     The SDDA expressly authorizes Gruma to negotiate prices with

15  Chain Stores: "<u>Pricing</u>.  The Company and Distributor recognize that certain of

16  Distributor's **Material Customers** may, for their own convenience and efficiency,

17  **choose to negotiate with the Company regarding** suggested mark-ups and/or

18  other terms and conditions of sale, **pricing**, invoicing, allowances, promotions,

19  and similar matters pertaining to the sale of Products from Distributor.  …."

20  (SDDA, Spring 2018 Amendment, emphasis added.)

21      46.     Although the SDDA nominally authorizes Distributors "to negotiate

22  pricing terms with any customer who consents to negotiate such pricing with the

23  Distributor," (SDDA Amendment Summary, California), this provision is

24  meaningless because the Distributors do not have the power to negotiate with

25  Chain Stores.

26      47.     Defendants have eliminated any ability or right by which Class

27  Members can sell Product to Chain Stores at a price other than that set by

28  Defendants.

**E.**    **Injury to Class Members**

48.    Class Members cannot set prices in accordance with their own judgment, e.g., raise prices when demand is high or lower them when demand is low.

49.    By not being able to raise prices to Chain Stores (in Class Members' exclusive territories) when demand will be high, Class Members' potential profits are reduced.

50.    By not being able to lower prices to move inventory, Class Members are unfairly saddled with the costs of unsold Products along with their time in delivering, then removing and disposing of Products.  (Most of the Products are perishable, so, unlike other goods, they cannot be saved and resold over an extended time.)

51.    Class Members are misclassified as independent contractors rather than employees, thereby injuring Class Members by depriving them of the compensation and protection contained within wage and hour and related laws.

## ANTITRUST ALLEGATIONS

**A.**    **Cartwright Act Is Broader than Federal Law in Prohibiting Price Fixing.**

52.    It has been said that "The crux of any price-fixing agreement is the relinquishment by a trader … of the freedom to set prices in accordance with his own judgment."  (*Chisholm Bros. Farm Equipment Co. v. International Harvester Co.* (9th Cir. 1974) 498 F.2d 1137, 1142.)  "All price fixing is illegal."  (*Balian Ice Cream Co. v. Arden Farms Co.* (S.D.Cal. 1952) 104 F.Supp. 796, 800, fn. 11.)  "A vertical price-fixing agreement, commonly known as resale price maintenance, involves the efforts of a supplier to control the distribution of its product or service by retailers or distributors.  [Citation.]  Such an agreement limits the distributor's freedom to sell the supplier's product at a price

11

**17**

independently selected by the distributor [citation]; instead, the supplier establishes the price at which its distributors may sell the supplier's products, resulting in maintenance of the resale price at a single level.  ….  A vertical price-fixing or resale price maintenance agreement between supplier and distributor 'destroys horizontal competition as effectively as would a horizontal agreement among distributors or retailers' [citation] and is per se unlawful under the Cartwright Act.  [Citation.]"  (*Kunert v. Mission Financial Services Corp.* (2003) 110 Cal.App.4th 242, 263.)

53.     California's antitrust law, the Cartwright Act, was enacted in 1907 "in reaction to the perceived ineffectiveness" of the Sherman Act.  (ABA Section of Antitrust Law, State Antitrust Practice and Statutes (3d ed. 2004), at p. 6-1.)  It is "broader in range and deeper in reach than the Sherman Act …."  (*Cianci v. Superior Court* (1985) 40 Cal.3d 903, 920.)  It "reaches beyond the Sherman Act to threats to competition in their incipiency … and thereby goes beyond 'clear-cut menaces to competition' in order to deal with merely 'ephemeral possibilities' [citation]."  (*Id.* at p. 918.)

54.     "[H]istorical and textual analysis reveals that the [Cartwright] Act was patterned after the 1889 Texas [antitrust] act and the 1899 Michigan [antitrust] act, and

not the Sherman Act.  [Citation.]  Hence judicial interpretation of the Sherman Act, while often helpful, is not directly probative of the Cartwright drafters' intent, given the different genesis of the provision under review."  (*State of California ex rel. Van de Kamp v. Texaco, Inc.* (1988) 46 Cal.3d 1147, 1164 [superseded by statute on other grounds by *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 570].)

55.     From 1931 until 1976, California expressly allowed vertical price fixing under the so-called "Fair Trade Act."  (*See ABC Internat. Traders, Inc. v.*

12

1  *Matsushita Electric Corp.* (1997) 14 Cal.4th 1247, 1260-1261 ["In California, a

2  fair trade law, authorizing retail price maintenance agreements with respect to

3  trademarked products, had been passed in 1931 and strengthened in 1933. (Stats.

4  1931, ch. 278, p. 583; Stats. 1933, ch. 260, § 1, p. 793, repealed Stats. 1975, ch.

5  402, § 1, p. 878.)"].)

6      56.    In 1975, California repealed the Fair Trade Act, "reflect[ing] a

7  growing apprehension that fair trade laws [were] not in the public interest." (*Rice*

8  *v. Alcoholic Beverage Control Appeals Bd.* (1978) 21 Cal.3d 431, 438.)

9      57.    Regardless of their views on the economic benefits or detriments of

10  vertical price fixing, courts have "neither the power nor the duty to determine the

11  wisdom of any economic policy; that function rests solely with the legislature."

12  (*Max Factor & Co. v. Kunsman* (1936) 5 Cal.2d 446, 454.)  "It is primarily a

13  legislative and not a judicial function to determine economic policy." (*Id.* at p.

14  155.)

15      58.    The Cartwright Act, Business and Professions Code section 16720,

16  et seq., prohibits unlawful "trusts," defined in relevant part as follows:

17      [A] combination of capital, skill or acts by two or more persons for any

18      of the following purposes:

19          …

20      (e) To make or enter into or execute or carry out any contracts,

21      obligations or agreements of any kind or description, by which they do

22      all or any or any combination of any of the following:

23          …

24      (2) Agree in any manner to keep the price of such article,

25      commodity or transportation at a fixed or graduated figure.

26      59.    California's position is simple: "vertical price-fixing" is a "per se

27  violation of the Cartwright Act (Bus. & Prof. Code § 16720 et seq.), as well as

28  the Unfair Competition Law (the 'UCL,' Bus. & Prof. Code § 17200 et seq.)."

13

(*State of California v. Bioelements, Inc.* (Super. Ct.  Riverside County, 2010, No. 10011659, Complaint, ¶ 1 [http://oag.ca.gov/system/files/attachments/press_releases/ n2028_bioelements_complaint.pdf]).  "Under current California Supreme Court precedent, vertical price restraints are per se unlawful under the Cartwright Act. [Citation.]  There is no indication that precedent is changing."  (*Darush v. Revision LP* (C.D.Cal. Apr. 10, 2013), No. CV 12-10296 GAF (AGRx), 2013 WL 1749539, at *6; *see* Richard M. Steuer, The Simplicity of Antitrust Law, 14 U. Pa. J. Bus. L. 543, 547 (2012) ["[T]he rule of per se illegality against minimum resale price maintenance remains under the laws of certain states. See, e.g., *California v. DermaQuest, Inc.*, 2010-1 Trade Cas. (CCH) P 76,922 (Cal. Super. Ct. Feb. 23, 2010)"].)

## CLASS ALLEGATIONS

**A.    Definition of Plaintiffs Class and Subclasses.**

60.    The Class consists of all persons or entities who/that are or were signatories to an agreement with Defendant for the distribution of Defendant's Product within California between March 26, 2015 through the Preliminary Approval Date, in addition to their owners, proprietors, partners and/or members.

61.    Plaintiffs signed an SDDA in or about April 2008 and an amendment thereto in or about March 2018.

62.    The Class defined herein may be divided, in this Court's discretion, into subclasses.  The aforementioned Class and any other sub-classes to be later defined are collectively referred to herein as the Class.

**B.    Maintenance of the Action.**

63.    Plaintiffs brings this action individually, on behalf of the Class, and as representative of all similarly situated persons pursuant to Business & Professions Code § 17203 and § 17204 and Federal Rule of Civil Procedure

14

1    23(b)(3).  Plaintiffs also bring representative claims pursuant to the Private

2    Attorneys General Act (California Labor Code, § 2699, et seq.).

3    **C.    Class Action Requisites.**

4         64.    At all material times, Plaintiffs were and are members of the Class.

5         65.    This Class Action meets the statutory prerequisites for the

6    maintenance of a Class Action as set forth in Federal Rule of Civil Procedure 23

7    in that:

8              (a)    The persons who comprise the Class are so numerous that the

9         joinder of all such persons is impracticable and the disposition of their

10        claims as a class will benefit the parties and the Court.  More than 100

11        individuals have signed the SDDA;

12             (b)    Nearly all factual, legal, statutory, declaratory and injunctive

13        relief issues that are raised in this Complaint are common to the Class and

14        will apply uniformly to every member of the Class;

15             (c)    Plaintiffs' claims are typical of the claims of each member of

16        the Class.  Plaintiffs, like all other members of the Class, have sustained

17        injury in fact and lost money or property as a result of Defendants'

18        violations of the laws of the State of California.  Plaintiffs and the members

19        of the Class were and are similarly or identically harmed by the same

20        unlawful, deceptive, unfair, systematic and pervasive pattern of misconduct

21        engaged in by the Defendants; and

22             (d)    Plaintiffs will fairly and adequately represent and protect the

23        interests of the Class, and have retained counsel who are competent and

24        experienced in class action litigation.  There are no material conflicts

25        between Plaintiffs' claims and the Class Members' claims that would make

26        class certification inappropriate.  Counsel for the Class will vigorously

27        assert the claims of all Class Members.

28        66.    In addition to meeting the statutory prerequisites to a class action,

this action is properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) in that:

(a)    Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

1)    Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

2)    Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

(b)    The parties opposing the Class have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

(c)    Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

1)    The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

2)    The extent and nature of any litigation concerning the

3)    controversy already commenced by or against members of the Class;

16

4)    The desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

5)    The difficulties likely to be encountered in the management of a class action.

67.    This Court should permit this action to be maintained as a class action pursuant to Code of Civil Procedure § 382 because:

(a)    The questions of law and fact common to the Class predominate over any question affecting only individual members;

(b)    A class action is superior to any other available method for the fair and efficient adjudication of the claims of the members of the Class;

(c)    Plaintiffs and the other members of the Class will not be able to obtain effective and economic legal redress unless the action is maintained as a class action;

(d)    There is a community of interest in obtaining appropriate legal and equitable relief for the common law and statutory violations and other improprieties, and in obtaining adequate compensation for the damages and injuries which Defendants' actions have inflicted on the Class; and,

(e)    There is a community of interest in ensuring that the combined assets and available insurance of Defendants are sufficient to adequately compensate the members of the Class for the injuries sustained.

68.    Gruma's SDDA contains a class action waiver; however, that waiver is not enforceable under *Gentry v. Superior Court* (2007) 42 Cal.4th 443. (*Muro v. Cornerstone Staffing Solutions, Inc.* (2018) 20 Cal.App.5th 784, 792-793 ["Because we have concluded the FAA is not applicable, the appropriate test

17

**23**

1    under California law to determine whether to enforce the 'class waiver'

2    provisions of an arbitration agreement remains the four-part analysis under

3    *Gentry*."].)

4        69.    A class action is likely to be a significantly more effective practical

5    means of vindicating the rights of the Class Members than individual litigation or

6    arbitration, and there would be less comprehensive enforcement of the applicable

7    laws if the class action device is disallowed.  Specifically, the following factors

8    favor a class action over individual actions:

9        (a)    The size of the recovery for Class Members would be too

10              modest to pursue individually in individual actions for antitrust

11              violations, wage and hour claims, and unfair business practices.

12       (b)    There is a strong potential for retaliation against Class

13              Members who pursue these claims.  For example, in 2017-

14              2018, Gruma terminated at least four distributors in retaliation

15              for their participation in a group, Association of Mission Food

16              Distributors (Southern California), which was organized to

17              represent the Distributors' interests.

18       (c)    Absent Class Members, many of who are individual drivers

19              operating small businesses and whose primary language is

20              Spanish, may not be well-informed of their rights including

21              their claims for antitrust violations, wage and hour violations,

22              and unfair business practices.

23       (d)    Other real world obstacles inhibit vindication of Class

24              Members' rights through individual actions.  Among other

25              things, Class Members' claims against the Chain Stores are not

26              subject to arbitration, because there is no arbitration agreement

27              between these parties.  Therefore, individual arbitrations will

28              not provide complete relief.

18

24

70.     Plaintiffs contemplate the eventual issuance of notice to the proposed Class that would set forth the subject and nature of the instant action. Defendants' business records may be used for assistance in the preparation and issuance of the contemplated notices.  To the extent that any further notices may be required, Plaintiffs would contemplate the use of additional media and/or mailings.

**D.     Common Questions.**

71.     Among the many *questions of law and fact* common to the class are whether:

(a)     Chain Stores require central purchasing and billing;

(b)     Chain Stores and Gruma use databases for purchasing and billing;

(c)     Chain Stores and Gruma negotiate the prices the Chain Stores will pay for products sold by Distributors;

(d)     Chain Stores are not willing to negotiate with Distributors the prices Chain Stores pay to Gruma for the Products sold by Distributors;

(e)     Gruma bills and collects from Chain Stores;

(f)     Class Members are entitled to the class-wide relief sought in this Complaint;

(g)     Defendants' price fixing arrangement constitutes an unreasonable restraint of trade in violation of the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.);

(h)     Class Members are improperly classified as independent contractors rather than employees;

(i)     Gruma retains the right to control the manner and means of Class Members' fulfilling their distribution obligations under the SDDA.

(j)     Class Members are free from Gruma's control and direction in

19

1    connection with the performance of the work, both under the

2    SDDA and in fact;

3    (k)    Class Members perform work that is outside the usual course of

4    Gruma's business;

5    (l)    Class Members are customarily engaged in an independently

6    established trade, occupation, or business of the same nature as

7    that involved in the work performed;

8    (m)    Defendants' price fixing arrangement violates the UCL (Bus. &

9    Prof. Code, § 17200 et seq.);

10    (n)    The amount of damages to which the Class is entitled; and

11    (o)    The nature and amount of restitution and equitable relief to

12    which the Class is entitled.

13    72.    A class action is superior to all other methods for the fair and

14    efficient adjudication of this controversy, since joinder of all Class Members is

15    impracticable and since many legal and factual questions to be adjudicated apply

16    uniformly to all Class Members.  Further, as the economic or other loss suffered

17    by vast numbers of Class Members may be relatively small, the expense and

18    burden of individual actions makes it difficult for the Class Members to

19    individually redress the wrongs they have suffered.  Moreover, in the event

20    disgorgement is ordered, a class action is the only mechanism that will permit the

21    employment of a fluid fund recovery to ensure that equity is achieved.  There will

22    be relatively little difficulty in managing this case as a class action.

23    73.    The class action is superior to other available methods for a fair and

24    efficient adjudication of the claims and would reduce the financial, administrative

25    and procedural burdens on the parties and on the Court which individual litigation

26    would otherwise impose.

27    **VENUE**

28    74.    Plaintiffs bring this action in Los Angeles County – the location of

20

---

1   Gruma's world's largest tortilla plant.  (SDDA, Spring 2018 Amendment, § 15
2   ["Arbitration"], subsection c ["Claims not Covered by this Arbitration Clause"],
3   subsection iii ["In the event that the parties' waiver of the right to assert class and
4   collective action Claims is not legally enforceable, any and all Claims and causes
5   of action arising out of or relating to this Agreement asserted as a class action
6   under Federal Rule of Civil Procedure 23, any similar state statute or rule of
7   judicial procedure, or any equivalent arbitration procedure, shall be filed first in a
8   court of law of competent jurisdiction located within the State and County where
9   the affected Company's Facility is located."].)

10

11                          **<u>FIRST CAUSE OF ACTION</u>**

12      (Cartwright Act, Bus. & Prof. Code, § 16720 et seq. – Against all Defendants)

13          75.    Plaintiffs re-allege and incorporate by reference each allegation
14   contained in the foregoing paragraphs.

15          76.    At all relevant times herein, Gruma has and continues to combine,
16   conspire, and agree with Chain Stores to fix the price at which Class Members
17   must sell Products to the Chain Stores.

18          77.    Defendants accomplish this price fixing by including provisions in
19   the Distribution Agreements which require Class Members to comply with the
20   terms of the agreements reached between Gruma and the Chain Stores and by
21   doing all of the billing to and collecting from the Chain Stores at the fixed prices.

22          78.    Defendants' vertical price fixing practices constitute *per se*
23   violations of the Cartwright Act.

24          79.    As a direct, foreseeable and proximate result of Defendants'
25   violations of the Cartwright Act described above, Class Members are not
26   permitted to either increase the resale price to the Chain Stores to generate more
27   profit on each unit of product they sell, decrease the price charged to Chain Stores
28   in the attempt to sell more units of product, or give direct discounts to consumers

21

**27**

1  in the attempt to sell more units of product.  Accordingly, Class Members have

2  suffered damages due to Defendants' conduct in an amount to be proven at trial.

3      80.    Class Members are entitled to injunctive relief to prevent and

4  preclude

5  Defendants' anticompetitive conduct.  Under the Cartwright Act, Class Members

6  may "recover … preliminary or permanent injunctive relief when and under the

7  same conditions and principles as injunctive relief is granted by courts generally

8  under the laws of this state and the rules governing these proceedings … ."  (Bus.

9  & Prof. Code, § 16750.)  In the absence of appropriate injunctive relief,

10  Defendants' violations of the antitrust laws will continue unabated in the State of

11  California and Plaintiffs and/or the Class will continue to suffer the harm

12  complained of in this action.

13      81.    Defendants acted intentionally, oppressively and maliciously toward

14  Class Members with a conscious disregard of their rights, or the consequences to

15  Class Members, with the intent of depriving Class Members of property and legal

16  rights and otherwise causing the Class Members injury.

17  <u>**SECOND CAUSE OF ACTION**</u>

18  (Failure to Pay Minimum Wage, Lab. Code §§ 1197, 1194 and 1197.1 – Against

19  Gruma)

20      82.    Plaintiffs re-allege and incorporate by reference each allegation

21  contained in the foregoing paragraphs.

22      83.    California Labor Code § 1197 provides that the payment of a lower

23  wage than the minimum fixed by state or local law is unlawful.  An employer

24  must pay the minimum wage for each hour worked by the employee.

25      84.    Section 4B of Industrial Welfare Commission Wage Order 9 provides

26  that, "Every employer shall pay to each employee, on the established payday for

27  the period involved, not less than the applicable minimum wage for all hours

28  worked in the payroll period, whether the remuneration is measured by time,

22

**28**

1  piece, commission, or otherwise."

2    85.    At all times relevant hereto, from time to time, Class Members have

3  worked as Gruma's employees but have not been paid minimum wage for all

4  hours worked.

5    86.    Gruma has improperly designated Class Members as independent

6  contractors to avoid payment of minimum wage and other benefits in violation of

7  the

8  California Code of Regulations and the guidelines set forth by the Division of

9  Labor Standards and Enforcement.

10    87.    By virtue of Gruma's unlawful failure to pay minimum wage for all

11  hours worked, Class Members suffered, and will continue to suffer, damages in

12  amounts which are presently unknown to Plaintiffs, but which exceed the

13  jurisdictional limits of this Court and which will be ascertained according to proof

14  at trial.

15    88.    California Labor Code § 1194 provides that an employee who has not

16  been paid minimum wage may recover the unpaid balance of the full amount of

17  such minimum wage, as well as interest, reasonable attorneys' fees and costs of

18  suit.  The action may be maintained directly against the employer in his name

19  without first filing a claim with the Department of Labor Standards and

20  Enforcement.

21    89.    Class Members are also entitled to seek liquidated damages and

22  interest thereon pursuant to California Labor Code § 1194.2.

23    90.    California Labor Code § 1197.1 further provides that an employer

24  who pays an employee less than minimum wage shall be subject to a civil penalty,

25  restitution of wages, liquidated damages payable to the employee and any

26  applicable penalties imposed by § 203.

27    91.    By failing to keep adequate time records required by Labor Code

28  section 1174(d), Gruma has made it difficult to calculate the minimum wage due

**29**

1   Plaintiffs.

2       92.   Pursuant to Labor Code § 1174.5, Plaintiffs seek statutory penalties

3   against Gruma for failure to maintain such records, and any additional sums as

4   provided by the California Labor Code and/or other statutes.

5                      **THIRD CAUSE OF ACTION**

6   (Failure to Pay Overtime Compensation, Lab. Code §§ 510, 558, 1194 and 1198 –

7                              Against Gruma)

8       93.    Plaintiffs re-allege and incorporate by reference each allegation

9   contained in the foregoing paragraphs.

10      94.   California Labor Code § 1194 and 1198 provide that employees in

11  California shall not be employed more than eight hours in any workday, and/or

12  more than forty hours in any workweek, unless they receive additional

13  compensation beyond their regular compensation in amounts specified by law.

14      95.   California Labor Code § 1194 provides that an employee who has not

15  been paid overtime compensation as required by § 1198 may recover the unpaid

16  balance of the full amount of such overtime compensation, together with costs of

17  suit, as well as liquidated damages in an amount equal to the overtime

18  compensation unlawfully withheld, and interest thereon, in a civil action.  The

19  action may be maintained directly against the employer in his name without first

20  filing a claim with the Department of Labor Standards and Enforcement.

21      96.   Section 3 of the California Industrial Welfare Commission

22  Occupational Wage Orders applied and applies to Plaintiffs' employment by

23  Defendants.

24      97.   At all times relevant hereto, Section 3 of the California Industrial

25  Welfare Commission Occupational Wage Orders provides for payment of

26  overtime compensation equal to one and one-half times an employee's regular

27  rate of pay for all hours worked over 8 hours a day and/or forty (40) hours in a

28  work week, with double the hourly rate to be paid after 12 hours in a single day

                                   24

1  and for working a seventh consecutive day in any work week.

2      98.   Gruma has improperly designated Class Members as independent

3  contractors to avoid payment of overtime compensation and other benefits in

4  violation of the California Code of Regulations and the guidelines set forth by the

5  Division of Labor Standards and Enforcement.

6      99.   At all times relevant hereto, from time to time, Class Members have

7  worked more than eight hours in a workday, and/or more than forty hours in a

8  workweek, as Gruma's employees.

9      100.   At all times relevant hereto, Gruma failed to pay to Class Members

10  overtime compensation for the hours they worked in excess of the maximum

11  hours

12  permissible by law as required by Labor Code § 1194, 1197 and 1198 and the

13  provisions of the applicable IWC order, set forth in Title 8 of the California Code

14  of Regulations.

15      101.   By virtue of Gruma's unlawful failure to pay additional compensation

16  for overtime hours worked, Class Members suffered, and will continue to suffer,

17  damages in amounts which are presently unknown to Plaintiffs, but which exceed

18  the jurisdictional limits of this Court and which will be ascertained according to

19  proof at trial.

20      102.   Gruma's failure to pay Class Members' overtime compensation has

21  violated and continues to violate Penal Code § 484 and § 532 (obtaining labor

22  through false pretenses), and also constitutes a misdemeanor punishable by a fine

23  or imprisonment under Labor Code § 1199.

24      103.   By failing to keep adequate time records required by Labor Code §

25  1174(d), Gruma has made it difficult to calculate the overtime compensation due

26  Plaintiffs.

27      104.   Class Members request recovery of overtime compensation according

28  to proof, interest, attorney's fees and costs pursuant to Labor Code § 218.5, 218.6

1  and 1194(a), as well as the assessment of any statutory penalties against Gruma
2  pursuant to section 558 and 1174.5, and each of them, and any additional sums as
3  provided by the California Labor Code and/or other statutes.

4      105.   Class Members are also entitled to seek liquidated damages and
5  interest thereon pursuant to Labor Code § 1194.2.

6                      **FOURTH CAUSE OF ACTION**

7  (Failure to Provide Meal Periods, Lab. Code §§ 226.7 and 512; Cal. Code Regs.
8                      §§ 11070 and/or 11090 – Against Gruma)

9      106.   Plaintiffs re-allege and incorporate by reference each allegation
10 contained in the foregoing paragraphs.

11     107.   California Labor Code § 226.7 and § 512 and California Code of
12 Regulations, Title 8, Division 1, Chapter 5, Group 2, §§ 11070(11)(A) and/or
13 11090(11)(A), provides that no employer shall employ any person for a work
14 period of more than five (5) hours without a meal period of not less than 30
15 minutes.

16     108.   California Labor Code § 226.7 and California Code of Regulations,
17 Title 8, §§ 11070(11)(D) and/or 11090(11)(D), provides that if an employer fails
18 to provide an employee a meal period in accordance with this section, the
19 employer shall pay the employee one (1) hour of pay at the employee's regular
20 rate of compensation for each workday that the meal period is not provided.

21     109.   At all times relevant hereto, Class Members have worked more than
22 five hours in a workday.

23     110.   At all times relevant hereto, Gruma failed to provide meal periods as
24 required by California Labor Code § 226.7 and 512 and California Code of
25 Regulations, Title 8, §§ 11070(11)(A) and/or 11090(11)(A).

26     111.   By virtue of the Gruma's unlawful failure to provide meal periods to
27 Class Members, they have suffered, and will continue to suffer, damages in
28 amounts which are presently unknown to Class Members, but which exceed the

1  jurisdictional limits of this Court and which will be ascertained according to proof
2  at trial.

3      112.    Further, Gruma's failure to provide meal periods has violated and
4  continues to violate California Penal Code § 484 and § 532 (obtaining labor
5  through false pretenses).

6      113.    Gruma purposely elected not to provide meal periods.

7      114.    Class Members request recovery of meal period compensation
8  pursuant to California Labor Code § 226.7 and California Code of Regulations,
9  Title 8, §§ 11070 (11)(D) and/or 11090(11)(D), in a sum as provided by the Labor
10 Code and/or other statutes.  Further, Class Members are entitled to seek and
11 recover reasonable attorneys'

12

13 fees and costs pursuant to California Labor Code § 218.5 and § 1194, and
14 penalties pursuant to § 558.

15          **FIFTH CAUSE OF ACTION**

16     (Failure to Provide Rest Periods, Lab. Code §§ 226.7 and 512; Cal. Code of
17          Regs., Title 8, §§ 11070 and/or 11090 – Against Gruma)

18     115.    Plaintiffs re-allege and incorporate by reference each allegation
19 contained in the foregoing paragraphs.

20     116.    California Labor Code § 226.7 and California Code of Regulations,
21 Title 8, §§ 11070 (12)(A) and/or 11090(12)(A), provides that employers authorize
22 and permit all employees to take rest periods at the rate of ten (10) minutes net
23 rest time per four (4) work hours.

24     117.    California Labor Code § 226.7 and California Code of Regulations,
25 Title 8, §§ 11070 (12)(D) and/or §11090(12)(D), provide that if an employer fails
26 to provide an employee rest periods in accordance with this section, the employer
27 shall pay the employee one (1) hour of pay at the employee's regular rate of
28 compensation for each workday that the rest period is not provided.

118.    Gruma has intentionally and improperly denied rest periods to Class Members in violation of California Labor Code section 226.7 and California Code of Regulations, Title 8, § 11090(12)(A).

119.    At all times relevant hereto, Class Members have worked more than four hours in a workday.

120.    At all times relevant hereto, Gruma has failed to provide rest periods as required by California Labor Code § 226.7 and California Code of Regulations, Title 8, §§ 11070 (12)(A) and/or 11090(12)(A).

121.    By virtue of Gruma's unlawful failure to provide rest periods to the Class Members, Class Members have suffered, and will continue to suffer, damages in amounts which are presently unknown to them but which exceed the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

122.    Further, Gruma's failure to provide rest periods has violated and continues to violate California Penal Code § 484 and § 532 (obtaining labor through false pretenses).

123.    Gruma knew or should have known that Class Members were entitled to rest periods and purposely elected not to provide rest periods.

124.    Class Members request recovery of rest period compensation pursuant to California Labor Code § 226.7 and California Code of Regulations, Title 8, §§ 11070 (12)(B) and/or 11090(12)(B), in a sum as provided by the Labor Code and/or other statutes.  Further, Class Members are entitled to seek and recover reasonable attorneys' fees and costs pursuant to California Labor Code § 218.5 and § 1194, as well as penalties pursuant to § 558.

## <u>SIXTH CAUSE OF ACTION</u>

(Failure to Provide Paid Sick Leave, Lab. Code § 245-249 – Against Gruma)

125.    Plaintiffs re-allege and incorporate by reference each allegation contained in the foregoing paragraphs.

126.    California Labor Code § 245, et seq. provides that an employer must provide its employees (with certain exceptions not applicable here) paid sick days at the rate of one hour per every 30 hours worked or no less than 24 hours of accrued sick leave or paid time off by the 120th calendar day of employment or each calendar year, or in each 12-month period, or by providing not less than 24 hours or three days of paid sick leave made available on the 120th calendar day of employment.

127.    Gruma regularly did not pay Plaintiffs or the Class Members any paid sick leave. Gruma also failed to display the poster regarding paid sick leave, as required by § 247, and failed to maintain records regarding paid sick days, as required by § 247.5.

128.    Plaintiffs and the Class Members are therefore entitled to payment of sick days unlawfully withheld, in an amount unknown at this time but to be proven at time of trial, as well as an administrative penalty as set forth in Labor Code § 248.5(c).

## SEVENTH CAUSE OF ACTION

(Unlawful Wage Deductions and Failure to Reimburse, Lab. Code §§ 221, 2800 and 2802 – Against Gruma)

129.    Plaintiffs re-allege and incorporate by reference each allegation contained in the foregoing paragraphs.

130.    Labor Code § 221 makes it unlawful for an employer to make deductions from wages for business losses unless the employer can establish that the loss was caused by a dishonest or willful act, or by the culpable negligence of the employees.  This section is a further example of California's strong public policy favoring the protection of employees' wages.

131.    Labor Code § 2800 requires an employer to indemnify its employees for losses caused by the employer's want of ordinary care. Labor Code § 2802 requires an employer to "indemnify his or her employee for all necessary

29

expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." (Lab. Code, § 2802, subd. (a).) Pursuant to Labor Code § 2804, any agreement to the contrary is null and void. An employee that sues to recover expenses and/or losses incurred in the discharge of employment duties is entitled to recover attorney's fees.

132. Gruma has made and continues to make unlawful deductions from the wages of Class Members for business losses including, but not limited to, debiting their paychecks for stales and otherwise unsalable product that were not caused by any dishonest or willful acts or culpable negligence on the part of the drivers. As a result, Gruma is liable to Class Members for the amounts unlawfully deducted. Moreover, Gruma has failed to, and continues to fail to, indemnify employees for expenditures and losses incurred in the discharge of their job duties.

133. Gruma, intentionally and willfully, has made and continues to make unlawful deductions from Plaintiffs' and Class Members' wages.

134. Class Members are entitled to recovery of the sums wrongfully withheld or otherwise unpaid, plus interest thereon, attorneys' fees, and costs.

## EIGHTH CAUSE OF ACTION

(Failure to Furnish Itemized Statements, Lab. Code §§ 226, 226.3 and 1174(d) – Against Gruma)

135. Plaintiffs re-allege and incorporate by reference each allegation contained in the foregoing paragraphs.

136. Labor Code § 226 requires that an employer to furnish employees, at the time of payment of wages, an itemized statement showing, among other things, gross wages earned, total hours worked by the employee, all deductions, net wages earned, the inclusive dates of the period for which the employee is

1     paid, the name of the employee and only the last four digits of his or her social

2     security number or an employee identification number other than a social security

3     number, the name and address of the legal entity that is the employer, and all

4     applicable hourly rates in effect during the pay period and the corresponding

5     number of hours worked at each hourly rate by the employee.  In addition, an

6     employer is required to provide, for temporary service workers, the rate of pay

7     and the total hours worked for each temporary services assignment.   Pursuant to

8     Labor Code § 1174(d), an employer is required to maintain payroll records

9     showing the hours worked daily by and the wages paid to employees.

10           137.    Gruma intentionally failed to furnish to Class Members, upon each

11     payment of compensation, itemized statements accurately showing this

12     information.  Gruma also failed to maintain appropriate payroll records.

13           138.    Class Members were damaged by these failures because, among

14     other things, the failures led them to believe that they were not entitled to certain

15     wages, even though they were so entitled and because the failures hindered them

16     from determining the amounts of compensation owed to them.

17           139.    Class Members are entitled to the amounts provided in California

18     Labor Code § 226, subdivision (e), civil penalties pursuant to § 226.3, plus costs

19     and attorneys' fees.

20                 **<u>NINTH CAUSE OF ACTION</u>**

21        (Failure to Timely Pay Wages; Lab. Code §§ 201, 202, 203, 204 and 210 –

22                      Against Gruma)

23           140.    Plaintiffs re-allege and incorporate by reference each allegation

24     contained in the foregoing paragraphs.

25           141.    Gruma willfully and intentionally failed to pay Class Members all

26     compensation they were due by the deadlines imposed under Labor Code §§ 201,

27     202, and 204.  Accordingly, Class Members are entitled to waiting time penalties

28     pursuant to Labor Code § 203 of up to 30 days' pay in an amount to be proven at

**37**

1  trial, as well as additional penalties as set forth in Labor Code § 210.

2  **TENTH CAUSE OF ACTION**

3  (Labor Code § 2699, et seq. – Against Gruma)

4  142.    Plaintiffs re-allege and incorporate by reference each allegation

5  contained in the foregoing paragraphs.

6  143.    As alleged above, Gruma failed to comply with various provisions of

7  the California Labor Code.  Gruma also failed to comply with the following

8  additional Labor Code provisions:

9      (a)    Labor Code § 201.3 (failure to pay temporary service workers

10          at the requisite times);

11      (b)    Labor Code § 226.8 (willful misclassification as an

12          independent contractor; unlawful fee charge to willfully

13          misclassified

14      (c)    employees; and charges and unlawful deductions from

15          compensation of misclassified employees);

16      (d)    Labor Code § 2751 (failure to set forth the methods by which

17          margins are computed and paid); and

18      (e)    Labor Code § 2810.5. (failure to provide written notice at time

19          of hiring, including but not limited to notice regarding rates of

20          pay, method of payment, allowances, payday, name of

21          employer, physical address and telephone number of the

22          employer's main office, the employer's workers compensation

23          carrier, and the employees' right to accrued sick leave).

24  144.    As such, Plaintiffs are "aggrieved employees" as defined in Labor

25  Code § 2699(a).  Pursuant to Labor Code § 2699, the Labor Code Private

26  Attorneys General Act of 2004, Plaintiffs bring this action on behalf of

27  themselves and other current and former Distributors against Gruma and seek

28  recovery of applicable civil penalties as follows:

(f)    Where civil penalties are specifically provided in the Labor Code for each of the violations alleged herein, Plaintiffs seek recovery of such penalties;

(g)    Where civil penalties are not established in the Labor Code for each of the violations alleged herein, Plaintiffs seek recovery of the penalties established in § 2699(e) of the Labor Code.

145.    On October 14, 2019, Plaintiffs caused to be serviced written notice via electronic submission of their intent to bring an action against Gruma under PAGA to the Labor and Workforce Development Agency ("LWDA") and to Gruma via certified mail on behalf of all current and former California distributors/delivery drivers of Gruma, including Plaintiffs.

146.    The LWDA did not respond to the notice within the time provided by Labor Code § 2699.3.

## ELEVENTH CAUSE OF ACTION

(Unfair Business Practices, Bus. & Prof. Code, § 17200 et seq. – Against all Defendants)

147.    Plaintiffs re-allege and incorporate by reference each allegation contained in the foregoing paragraphs.

148.    Defendants are "persons" as defined under Business and Professions Code § 17201.

149.    Class Members have suffered injury in fact and have lost money or property as a result of Defendants' price fixing.  For instance, by not being able to raise prices to Chain Stores (in their exclusive territories) when demand will be high, Class Members' potential profits are reduced.

150.    Defendants' price fixing is unfair, unlawful, and/or fraudulent as follows:

(a)    *Unlawful.*  The price fixing practice, as alleged herein, is unlawful under the Cartwright Act.

33

(b)   **_Unfair._** The utility of Defendants' price fixing practice scheme – wherein Gruma sells Products to distributors and (along with the Chain Grocers) fixes resale prices on those Products – is outweighed by the injury to Class Members and to the general public. (*See Motors, Inc. v. Times Mirror Co.* (1980) 102 Cal.App.3d 735, 740 [balancing test].)

(c)   **_Unfair._** Defendants' price fixing "offends an established public policy" and is "immoral, unethical, oppressive, and unscrupulous..." (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 719.)

(d)   **_Unfair._** Defendants' violation of public policy is "'tethered" to specific constitutional, statutory or regulatory provisions.'" (*Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 940.)

151.   In addition, Class Members have suffered injury in fact and have lost money or property as a result of Gruma's misclassifying them as independent contractors.

152.   Gruma's misclassification of Class Members as independent contractors rather than employees, as alleged above, constitutes unlawful, unfair and/or fraudulent activity prohibited by Business and Professions Code § 17200, et seq.

153.   Gruma has intentionally and improperly designated Class Members as independent contractors to avoid the payment of minimum wage, overtime compensation and other benefits in violation of California Labor Code § 510, 1197 and 1198, Penal Code §§ 484 and 532 (obtaining labor through false pretenses), California Code of Regulations, Title 8, § 11070 and/or § 11090, and the guidelines as set forth by the Division of Labor Standards Enforcement and the Industrial Welfare Council, which constitutes unlawful and/or unfair activity

    FIRST AMENDED CLASS ACTION COMPLAINT

1    prohibited by Business and Professions Code § 17200, et seq.

2        154.    Gruma's failure to provide legally required meal periods in violation

3    of the Wage Orders, as alleged above, constitutes unlawful and/or unfair activity

4    prohibited by Business and Professions Code § 17200, et seq.

5        155.    Gruma's failure to provide legally required rest periods in violation

6    of the Wage Orders, as alleged above, constitutes unlawful and/or unfair activity

7    prohibited by Business and Professions Code § 17200, et seq.

8        156.    Gruma's failure to provide legally required sick pay in violation of

9    the Labor Code, as alleged above, constitutes unlawful and/or unfair activity

10   prohibited by Business and Professions Code § 17200, et seq.

11       157.    Gruma's practice of making unlawful deductions from Class

12   Members' wages in violation of Labor Code § 221, and failure to reimburse

13   necessary business expenses in violation of Labor Code § 2802, as alleged above,

14   constitutes unlawful, unfair, and/or fraudulent activity prohibited by Business and

15   Professions Code § 17200, et seq.

16       158.    Gruma's failure to provide Class Members with workers

17   compensation insurance and to pay premiums therefore, in violation of Labor

18   Code § 3700, et seq., constitutes unlawful and/or unfair activity prohibited by

19   Business and Professions Code § 17200, et seq.

20       159.    Gruma's failure to contribute to the unemployment insurance fund

21   on behalf of Class Members in violation of Unemployment Insurance Code § 976

22   constitutes unlawful and/or unfair activity prohibited by Business and Professions

23   Code § 17200, et seq.

24       160.    Gruma's failure to pay excise taxes on behalf of Class Members in

25   violation of Federal Insurance Contributions Act (FICA; 26 U.S.C. § 3111) and

26   Federal Unemployment Tax Act (FUTA; 26 U.S.C. § 3301) constitutes unlawful

27   and/or unfair activity prohibited by Business and Professions Code § 17200, et

28   seq.

41

161.    As a result of their unlawful and/or unfair acts, Gruma has reaped and continue to reap unfair benefits and illegal profits at the expense of Class Members, law-abiding competitors, and the general public.  Gruma should be enjoined from these activities and made to disgorge their ill-gotten gains.

162.    Because injunctive relief is an appropriate remedy for Defendants' unfair and/or unlawful business practices, arbitration of this claim cannot be compelled notwithstanding the SDDA's arbitration provision.  (SDDA, Spring 2018 Amendment, § 15.)  Holding otherwise would allow Defendants to avoid the public policy underlying the Unfair Practices Act and particularly section 17203, i.e., "Any person who engages, has engaged, or proposes to engage in unfair competition **may be enjoined** in any court of competent jurisdiction.  …." (Emphasis added; *see* Civ. Code, § 1668 ["All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."]; and *see Gentry*, *supra*, 42 Cal.4th at p. 456 ["[A]rbitration agreement may not limit the damages normally available under the statute (*Armendariz*, *supra*, 24 Cal.4th at p. 103)"].)

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment as follows:

### **FIRST CAUSE OF ACTION (CARTWRIGHT ACT)**

a.  For damages in an amount yet to be ascertained;

b.  For treble damages;

c.  For punitive damages;

d.  For injunctive relief; and

e.  For prejudgment interest according to law in an amount yet to be ascertained.

36

1  **ELEVENTH CAUSE OF ACTION (UNFAIR COMPETITION LAW)**

2     a.  For the equitable, injunctive, restitutionary, disgorgement, and

3        declaratory relief; and

4     b.  For prejudgment interest according to law in an amount yet to be

5        ascertained.

6  **ALL CAUSES OF ACTION**

7     a.  For Certification of the Classes defined herein, or such other Classes

8        and/or subclasses as the Court will certify;

9     b.  For reasonable attorney' fees;

10     c.  For costs of suit;

11     d.  For penalties and liquidated damages as alleged herein; and

12     e.  For such other and further relief as this Court may deem just and proper.

13

14  Dated:  December 24, 2019        MARKUN ZUSMAN FRENIERE & COMPTON LLP

15

16

17  _____

18  Jeffrey K. Compton

19  Attorneys for Plaintiffs and the Class

20

21  **DEMAND FOR JURY TRIAL**

22  Plaintiffs demand a trial by jury on all claims so triable.

23

24  Dated:  December 24, 2019        MARKUN ZUSMAN FRENIERE & COMPTON LLP

25

26

27  _____

28  Jeffrey K. Compton

37