Jeffrey K. Compton (SBN 142969)
Email:  jcompton@mzclaw.com
Daria Dub Carlson (SBN 150628)
Email: dcarlson@mzclaw.com
MARKUN ZUSMAN FRENIERE & COMPTON LLP
17383 W. Sunset Blvd., Suite A380
Pacific Palisades, CA 90272-4181
Telephone:  (310) 454-5900
Facsimile:   (310) 454-5970

Jonathan Weiss (SBN 143895)
Email:  jw@lojw.com
LAW OFFICE OF JONATHAN WEISS
10576 Troon Ave.
Los Angeles, CA  90064-4436
Telephone:  (310) 558-0404

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CITYWIDE CONSULTANTS & FOOD MANAGEMENT, LCC, individually and on behalf of all others similarly situated,<br><br>         *Plaintiff,*<br><br>    v.<br><br>GRUMA CORPORATION, a Nevada corporation, dba MISSION FOODS CORPORATION; SMART & FINAL STORES, INC.; STATER BROS. MARKETS; and DOES 1 through 100, inclusive,<br><br>         *Defendants.* | Case No. 2:19-CV-47424 DSF (AFMx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: February 3, 2020<br>Time: 1:30pm<br>Courtroom: 7D<br><br>Judge: Honorable Dale S. Fischer<br>Complaint Filed: March 26, 2019<br><br>Trial Date: None set |

1

PLEASE TAKE NOTICE THAT on February 3, 2020 at 1:30 p.m., or as soon thereafter as this matter may be heard in Courtroom 7D of the above-entitled Court, located at First Street Courthouse, 350 West First Street, Los Angeles, California, Plaintiff Citywide Consultants & Food Management, LLC ("Citywide"), on behalf of itself and a settlement class of distributors/delivery drivers who contracted with Gruma Corporation in California from March 26, 2015, through preliminary approval, will and hereby does seek preliminary approval of the settlement of all claims set forth in Plaintiff's First Amended Class Action Complaint.  Pursuant to Federal Rule of Civil Procedure 23(b)(3), Plaintiff seek an Order:

(1)    Granting preliminary approval of the proposed Class Action Settlement;

(2)    Certifying a class of distributors/delivery drivers who distributed Gruma's products within California from March 26, 2015, through preliminary approval (the "Class" or "Class Members"), for settlement purposes only;

(3)    Approving the form and manner of Class Notice;

(4)    Appointing a Settlement Administrator;

(5)    Establishing a schedule for providing Notice of the Settlement to the Members of the Class and for submitting requests for exclusion and any objections to the Settlement; and

(6)    Setting the Final Approval Hearing.

Plaintiff proposes to settle this matter on the following general terms:

(1)    Maximum Settlement Amount of Five Million Dollars ($5,000,000.00), with no reversion;

(2)    Attorneys' fees in an amount not to exceed 25% of the gross settlement amount or One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00);

(3)    Costs of litigation in an amount not to exceed Fifty Thousand Dollars ($50,000.00);

2

(4)     Settlement Administration Costs to Atticus Administration, LLC in an amount not to exceed Twenty Thousand Dollars ($20,000.00);

(5)     Translation Provider Costs to be paid to California Interpreting & Translation to translate the Class Notice from English to Spanish in an amount not to exceed One Thousand Dollars ($1,000.00);

(6)     Enhancement Award for class representatives Citywide and its owner/proprietor Randy H. Evans in an amount not to exceed Fifteen Thousand Dollars ($15,000.00);

(7)     Private Attorneys' General Act allocation of Forty Thousand Dollars ($40,000.00), of which Seventy-Five Percent (75%) ($30,000.00) shall be paid to the Labor and Workforce Development Agency ("LWDA") and the remaining Twenty-Five Percent (25%) ($10,000) to the Settlement Class (the "PAGA Payment"); and

(8)     The Net Settlement Amount payable to the approximately 600 Class Members.

This Motion is made on the grounds that the proposed settlement is fair, reasonable, and adequate pursuant to Fed.R.Civ.P. 23(e)(2) because: (1) the class representatives and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length after a full-day mediation session before highly experienced mediator David A. Rotman, Esq.; (3) the relief provided for the class is adequate, taking into account: (a) the costs, risks, and delay of trial and appeal; (b) the proposed method of distributing relief to the class, including the method of processing class-member claims, is effective; (c) the terms of the proposed award of attorney's fees, including timing of payment, are reasonable; (d) the agreement is identified under Rule 23(e)(3); and (4) the settlement treats class members equitably relative to each other.

This Motion is based on this Notice and Motion, the Declarations of Jeffrey K. Compton, Esq., Jonathan Weiss, Esq. and Randy H. Evans, and such other and

3

1    further oral and/or documentary evidence as may be presented at the time of hearing.

2        This motion is made following the conference of counsel pursuant to L.R. 7-3

3    which took place commencing on December 13, 2019.  Defendants do not oppose

4    this Motion.

5

6

7    Dated:  December 23, 2019          **MARKUN ZUSMAN FRENIERE &**
                                        **COMPTON LLP**

8

9

10

11                        By:

12                              Jeffrey K. Compton
                                Attorney for Plaintiff and the Class

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

4

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................5

TABLE OF AUTHORITIES ................................................................8

MEMORANDUM OF POINTS AND AUTHORITIES.........................12

    I.    STATEMENT OF ALLEGED FACTS AND PROCEDURAL HISTORY ...........................................................................................12

         A.    Plaintiff's Cartwright Act Claims ...................................12

         B.    The Complaint and the Mediation ...................................12

         C.    The Amended Complaint ................................................14

    II.    GENERAL TERMS AND CONDITIONS OF THE SETTLEMENT......15

         A.    The Monetary Benefits ...................................................15

              1.    Maximum Settlement Amount (Stipulation ¶ 2.7)....................15

              2.    Attorneys' Fees and Litigation Costs (Stipulation ¶ 3.15) .........15

              3.    Costs of Administration (Stipulation ¶ 3.17) .............................15

              4.    Translation Provider Costs ........................................................15

              5.    Plaintiff's Incentive Award (Stipulation ¶ 3.14).......................15

              6.    PAGA Payment and Allocation (Stipulation ¶ 3.16) .................17

              7.    Net Settlement Fund (Stipulation ¶ 3.13.5, 3.13.6)...................17

         B.    Uncashed Checks Will Be Paid to a Cy Pres Recipient. (Stipulation ¶ 3.11)...................................................................18

         C.    Tax Implications (Stipulation ¶ 3.13.2) ...........................19

         D.    The Scope of the Release (Stipulation ¶ 3.2) ...................19

         E.    Affirmative Obligations Imposed on Participating Class Members (Stipulation ¶ 3.3).......................................................20

         F.    Administration of Settlement and the Manner of Notice (Stipulation ¶ 3.5.2)..................................................................20

         G.    Class Members Will be Afforded an Opportunity to Opt Out (Stipulation ¶ 3.8)....................................................................21

5

H.  Class Members Will be Afforded an Opportunity to Object (Stipulation ¶ 3.9) ..................................................................................21

III.  CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT .........22

A.  The Class Meets the Requirements of Rule 23 (a) ...........................22

1.  Numerosity ............................................................... 22

2.  Commonality ...........................................................23

3.  Typicality..................................................................23

4.  Adequacy .................................................................24

B.  The Class Meets the Requirements of 23(b)(3)................................24

1.  Common Questions Predominate. ...........................24

2.  Superiority ...............................................................25

IV.  THE PRELIMINARY APPROVAL STANDARDS ARE SATISFIED ..25

A.  The Standard for Preliminary Approval.............................................25

B.  The Relief Provided to the Class is Adequate ..................................27

1.  The Amount Offered in Settlement .........................27

2.  The Risks in Plaintiff's Case....................................27

a. The Arbitration Agreement and Class Action Waiver.............. 27

b.The Cartwright Act Antitrust Claims...........................................29

c.The Wage and Hour Claims...........................................................31

3.  The Expense and Likely Duration of Further Litigation............32

4.  The Proposed Method of Distributing Relief to the Class is Effective, Including the Method of Processing Claims..............33

5.  The Terms of Payment of Attorneys' Fees................................33

6.  Identification of the Agreement ...............................33

C.  The Proposal Was Negotiated at Arms Length. ...............................33

D.  The Class Representative and Class Counsel Have Adequately Represented the Class.......................................................................34

E.  The Settlement Treats Members of the Class Equitably Relative to

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

2:19-CV-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

Each Other. ................................................................................34

F.   Additional Indicia When a Case is Settled Before Certification........34

G.   Counsel is Seeking a Proportionate Distribution of the Settlement ...35

1.   The "Clear Sailing" Arrangement does not Render the Fee Unfair
..................................................................................35

2.   There is no Reversion to Defendants.........................................36

V.   THE PROPOSED CLASS NOTICE IS THE BEST PRACTICABLE .....36

VI.   CONCLUSION ........................................................................36

# **TABLE OF AUTHORITIES**

*Alsheikh v. Superior Court*

  2013 Cal. App. Unpub. WL 5530508, at *3 (Oct. 7, 2013)................................... 30

*B.W.I. Custom Kitchen v. Owens-Illinois*

  191 Cal.App.3d 1341, 1348 (1987)....................................................................... 24

*Boucher v. Alliance Title Co.*

  127 Cal.App.4th 262, 271-272 (2005) ................................................................. 29

*Churchill Village, LLC v. General Electric*

  361 F.3d 566, 575 (9th Cir. 2004)........................................................................ 36

*Creed v. Sara Lee*

  (Super. Ct. L.A. County, 1998, case no. BC 185718) ......................................... 31

*Dawson v. Hitco Carbon Composites*

  (C.D.Cal. July 9, 2019, No. CV 16-7337 PSG (FFMx))  2019 WL 6138467 at *10
  .............................................................................................................................. 16

*Diesel Electric Sales & Service, Inc. v. Marco Marine San Diego, Inc.*

  16 Cal.App.4th 202, 218-220 (1993) ................................................................... 18

*Dynamex Operations West, Inc. v. Superior Court*

  4 Cal.5th 903 (2018)....................................................................................... 25, 31

*General Tel. Co. of Southwest v. Falcon*

  457 U.S. 147, 157 n.13 (1982).............................................................................. 23

*Gentry v. Superior Court (Circuit City Stores, Inc.)*

  42 Cal.4th 443 (2007)........................................................................................... 28

*Hanlon v. Chrysler Corp.*

  150 F.3d 1011, 1019-20 (9th Cir. 1998)......................................................... 21, 22

*Harden v. Roadway Package Sys., Inc.*

  249 F.3d 1137, 1140 (9th Cir.2001)...................................................................... 27

*Johnson v. Gruma Corp.*

  614 F.3d 1062, 1065 (9th Cir. 2010)..................................................................... 32

*Kaewsawang v. Sara Lee Fresh*
(Super. Ct. L.A. County, 2006, case no. BC 360109) ...................................... 30, 32

*Kunert v. Mission Financial Services Corp.*
110 Cal.App.4th 242, 263 (2003) .................................................................. 29

*Leegin Creative Leather Products, Inc. v. PSKS, Inc.*
551 U.S. 877 (2007) ...................................................................................... 31

*Lerwill v. Inflight Motion Pictures, Inc.*
582 F.2d 507, 512 (9th Cir. 1978).................................................................. 24

*Levya v. Medline Indus. Inc.*
716 F.3d 510, 513 (9th Cir. 2013)................................................................. 24

*Linney v. Cellular Alaska Partnership*
151 F.3d 1234, 1242 (9th Cir. 1998)............................................................. 26

*Mazza v. Am. Honda Motor Co.*
666 F.3d 581, 589 (9th Cir. 2012)................................................................. 23

*Mularkey v. Holsum Bakery, Inc.*
146 F.3d 1064 (9th Cir. 1998) ...................................................................... 30

*Muro v. Cornerstone Staffing Solutions, Inc.*
20 Cal.App.5th 784, 792-793 (2018) ............................................................. 28

*Murphy v. SFBSC Management*
2019 WL 6721190 (9th Cir. Dec. 11, 2019).................................................. 34, 35

*New Prime v. Oliveira*
139 S. Ct. 532 (2019)..................................................................................... 27

*Officers for Justice v. Civil Service Comm'n*
688 F.2d 615, 625 (9th Cir. 1982)............................................................. 25, 26

*Rodriguez v. W. Publ'g Corp.*
563 F.3d 948, 958 (9th Cir. 2009) ................................................................. 16

*S. G. Borello & Sons, Inc. v. Department of Industrial Relations*
48 Cal.3d 341 (1989)...................................................................................... 31

9

*Six (6) Mexican Workers v. Arizona Citrus Growers*
  904 F.2d 1301 (9th Cir. 1990) ........................................................... 33, 35

*Spann v. J.C. Penney Corp.*
  314 F.R.D. 312, 318 (C.D. Cal. 2016) ................................................. 22

*Stewart v. Abraham*
  275 F.3d 220, 226-27 (3d Cir. 2001) ................................................. 22

*Walling v. Jacksonville Paper Co.*
  317 U.S. 564, 568 (1943) ..................................................................... 27

*Walters v. Reno*
  145 F.3d 1032, 1045 (9th Cir.1998) ..................................................... 22

S<small>TATUTES</small>

Bus. & Prof. Code, § 16720 ................................................................ 12, 13, 29

Bus. & Prof. Code § 16760(d) .............................................................. 18

Bus. & Prof. Code, § 17200 ................................................................ 13

Cal. Code Civ. Proc., § 1281.2(c) ....................................................... 29

Cal. Lab. Code, § 2698 ........................................................................ 13

Fed.R.Civ.P. 23(a) ................................................................................ 22

Fed.R.Civ.P. 23(b)(1), (2),(3) ............................................................. 22

Fed.R.Civ.P. 23(c)(2)(B) ..................................................................... 36

Fed.R.Civ.P. 23(e)(1) ........................................................................... 34

Fed.R.Civ.P. 23(e)(2) ..................................................................... 25, 27

Fed.R.Civ.P. 23(e)(3) ........................................................................... 33

Labor Code §§ 201-204 ........................................................................ 14

Labor Code §§ 210 ................................................................................ 14

Labor Code §§ 221 ................................................................................ 14

Labor Code § 223 .................................................................................. 14

Labor Code § 226 .................................................................................. 14

10

Labor Code § 226.3 ........................................................................................ 14

Labor Code § 226.7 ........................................................................................ 14

Labor Code, §§ 245-249 ................................................................................ 14

Labor Code § 510 .......................................................................................... 14

Labor Code § 512 .......................................................................................... 14

Labor Code § 558 .......................................................................................... 14

Labor Code, § 1174(d) .................................................................................. 14

Labor Code, § 1194 ...................................................................................... 14

Labor Code § 1197 ........................................................................................ 14

Labor Code § 1197.1 .................................................................................... 14

Labor Code § 1198 ........................................................................................ 14

Labor Code § 2699 ........................................................................................ 14

Labor Code §§ 2800, 2802 .......................................................................... 14

OTHER AUTHORITIES

*Manual for Complex Litigation, Fourth*, § 21.632 (2004) ...................................... 26

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

2:19-CV-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. STATEMENT OF ALLEGED FACTS AND PROCEDURAL HISTORY

#### A. Plaintiff's Cartwright Act Claims

Defendant Gruma is the world's largest tortilla maker.  Gruma distributes its tortillas and other products through "distributors," including Plaintiff and the Class Members.  Distributors are currently required to sign "Store Door Distributor Agreements" ("SDDAs") with Gruma, in which they agree to buy products from Gruma and resell them to retailers, including chain stores, within a specific geographic area.  Distributors generally purchase their routes from other distributors or, if the route has been abandoned or otherwise forfeited or is new, it is directly assigned by Gruma.  Distributors are required to contract through an entity (e.g., an LLC), so Plaintiff's principal, Randy H. Evans ("Evans") used Citywide Consultants & Food Management, LLC ("Citywide") for that purpose.  (Evans Decl., ¶¶ 3, 4.)  The SDDAs classify distributors as independent contractors.  *Id.*, ¶ 5.

For each item sold by a chain store, Gruma pays the distributor the difference between the price the distributor has agreed to pay Gruma for the product and the price the chain store has allegedly negotiated with Gruma to pay for the product.  The prices that the chain stores will pay for Gruma's products are preprogrammed into Gruma's and the chain stores' computer databases and are reflected when an item is scanned at checkout.  Plaintiff contends that in practice, Distributors cannot independently negotiate different prices with the chain stores or change the prices in the computer databases.  (Complaint, ¶¶ 30-34.)

Plaintiff contends that, because distributors must resell Gruma's products to chain stores at prices fixed by Gruma and the chain stores, this business model constitutes vertical price fixing, which is prohibited by the Cartwright Act (California Business and Professions Code § 16720, et seq.).

#### B. The Complaint and the Mediation

On March 26, 2019, Citywide filed its original Class Action Complaint against

12

Defendants for:  (1) Violation of the Cartwright Act (Bus. & Prof. Code, § 16720, et seq.) and (2) Unlawful Business Practices (Bus. & Prof. Code, § 17200, et seq.) in the Los Angeles County Superior Court.  Dkt # 1, Exh. B.  On May 30, 2019, Defendants removed this case to the United States District Court for the Central District of California, and, on June 5, 2019, they moved to compel arbitration.  Dkt # 13

Shortly thereafter, the parties agreed to mediation before David A. Rotman, Esq.  At that time, the parties agreed to attempt to resolve the alleged antitrust claims along with any potential wage and hour claims connected to Gruma's classification of its distributors as independent contractors.  The classification claims include those for minimum wages, overtime, unreimbursed costs, and improper deductions; for failure to provide meal and rest breaks, paid sick leave, timely wages, and itemized wage statements; and those arising under the Private Attorneys' General Act (Cal. Lab. Code, § 2698, et seq.).  Compton Decl., ¶ 2.

Before and during the mediation, the parties exchanged information and documentation to permit them to analyze the value of settlement.  Specifically, Gruma provided:  (1) templates/exemplars of SDDAs (and amendments) concerning pricing during the class period; (2) the Class Members' gross sales for the Class Period; and (3) extensive briefing supporting its defenses.  Compton Decl., ¶ 3.

In turn, Plaintiff gave Gruma documents and information regarding: (1) Plaintiff's sales to non-chain stores during the class period; (2) Plaintiff's use of employees and/or independent contractors to distribute product during the class period, (3) Plaintiff's distribution of non-Gruma products during the class period, (4) the prices at which Plaintiff purchased and sold its business/route, and (5) documents memorializing the purchase and sale.  Compton Decl., ¶ 4.

To determine the potential damages, Plaintiff retained economist Jon M. Riddle, Ph.D., who analyzed the difference between Gruma's distributors' profits and other grocery distributors' profits whose prices are not fixed.  Mr. Riddle calculated damages resulting from the antitrust damages ranging from $162.6 to $251.2 million.

13

Plaintiff's counsel also considered Evans' hours worked including overtime, meal and rest breaks taken, and deductions from wages and unreimbursed expenses. Plaintiff and its counsel also made inquiries of other Gruma distributors regarding their particular facts and circumstances. Plaintiff's counsel determined that costs and deductions were the largest component of the wage and hour claims. Evans' costs and deductions for the three years of the Class Period that he worked as a distributor contracting with Gruma averaged approximately $28,000 per year. Because many of these costs are incurred by Gruma's distributors (*i.e.*, handheld computers, etc.), counsel assumes that Evans' costs are similar to those of the other Class Members. Compton Decl., ¶¶ 5, 6.

On August 23, 2019, the parties participated in a full day, arms-length mediation which resulted in the parties entering into a Memorandum of Agreement to resolve the antitrust and wage and hour claims. Thereafter, on December 23, 2020, the parties entered into a Stipulation of Class Action and PAGA Settlement and Release (the "Stipulation"), attached to the Compton Decl. as Exhibit A. Compton Decl., ¶ 7.

**C. The Amended Complaint**

Because the Settlement contemplates resolution of potential wage and hour claims as well as the antitrust claims, and because the Settlement is contingent on all such claims being resolved, the parties agreed that Plaintiff would amend the Complaint to add the following causes of action:  (1) Failure to Pay Minimum Wage (Labor Code, §§ 1197, 1194, and 1197.1); (2) Failure to Pay Overtime Compensation (Labor Code, §§ 510, 558, 1194 and 1198); (3) Failure to Provide Meal Periods (Labor Code, § 226.7 and 512); (4) Failure to Provide Rest Periods (Labor Code § 226.7 and 512); (5) Failure to Provide Paid Sick Leave (Labor Code, §§ 245-249);  (6) Unlawful Wage Deductions and Failure to Reimburse (Labor Code §§ 221, 2800 and 2802); (7) Failure to Provide Itemized Wage Statements (Labor Code, §§ 226, 226.3 and 1174(d)); (8) Failure to Timely Pay Wages (Labor Code, §§ 201, 202, 203,

14

204, 210); and (9) Private Attorneys General Act (Labor Code § 2699, et seq.).  The parties also agreed that the amended complaint would include Evans, the owner/proprietor of Citywide, as a named plaintiff.  Compton Decl., ¶ 8.

The First Amended Complaint and Stipulation to file First Amended Complaint are filed concurrently herewith.

## II. GENERAL TERMS AND CONDITIONS OF THE SETTLEMENT

Subject to Court approval, the Parties have agreed to settle this litigation on the terms and conditions set forth in the Stipulation, summarized as follows:

### A. The Monetary Benefits

#### 1. Maximum Settlement Amount (Stipulation ¶ 2.7)

Defendants shall pay $5,000,000 for the benefit of Settlement Class Members (the "Maximum Settlement Amount"), with no reversion.

#### 2. Attorneys' Fees and Litigation Costs (Stipulation ¶ 3.15)

Class Counsel will request no more than 25% of the Settlement amount ($1,250,000) in attorneys' fees, with Markun Zusman Freniere & Compton, LLP and the Law Office of Jonathan Weiss, which have worked together on this case throughout, each receiving half.  In addition, Class Counsel will seek to recover their out-of-pocket costs incurred, up to $50,000.

#### 3. Costs of Administration (Stipulation ¶ 3.17)

Plaintiff seeks approval of the appointment of Atticus Administration, LLC ("Atticus") as the Settlement Administrator, to administer the settlement, provide notice, distribute the settlement funds, and resolve any disputes raised by any Settlement Class Member.  Plaintiff seeks up to $20,000 to pay Atticus.

#### 4. Translation Provider Costs

Plaintiff seeks approval of the appointment of California Interpreting & Translation to translate the Class Notice from English to Spanish.  Plaintiff seeks up to $1,000 to pay California Interpreting & Translation.

#### 5. Plaintiff's Incentive Award (Stipulation ¶ 3.14)

15

1    Plaintiff seeks approval of an enhancement award for Citywide and Evans in

2  the total amount of $15,000.

3    "Incentive awards are fairly typical in class action cases." *Rodriguez v. W.*

4  *Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).

5    When considering requests for incentive awards, courts consider five

6    principal factors:  [¶]  (1) the risk to the class representative in

7    commencing suit, both financial and otherwise; (2) the notoriety and

8    personal difficulties encountered by the class representative; (3) the

9    amount of time and effort spent by the class representative; (4) the

10    duration of the litigation; (5) the personal benefit (or lack thereof)

11    enjoyed by the class representative as a result of the litigation.

12  (*Dawson v. Hitco Carbon Composites* (C.D.Cal. July 9, 2019, No. CV 16-7337 PSG

13  (FFMx))  2019 WL 6138467 at *10.)

14    Plaintiff has provided extraordinary help to the Class and counsel including

15  organizing over 100 distributors – at significant risk to his livelihood.  Indeed,

16  Plaintiff alleged "Gruma terminated at least four distributors in retaliation for

17  their participation in a group, Association of Mission Food Distributors (Southern

18  California), which was organized to represent the Distributors' interests."  Evans

19  created the Association and continued to further Class Members' interests by

20  obtaining counsel and assisting them in bringing this action.  In preparation for

21  filing and thereafter, Evans produced documents, liaised with other Class

22  Members, and consulted with counsel and the expert to help analyze the claims

23  and provide information relevant to the case.  He also traveled to San Francisco to

24  actively participate in the mediation.  In all, Plaintiff has provided hundreds of

25  hours on behalf of the class, despite his relatively small stake (he had a single

26  route).  In light of the extensive services that the Plaintiff provided to Class

27  counsel and the Settlement Class, it is respectfully submitted that a $15,000

28

enhancement award is reasonable under all of the circumstances.  (Compton Decl., ¶ 9; Evans Decl., ¶¶ 7, 8.)

### 6.  PAGA Payment and Allocation (Stipulation ¶ 3.16)

Plaintiff seeks approval of a $40,000 PAGA payment, with $30,000 to be paid to the LWDA, with the remaining $10,000 going to the Net Settlement Fund.

### 7.  Net Settlement Fund (Stipulation ¶ 3.13.5, 3.13.6)

The balance (the "Net Settlement Amount") shall be distributed upon final approval to all Settlement Class Members without the need for any claims to be submitted.  Each Settlement Class Member will receive an equitable share based primarily on a distribution formula that weighs the total sales of Gruma's product that a Settlement Class Member made to chain stores in California during the Class Period, determined as follows:  (i) 20% of the Net Settlement Amount will be divided equally among all of the Settlement Class Members; and (ii) the remaining 80% of the Net Settlement Amount will be distributed based on Settlement Class Members' gross sales to chain stores in California for their respective routes, as follows:  80% of the Net Settlement Amount will be divided by the total gross sales to chain stores in California by all Settlement Class Members; the resulting figure is the unit value per gross sale dollar.  The unit value per gross sale dollar will be multiplied by each Settlement Class Member's Compensable Gross Sales (i.e., gross sales to chain stores in California during the Class Period) to yield its pro rata share of the Net Settlement Amount.  The net payment of (i) and (ii) above will be the "Individual Settlement Payment."  Each Settlement Class Member that is an entity together with its respective owners, proprietors, partners, and/or members shall constitute a single Settlement Class Member for Net Settlement Amount distribution.

It is estimated that the total amount available for distribution to the Settlement Class Members will be in excess of $3,654,000.  Preliminary estimates are that the range of allocations to Settlement Class Members will be from

approximately $858.16 to $40,456.82, depending on the number of routes owned and amount gross sales made to chain stores, and that the median allocation will be $3,535.81.  Compton Decl., ¶ 10.

Each putative Class Member's notice will provide an estimate of that Class Member's anticipated distribution share.  Class Members will have the opportunity, should they disagree with Gruma's records regarding their compensable gross sales as stated on their Class Notice, to dispute the information in writing to the Settlement Administrator, who will consult with the parties to determine whether an adjustment is warranted.  Stipulation, ¶ 3.7.

This allocation satisfies the standard for setting damages under the Cartwright Act.  Specifically, Business and Professions Code § 16760(d) permits damages to be assessed "in the aggregate by statistical or sampling methods, by the pro rata allocation of illegal overcharges or of excess profits, or by any other reasonable system of estimating aggregate damages as the court in its discretion may permit without the necessity of separately proving the individual claim of, or amount of damage to, persons on whose behalf the suit was brought."  See, *Diesel Electric Sales & Service, Inc. v. Marco Marine San Diego, Inc.,* 16 Cal.App.4th 202, 218-220 (1993).  (Cartwright Act does not require precision or certainty in damage calculations or distributions).  Here, each Class Member's share of the damages is primarily based on that Class Member's share of the total gross sales.  This allocation also makes sense for the wage and hour claims because it is likely that, the higher a Class Members' gross sales, the more hours they worked and (especially) the more costs they incurred.  Compton Decl., ¶ 11.

**B. Uncashed Checks Will Be Paid to a Cy Pres Recipient. (Stipulation ¶ 3.11)**

If an Individual Settlement Payment check is not cashed within one hundred eighty (180) days after mailing, it will be voided.  The Parties propose that the funds from such voided checks be distributed to the *cy pres* recipient Feeding America, a

18

non-profit entity which distributes 4.3 billion meals yearly through food pantries and meal programs throughout the United States.  Feeding America is believed to be an appropriate recipient since Plaintiff's claims seek to ensure that the market for baked goods is competitive and that pricing benefits consumers as a whole.  To the extent that the market may have been adversely affected by Defendants' actions, providing food benefits to consumers is appropriate.  The parties and their counsel have no interest or involvement in the governance or work of the proposed *cy pres* recipient. (Compton Decl.., ¶ 12; Weiss Decl., ¶ 8; Evans Decl., ¶ 10.)

### C. Tax Implications (Stipulation ¶ 3.13.2)

All Settlement Class Members will be issued IRS Form 1099 statements (and state and local equivalents) as to their respective distribution of the Settlement Funds.

### D. The Scope of the Release (Stipulation ¶ 3.2)

Class Members release all claims connected to the antitrust and misclassification claims asserted in the First Amended Complaint through the date of the Final Approval Order and Judgment.  Connected to the former, they release all statutory and common law antitrust claims.  Similarly, connected to the misclassification claims, they release claims under the California Labor Code and Industrial Welfare Commission Orders, including without limitation unpaid overtime wages, meal and rest period premiums, expenses, interest, and penalties (including those under PAGA for such things as late payment of wages, failure to provide accurate itemized statements or maintain records), and liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, and equitable relief.  The release only requires a Civil Code § 1542 release of unknown claims for the named Plaintiffs.  (Stipulation, ¶ 3.2.4.)

The parties being released are Defendants, the establishments to which Class Members sold Gruma's products, and their respective current and former parents, subsidiaries, predecessors and successors, and affiliated entities, along with their respective officers, directors, employees, partners, shareholders, and

19

agents, and their successors, assigns, and legal representatives. (Stipulation, ¶ 3.5.2.)

### E. Affirmative Obligations Imposed on Participating Class Members (Stipulation ¶ 3.3)

The only potential obligation imposed on Settlement Class Members is that each will be obligated to indemnify Gruma as to any unpaid taxes he/she/it may owe to any governmental entity as a result of the payment made to the Settlement Class Member from the Net Settlement Fund.

### F. Administration of Settlement and the Manner of Notice (Stipulation ¶ 3.5.2)

The Parties propose that Class Notice will be given in the following manner:

**Class List:**   Within 20 business days after entry of the Preliminary Approval Order, Gruma will provide the Settlement Administrator with the following information regarding the Class Members:  (a) individual and/or corporate name; (b) last known address; (c) last known telephone number; (d) Social Security Number and/or Tax Identification Number; (e) distribution start date; (f) distribution end date; and (g) Compensable Gross Sales (as defined in ¶ 1.9 of the Settlement Agreement). Because Social Security Numbers and/or Tax Identification Numbers are included in the Class Information, the Settlement Administrator shall maintain the Class Information in confidence, it shall be transmitted in password-protected file(s), and access shall be limited to those with a need to use the Class Information as part of the administration of the Settlement. (Stipulation, ¶ 3.5.4.)

**U.S. Mail Notice:**  Within 14 days after the Settlement Administrator receives the list from Gruma, the Settlement Administrator will mail a notice packet to all Class Members, including an English and Spanish version of the Class Notice in substantially the form as Exhibit A to the Settlement Agreement.  Class Notices returned to the Settlement Administrator as non-delivered on or before the Response Deadline will be re-mailed to the forwarding address provided, if any.

20

Where no forwarding address is provided, the Settlement Administrator will make reasonable efforts to obtain an updated mailing address within 5 business days of the return, including a skip-trace.  If an updated mailing address is identified, the Settlement Administrator will resend the Class Notice.  Class Members receiving a re-sent Class Notice will be notified that they have 14 calendar days thereafter, or until the Response Deadline has expired, whichever is later, to mail or fax a Request for Exclusion or Notice of Objection.  (Stipulation, ¶ 3.5.5.)

### G. Class Members Will be Afforded an Opportunity to Opt Out (Stipulation ¶ 3.8)

Class Members will be notified that they have at least 30 days to request exclusion.  A Request for Exclusion must:  (1) contain the Class Member's name, address, telephone number, last four digits of the Social Security Number or Tax Identification Number, and signature; (2) provide the case name and number; (3) clearly indicate that the Class Member seeks to be excluded from the Settlement; and (4) be postmarked or fax-stamped on or before the Response Deadline and returned to the Settlement Administrator at the specified address or fax number. Timeliness of opt-outs will be based exclusively on the postmark or fax stamp.

### H. Class Members Will be Afforded an Opportunity to Object (Stipulation ¶ 3.9)

Class Members will be notified that they have at least 30 days to object to the settlement.  A Notice of Objection must:  (1) contain the Class Member's name, address, telephone number, last four digits of the Social Security Number or Tax Identification Number, and signature; (2) provide the case name and number; (3) clearly indicate that the Class Member seeks to object to the settlement; (4) state the legal and factual basis for the objection; (5) state whether the Class Member intends to appear at the Final Approval Hearing; and (6) be postmarked or fax-stamped on or before the Response Deadline and returned to the Settlement Administrator at the specified address or fax number.  Timeliness

21

of objections will be based exclusively on the postmark or fax stamp.

The Settlement Administrator shall provide the Parties with copies of the Notices of Objection within 5 calendar days of receipt and lodge them with the Court by attaching them to its Declaration supporting the final approval motion.

## III.   CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT

In the context of granting preliminary approval of the Settlement, the Court must make a threshold determination as to whether the proposed settlement subclasses meet Rule 23 requirements.  Namely, the Court must determine whether: (1) the class is so numerous that joinder would be impracticable; (2) there are questions of law or fact common to the class; (3) the named plaintiffs' claims are typical of the claims of the proposed class; and (4) plaintiffs and their counsel will adequately and fairly represent the interests of the class.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019-20 (9th Cir. 1998).  Additionally, the action must be maintainable under Fed. R. Civ. P. 23(b)(1), (2), or (3).  *Id.* at 1022.  "However, courts need not consider the Rule 23(b)(3) considerations regarding manageability of the class action, as settlement obviates the need for a manageable trial."  *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 318 (C.D. Cal. 2016).  Based on these standards, as outlined below, the Court should certify the class for settlement purposes.

### A. The Class Meets the Requirements of Rule 23 (a)

The proposed Settlement Class meets the requirements for certification under Fed.R.Civ.P.23(a), which provides that a court should certify a class if the following prerequisites are met:  "(1) the class is too numerous, making joinder of the parties impracticable; (2) common questions of law or fact exist among the class members; (3) the claims of the class representatives are typical of the claims of the class; and (4) the class representatives will adequately represent the interest of the class."  *Walters v. Reno*, 145 F.3d 1032, 1045 (9th Cir.1998).

#### 1. Numerosity

Fed.R.Civ.P.23 (a)(1) requires that the class be "so numerous that joinder of all

22

members is impracticable."  In *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001), the court observed that if a class exceeds 40 members, the numerosity requirement is satisfied.  Here, there are approximately 600 class members who contracted with Gruma to distribute product in California during the class period. (Compton Decl., ¶ 13.)  Hence, numerosity is satisfied.

### 2.  Commonality

"[C]ommonality only requires a single significant question of law or fact." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012).  For the Cartwright Act claim, the common question is whether Gruma's alleged fixing its products' prices constitutes vertical price fixing in violation of the Cartwright Act. Likewise, the Class Members alleged misclassification as independent contractors rather than employees is a common question.  As such, the commonality requirement is satisfied.

### 3.  Typicality

A class representative's claims are typical if they are "reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "The commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence."  *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

The named Plaintiff and the Class Members all contracted with Gruma to provided services, including delivery and distribution of product, during the Class Period and all were subject to the same alleged price-fixing by Gruma and the Chain Store Defendants.  Further, all were allegedly classified as independent contractors rather than employees and denied employee benefits.

### 4. Adequacy

"[T]wo criteria for determining the adequacy of representation have been recognized.  First, the named representatives must appear able to prosecute the action vigorously through qualified counsel, and second, the representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).  Plaintiff has no interests that are antagonistic to those of the other Class Members.  (Compton Decl., ¶ 9.)  Also, Plaintiff's principal has been pursuing justice for Class Members, and Plaintiff retained counsel who are highly experienced in antitrust actions and employment class actions in the baked goods distribution industry.  (Compton Decl., ¶¶ 14-18; Weiss Decl., ¶¶ 2-6.)

### B. The Class Meets the Requirements of 23(b)(3)

The Rule 23(b)(3) requirements are satisfied because:  (1) questions of law or fact common to class members predominate over any questions affecting only individual members, and (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

### 1. Common Questions Predominate

Rule 23(b)(3) requires that "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022 (*quoting* 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1778 (2d ed. 1986)).  The presence of some individualized issues, such as damages, does not preclude a finding that common issues predominate.  *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 513 (9th Cir. 2013).

Here, Plaintiff's claims raise common legal and factual issues which predominate over individual issues.  Regarding the Cartwright Act claim that Defendants conspired to fix prices, "[m]ost courts hold that when a conspiracy to fix prices has been alleged, common questions predominate over any questions

affecting only individual class members." *B.W.I. Custom Kitchen v. Owens-Illinois*, 191 Cal.App.3d 1341, 1348 (1987).

Similarly, commonality predominates for Plaintiff's misclassification-related claims. The focus is on Gruma's business and its policies since Plaintiff relies on the test set forth in the landmark decision of *Dynamex Operations West, Inc. v. Superior Court,* 4 Cal.5th 903 (2018), adopting the "ABC Test," and on AB5 enacted to essentially codify the holding. They create a presumption that a worker is an employee unless the employer proves all of the following: (A) that the worker is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract and in fact; (B) that the worker performs work that is outside the usual course of the hiring entity's business; and (C) that the worker is customarily engaged in an independently established trade, occupation, or business of the same nature as the work performed. Because the "B" in the ABC test is uniform across the class – Gruma either does or does not perform distribution services in the usual course of its business – that dispositive question predominates.

### 2.  Superiority

Certification of this case for settlement purposes presents a superior means for resolution. The Settlement Class is comprised of approximately 600 individuals and entities, and the resolution of the case on a class-wide basis would be far superior to hundreds of individual claims. The claims turn on the same basic legal questions for all members of the Class and, absent certification for settlement purposes, it is unlikely that many of the Settlement Class Members would be able to seek redress for their losses.

## IV.  THE PRELIMINARY APPROVAL STANDARDS ARE SATISFIED

### A. The Standard for Preliminary Approval

The "universal standard" for evaluating the fairness of a settlement is whether the settlement is "fundamentally fair, adequate and reasonable." *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). Fed.R.Civ.P.23(e)(2)

25

provides that, in determining whether a settlement is "fair, reasonable, and adequate," a court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Notwithstanding, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice* at 831. Even if the amount of a proposed monetary settlement is a fraction of the potential recovery, that does not necessarily mean the settlement is inadequate. *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Court approval of a class action settlement is a two-step process. First, counsel submits the proposed terms of the settlement to the court, and the court makes a preliminary fairness evaluation. If the preliminary evaluation of the settlement does not disclose a basis to doubt its fairness or other obvious deficiencies, the court

26

1   directs that notice be given to the class and sets a final fairness hearing.  Herr,

2   *Manual for Complex Litigation, Fourth*, § 21.632 (2004).

3          As set forth below, the requirements of Fed.R.Civ.P.23(e)(2) are satisfied here.

4   **B. The Relief Provided to the Class is Adequate**

5          **1.  The Amount Offered in Settlement**

6          Defendants will pay $5,000,000 of which at least $3,655,000 will be allocated

7   among the Class Members.  These sums are significant and, in light of the risks

8   identified below, provide more than adequate benefit to the Class.

9          **2.  The Risks in Plaintiff's Case**

10             **a.  The Arbitration Agreement and Class Action Waiver**

11         The SDDA contains a provision compelling arbitration of "any disputes that

12  may arise between the Company and Distributor" under the Federal Arbitration Act

13  ("FAA").  The SDDA also contains a class action waiver.  At the time of the parties'

14  mediation, Defendants' Petition to Compel Arbitration was pending before this Court.

15  Dkt. # 13.  Plaintiff contends Class Members are exempt from the arbitration mandate

16  (if not the class waiver) since the FAA excludes "transportation workers" engaged in

17  "interstate commerce."  FAA § 1; *Walling v. Jacksonville Paper Co.*, 317 U.S. 564,

18  568 (1943).

19         Defendants contend that the "transportation worker" exemption does not apply

20  because Class Members do not cross state lines in making their deliveries and that

21  interstate delivery of goods is not the Class Members' primary responsibility.  *Harden*

22  *v. Roadway Package Sys., Inc.*, 249 F.3d 1137, 1140 (9th Cir.2001).  Defendants also

23  contend that the FAA exemption does not apply because Citywide, which signed the

24  SDDA with Gruma, is an entity as opposed to an individual and therefore cannot be a

25  "worker" engaged in interstate commerce.  Plaintiff responds that certain of Gruma's

26  product is manufactured in Mexico triggering the interstate commerce exception and

27  that the definition of "worker" is broadly defined to include anyone who performs

28  work for the employer.  *New Prime v. Oliveira*, 139 S. Ct. 532 (2019) (independent

27

contractors are "workers" under the FAA).  Nevertheless, Plaintiff recognizes that a court could find that the exemption does not apply to them, in which case they could be bound to arbitrate in individual arbitrations.

Even if Plaintiff is able to show that it and the Class Members are exempt from the FAA, then the SDDA requires application of the California Arbitration Act ("CAA") and California law.  Thereunder, *Gentry v. Superior Court (Circuit City Stores, Inc.*), 42 Cal.4th 443 (2007), will determine whether the case should be arbitrated with Gruma and whether the class waiver is enforceable.  *Muro v. Cornerstone Staffing Solutions, Inc.* 20 Cal.App.5th 784, 792-793 (2018).  Under *Gentry*, a trial court may refuse to enforce a class action waiver if it concludes that "a *class* arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than *individual* litigation or arbitration." *Id.* at 463-464, emphasis added.  To determine whether this standard applies, *Gentry* sets forth a four-factor test pursuant to which a party opposing enforcement of the waiver must demonstrate (i) "the modest size of the potential individual recovery;" (ii) "the potential for retaliation against members of the class;" (iii) "the fact that absent members of the class may be ill informed about their rights;" and (iv) "other real world obstacles to the vindication of class members' rights …through individual arbitration." *Id.* at 787.  Although Plaintiff believes that the *Gentry* test is satisfied here, it expects Defendants would argue that the potential individual recovery is not "modest," that Class Members will not be retaliated against, and that Class Members have knowledge of their rights.  Plaintiff recognizes that these factors are subjective to some extent; thus, the Court could determine that the *Gentry* test is not satisfied and enforce the class action waiver.

Third, Plaintiff contends the Court should not send this entire case (i.e., the case against Gruma and the case against its co-defendant Chain Store Grocers) to arbitration because the Chain Stores are not signatories to the SDDA, which contains the arbitration provision.  Defendants respond that Plaintiff's claims against the

28

Chain Store Defendants can nonetheless be compelled to arbitration because "a non-signatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are 'intimately founded in and intertwined' with the underlying contract obligations." *Boucher v. Alliance Title Co.*, 127 Cal.App.4th 262, 271-272 (2005).

Rather than compelling the claims against the non-signatories to arbitration, Plaintiff would ask the Court to exercise the discretion provided by the CAA (Cal. Code Civ. Proc., § 1281.2(c)) to keep all parties before the Court. However, Plaintiff recognizes it is in the Court's discretion not do so, and that it could send certain issues or parties to arbitration.

In sum, there are many complex issues which impact whether or not this case would be compelled to individual arbitration thereby decimating the class action, and this risk is a significant impetus for Plaintiff's decision to resolve this action on the terms set forth herein.

### b.  The Cartwright Act Antitrust Claims

The Cartwright Act, California Business and Professions Code § 16720, et seq., prohibits unlawful "trusts," defined in relevant part as:

> [A] combination of capital, skill or acts by two or more persons for any of the following purposes:…
>
> > (e) To make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description, by which they do all or any or any combination of any of the following:…
> >
> > > (2) Agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure.

As set forth above, Plaintiff contends that Gruma and the Chain Store Defendants have allegedly fixed the prices Class Members can charge for the products they purchase from Gruma and resell to the Chain Stores. Plaintiff contends that this constitutes "resale price maintenance," or vertical price-fixing in per se

violation of the Cartwright Act.  *See*, *Kunert v. Mission Financial Services Corp.*, 110 Cal.App.4th 242, 263 (2003) ("A vertical price-fixing agreement, commonly known as resale price maintenance, involves the efforts of a supplier to control the distribution of its product or service by retailers or distributors ….  A vertical price-fixing or resale price maintenance agreement between supplier and distributor … is per se unlawful under the Cartwright Act."  [citations omitted]).

Defendants contend that their business model does not constitute vertical price fixing and does not violate the Cartwright Act.  Defendants maintain that the SSDAs expressly provide that distributors can negotiate pricing or other terms and conditions of sales with any of their customers, including chain stores.  Further, Defendants rely on *Mularkey v. Holsum Bakery, Inc.*, 146 F.3d 1064 (9th Cir. 1998), in which the Ninth Circuit found that a bakery's negotiation of a price list with a convenience store chain to which plaintiff distributed the bakery's product did not constitute vertical price fixing.  Plaintiff contends that this case is inapposite here because it was decided pursuant to the "reasonableness" standard of the federal Sherman Act, and not the "per se" standard applied by the California Cartwright Act.  Plaintiff further contends, that here, unlike *Mularkey*, the distributors option and ability to negotiate prices directly with their customers is illusory.  Although Plaintiff strongly believes the antitrust claims are viable, he recognizes that if the Court applied a "reasonableness" standard, the antitrust claims might not be legally or economically viable.  Plaintiff also recognizes that the California Court of Appeal, when reinstating a Cartwright Act claim litigated by his counsel used narrow language concerning the price fix (referencing inability to change prices on a handheld computer) and that the court chose not to publish the opinion despite the paucity of authority.  *Alsheikh v. Superior Court*, No. B249822, 2013 Cal. App. Unpub. WL 5530508, at *3 (Oct. 7,

2013)[1] (Allowing plaintiff to amend his complaint, the court noted, "Plaintiff further alleged, 'and by using hand-held devices and computer systems that are pre-programmed with the prices fixed between Defendants and the Chain Stores.'  But there is no allegation that those devices must be used, or how they are used, or that the prices in them cannot be altered.").

Finally, there continues to be speculation on whether California will judicially eliminate the per se standard applicable to vertical price fixing (as *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877 (2007) did under the Sherman Act), possibly relying on confusion as to the extent to which Sherman Act precedent guides Cartwright Act construction.  Were the per se standard controverted during the pendency of further litigation, an expensive and difficult battle may ensue over the effect on end consumers of the price fix – something not relevant under the current, per se, standard.

### c.  The Wage and Hour Claims

Defendants contend that the Class Members are independent contractors under the ABC Test, arguing that Gruma does not control its distributors in connection with the performance of their work, that Gruma is a bakery and that distributing product is outside the course of its business, and that some of the Class Members have independently established businesses as distributors and that some even hire other workers to perform delivery and other services.  Plaintiff disagrees with Gruma's analysis and although they believe that the court would likely find the Class Members are not independent contractors under the ABC Test, they recognize that there is a possibility the court could find otherwise.

If the ABC Test does not apply, the court would likely apply the alternative

---

[1] The decision was part of the *Kaewsawang v. Sara Lee Fresh* (Super. Ct. L.A. County, 2006, case no. BC 360109) litigation, succeeding *Kaewsawang v. Sara Lee Fresh, Inc.*, 2012 Cal. App. Unpub. WL 1548290 (Cal. App. 2d Dist., May 3, 2012), which affirmed the trial court's refusal to certify misclassification claims.

test set forth in *S. G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal.3d 341 (1989), which focuses primarily on the right of the principal to control the manner and means of accomplishing the result desired.  *Id*. at 349-350.  In 2008, prior to the decision in *Dynamex*, Gruma and a different plaintiff arbitrated a similar wage and hour case wherein JAMS arbitrator Hon. Richard C. Neal (Ret.) held, under the *Borello* test, that Gruma's distributors/delivery drivers were correctly classified as independent contractors.  *Johnson v. Gruma Corp.,* 614 F.3d 1062, 1065 (9th Cir. 2010).  Although Plaintiff believes that case was wrongly decided, and that Class Members are employees under the new ABC Test, Plaintiff recognizes that if the *Borello* test is applied here, their chances of prevailing may be reduced.

Plaintiff further recognizes that the ABC test may not apply to all wage and hour claims – necessitating reference to *Borello*– and that the federal Motor Carrier Act could preempt some class members' overtime claims depending on the gross vehicle weight of their delivery vehicles.

### 3.  The Expense and Likely Duration of Further Litigation

This case is in its early stages.  Although the sums expended by counsel at this time are not insignificant, if the matter does not settle, it is likely the parties will face years of protracted and expensive litigation, including litigating Defendants' pending petition to compel arbitration, conducting written discovery and depositions (including experts), likely motions to compel discovery, litigating a motion for class certification, and preparing for and participating in trial (assuming the case is not ordered to arbitration).  Fees and costs (including experts) could easily reach hundreds of thousands of dollars or more.  Further, there is always the possibility of an appeal, with no guarantee of recovery.  While counsel have proven their commitment in similar cases (e.g., the aforementioned *Kaewsawang v. Sara Lee Fresh*, litigation settled after a dozen years (Weiss Decl. ¶ 4(d)), such delay does not serve the class members.

Further, the settlement here compares favorably to the similar bakery driver

misclassification cases of *Creed v. Sara Lee* (Super. Ct. L.A. County, 1998, case no. BC 185718) (post-trial settlement providing absent class members between $500 and $87,402 in compensation over a 9.5 year class period) and *Kaewsawang v. Sara Lee Fresh, supra* (settlement providing absent class members between about $92 and $75,500 over a 17 year class period).  (Weiss Decl. ¶ 4(b), (d).)

### 4. The Proposed Method of Distributing Relief to the Class is Effective, Including the Method of Processing Claims

The Stipulation proposes that relief to the Class Members will be distributed via U.S. Mail to their last known address (or forwarding address, or address obtained after a skip-trace), with no requirement of an opt-in procedure or claim form.  Each Settlement Class Member who does not opt out will automatically receive payment.

Further, payment will be made to Class Members primarily based on their respective gross sales reflected in Gruma's records.  Class Members disagreeing with those amounts, will have the opportunity to present a grievance to the Settlement Administrator, which will discuss the concerns with the parties.

### 5. The Terms of Payment of Attorneys' Fees

The Stipulation provides that Class counsel will collectively receive Twenty-Five Percent (25%) of the total cash settlement amount, or $1,250,000.  The 25% fee is the benchmark for recovery in the Ninth Circuit.  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301 (9th Cir. 1990).  Class counsel will receive this payment at the same time as the Class.

### 6. Identification of the Agreement

Fed.R.Civ.P.23(e)(3) provides that "[t]he parties seeking approval must file a statement identifying any agreement made in connection with the proposal."  Here, the only agreement is the Stipulation, attached to the Compton Decl. as Exhibit A.

### C. The Proposal Was Negotiated at Arms Length.

As set forth above, this case was resolved after a full day, arms-length mediation before respected mediator David A. Rotman.  (Compton Decl., ¶ 7.)

33

### D. The Class Representative and Class Counsel Have Adequately Represented the Class

As set forth above, Plaintiff has provided extraordinary help to the Class and counsel.  In connection with this litigation, he produced documents, liaised with other Class Members, and consulted with counsel and the expert to help analyze the claims and provide information relevant to the case.  He also traveled to San Francisco to actively participate in the mediation.  In all, Plaintiff has provided hundreds of hours on behalf of the class, despite his relatively small stake (he had a single route).  (Evans Decl., ¶ 9.)

Counsel has also adequately represented the Class.  They conducted substantial investigation into the facts and circumstances of this case before filing this lawsuit and thereafter.  Once the Parties agreed to a mediation, counsel obtained all pertinent information from Gruma and retained the services of an expert to ascertain damages.  Counsel aggressively pursued the best result they could obtain at mediation, and will continue to vigorously pursue the rights of Plaintiff and the Class.

### E. The Settlement Treats Members of the Class Equitably Relative to Each Other.

The Stipulation proposes that Class Members will be allocated 80% of the settlement funds based on Settlement Class Members' gross sales to chain stores in California for their respective routes.  As set forth above, this makes sense because Class Members' gross sales correlate with the greater profit they would have received if the prices for these same sales were not fixed by Gruma.  Further, with respect to the wage and hour claims, the greater the gross sales, the more hours worked and the greater the costs and expenses incurred.  The other 20% will be allocated equally across all Class Members to ensure that all participants in the settlement will receive meaningful relief.

### F. Additional Indicia When a Case is Settled Before Certification

34

When settlement is negotiated before a class has been certified, "settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'"  *Murphy v. SFBSC Management,* 2019 WL 6721190 (9th Cir. Dec. 11, 2019))(citations omitted).  "This 'more exacting' review is warranted 'to ensure that class representatives and their counsel do not secure a disproportionate benefit 'at the expense of the unnamed plaintiffs who class counsel had a duty to represent.'"  *Murphy* at *10 (citations omitted).  A district court should look for "subtle signs" of collusion such as:  "(1) 'when counsel receives a disproportionate distribution of the settlement;' (2) when the parties negotiate a "clear sailing" arrangement" (i.e. an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed funds to the defendant."  *Murphy* at *10 (citations omitted).

## G. Counsel is Seeking a Proportionate Distribution of the Settlement

The Stipulation provides that Class counsel will collectively receive 25% of the total cash settlement amount, or $1,250,000.  The 25% fee is the benchmark for recovery in the Ninth Circuit.  *Six (6) Mexican Workers, supra.*  In contrast to *Murphy, supra*, Plaintiffs are not seeking to inflate the total settlement amount, and thereby counsel's payment, by including value for non-monetary items such as injunctive relief, or other non-quantifiable factors, such as redemption of coupons.  Plaintiffs submit that the requested fee is proportionate.

### 1. The "Clear Sailing" Arrangement does not Render the Fee Unfair

Pursuant to the Stipulation, Defendant has agreed not to object to counsel's 25% fee.  *Murphy, supra*, notes that: "[W]hen confronted with a clear sailing provision, the district court has a heightened duty to…scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested."  *Murphy* at * 11.  Again, counsel seeks 25% of the total cash settlement amount, which is

35

consistent with the Ninth Circuit benchmark.  It is not the case here, as it was in *Murphy*, where counsel was receiving more in attorneys' fees than the class received as a monetary benefit.  And again, counsel did not inflate the recovery to the Class by including a valuation for injunctive relief and/or redemption of coupons.

///

### 2.  There is no Reversion to Defendants

The Stipulation provides that the funds from any uncashed checks will not revert to Defendants but will be paid to the *cy pres* recipient Feeding America.

## V.  **THE PROPOSED CLASS NOTICE IS THE BEST PRACTICABLE**

Pursuant to Fed.R.Civ.P.23 (e)(1), "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Pursuant to Fed.R.Civ.P.23(c)(2)(B), "[t]he notice must clearly and concisely state in plain, easily understood language:  (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23 (c)(3)."  Notice is satisfactory if it "generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard." *Churchill Village, LLC v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004).

The manner of notice is set forth in detail in Section I(A).  Plaintiff submits that the Notice meets the requirements of Rule 23 and due process.

## VI.  **CONCLUSION**

In light of the forgoing, Plaintiff respectfully requests that the Court grant the motion for preliminary approval of the class action settlement on the terms set forth herein.

///

1

Dated:  December 23, 2019

**MARKUN ZUSMAN FRENIERE & COMPTON LLP**

2

3

4

Jeffrey K. Compton

5

Attorneys for Plaintiff and the Class

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28