Jeffrey K. Compton (SBN 142969)
Email:  jcompton@mzclaw.com
Daria Dub Carlson (SBN 150628)
Email: dcarlson@mzclaw.com
MARKUN ZUSMAN FRENIERE & COMPTON LLP
17383 W. Sunset Blvd., Suite A380
Pacific Palisades, CA 90272-4181
Telephone:  (310) 454-5900
Facsimile:   (310) 454-5970

Jonathan Weiss (SBN 143895)
Email:  jw@lojw.com
LAW OFFICE OF JONATHAN WEISS
10576 Troon Ave.
Los Angeles, CA 90064-4436
Telephone:  (310) 558-0404

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

| | |
|---|---|
| CITYWIDE CONSULTANTS & FOOD MANAGEMENT, LLC, individually and on behalf of all others similarly situated,<br><br>　　　　　*Plaintiff,*<br><br>vs.<br><br>GRUMA CORPORATION, a Nevada corporation, dba MISSION FOODS CORPORATION; SMART & FINAL STORES, INC.; and STATER BROS. MARKETS,<br><br>　　　　　*Defendants.* | Case No.:  2:19-cv-04724-DSF-AFM<br><br>**DECLARATION OF JEFFREY K. COMPTON IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT**<br><br>Date: February 3, 2020<br>Time: 1:30pm<br>Courtroom: 7D<br><br>Judge: Hon. Dale S. Fischer<br>Complaint Filed: March 26, 2019<br><br>Trial Date: None set |

## <u>DECLARATION OF JEFFREY K. COMPTON</u>

I, Jeffrey Compton, declare as follows:

1.      I am an attorney at law licensed to practice in the state of California and am a partner in Markun Zusman Freniere & Compton, LLP ("MZFC"), attorneys of record for named plaintiff Citywide Consultants & Food Management LLC and its owner/proprietor Randy H. Evans ("Evans") in the above-captioned action against Gruma Corporation ("Gruma"), Smart & Final Stores, Inc. and Stater Bros Markets (collectively, "Defendants").  Except as otherwise stated herein, I testify to the foregoing facts of my own personal knowledge and, if called as a witness, could and would testify competently thereto under oath.

2.      Shortly after this case was filed, the parties agreed to mediation before David A. Rotman, Esq.  At that time, the parties agreed to attempt to resolve the alleged antitrust claims along with any potential wage and hour claims connected to Gruma's classification of its distributors as independent contractors, such as minimum wages, overtime, unreimbursed costs, and improper deductions; for failure to provide meal and rest breaks, paid sick leave, timely wages, and itemized wage statements; and those arising under the Private Attorneys' General Act (Cal. Lab. Code, § 2698, et seq.).

3.      Before and during the mediation, the parties exchanged information and documentation to permit them to analyze the value of settlement.  Specifically, Gruma provided:  (1) templates/exemplars of Store Door Distributor Agreements (and amendments) concerning pricing during the class period; (2) the Class Members' gross sales for the Class Period; and (3) extensive briefing supporting its defenses.

4.      In turn, Plaintiff gave Gruma documents and information regarding: (1) Plaintiff's sales to non-chain stores during the class period; (2) Plaintiff's use of employees and/or independent contractors to distribute product during the class period, (3) Plaintiff's distribution of non-Gruma products during the class period, (4) the prices at which Plaintiff purchased and sold its business/route, and (5)

DECLARATION OF JEFFREY K. COMPTON IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

2:19-CV-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

documents memorializing the purchase and sale.

5.    To determine the potential damages, Plaintiff retained economist Jon M. Riddle, Ph.D., who analyzed the difference between Gruma's distributors' profits and other grocery distributors' profits whose prices are not fixed.    Mr. Riddle calculated damages resulting from the antitrust damages ranging from $162.6 to $251.2 million.

6.    Plaintiff's counsel also considered Evans' hours worked including overtime, meal and rest breaks taken, and deductions from wages and unreimbursed expenses.    We and Plaintiff also made inquiries of other Gruma distributors regarding their particular facts and circumstances.    We determined that costs and deductions were the largest component of the wage and hour claims.    Evans' costs and deductions for the three years he worked as a distributor contracting with Gruma averaged approximately $28,000 per year.    Because many of these costs are incurred by Gruma's distributors (i.e., handheld computers), counsel assumes that Evans' costs are similar to those of the other Class Members.

7.    On August 23, 2019, the parties participated in a full day, arms-length mediation which resulted in the parties entering into a Memorandum of Agreement to resolve the antitrust and wage and hour claims.    Thereafter, on December 23, 2019, the parties entered into a Stipulation of Class Action and PAGA Settlement and Release (the "Stipulation"), attached hereto as Exhibit A.    The Settlement contemplates resolution of potential wage and hour claims as well as the antitrust claims, and the Settlement is contingent on all such claims being resolved.

8.    Because the Settlement contemplates resolution of potential wage and hour claims as well as the antitrust claims, and because the Settlement is contingent on all such claims being resolved, the parties agreed that Plaintiff would amend the Complaint to add the following causes of action: (1) Failure to Pay Minimum Wage (Labor Code, §§ 1197, 1194, and 1197.1); (2) Failure to Pay Overtime Compensation (Labor Code, §§ 510, 558, 1194 and 1198); (3) Failure to Provide

1  Meal Periods (Labor Code, § 226.7 and 512); (4) Failure to Provide Rest Periods
2  (Labor Code § 226.7 and 512); (5) Failure to Provide Paid Sick Leave (Labor Code,
3  §§ 245-249); (6) Unlawful Wage Deductions and Failure to Reimburse (Labor
4  Code §§ 221, 2800 and 2802); (7) Failure to Provide Itemized Wage Statements
5  (Labor Code, §§ 226, 226.3 and 1174(d)); (8) Failure to Timely Pay Wages (Labor
6  Code, §§ 201, 202, 203, 204, 210); and (9) Private Attorneys General Act (Labor
7  Code § 2699, et seq.).  The parties also agreed that the amended complaint would
8  include Evans, the owner/proprietor of Citywide, as a named plaintiff.

9      9.    Mr. Evans has provided extraordinary help to the Class and counsel in
10  this matter.  In preparation for filing of this action and thereafter, Evans produced
11  documents, liaised with other Class Members, and consulted with counsel and the
12  expert to help analyze the claims and provide information relevant to the case.  He
13  also travelled to San Francisco to actively participate in the mediation.  I am not
14  aware of any conflict of interest between Mr. Evans and any other class member.

15     10.   I am informed and believe, based on information provided by
16  Defendants' counsel, that the total amount available for distribution to the
17  Settlement Class Members will be in excess of $3,654,000.  Preliminary estimates
18  are that the range of allocations to Settlement Class Members will be from
19  approximately $858.16 to $40,456.82, depending on the number of weeks worked,
20  and that the median allocation will be $3,535.81.

21     11.   Each Class Member's share of the damages is primarily based on that
22  Class Member's share of the total gross sales.  This allocation also makes sense for
23  the wage and hour claims because it is likely that, the higher a Class Members'
24  gross sales, the more hours they worked and (especially) the more costs they
25  incurred.

26     12.   Neither I nor my firm has any interest in or involvement in the
27  governance or work of the proposed cy pres recipient, Feeding America.

28     13.   I am informed and believe, based on representations from counsel for

DECLARATION OF JEFFREY K. COMPTON IN SUPPORT OF MOTION                2:19-CV-04724-DSF-AFM
FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT                          CITYWIDE V. GRUMA CORP.

Defendants, that there are approximately 600 class members who worked during the class period.

14.    My firm is highly experience in wage and hour and antitrust class actions. Named partners David Markun, Edward Zusman and I have been practicing law with a focus on litigation collectively for 75 years, and our firm's attorneys have tried or arbitrated over 100 matters.  MZFC also maintains an active appellate practice.  Prior to starting MZFC in April 2003, we were all partners of Liner, Yankelevitz, Sunshine & Regenstreif LLP, and prior to that, partners with Zelle & Larson LLP, a national firm headquartered in Minneapolis, Minnesota.  Named partner David Freniere joined the firm in April 2013, prior to which he was the head of litigation for LPL Financial LLC, the largest independent broker-dealer in the country.  We currently have offices in Los Angeles, San Francisco, Portland, Oregon, Santa Fe, New Mexico and Boston, Massachusetts.

15.    Our firm has substantial experience in employment class actions.  Within the last ten years, our firm has been class counsel in the following wage and hour class actions involving broker-dealers and the financial services industry, in which the terms of settlements we negotiated, and our requested fees, have been approved: *Burakoff v. U.S. Bank Corp.* (Los Angeles Superior Court, class certified and case settled); *Moore v. Washington Mutual* (U.S.D.C., Central District of California, class settlement); *Karim* v. *Bank of America* (U.S.D.C., Central District of California; class settlement) and *McNerney* v. *Piper Jaffray* (U.S.D.C., Northern District of California; class settlement); *In Re Wachovia Securities LLC Wage and Hour Litigation* (U.S.D.C. Central District of California, class settlement); and *Schmoekel* v. *VALIC* (U.S.D.C., Northern District of California; class settlement).

16.    Within the last twelve years, we have also been class counsel in the following wage and hour class actions involving industries outside of financial services in which the terms of settlements we negotiated, and our requested fees, have been approved: *Chun-Hoon, et al.* v. *McKee Foods Corporation* (U.S.D.C., Northern

District of California, class settlement); *Bell v. Nodalseismic, LLC, et al.* (LASC Case No. BC490423, class certified and settled); *Tran* v. *Protiviti Corporation* (Los Angeles County Superior Court, class settlement); *Nguyen v. Walgreens* (U.S.D.C. Northern District of California, class settlement); *Brady v. Deloitte & Touche LLP* (U.S.D.C., Northern District of California, class settlement); *Kress v. PricewaterhouseCoopers LLP* (U.S.D.C., Eastern District of California, class settlement) and, *Moreno* v. *Guerrero Mexican Food Products, Inc.* (U.S.D.C. Central District of California; class settlement). Our firm and I were co-lead counsel in *Johnson* v. *Gruma* (JAMS class action) in which the class was certified, and the case was tried to a JAMS arbitrator.

17.    MZFC attorneys have also represented plaintiffs in a number of class actions alleging violations of the Fair Credit Reporting Act, illegal tape recording, antitrust matters, junk faxes, predatory lending, unlawful practices with respect to insurance policy pricing, defective products, false advertising, ERISA matters representing plan beneficiaries, and bank violations regarding the Coogan Law.

18.    Attorneys in our firm are admitted to practice in California, Oregon, Washington, Pennsylvania, New Mexico, New York and Massachusetts, and have been admitted to practice *pro hac vice* in over two dozen jurisdictions. No application for our admission has ever been rejected and none of our attorneys have ever been subject to discipline or censure by any court or bar association. Moreover, this firm is involved in prosecuting class actions in various jurisdictions throughout the United States.

19.    We conducted a thorough investigation into the facts of this case and relevant law before entering into this settlement that was negotiated at arm's-length. Based on the extensive discovery conducted and our own independent investigation and evaluation, we are of the opinion that the settlement is fair, reasonable, and adequate, and is in the best interests of the absent class members in light of all known facts and circumstances. We considered several factors, including the strengths and weaknesses of Plaintiffs' claims, the likelihood of the case being sent to arbitration, the likelihood obtaining class certification and prevailing at trial, the amount in

controversy prior to reaching a decision to settle the litigation, the risk of significant delay, the burdens of proof necessary to establish liability, the defenses that Defendants are asserting and would assert to contest this case through certification and on the merits at trial, and the probability of appeal of a favorable judgment are balanced against the merits of Plaintiffs' claims.  Particularly, if the Court were to deny class certification, the absent class members would probably never receive any recovery on these claims whatsoever. While we are confident in the merits of plaintiffs' claims, a legitimate controversy exists as to each cause of action.

20.    The absent class members will greatly benefit from the settlement by receiving timely, guaranteed relief and avoiding the risk of an unfavorable judgment.

21.    For all the foregoing reasons, I respectfully request that this Court grant this motion and approve the class action settlement on the terms agreed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: December 24, 2019        By: _____

JEFFREY K. COMPTON

DECLARATION OF JEFFREY K. COMPTON IN SUPPORT OF MOTION
FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

2:19-CV-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

# EXHIBIT A

1  PAUL GROSSMAN (SBN 035959)
2  paulgrossman@paulhastings.com
   CHRIS A. JALIAN (SBN 295564)
3  chrisjalian@paulhastings.com
   PAUL HASTINGS LLP
4  515 South Flower Street, 25th Floor
   Los Angeles, California  90071-2228
5  Telephone:  (213) 683-6000

6  Attorneys for Defendants
7  GRUMA CORPORATION;
   SMART & FINAL STORES, INC; and
8  STATER BROS. MARKETS

9
   *(Add'l counsel listed on next page)*
10

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

14  CITYWIDE CONSULTANTS & FOOD          Case No. 2:19-cv-4724 (DSF)
    MANAGEMENT, LCC, individually and    (AFMx)
15  on behalf of all others similarly situated,
                                         **STIPULATION OF CLASS**
16                 Plaintiff,            **ACTION AND PAGA**
                                         **SETTLEMENT AND RELEASE**
17
18        vs.
                                         Judge:    Hon. Dale S. Fischer
19  GRUMA CORPORATION, a Nevada
20  corporation, dba MISSION FOODS       Complaint Filed: March 26, 2019
    CORPORATION; SMART & FINAL           Trial Date:      None Set
21  STORES, INC.; STATER BROS.
    MARKETS; and DOES 1 through 100,
22  inclusive,
23
24                 Defendants.
25
26
27
28
    CASE NO. 2:19-cv-4724 (DSF) (AFMx)          STIPULATION OF CLASS ACTION AND
                                                PAGA SETTLEMENT AND RELEASE

1  DUANE H. ZOBRIST (SBN 43813)
   dzobrist@zoblaw.com
2  ZOBLAW
3  1900 Arlington Boulevard, Suite B
   Charlottesville, Virginia  22903
4  Telephone/Facsimile:   (434) 977-9666

5  Attorneys for Defendants
   GRUMA CORPORATION;
6  SMART & FINAL STORES, INC.; and
7  STATER BROS. MARKETS

8

9  JEFFREY K. COMPTON (SBN 142969)
   DARIA DUB CARLSON (SBN 150628)
10 MARKUN ZUSMAN FRENIERE & COMPTON LLP
   17383 W. Sunset Blvd., Suite A380
11 Pacific Palisades, CA 90272-4181
   Telephone:  (310) 454-5900
12 Facsimile:  (310) 454-5970
   Email:  jcompton@mzclaw.com
13

14 JONATHAN WEISS (SBN 143895)
   LAW OFFICE OF JONATHAN WEISS
15 10576 Troon Ave.
   Los Angeles, CA 90064-4436
16 Telephone:  (310) 558-0404
   Email:  jw@lojw.com
17

18 Attorneys for Plaintiffs and the Proposed Class
   CITYWIDE CONSULTANTS & FOOD
19 MANAGEMENT, LLC, and RANDY EVANS

20

21

22

23

24

25

26

27

28

CASE NO. 2:19-cv-4724 (DSF) (AFMx)    -2-    STIPULATION OF CLASS ACTION AND
                                              PAGA SETTLEMENT AND RELEASE

## STIPULATION OF CLASS ACTION AND
## PAGA SETTLEMENT AND RELEASE

IT IS HEREBY STIPULATED, by and between Plaintiffs Citywide Consultants & Food Management, LLC and Randy H. Evans, on behalf of themselves and the Settlement Class Members, on the one hand, and Defendant Gruma Corporation, on the other hand, and subject to the approval of the Court, that the above-captioned Lawsuit is hereby being compromised and settled pursuant to the terms and conditions set forth herein (the "Settlement," "Stipulation," or "Agreement").

1. **DEFINITIONS**

Unless otherwise defined herein, initial capitalized terms used in this Agreement shall have the meanings set forth below:

1.1    "Class" or "Class Members" means all persons or entities who/that are or were signatories to an agreement with Defendant for the distribution of Defendant's Product within California between March 26, 2015 through the Preliminary Approval Date, in addition to their owners, proprietors, partners and/or members.

1.2    "Class Counsel" means Jeffrey K. Compton, Esq. and Daria Dub Carlson, Esq. of Markun Zusman Freniere & Compton LLP, and Jonathan Weiss, Esq. of the Law Office of Jonathan Weiss.

1.3    "Class Counsel Award" or "Attorneys' Fees Award" means attorneys' fees for Class Counsel's litigation and resolution of this Lawsuit not to exceed twenty-five percent (25%) of the Maximum Settlement Amount (or One Million Two Hundred Fifty Thousand Dollars ($1,250,000)), subject to approval by the Court. The Court shall review the requested amount of the Class Counsel Award, and the approved amount shall be paid from the Maximum Settlement Amount. Any portion of the requested Class Counsel Award that is not awarded to Class

Counsel shall be a part of the Net Settlement Amount and distributed to Settlement Class Members as provided in this Agreement.

1.4    "Class Counsel Costs" or "Litigation Costs Award" means expenses and costs incurred by Class Counsel for Class Counsel's litigation and resolution of this Lawsuit not to exceed Fifty Thousand Dollars ($50,000).  The Court shall determine the amount of the Class Counsel Costs, and it shall be paid from the Maximum Settlement Amount.  Any portion of the requested Class Counsel Costs that is not awarded to Class Counsel shall be a part of the Net Settlement Amount and distributed to Settlement Class Members as provided in this Agreement.

1.5    "Class Information" means information regarding Class Members that Defendant will in good faith compile from its records and provide to the Settlement Administrator.  Class Information shall be provided as a password-protected, Microsoft Excel spreadsheet and shall include each Class Member's:  (a) individual and/or corporate name; (b) last known address; (c) last known telephone number; (d) Social Security Number and/or Tax Identification Number; (e) start date of Product distribution; (f) end date of Product distribution; and (g) Compensable Gross Sales (as defined below in Paragraph 1.9).  Because Social Security Numbers and/or Tax Identification Numbers are included in the Class Information, the Settlement Administrator shall maintain the Class Information in confidence, it shall be transmitted in password-protected file(s), and access shall be limited to those with a need to use the Class Information as part of the administration of the Settlement.

1.6    "Class Period" means the period from March 26, 2015 through and including the Preliminary Approval Date.

1.7    "Class Representatives" means Plaintiff Citywide Consultants & Food Management, LLC and its member/owner/proprietor Randy Evans.

1.8    "Citywide" means Citywide Consultants & Food Management, LLC.

CASE NO. 2:19-cv-4724 (DSF) (AFMx)        -4-        STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE

1.9    "Compensable Gross Sales" means each Class Member's gross sales to chain stores in California during the Class Period.

1.10    "Court" shall mean the United States District Court for the Central District of California.

1.11    "Defendant" or "Gruma" means Defendant Gruma Corporation.

1.12    "Defense Counsel" or "Counsel for Defendant" shall mean Paul Hastings LLP, 515 South Flower Street, 25th Floor, Los Angeles, California 90071, including the attorneys Paul Grossman, Esq., and Chris A. Jalian, Esq.

1.13    "Effective Date" means the latest of the following dates, as applicable: (i) expiration of all potential appeal periods without a filing of a notice of appeal of the Final Approval Order and Judgment, or (ii) final affirmance of the Final Approval Order and Judgment by an appellate court as a result of any appeal(s), or (iii) final dismissal or denial of all such appeals (including any petitions for review, rehearing, certiorari, etc.) such that the Final Approval Order and Judgment is no longer subject to further judicial review.

1.14    "Enhancement Award" means the amount approved by the Court to be paid to the Class Representatives in recognition of their efforts and time as Class Representatives, and in consideration for their release of all claims against Released Parties (as defined below in Paragraph 1.32).

1.15    "Evans" means Plaintiff Randy H. Evans.

1.16    "Final Approval Hearing" means the hearing held on the motion for final approval of the Settlement.

1.17    "Final Approval Order and Judgment" means the Court's entry of an order granting final approval of the Settlement and entering judgment in this Lawsuit based thereon, in conformity with the Federal Rules of Civil Procedure.

1.18    "Individual Settlement Payment" means the net amount paid by way of check to each Settlement Class Member.  The amount of the Individual Settlement Payment shall be calculated pursuant to Paragraph 3.13.

1.19  "Lawsuit" or "Action" means the class action lawsuit entitled *Citywide Consultants & Food Management, LLC v. Gruma Corporation, et al.*, now pending in the United States District Court for the Central District of California and designated as Case No. 2:19-cv-4724 (DSF) (AFMx).

1.20  "LWDA Payment" means Thirty Thousand Dollars ($30,000) allocated to be paid to the California Labor Workforce Development Agency, subject to approval by the Court, as calculated and described in Paragraph 1.25 below 1.25 herein.

1.21  "Maximum Settlement Amount" means Five Million Dollars ($5,000,000).

1.22  "Net Settlement Amount" means the amount of monies available for distribution to Settlement Class Members, which shall be the Maximum Settlement Amount less the Class Counsel Award, Class Counsel Costs, Enhancement Award, Settlement Administration Costs, and LWDA Payment.

1.23  "Notice of Class Action Settlement" or "Class Notice" means the Notice of Class Action Settlement, substantially in the form attached hereto as **Exhibit A**.

1.24  "Operative Complaint" or "Amended Complaint" refers to the Amended Class Action Complaint, which Plaintiffs agree to file on or before December 31, 2019, pursuant to Paragraph 2.1 herein.

1.25  "PAGA Payment" means the allocation of Forty Thousand Dollars ($40,000), payable from the Maximum Settlement Amount, subject to approval by the Court, for penalties under the Private Attorneys General Act ("PAGA"). Per California Labor Code section 2699(i), Thirty Thousand Dollars ($30,000) ("LWDA Payment"), representing 75% of the PAGA Payment, will be paid to the California Labor Workforce Development Agency ("LWDA"). The remaining Ten Thousand Dollars ($10,000), representing 25% of the PAGA Payment, shall be

distributed to Settlement Class Members as part of the Net Settlement Amount as described in Paragraph 3.13.

1.26 "Parties" means Plaintiffs and Defendant, and "Party" shall mean either Plaintiffs or Defendant, respectively.

1.27 "Plaintiffs" means Citywide and Evans.

1.28 "Preliminary Approval" and "Preliminary Approval Date" mean the date the Court enters the Preliminary Approval Order.

1.29 "Preliminary Approval Order" means the Order granting preliminary approval of the Settlement.

1.30 "Product" means product, items and/or goods manufactured by Gruma Corporation, including, without limitation, Mission Foods and Guerrero Mexican Food Product branded product, items and/or goods.

1.31 "Released Claims" means any and all claims that were asserted in the Operative Complaint through the date of the Final Approval Order and Judgment, including, without limitation, statutory, constitutional, contractual, and/or common law claims for antitrust violations under California or federal law, including but not limited to claims based on vertical price fixing, lost profits, breach of contract, unfair competition, treble damages; any claims under the California Labor Code and applicable Industrial Welfare Commission ("IWC") Orders, including but not limited to claims based on Settlement Class Members' alleged misclassification as independent contractors for unpaid regular and/or overtime wages, meal period premiums, rest period premiums, expenses, interest, and/or statutory and civil penalties (including but not limited to penalties for failure to pay wages, underpayment of wages, late payment of wages, failure to provide accurate itemized statements or maintain records, and civil penalties (including civil penalties under PAGA)), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

1.32   "Released Parties" means Gruma Corporation dba Mission Foods and/or Guerrero Mexican Food Product, Smart & Final Stores, Inc., Stater Bros. Markets, and any establishment to which Class Members sold Product, and all of their respective current and former parents, subsidiaries, predecessors and successors, and affiliated entities, and each of their respective officers, directors, employees, partners, shareholders, and agents, and any other successors, assigns, or legal representatives.

1.33   "Request for Exclusion" means a request to be excluded from the Settlement that is made in conformity with this Agreement, the instructions in the Class Notice, and the Court's orders.

1.34   "Response Deadline" means the date that is thirty (30) calendar days after the Settlement Administrator mails the Class Notice to Class Members and constitutes the last date on which Class Members may:  (a) postmark or fax Requests for Exclusion to the Settlement Administrator; or (b) postmark or fax objections to the Settlement to the Settlement Administrator.

1.35   "Settlement Account" means the bank account established by the Settlement Administrator pursuant to the terms of this Stipulation from which all monies payable under the terms of this Settlement shall be paid, as set forth herein. The Settlement Account is intended to be a "qualified settlement fund" ("Qualified Settlement Fund") within the meaning of Treasury Regulation § 1.468B-1 and that the Settlement Administrator, within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing tax returns for the Maximum Settlement Amount and paying from the Qualified Settlement Fund any taxes owed with respect to the Settlement Account.  The Parties hereto agree that the Settlement Account shall be treated as a "qualified settlement fund" from the earliest date possible, and agree to any relation-back election required to treat the Settlement Account as a "qualified settlement fund" from the earliest date possible.  Defense Counsel agree to provide promptly to the Settlement Administrator the statement

described in Treasury Regulation § 1.468B-3(e).  All taxes shall be paid out of the Settlement Account, shall be paid out of the interest earned on the Settlement Account, be considered to be a cost of administration of the Settlement, and be timely paid by the Settlement Administrator without prior order of the Court, and under no circumstance shall Defendants have any liability related thereto.

1.36   "Settlement Administration Costs" means the amount to be paid to the Settlement Administrator from the Maximum Settlement Amount for the administration of the Settlement.  The Settlement Administration Costs amount is presently estimated not to exceed Twenty Thousand Dollars ($20,000).  If the Settlement Administration Costs are awarded in an amount less than Twenty Thousand Dollars ($20,000), the unawarded portion shall be a part of the Net Settlement Amount and distributed to Settlement Class Members as provided in this Agreement.

1.37   "Settlement Administrator" means Atticus Administration, LLC.

1.38   "Settlement Class Members" or "Settlement Class" means all Class Members who do not submit a valid and timely Request for Exclusion.

1.39   "Translation Provider" means California Interpreting & Translation.

1.40   "Translation Provider Costs" means the amount to be paid to the Translation Provider from the Maximum Settlement Amount for the certified translation of the Class Notice from English to Spanish.  The Translation Provider Costs amount is presently estimated not to exceed One Thousand Dollars ($1,000). The Parties agree to work in good faith with the Translation Provider to procure a certified translation.

## 2.   **RECITALS**

2.1   <u>Description and Procedural Posture of the Litigation</u>.  The Lawsuit was filed on March 26, 2019 by Citywide in the Superior Court of California for the County of Los Angeles .

On May 30, 2019, Defendants Gruma Corporation, Smart & Final Stores, Inc., and Stater Bros. Markets filed a Notice of Removal in the United States District Court for the Central District of California.

On June 27, 2019, pursuant to the Parties' stipulation, the Court (i) stayed the Action pending the Parties' mediation, (ii) continued the hearing on Plaintiff's Motion to Remand to November 18, 2019, and (iii) continued the hearing on Defendant's Motion to Compel Arbitration to November 18, 2019.

On August 23, 2019, the Parties participated in a mediation before Mediator David A. Rotman, Esq. The Lawsuit was resolved at the mediation. The Parties executed a binding and enforceable Memorandum of Agreement ("MOA") at the mediation, and agreed that a detailed, long-form settlement agreement would be completed shortly thereafter.

As part of the MOA, the Parties agreed that Citywide and Evans would file a PAGA notice with the LWDA, no later than October 15, 2019, which set forth the alleged California Labor Code claims arising out of the purported misclassification of Citywide and Evans as independent contractors, including California Labor Code sections 201, 201.3, 202, 203, 204, 210, 218.5, 218.6, 226, 226.3, 226.7, 226.8, 245-249, 510, 512, 558, 1174(d), 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2751, 2802 2804, and 2810.5, and applicable IWC Wage Orders on behalf of all Class Members. Citywide and Evans filed a PAGA notice with the LWDA on October 14, 2019.

As part of the MOA, the Parties further agreed to the filing of an Amended Complaint in the Lawsuit, pursuant to and for purposes of this Agreement only, no later than December 31, 2019, adding (i) Evans as a named plaintiff, (ii) class-wide causes of action, to conform to the independent contractor misclassification claims raised prior to mediation and mediated, including: (1) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime); (2) Violation of California Labor Code §§ 226.7 and 512(a) (Unpaid Meal Period Premiums); (3) Violation of

California Labor Code § 226.7 (Unpaid Rest Period Premiums); (4) Violation of California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid Minimum Wages); (5) Violation of California Labor Code §§ 201 and 202 (Final Wages Not Timely Paid); (6) Violation of California Labor Code § 204 (Wages Not Timely Paid During Employment); (7) Violation of California Labor Code § 226(a) (Non-Compliant Wage Statements); (8) Violation of California Labor Code § 1174(d) (Failure To Keep Requisite Payroll Records); (9) Violation of California Labor Code §§ 245, *et seq.* (Unpaid Sick Leave); (10) Violation of California Labor Code §§ 2800 and 2802 (Unreimbursed Business Expenses); (11) Violation of the Cartwright Act (Business & Professions Code § 16700, *et seq.*); and (12) Unlawful Business Practices  (Business & Professions Code § 17200, *et seq.*); and (iii) claims for civil penalties pursuant to PAGA arising from or relating to alleged violations of Labor Code sections 201, 201.3, 202, 203, 204, 210, 218.5, 218.6, 226, 226.3, 226.7, 226.8, 245-249, 510, 512, 558, 1174(d), 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2751, 2802, 2804 and 2810.5, and applicable IWC Wage Orders.

A draft of the Amended Complaint is attached hereto as **Exhibit B.**  The Parties agree to stipulate to the filing of the Amended Complaint prior to or contemporaneously with Plaintiff's Motion for Preliminary Approval of Class Action Settlement.  The Parties agree that the filing of the Amended Complaint is a material term of this Settlement and a required condition precedent to the performance of Gruma's obligations in this Settlement.

2.2    Certification of the Settlement Class.  The Parties stipulate and agree to the certification of this Lawsuit for purposes of this Settlement only.  Should the Settlement not become final and effective as herein provided, class certification shall immediately be set aside (subject to further proceedings on motion of any Party to certify or deny certification thereafter).  The Parties' willingness to stipulate to class certification as part of the Settlement shall have no bearing on, and shall not be admissible in or considered in connection with, the issue of whether a

class should be certified in a non-settlement context in this Lawsuit and shall have no bearing on, and shall not be admissible or considered in connection with, the issue of whether a class should be certified in any other lawsuit.

2.3    <u>Benefits of Settlement to Class Members</u>.    Plaintiffs and Class Counsel recognize the expense and length of continued proceedings necessary to litigate their disputes through trial and through any possible appeals.    Plaintiffs have also taken into account the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation.    Plaintiffs and Class Counsel are also aware of the burdens of proof necessary to establish liability for the claims asserted in the Lawsuit, both generally and in response to Defendant's defenses thereto (many of which have been shared during the course of the Parties' extensive settlement negotiations), and potential difficulties in establishing damages and entitlement to monetary recovery for the Class Members.    Plaintiffs and Class Counsel have also noted the well-funded efforts to change the current misclassification law in a way that could make it more difficult for them to prevail in a misclassification suit.    Plaintiffs and Class Counsel have also taken into account Defendant's agreement to enter into a settlement that confers substantial relief upon Class Members based on the terms set forth herein.    Based on the foregoing, Plaintiffs and Class Counsel have determined that the Settlement set forth in this Agreement is a fair, adequate, and reasonable settlement, and is in the best interests of the Class Members.

2.4    <u>Defendant's Reasons for Settlement</u>.    Defendant has concluded that any further defense of this litigation would be protracted and expensive for all Parties.    Substantial amounts of time, energy, and resources of Defendant have been and, unless this Settlement is approved, will continue to be, devoted to the defense of the claims asserted by Plaintiff.    Defendant has also taken into account the risks of further litigation in reaching its decision to enter into this Settlement.    Despite continuing to contend that it is not liable for any of the claims set forth by Plaintiffs

in the Lawsuit, Defendant has, nonetheless, agreed to settle in the manner and upon the terms set forth in this Agreement to put to rest the claims as set forth in the Lawsuit.

2.5    Class Members' Claims.  Plaintiffs, on behalf of Class Members, have claimed and continue to claim that the Released Claims have merit and give rise to liability on the part of Defendant.  This Agreement is a compromise of disputed claims.  Nothing contained in this Agreement (and exhibits/attachments hereto) and no documents referred to herein and no action taken to carry out this Agreement may be construed or used as an admission by or against the Class Members or Class Counsel as to the merits or lack thereof of the claims asserted.

2.6    Defendant's Defenses.  Defendant has claimed and continues to claim that the Released Claims have no merit and do not give rise to liability.  This Agreement is a compromise of disputed claims.  Nothing contained in this Agreement and no documents referred to herein and no action taken to carry out this Agreement may be construed or used as an admission by or against Defendant as to the merits or lack thereof of the claims asserted.

2.7    Maximum Amount Payable by Defendant.  Under the terms of this Settlement, the maximum amount payable by Defendant shall not exceed the Maximum Settlement Amount of Five Million Dollars ($5,000,000).

2.8    Class Representatives' Counsel's Representations.  The Class Representatives' counsel represent that they do not represent anyone in connection with a potential claim against the Released Parties not resolved by this Settlement. This provision is not intended to, and shall not restrict, any individual's right to the counsel of his or her choice, including Plaintiffs' counsel.

2.9    Dismissal of the Lawsuit.  The Parties agree that, upon the Court's issuance of the Final Approval Order and Judgment, the Lawsuit will be dismissed with prejudice in accordance with the Federal Rules of Civil Procedure.

**3.**    **TERMS OF AGREEMENT**

The Parties agree as follows:

3.1    <u>Conditional Agreement to File Amended Complaint</u>.  For the purposes of this Agreement only, Plaintiffs and Defendant hereby stipulate and agree, subject to the Court's entry of an order approving the same, that Plaintiffs may file the Amended Complaint in the Lawsuit, which solely adds (i) Evans as a named plaintiff, (ii) class-wide causes of action, to conform to the independent contractor misclassification claims raised prior to mediation and mediated, including: (1) unpaid minimum, overtime, and double-time wages; (2) failure to provide meal periods; (3) failure to authorize and permit rest periods, (4) failure to timely pay wages during employment; (5) failure to timely pay wages at termination; (6) failure to maintain business records; (7) failure to provide wage statements; (8) failure to provide paid sick leave, (9) unreimbursed business expenses; and (iii) a representative claim seeking PAGA civil penalties arising from or relating to alleged violations of Labor Code sections 201, 201.3, 202, 203, 204, 210, 218.5, 218.6, 226, 226.3, 226.7, 226.8, 245-249, 510, 512, 558, 1174(d), 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2751, 2802, 2804 and 2810.5, and applicable IWC Wage Orders.  These claims shall relate back to the date of the filing of Plaintiff's original Complaint commencing the Lawsuit.  For purposes of this settlement only, Defendant waives all defenses and challenges they may have to the Amended Complaint, including those based on the statute of limitations and/or timely and proper exhaustion of administrative notice requirements.  Should, for whatever reason, the settlement set forth in this Agreement not become final, the Amended Complaint shall be deemed stricken, null and void *ab initio*, with the previously-filed complaint in the Lawsuit remaining the operative pleading, and Defendant will retain any and all defenses and challenges to any subsequent claims brought by Plaintiffs.

3.2    <u>Releases Given by Plaintiffs and the Settlement Class</u>.

3.2.1   <u>As To All Settlement Class Members</u>.  As of the Effective Date, all Settlement Class Members, including Plaintiffs, who do not opt out of the Settlement, release the Released Parties from the Released Claims.

3.2.2   <u>Releases Are Binding on Owners and/or Proprietors of Settlement Class Members</u>.  As of the Effective Date, the releases given by Settlement Class Members pursuant to this Settlement apply with equal force to each owner, member, partner and/or proprietor of each Settlement Class Member, and will bind them hereto in the same release of Released Claims against the Released Parties.

3.2.3   <u>Released Parties' Right to Seek Indemnification</u>.  This Settlement is not intended to preclude and in no way precludes Defendant or any Released Party from seeking indemnity against any Class Member for any claim, demand, action or proceeding brought by a Class Member's employee(s) or contractor(s) against Defendant or any of the Released Parties asserting any of the claims released in this Agreement.

3.2.4   <u>General Release of Class Representatives' Claims</u>.  In addition to the Release set forth in Paragraph 3.2.1, Plaintiffs Citywide and Evans, for itself/himself alone, release the Released Parties of and from all known and unknown claims it/he has or may have against the Released Parties, including claims based on a distribution agreement with any one or more of the Released Parties, of every nature and description whatsoever, up to the Effective Date.  This general release of claims includes any known and unknown claim for antitrust violation under California or federal law, including, but not limited to, vertical price fixing, lost profits, breach of contract, unfair competition, treble damages, and any claims under the California Labor Code and applicable Industrial Welfare Commission Orders including but not limited to claims based on alleged misclassification as an independent contractor for unpaid regular and/or overtime wages, meal period premiums, rest period premiums, restitution, expenses, interest,

liquidated damages and/or statutory and civil penalties (including but not limited to penalties for failure to pay wages, underpayment of wages, late payment of wages, failure to provide accurate itemized statements or maintain records, expense reimbursement, and civil penalties (including civil penalties under the Private Attorneys' General Act)).

In connection therewith, Plaintiffs expressly waive the protections of California Civil Code section 1542, which reads as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.**

3.2.5  <u>No Future Distribution Opportunities</u>.  Plaintiffs agree not to seek to enter into an agreement or purchase the rights to distribute Defendant's Product, unless asked to do so by Defendant in writing.

3.2.6  <u>General Release of Claims Against Plaintiffs:</u>  Gruma releases the Plaintiffs and Class Counsel from all known and unknown claims they have or may have against Plaintiff and/or Class Counsel related to the Lawsuit.  In connection therewith, Gruma expressly waives the protections of California Civil Code section 1542, which reads as follows:

> **A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party**

3.3  <u>Tax Liability</u>.  The Parties make no representations as to the tax treatment or legal effect of the payments called for hereunder, and Settlement Class Members are not relying on any statement or representation by the Parties in this regard.  Settlement Class Members understand and agree that they will be

responsible for the payment of any taxes and penalties assessed on the payments described herein and will hold the Parties free and harmless from and against any claims resulting from the tax treatment of such payments, including the treatment of such payment as not subject to withholding or deduction for payroll and employment taxes.

3.4   <u>No Knowledge of Other Claims</u>.  Class Counsel and Plaintiffs agree and represent that they are not aware of any class action claim that could have been brought against Defendant by any person or entity, other than the claims that were alleged or could have been alleged in the Lawsuit, or could have been alleged based on the facts alleged in the Lawsuit or arising out of the circumstances giving rise to the Lawsuit.  Defense Counsel represents that they are not aware of any claim that could have been brought by Released Parties against Plaintiffs arising out or relating to the Lawsuit.

3.5   <u>Settlement Approval and Implementation Procedures</u>.  As part of this Settlement, the Parties agree to the following procedures for obtaining the Court's preliminary approval of the Settlement, certifying a Class for settlement purposes only, notifying Class Members of the Settlement, obtaining the Court's final approval of the Settlement, and processing the Individual Settlement Payments.

3.5.1   <u>Preliminary Approval and Certification</u>.  Plaintiffs shall submit this Stipulation to the Court for its preliminary approval; Plaintiffs will provide their proposed submission to Defense Counsel for their review no later than five (5) business days prior to submission to the Court.  Such submission will include this Agreement, the proposed Class Notice, attached hereto as **Exhibit A**, and any motions, memoranda and evidence as may be necessary for the Court to determine that this Agreement is fair, adequate, and reasonable.  The Parties agree to request the Court to enter an order approving the certification of a provisional Settlement Class after the preliminary approval hearing in accordance with the Federal Rules of Civil Procedure.

3.5.2  <u>Class Information</u>.  No more than twenty (20) business days after the entry of the Preliminary Approval Order, Defendant shall provide the Settlement Administrator with the Class Information for purposes of mailing the Class Notice to Class Members.

3.5.3  <u>Efforts to Locate Class Members.</u>  The Parties agree that locating and contacting Class Members who were former signatories to an agreement with Defendant is an important and material aspect of the Settlement.  In this regard, Defendant shall provide relevant Class Information in its possession to the Settlement Administrator.  To further the Parties' efforts to locate Class Members, the Parties agree that, upon receipt of the Class Information, the Settlement Administrator will utilize the best practicable means available for purposes of verifying and/or updating the current address and telephone numbers for all Class Members.  The address(es) identified by the Settlement Administrator as the current mailing address shall be presumed to be the best mailing address for each Class Member.  The cost of diligently attempting to find the best contact information of the Class Members shall be included in the Settlement Administration Costs, and Defendant shall not, under any circumstances, be required to pay any additional funds for the investigatory duties to be performed by the Settlement Administrator.

3.5.4  <u>Notice By First Class U.S. Mail</u>.  No more than fourteen (14) calendar days after the deadline for Gruma to provide Class Information to the Settlement Administrator (set forth in Paragraph 3.5.2) has passed, the Settlement Administrator shall mail copies of the Class Notice to all Class Members by regular First-Class U.S. Mail.  It will be conclusively presumed that, if an envelope so mailed has not been returned within thirty (30) calendar days of the mailing, the Class Member received the Class Notice.

3.5.5  <u>Undeliverable Notices</u>.  Any Class Notice that is returned to the Settlement Administrator as non-delivered on or before the Response Deadline

1    shall be re-mailed to the forwarding address affixed thereto, if any.  If no

2    forwarding address is provided, the Settlement Administrator shall make reasonable

3    efforts to obtain an updated mailing address within five (5) business days of the

4    date of the return of the Class Notice, including, without limitation, conducting one

5    skip-trace.  If an updated mailing address is identified, the Settlement Administrator

6    shall resend the Class Notice to the Class Member.  Class Members to whom a

7    Class Notice is re-sent after having been returned undeliverable to the Settlement

8    Administrator shall have fourteen (14) calendar days thereafter or until the

9    Response Deadline has expired, whichever is later, to mail or fax the Request for

10    Exclusion or Notice of Objection.  A Class Notice that is re-sent shall inform the

11    recipient of this adjusted deadline.  The date of the postmark on the Request for

12    Exclusion, either based on the date on the return envelope or the date of the fax

13    stamp, shall be the exclusive means used to determine whether a Class Member has

14    timely returned his/her/its Request for Exclusion on or before the adjusted deadline.

15    Unless otherwise agreed by the Parties, a Request for Exclusion shall be deemed

16    valid only if it is signed by the Class Member and postmarked or fax stamped on or

17    before the adjusted deadline.  If a Class Member's Class Notice is returned to the

18    Settlement Administrator more than once as non-deliverable, then the Settlement

19    Administrator shall not be required to undertake any additional re-mailing of the

20    returned Class Notice.

21         3.5.6  Compliance with the procedures specified in Paragraphs 3.5.2

22    through 3.5.5 herein shall constitute due and sufficient notice to Class Members of

23    this Settlement and shall satisfy the requirement of due process.  Nothing else shall

24    be required of, or done by, the Parties, Class Counsel, Defense Counsel, and the

25    Settlement Administrator to provide notice of the proposed settlement.

26         3.6    English and Spanish Versions of the Class Notice.  Each Class

27    Member shall receive an English and Spanish version of the Class Notice.

28

3.7    <u>Disputes</u>.  Class Members will have the opportunity, should they disagree with Defendant's records regarding their Compensable Gross Sales as stated on their Class Notice, to dispute this information by submitting a written letter to the Settlement Administrator on or before the Response Deadline, that: (1) contains the name, address, telephone number, last four digits of the Social Security Number or Tax Identification Number, and signature of the Class Member; (2) contains the case name and number of the Lawsuit; (3) clearly indicates that the Class Member seeks to dispute his/her/its Compensable Gross Sales; (4) provides documentation and/or an explanation to show contrary Compensable Gross Sales; and (5) is postmarked or fax-stamped by the Response Deadline and returned to the Settlement Administrator at the specified address or fax telephone number.  If there is a dispute, the Settlement Administrator will consult with the Parties to determine whether an adjustment is warranted.  Defendant's records and/or those of the Released Parties will be presumed determinative.

3.8    <u>Exclusions (Opt Outs)</u>.  The Class Notice shall state that Class Members who wish to exclude themselves from the Settlement must submit a Request for Exclusion by the Response Deadline.  The Request for Exclusion must: (1) contain the name, address, telephone number, last four digits of the Social Security Number or Tax Identification Number, and signature of the Class Member; (2) contain the case name and number of the Lawsuit; (3) clearly indicate that the Class Member seeks to exclude itself, himself, or herself from the Settlement; and (4) be postmarked or fax-stamped on or before the Response Deadline and returned to the Settlement Administrator at the specified address or fax telephone number. The date of the postmark on the Request for Exclusion, either based on the postmark date on the return mailing envelope or date of the fax stamp, shall be the exclusive means used to determine whether a Request for Exclusion has been timely submitted.  Unless otherwise agreed by the Parties, a Request for Exclusion shall be deemed valid only if it is signed by the Class Member and postmarked or

fax stamped on or before the adjusted deadline.  Any Class Member who timely requests to be excluded from the Settlement will not be entitled to any recovery under the Settlement and will not be bound by the terms of the Settlement or have any right to object, appeal, or comment thereon.  Class Members who receive a Class Notice but fail to submit a valid and timely Request for Exclusion on or before the Response Deadline shall be bound by all terms of the Settlement and any Final Approval Order and Judgment entered in this Lawsuit if the Settlement is approved by the Court.  No later than fourteen (14) calendar days after the Response Deadline, the Settlement Administrator shall provide counsel for the Parties with a complete list of all members of the Class who have timely submitted Requests for Exclusion.  At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage members of the Class to submit Requests for Exclusion from the Settlement.  Any Class Member who submits a valid and timely Request for Exclusion shall forfeit his/her/its right to receive an Individual Settlement Payment under this Agreement, the amount of which will be part of the Net Settlement Amount to be distributed to Settlement Class Members as provided in this Agreement.

      3.9    <u>Objections</u>.  The Class Notice shall state that Settlement Class Members who wish to object to the Settlement must submit a written statement of objection ("Notice of Objection") on or before the Response Deadline, and may do so by mailing or faxing the Notice of Objection to the Settlement Administrator.  The date of postmark or fax-stamp shall be deemed the exclusive means for determining that a Notice of Objection was timely submitted.  The Notice of Objection must:  (1) contain the name, address, telephone number, last four digits of the Social Security Number or Tax Identification Number, and signature of the Class Member; (2) contain the case name and number of the Lawsuit; (3) clearly indicate that the Class Member seeks to object to the settlement; (4) state the legal and factual basis for the objection; (5) state whether the Settlement Class Member

1    intends to appear at the Final Approval Hearing; and (6) be postmarked or fax-

2    stamped on or before the Response Deadline and returned to the Settlement

3    Administrator at the specified address or fax telephone number.  The Settlement

4    Administrator shall within five (5) calendar days of receiving an objection provide

5    the Parties with copies of the Notices of Objection.  The Settlement Administrator

6    will lodge all objections that it receives, with the Court, by attaching them to its

7    declaration to be filed with the Court in support of the motion for final approval of

8    the Settlement.

9         3.10    No Solicitation of Objections or Requests for Exclusions.  The Parties

10   agree to use their best efforts to carry out the terms of this Settlement.  At no time

11   shall any of the Parties or their counsel seek to solicit or otherwise encourage Class

12   Members to submit Requests for Exclusion, objections to the Settlement, or to

13   appeal from the Court's Final Approval Order and Judgment.

14        3.11    Uncashed Checks.  If an Individual Settlement Payment check is not

15   cashed or deposited within one hundred eighty (180) days after the date it is mailed

16   to a Settlement Class Member, it will be voided.  The funds from such voided

17   checks will be distributed to Feeding America.  The Settlement Administrator will

18   undertake amended and/or supplemental tax filings and reporting, required under

19   applicable local, state, and federal tax laws, that are necessitated due to the voiding

20   of Individual Settlement Payment checks.

21        3.12    Funding and Allocation of Settlement.  Defendant is required to fully

22   fund and pay the Maximum Settlement Amount of Five Million Dollars

23   ($5,000,000) within fourteen (14) calendar days of the Effective Date.  Defendant

24   shall provide the funds for the Settlement to the Settlement Administrator by

25   certified check or by wire transfer.  The Settlement Administrator shall deposit the

26   funds in the Settlement Account.  Distributions from the Settlement Account shall

27   occur in conformity with the Court's Final Approval Order and Judgment.

28

3.12.1  No more than seven (7) calendar days after the Settlement is fully funded, the Settlement Administrator will provide the Parties with an accounting of all anticipated payments and awards from the fund.  Payments from the fund shall be made for:  (1) the Individual Settlement Payments to Settlement Class Members; (2) the Enhancement Award, as specified in this Agreement and approved by the Court; (3) Class Counsel Award and Class Counsel Costs, as specified in this Agreement and approved by the Court; (4) the Settlement Administration Costs, as specified in this Agreement and approved by the Court; (5) the Translation Provider Costs; and (6) the LWDA Payment, as specified in this Agreement and approved by the Court.

3.13  <u>Individual Settlement Payments</u>.    Individual Settlement Payments shall be mailed by regular First-Class U.S. Mail to Settlement Class Members' last known mailing address within fourteen (14) calendar days after the Settlement is fully funded.

3.13.2  Individual Settlement Payments are allocated as nonemployee compensation, penalties, and interest, and shall be reported as "other income" on IRS Form 1099 and its state and local equivalents.  The Settlement Administrator shall issue the appropriate tax documents associated with the Individual Settlement Payments, including an IRS Form 1099.

3.13.3  Any checks issued to Settlement Class Members shall remain valid and negotiable for one hundred eighty (180) calendar days from the date of their issuance to Settlement Class Members, and after that time, the total amount of any uncashed checks shall be transmitted pursuant to Paragraph 3.11.  By stating a specific date or the number of days after issuance, the checks shall, on their face, indicate the deadline by which they must be negotiated.

3.13.4  No benefit, including but not limited to pension benefits and/or 401(k), shall increase or accrue as a result of any payment made as a result of the Settlement.  Except for the Class Representatives' Enhancement Award, Class

1  Members are not eligible to receive any compensation other than an Individual
2  Settlement Payment, as a result of this Settlement.

3        3.13.5  Each Settlement Class Member's share of the Net Settlement
4  Amount shall be determined as follows:  (i) 20% of the Net Settlement Amount will
5  be divided equally among all of the Settlement Class Members; and (ii) the
6  remaining 80% of the Net Settlement Amount will be distributed based on
7  Settlement Class Members' gross sales to chain stores in California for their
8  respective routes, as follows:  80% of the Net Settlement Amount will be divided
9  by the total gross sales to chain stores in California by all Settlement Class
10  Members; the resulting figure is the unit value per gross sale dollar. The unit value
11  per gross sale dollar will be multiplied by each Settlement Class Member's
12  Compensable Gross Sales (*i.e.*, gross sales to chain stores in California during the
13  Class Period) to yield its pro rata share of the Net Settlement Amount.  The net
14  payment of (i) and (ii) above will be the "Individual Settlement Payment."

15        3.13.6  Each Settlement Class Member that is an entity together with
16  its respective owners, proprietors, partners, and/or members shall constitute a single
17  Settlement Class Member for Net Settlement Amount distribution; for example,
18  Citywide, together with Evans, will constitute a single Settlement Class Member
19  and receive one Individual Settlement Payment solely based on Citywide's gross
20  sales to chain stores in California.  Settlement Class Members' owners, proprietors,
21  partners, and/or members will not receive Individual Settlement Payments in
22  addition to their respective entities' Individual Settlement Payments.

23      3.14  <u>Enhancement Award</u>.  Defendant agrees not to oppose or object to any
24  application or motion by Plaintiffs to be appointed Class Representatives and for a
25  Class Representatives' Enhancement Award.  Class Counsel shall seek a Class
26  Representatives' Enhancement Award for Citywide of up to Fifteen Thousand
27  Dollars ($15,000).  Defendant agrees not to oppose the motion by Plaintiffs for said
28  Class Representatives' Enhancement Award, so long as the requested Class

CASE NO. 2:19-cv-4724 (DSF) (AFMx)          -24-          STIPULATION OF CLASS ACTION AND
PAGA SETTLEMENT AND RELEASE

1    Representatives' Enhancement Award does not exceed this amount.  Any portion of

2    the requested Class Representatives' Enhancement Award that is not awarded shall

3    be a part of the Net Settlement Amount to be distributed to Settlement Class

4    Members as provided in this Agreement.  The Class Representatives' Enhancement

5    Award is intended to be in recognition of the Class Representatives' efforts and

6    time as Class Representatives, and in consideration for Citywide's and Evans'

7    execution of this Stipulation and Citywide's and Evans' release of all claims against

8    Released Parties (as defined in Paragraph 3.2.4).  The Enhancement Award shall be

9    paid to Citywide from the Maximum Settlement Amount within fourteen (14)

10   calendar days after the Settlement is fully funded.  The Settlement Administrator

11   shall issue an IRS Form 1099-MISC to Citywide for its Enhancement Award.

12   Citywide shall be solely and legally responsible to pay any and all applicable taxes

13   on its Enhancement Award, and shall hold harmless Defendant from any claim or

14   liability for taxes, penalties, or interest arising as a result of the Enhancement

15   Award.  The Enhancement Award shall be in addition to Citywide's Individual

16   Settlement Payment as a Settlement Class Member.  In the event that the Court

17   awards less than the requested amount of the Enhancement Award, then any portion

18   of the requested amount not awarded to any Citywide shall be included in the Net

19   Settlement Amount before it is distributed as provided in this Agreement.  In the

20   event the Court reduces or does not approve the requested Enhancement Award,

21   Citywide and Evans shall not have the right to revoke its/his agreement to the

22   Settlement, which shall remain legally binding and enforceable on the Parties.

23        3.15   Class Counsel Award and Costs.  Defendant agrees not to oppose or

24   object to any application or motion by Class Counsel for attorneys' fees not to

25   exceed twenty-five percent (25%) of the Maximum Settlement Amount or One

26   Million Two Hundred Fifty Thousand Dollars ($1,250,000), and Class Counsel

27   Costs not to exceed Fifty Thousand Dollars ($50,000), as supported by declarations

28   from Class Counsel, from the Maximum Settlement Amount.  Class Counsel shall

be paid any Court-approved fees and costs, including any interest accrued thereon, within fourteen (14) calendar days after the Settlement is fully funded. Class Counsel shall be solely and legally responsible to pay all applicable taxes on the payment made pursuant to this Paragraph. The Settlement Administrator shall issue an IRS Form 1099-MISC to Class Counsel for the payments made pursuant to this Paragraph. This Settlement is not contingent upon the Court awarding Class Counsel any particular amount in attorneys' fees and costs. In the event the Court reduces or does not approve the requested Class Counsel Award and/or Class Counsel Costs, the Settlement shall remain legally binding and enforceable on the Parties. Any amount requested by Class Counsel for the Class Counsel Award and/or Class Counsel Costs and not granted by the Court shall be included in the Net Settlement Amount before it is distributed as provided in this Agreement.

3.16    PAGA Payment. Subject to approval by the Court, the Parties shall allocate a total of Forty Thousand Dollars ($40,000) for payment of penalties pursuant PAGA. Per California Labor Code section 2699(i), Thirty Thousand Dollars ($30,000), representing 75% of the PAGA Payment, will be paid to the California's Labor Workforce Development Agency from the Maximum Settlement Amount by the Settlement Administrator within fourteen (14) calendar days after the Settlement is fully funded. The remaining Ten Thousand Dollars ($10,000), representing 25% of the PAGA Payment, shall be distributed to Settlement Class Members as part of the Net Settlement Amount as described in Paragraph 3.13. It is intended by the Parties that the LWDA Payment shall satisfy the distribution requirements of Cal. Lab. Code § 2698 *et seq.* If the Court awards a greater or lesser amount for the PAGA Payment, then the LWDA Payment shall be adjusted to 75% of the Court-approved amount and any remaining portion shall be part of the Net Settlement Amount and available for distribution to Settlement Class Members as provided in this Agreement.

3.17    <u>Settlement Administration Costs</u>.  The Settlement Administrator shall be paid for the costs of administration of the Settlement from the Maximum Settlement Amount.  Such costs of administration are estimated not to exceed Twenty Thousand Dollars ($20,000).  No fewer than twenty-one calendar (21) days prior to the Final Approval Hearing, the Settlement Administrator shall provide the Parties with a statement detailing the costs of administration.  The Settlement Administrator, on Defendant's behalf, shall have the authority and obligation to make payments, credits, and disbursements, including payments and credits in the manner set forth herein, to Settlement Class Members calculated in accordance with the methodology set out in this Agreement and orders of the Court.  The Parties agree to cooperate in the settlement administration process and to make all reasonable efforts to control and minimize the cost and expenses incurred in administration of the Settlement.  The Parties each represent they do not have any financial interest in the Settlement Administrator or otherwise have a relationship with the Settlement Administrator that could create a conflict of interest.  The Settlement Administrator shall be responsible for:  processing and mailing payments to Plaintiffs, Class Counsel, Settlement Class Members, and California's Labor Workforce Development Agency; printing and mailing the Class Notice to the Class Members as directed by the Court; receiving and reporting the Requests for Exclusion submitted by Class Members; providing declaration(s) as necessary in support of preliminary and/or final approval of this Settlement; providing appropriate tax documents, including IRS Form 1099, as needed; and other tasks as the Parties mutually agree or the Court orders the Settlement Administrator to perform.  The Settlement Administrator shall keep the Parties timely apprised of the performance of all Settlement Administrator responsibilities.  Any legally mandated tax reports, tax forms, tax filings, or other tax documents required for the or as a result of the administration of this Agreement shall be prepared by the Settlement Administrator.  Any expenses incurred in connection with such preparation shall be

a cost of administration of the Settlement. The Settlement Administrator shall be paid the Settlement Administration Costs within fourteen (14) calendar days after the Settlement is fully funded.

3.18  Option to Terminate Settlement. If, after the Response Deadline and before the Final Approval Hearing, the number of individuals who submitted timely and valid Requests for Exclusion from the Settlement exceeds five percent (5%) of all Class Members, Defendant shall have, in its sole discretion, the option to rescind this Settlement within seven (7) business days of being informed, in writing, of this information, by the Settlement Administrator. If Defendant exercises its option to terminate this Settlement, Defendant shall pay all Settlement Administration Costs incurred up to the date of termination. If the option to terminate this Settlement is exercised by Defendant, Defendant shall exercise it by providing written notice to Class Counsel and the Court.

3.19  Final Approval Hearing. At a reasonable time following the Response Deadline, the Court shall hold the Final Approval Hearing, where objections, if any, may be heard, and the Court shall determine amounts properly payable for (i) the Class Counsel Award and Class Counsel Costs, (ii) the Enhancement Award, (iii) the LWDA Payment, (v) the Settlement Administration Costs, and (vi) the Translation Provider Costs. Plaintiffs will prepare any briefing, declarations and/or other documents required by the Court or the Federal Rules of Civil Procedure in connection with the Final Approval Hearing. Plaintiffs will provide any such briefing, declarations and/or other documents to Defense Counsel for their review no later than five (5) business days prior to submission to the Court.

3.20  Entry of Judgment. If the Court approves this Settlement at the Final Approval Hearing, the Parties shall request that the Court enter judgment, with the Court retaining jurisdiction over the Parties to enforce the terms of the judgment, pursuant to the Federal Rules of Civil Procedure.

3.21   Nullification of Settlement Agreement.  In the event:  (i) the Court does not permit Plaintiffs to file the Amended Complaint, (ii) the Court does not enter the Preliminary Approval Order as specified herein; (iii) the Court does not grant final approval of the Settlement; (iv) the Court does not enter a Final Approval Order and Judgment; or (v) the Settlement does not become final for any other reason, this Settlement Agreement shall be null and void and any order or judgment entered by the Court in furtherance of this Settlement shall be treated as void from the beginning.  In such a case, the Parties and any funds to be awarded under this Settlement shall be returned to their respective statuses as of the date and time immediately prior to the execution of this Agreement, and the Parties shall proceed in all respects as if this Agreement had not been executed, except that any fees already incurred by the Settlement Administrator shall be paid by Defendant. In the event an appeal is filed from the Court's Final Approval Order and Judgment, or any other appellate review in this Action is sought, administration of the Settlement shall be stayed pending final resolution of the appeal or other appellate review.  Invalidation of any material portion of this Agreement, except for the amounts of the Class Counsel Award, Class Counsel Costs, Enhancement Award, LWDA Payment, and Settlement Administration Costs, which are subject to the Court's approval, shall invalidate this Agreement in its entirety unless the Parties agree in writing that the remaining provisions of this Agreement shall nonetheless remain in full force and effect.

3.22   Waiver of Appeal.  The Parties agree to waive their rights to an appeal relating to this Settlement; provided, however, the Class Representatives may appeal any reduction to the Class Counsel Award.

3.23   No Waiver By Defendant.  Defendant maintains that Plaintiffs and every Class Member is a Party to an individual arbitration agreement with Defendant that is fully enforceable.  The Parties stipulate and agree that Defendant's willingness and agreement to settle claims of individual Class

Members through this Settlement (including, but not limited, actions necessary to effectuate and approve the Settlement) does not in any way waive Defendant's right to enforce its arbitration agreements in the event the Settlement is not approved by the Court.

3.24   No Admission By the Defendant.   Defendant denies any and all claims alleged in this Lawsuit and denies all wrongdoing whatsoever.  This Agreement is not a concession or admission, and shall not be used against Defendant as an admission or indication with respect to any claim of any fault, concession, or omission by Defendant.

3.25   Dispute Resolution.   Except as otherwise set forth herein, all disputes concerning the interpretation and performance of this Agreement, calculation or payment of settlement claims, or other disputes regarding compliance with this Agreement shall be resolved as follows:

3.25.1   If Plaintiffs or Class Counsel, on behalf of Plaintiffs or any Settlement Class Members, or Defendant at any time believes that the other Party has breached or acted contrary to the Agreement, that Party shall notify the other Party in writing of the alleged violation.

3.25.2   Upon receiving notice of the alleged violation or dispute, the responding Party shall have ten (10) business days to correct the alleged violation and/or respond to the initiating Party with the reasons why the Party disputes all or part of the allegation.

3.25.3   If the response does not address the alleged violation to the initiating Party's satisfaction, the Parties shall negotiate in good faith for up to ten business (10) days to resolve their differences.

3.25.4   If thereafter, the Parties still cannot resolve the dispute, the Parties agree that any dispute relating to the terms of the Settlement or this Agreement shall be resolved in a final and binding manner by David A. Rotman, Esq.

CASE NO. 2:19-cv-4724 (DSF) (AFMx)        -30-        STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE

3.26 <u>Exhibits and Headings</u>. The terms of this Agreement include the terms set forth in any attached Exhibits, which are incorporated by this reference as though fully set forth herein. Any Exhibits to this Agreement are an integral part of the Settlement. The descriptive headings of any paragraphs or sections of this Agreement are inserted for convenience of reference only and do not constitute a part of this Agreement.

3.27 <u>Interim Stay of Proceedings</u>. The Parties agree to stay all proceedings in the Lawsuit, subject to necessary compliance with the Court's orders, except such proceedings necessary to implement and complete the Settlement, in abeyance pending the Final Approval Hearing to be conducted by the Court.

3.28 <u>Amendment or Modification</u>. This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest and approved by the Court.

3.29 <u>Entire Agreement</u>. This Agreement and any attached Exhibits constitute the entire Agreement among the Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in the Agreement and its Exhibits.

3.30 <u>Authorization to Enter Into Settlement Agreement</u>. Counsel for all Parties warrant and represent they are expressly authorized by the Parties whom they represent to negotiate this Agreement and to take all appropriate actions required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement. In the event the Parties are unable to reach agreement on the form or content of any document needed to implement the Settlement, or on any supplemental provisions that may become necessary to effectuate the terms of this Settlement, the Parties

may seek the assistance of the Court to resolve such disagreement.  The persons signing this Agreement on behalf of Defendant represent and warrant that they are authorized to sign this Agreement on behalf of Defendant.  Plaintiffs represent and warrant that they are authorized to sign this Agreement and that they have not assigned any claim, or part of a claim, covered by this Settlement to a third-party.

3.31   <u>Binding Nature of Agreement</u>.  This Agreement shall be binding upon, and inure to the benefit of, the successors, heirs, assigns and third-party beneficiaries of the Parties hereto, as previously defined.  To the extent permitted by law, the Class Members who do not opt out of this Settlement shall also be bound by this Agreement and any judgment relating thereto.

3.32   <u>California Law Governs</u>.  All terms of this Agreement and the Exhibits hereto shall be governed by and interpreted according to the laws of the State of California.

3.33   <u>This Settlement is Fair, Adequate, and Reasonable</u>.  The Parties believe and stipulate that this Settlement is a fair, adequate, and reasonable settlement of this Lawsuit and have arrived at this Settlement after extensive, arms-length, non-collusive negotiations, taking into account all relevant factors, present and potential.  In addition, mediator David Rotman, Esq. may, at his discretion, execute a declaration supporting the Settlement, and the Court may, in its discretion, contact Mr. Rotman to discuss the Settlement, and whether the Settlement is fair and reasonable.

3.34   <u>Jurisdiction of the Court</u>.  The Parties agree that the Court shall retain jurisdiction with respect to the interpretation, implementation, and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel hereto submit to the jurisdiction of the Court for purposes of interpreting, implementing, and enforcing the settlement embodied in this Agreement and all orders and judgments entered in connection therewith.

3.35   <u>Invalidity of Any Provision</u>.  Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe that provision as valid and, to the fullest extent possible and consistent with applicable precedent, make all provisions of this Agreement valid and enforceable.

3.36   <u>No Right to Terminate Based on Reduction of Class Counsel Award or Class Counsel Costs</u>.  The Parties agree that any reduction in the Class Counsel Award and Class Counsel Costs shall not constitute grounds to terminate or void the Settlement or otherwise increase the maximum amount payable by Defendant under this Agreement, which shall not exceed the Maximum Settlement Amount defined herein.

3.37   <u>Cooperation</u>.  The Parties agree to cooperate fully with one another to accomplish and implement the terms of this Settlement.  Such cooperation shall include, but not be limited to, execution of such other documents and the taking of such other action as may be reasonably necessary to timely fulfill the terms and approval by the Court of this Settlement.  The Parties to this Settlement shall use their best efforts, including all efforts contemplated by this Settlement and any other efforts that may become necessary by Court order, or otherwise, to effectuate this Settlement and the terms set forth herein.

3.38   <u>Confidentiality</u>.  Plaintiffs and Class Counsel agree that they will not issue any press releases, initiate any contact with the press, respond to any press inquiry (beyond saying "no-comment" or words to that effect), post on any internet websites, or have any communication with the press or third-parties about the Lawsuit, and/or the fact, amount, or terms of this Settlement, unless necessary to effectuate the terms of the Settlement.  Before the date of the filing of the motion for preliminary approval of the settlement, the Plaintiffs and Class Counsel will not initiate any contact with Class Members or anyone else about the Settlement, except that:  (a) Class Counsel, if contacted by a Class Member, may respond that a settlement has been reached and that the details will be communicated in a

forthcoming Court-approved notice; (b) Plaintiffs, if contacted by a Class Member, may respond only that the Class Member should contact Class Counsel; and (c) Class Counsel and Plaintiffs will undertake all required submissions to the LWDA as required by the PAGA statute in connection with this Settlement, and will also provide Defendant's Counsel with a copy of the papers submitted to the LWDA, either prior to or on the same day as the submission to the LWDA.  Nothing herein shall limit Plaintiffs or Class Counsel from communicating with governmental authorities about the Settlement if they are required to do so by law, in which case Class Counsel shall give Defendant seven (7) business days' notice before any such communication occurs, unless the law or other circumstances do not so permit, in which case Plaintiffs or Class Counsel shall give as much notice as practicable under the circumstances.  If Plaintiffs or Class Counsel violate this paragraph of this Agreement, including without limitation, by making a disclosure to any non-party that (a) a settlement has been reached; or (b) any of the terms of the Settlement, before the Court has preliminarily approved the Settlement, Defendant may rescind the settlement, rendering it null and void.

    3.39  <u>Notices</u>.  Unless otherwise specifically provided, all notices, demands, or other communications in connection with this Agreement shall be:  (1) in writing; (2) deemed given on the third business day after mailing; and (3) sent via United States registered or certified mail, return receipt requested, addressed as follows:

*To Plaintiffs:*

MARKUN ZUSMAN FRENIERE &
COMPTON LLP
Jeffrey K. Compton, Esq.
Daria Dub Carlson, Esq.
17383 W. Sunset Blvd., Suite A380
Pacific Palisades, CA 90272-4181

*To Defendant:*

PAUL HASTINGS LLP
Paul Grossman, Esq.
Chris A. Jalian, Esq.
515 South Flower Street, 25th Floor
Los Angeles, CA 90071-2228

CASE NO. 2:19-cv-4724 (DSF) (AFMx)   -34-   STIPULATION OF CLASS ACTION AND
PAGA SETTLEMENT AND RELEASE

3.40  <u>Execution by Settlement Class Members</u>.  It is agreed that it is impossible or impractical to have each Settlement Class Member execute this Settlement Agreement.  The Notice of Settlement will advise all Class Members of the binding nature of the Released Claims as to Settlement Class Members, and such shall have the same force and effect as if each Settlement Class Member executed this Agreement.

3.41  <u>Execution by Plaintiffs</u>.  Plaintiffs, by signing this Stipulation, are bound by the terms herein.

3.42  <u>Interpretation of Agreement</u>.  The Parties hereto agree that the terms and conditions of this Stipulation of Settlement are the result of lengthy, intensive, arms-length, non-collusive negotiations and a neutrally-facilitated mediation between the Parties, and that this Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Agreement.

3.43  <u>Counterparts</u>.  This Agreement shall become effective upon its execution by all of the undersigned.  Plaintiffs, Class Counsel, Defendant, and Defense Counsel may execute this Stipulation in counterparts, and execution of counterparts shall have the same force and effect as if each had signed the same instrument.  Copies of the executed agreement, including scans or PDF versions, shall be effective for all purposes as though the signatures contained therein were original signatures.

**STIPULATED, AGREED, AND ACCEPTED.**

**PLAINTIFF CITYWIDE CONSULTANTS & FOOD MANAGEMENT, LLC**

Print Name: _Knully Evans_                 Date: _12/16 - 2019_

Signature: _____

CASE NO. 2:19-cv-4724 (DSF) (AFMx)      -35-      STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT AND RELEASE

**PLAINTIFF RANDY H. EVANS**

Signature: _____    Date: _12/16-2019_

**DEFENDANT GRUMA CORPORATION**

Print Name: _____    Date: _____

Title: _____

_____

Signature: _____

**APPROVED:**

**MARKUN ZUSMAN FRENIERE & COMPTON LLP**
Counsel for Citywide and Randy Evans

Print Name: _Jeffrey K. Compton_    Date: _12/23/2019_

Signature: _____

**PAUL HASTINGS LLP**
Counsel for Defendant

Print Name: _____    Date: _____

Signature: _____

CASE NO. 2:19-cv-4724 (DSF) (AFMx)    -36-    STIPULATION OF CLASS ACTION AND
PAGA SETTLEMENT AND RELEASE

LEGAL_US_W # 101160875.3

**44**

**PLAINTIFF RANDY H. EVANS**

Signature: _____                Date: _____

**DEFENDANT GRUMA CORPORATION**

Print Name: _David Salera_                Date: _12/20/19_

Title: _Secretary of the Board_

Signature: _____

**APPROVED:**

**MARKUN ZUSMAN FRENIERE & COMPTON LLP**
Counsel for Citywide and Randy Evans

Print Name: _____                Date: _____

Signature: _____

**PAUL HASTINGS LLP**
Counsel for Defendant

Print Name: _Chris Jalian_                Date: _12/20/19_

Signature: _____

CASE NO. 2:19-cv-4724 (DSF) (AFMx)    -36-    STIPULATION OF CLASS ACTION AND
PAGA SETTLEMENT AND RELEASE

# EXHIBIT A

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

**UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
CITYWIDE CONSULTANTS & FOOD MANAGEMENT, LLC, ET AL. V. GRUMA CORPORATION, ET.
AL., CASE NO. 2:19-CV-4724 (DSF) (AFMX)**

*A court authorized this notice. This is not a solicitation from a lawyer.*

## ATTENTION: IF YOU ARE OR WERE SIGNATORIES TO AN AGREEMENT WITH GRUMA CORPORATION FOR THE DISTRIBUTION OF GRUMA CORPORATION'S PRODUCT WITHIN CALIFORNIA BETWEEN MARCH 26, 2015 THROUGH [THE PRELIMINARY APPROVAL DATE], YOU ARE ENTITLED TO A SHARE OF A PROPOSED CLASS ACTION SETTLEMENT.

## TO UNDERSTAND YOUR RIGHTS, READ THIS NOTICE CAREFULLY.

- A proposed class action settlement ("the Settlement") has been reached between plaintiffs Citywide Consultants & Food Management, LLC and Randy H. Evans ("Plaintiffs"), on behalf of themselves and the below-defined Class (see the response to Question 4 below), and Defendant Gruma Corporation ("Defendant").

- The Settlement resolves a class action lawsuit that included claims that Defendant violated California's antitrust laws (known as the Cartwright Act), violated various wage and hour laws, and engaged in unlawful business practices. Defendant denies all liability to Class Members, and asserts that it complied with California law at all times and has entered into the Settlement solely for purposes of resolving this dispute.

- The Settlement provides for settlement payments based on a calculation that takes into account each Class Member's gross sales to chain stores (*e.g.*, Stater Bros Markets and Smart & Final Stores, Inc.) in California for their respective routes between March 26, 2015 and [the preliminary approval date].

**YOUR SHARE OF THE SETTLEMENT PROCEEDS IS ESTIMATED TO BE _____.**

| OVERVIEW OF YOUR LEGAL RIGHTS AND OPTIONS UNDER THE SETTLEMENT | |
|---|---|
| **DO NOTHING** | Subject to the Court's final approval of the terms of the Settlement, you will receive a settlement payment (unless you timely provide a forwarding address to the Settlement Administrator) at the address where this notice was mailed, in exchange for which you will give up your claims in this case within the scope of the release set forth below. |
| **EXCLUDE YOURSELF** | If you submit a Request for Exclusion, which must be postmarked by [+30 from mailing], you will <u>not</u> receive a settlement payment but you will keep your claims against Defendants. |
| **OBJECT** | If you wish to object to the Settlement, you must submit a written objection, and supporting papers, to the Settlement Administrator that is postmarked no later than [+30 from mailing]. |

JOINT STIPULATION RE: CLASS ACTION SETTLEMENT AND RELEASE

- **These rights and options, and how to exercise them, are explained in more detail in this notice.**

- **The Court handling this case still has to decide whether to grant final approval of the Settlement. Settlement payments will only be issued if the Court grants final approval of the Settlement.**

- **Additional information regarding the Settlement is available through the Settlement Administrator or Class Counsel, whose contact information is provided in this notice.**

## BASIC INFORMATION

### 1. Why did I get this notice?

Defendant's records show that you are, or were, a signatory to an agreement with Defendant for the distribution of product, items and/or goods manufactured by Defendant, including, without limitation, Mission Foods and Guerrero Mexican Food Product branded product, items and/or goods ("Product") within California between March 26, 2015 through [the preliminary approval date] ("Class Period"). This notice explains the Lawsuit, the Settlement, and your legal rights.

The lawsuit is known as *Citywide Consultants & Food Management, LLC, et al. v. Gruma Corporation, et. al.,* and is pending in the United States District Court for the Central District of California, Case No. 2:19-cv-4724 (DSF) (AFMx) (the "Lawsuit"). Citywide Consultants & Food Management, LLC ("Citywide") and Randy H. Evans ("Evans") are called the Plaintiffs, and Gruma Corporation is called the Defendant.

### 2. What is the Lawsuit about?

On March 26, 2019, Citywide filed a class action complaint alleging that Defendant violated the Cartwright Act by unlawfully fixing prices of Product and engaged in unlawful business practices. On _____, Citywide filed an amended complaint naming Evans as a named plaintiff and adding class-wide causes of action and claims for alleged violations of the California Labor Code arising out of the purported misclassification of Citywide, Evans and Class Members as independent contractors rather than employees, including claims for unpaid minimum and overtime wages, non-compliant meal and rest periods, untimely final wages, non-compliant wage statements, failure to keep requisite payroll records, unpaid sick leave, unreimbursed business expenses, and unlawful deductions. As a result, Plaintiffs allege they and the members of the Class (defined in response to Question 4 below) are entitled to recover compensatory damages, treble damages, punitive damages, restitution, equitable relief, attorneys' fees, litigation costs, penalties, liquidated damages and interest.

Defendant denies that it engaged in any wrongful conduct or that it violated the law in any way. However, both Plaintiffs and Defendant believe that the Settlement is fair, adequate, and reasonable, and that it is in the best interest of the members of the Class.

### 3. Why is this lawsuit a class action?

In a class action, one or more people called the "Plaintiff" sues on behalf of people who have similar alleged claims. All of these people are a "class" or "class members." The Court resolves the issues for all class members, except for those who exclude themselves from the class. On [preliminary approval date], the Honorable Dale S. Fischer issued an order conditionally certifying the Class for purposes of settlement only.

### 4. Who is in the Class?

"Class" or "Class Members" means all persons and/or entities who/that are or were a signatory to an agreement with Defendant for the distribution of Product within California between March 26, 2015 through [the preliminary approval date], in addition to their owners, proprietors, partners and/or members.

-2-

**5. Why is there a Settlement?**

After conducting substantial investigation, including review of policies and procedures, sales records, distribution agreements, Class Members' gross sales to chain stores, and arbitration agreements, both sides agreed to the Settlement to avoid the cost and risk of further litigation. The Settlement does not mean that any law was broken. Defendant denies all of the claims asserted in the Lawsuit and denies that it has violated any laws. Plaintiffs and their lawyers think the Settlement is in the best interests of all Class Members.

## THE SETTLEMENT BENEFITS—WHAT YOU GET

**6. What does the Settlement provide?**

Under the terms of the Settlement, Defendant agrees to pay a Maximum Settlement Amount of $5,000,000.00. Deducted from this Maximum Settlement Amount will be sums approved by the Court for attorneys' fees (not to exceed $1,250,000.00, 25% of the Maximum Settlement Amount) and costs (not to exceed $50,000.00 total), a single service payment to Plaintiffs, Citywide and Evans (not to exceed $15,000.00 total), a LWDA payment to California's Labor Workforce Development Agency (not to exceed $30,000 total), the fees and expenses of the Settlement Administrator, Atticus Administration, LLC (not to exceed $20,000.00 total), and the fees for translating the class notice from English to Spanish (not to exceed $1,000.00 total), which will result in a maximum amount payable by Defendant for distribution to Class Members who do not opt out (the "Net Settlement Amount").

### Individual Settlement Payment Calculation

The Net Settlement Amount will be distributed to Class Members who do not opt out of the settlement ("Settlement Class Members") as follows: (i) 20% of the Net Settlement Amount will be divided equally among all of the Settlement Class Members; (ii) and the remaining 80% of the Net Settlement Amount will be distributed by a formula that weighs each Settlement Class Member's gross sales to chain stores in California. Specifically, 80% of the Net Settlement Amount will be divided by the total gross sales to chain stores in California by all Settlement Class Members; the resulting figure is the unit value per gross sale dollar. The unit value per gross sale dollar will be multiplied by each Settlement Class Member's Compensable Gross Sales (*i.e.*, gross sales to chain stores in California during the Class Period) to yield its pro rata share of the Net Settlement Amount. The net payment of (i) and (ii) above will be the "Individual Settlement Payment."

Each Settlement Class Member that is an entity together with its respective owners, proprietors, partners, and/or members shall constitute a single Settlement Class Member for Net Settlement Amount distribution; for example, Citywide, together with Evans, will constitute a single Settlement Class Member and receive one Individual Settlement Payment solely based on Citywide's gross sales to chain stores in California. Settlement Class Member's owners, proprietors, partners, and/or members will not receive Individual Settlement Payments.

To the extent any Class Member disputes Defendant's records regarding their gross sales to chain stores in California, that Class Member, shall submit a letter, with any supporting documentation, to the Settlement Administrator by [+30 from mailing]. Defendant's records will be presumed determinative.

Once the settlement becomes Final as defined below, the settlement payments to Settlement Class Members, the service payment to the Class Representatives, and the payment to Class Counsel for their awarded attorneys' fees and expenses will be made within 14 calendar days following the date that the Settlement becomes fully funded. "Final" shall mean the latest of the following dates, as applicable: (i) expiration of all potential appeal periods without a filing of a notice of appeal of the final approval order or judgment; or (ii) final affirmance of the final approval order and judgment by an appellate court as a result of any appeal(s), or (iii) final dismissal or denial of all such appeals (including any petitions for review, rehearing, certiorari, etc.) such that the final approval order and judgment is no longer subject to further judicial review.

Following distribution of the Individual Settlement Payments, any uncollected funds remaining will be distributed to a third-party non-profit recipient, Feeding America.

-3-

CLASS NOTICE

**48**

### 7.   What am I giving up in exchange for the settlement benefits?

In exchange for the consideration provided, each member of the Class who does not submit a valid Request for Exclusion (defined in response to Question 10 below) will release Gruma Corporation dba Mission Foods and/or Guerrero Mexican Food Product, Smart & Final Stores, Inc., Stater Bros. Markets, and any establishment to which Class Members sold Product, and all of their respective current, former, and future parents, subsidiaries, predecessors and successors, and affiliated entities, and each of their respective officers, directors, employees, partners, shareholders, and agents, and any other successors, assigns, or legal representatives (collectively, "Released Parties") from any and all claims that were asserted in the amended class action complaint through the date of final approval order and judgement, including, without limitation, statutory, constitutional, contractual, and/or common law claims for antitrust violations under California or federal law, including but not limited to claims based on vertical price fixing, lost profits, breach of contract, unfair competition, treble damages; any claims under the California Labor Code and applicable Industrial Welfare Commission ("IWC") Orders, including but not limited to claims based on Settlement Class Members' alleged misclassification as independent contractors for unpaid regular and/or overtime wages, meal period premiums, rest period premiums, expenses, interest, and/or statutory and civil penalties (including but not limited to penalties for failure to pay wages, underpayment of wages, late payment of wages, failure to provide accurate itemized statements or maintain records, and civil penalties (including civil penalties under PAGA)), liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

The settlement is not intended to preclude and in no way precludes Defendant or any Released Party from seeking indemnity against any Class Member for any claim, demand, action or proceeding brought by a Class Member's employee(s) or contractor(s) against Defendant or any of the Released Parties asserting any of the claims released in this Lawsuit.

## HOW TO GET A SETTLEMENT PAYMENT

### 8.   How do I get a settlement payment?

Subject to the Court's final approval of the terms of the Settlement, you will automatically be sent a settlement payment at the address where this Notice was mailed (unless you timely provide a forwarding address to the Settlement Administrator) in exchange for which you will give up your claims in this case.

### 9.   When will I get my check?

Checks will be mailed to Settlement Class Members eligible to receive a payment under the Settlement after the Court grants "final approval" of the Settlement.  If the Judge approves the Settlement after a hearing on [final approval date] (see "The Court's Final Approval Hearing") below, there may be appeals.  If there are any appeals, resolving them could take some time, so please be patient.  Please also be advised that you will only have 180 days from the date that the checks are issued to cash them.  If you do not cash your check within 180 days of the date of its issuance, your Individual Settlement Payment shall be voided.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 10.   How do I ask the Court to exclude me from the Class?

If you do not wish to participate in the Settlement ("opt out"), you must complete and send a timely written request for exclusion ("Request for Exclusion") no later than [Response Deadline].  The Request for Exclusion must: (1) contain your name, address, telephone number, last four digits of your Social Security number, and signature; (2) contain the case name and number of the Lawsuit; (3) clearly indicate that you seek to exclude yourself from the Settlement; and (4) be returned to the Settlement Administrator, postmarked or fax-stamped on or before [Response Deadline], to:

[settlement administrator info]

Requests for Exclusion that do not include all required information and/or that are not timely submitted will be deemed null, void, and ineffective.  Class Members who fail to submit a valid and timely Request for Exclusion on or before the above-specified deadline shall be bound by all terms of the Settlement and any judgment entered in

-4-

the Lawsuit if the Settlement is approved by the Court.

**11. If I exclude myself, can I get anything from the settlement?**

No. If you exclude yourself now you will not get anything from the settlement. If you ask to be excluded, you will not get a settlement payment and you will not be bound by the settlement.

**12. If I don't exclude myself, can I sue later for the Released Claims that arose during the Class Period?**

No. Unless you exclude yourself or the Court otherwise excludes you, you give up the right to sue Defendant or any other Released Party for the claims asserted in this lawsuit (as explained in Question 7 above). You must exclude yourself from the Class to start or continue your own lawsuit.

## THE LAWYERS REPRESENTING YOU

**13. Do I have a lawyer in this case?**

The Court has appointed the following lawyers to serve as "Class Counsel" for the Class:

Jeffrey K. Compton, Esq.           Jonathan Weiss, Esq.
Daria Dub Carlson, Esq.            LAW OFFICE OF JONATHAN WEISS
MARKUN ZUSMAN FRENIERE &           10576 Troon Avenue
COMPTON LLP                        Los Angeles, California 90064-4436
17383 W. Sunset Blvd., Suite A380  Telephone:  (310) 558-0404
Pacific Palisades, California 900272-4181
Telephone:  (310) 454-5900

**14. How will the costs of the lawsuit and the Settlement be paid?**

Subject to court approval, Defendant agrees to pay up to $1,250,000.00 in attorneys' fees and up to $50,000.00 costs to Class Counsel. The Court may award less than these amounts. If the Court awards less than the amounts requested, the difference will remain in the Net Settlement Amount for distribution.

In addition, and subject to Court approval, Defendant also agrees to pay Plaintiffs Citywide and Evans $15,000.00 total as a Class Representatives Enhancement Award for their participation in this lawsuit and for taking on the risk of litigation. Defendant also agrees to pay the Settlement Administrator's costs and fees associated with administering the Settlement, estimated not to exceed $20,000.00, and costs to translate this notice from English to Spanish, estimated not to exceed $1,000. The Court may award less than these amounts. If lesser amounts are awarded, those amounts will be included in the Net Settlement Amount payable by Defendant and will be available for distribution to Settlement Class Members.

## OBJECTING TO THE SETTLEMENT

**15. How do I object to the Settlement?**

Any Class Member may object to the proposed Settlement, or any portion thereof, by mailing a written objection, and supporting papers, to the Settlement Administrator at the following addresses by regular U.S. Mail postmarked no later than [+30 days from mailing], or as modified subject to re-mailing:

[settlement administrator info]

A written objection must (1) contain the name, address, telephone number, last four digits of the Social Security Number or Tax Identification Number, and signature of the Class Member; (2) contain the case name and number of the Lawsuit; (3) clearly indicate that the Class Member seeks to object to the settlement; (4) state with specificity the legal and factual basis for the objection; (5) state whether the objection applies only to the objector, to a specific subset of the class, or to the entire class; (6) state whether the Class Member intends to appear at the Final Approval Hearing; and (7) be postmarked or fax-stamped on or before [+30 days from mailing] and returned to the Settlement

Administrator at the specified address or fax telephone number. If a Class Member wishes to appear at the Court's Final Approval Hearing and orally present his or her objection to the Court, the objector's written statement should include the objector's statement of intent to appear at the Court's Final Approval Hearing. **Notwithstanding, in the discretion of the Court, any Class Member, or person purporting to object on behalf of any Class Member, may be received or considered by the Court at the Final Approval Hearing, regardless of whether a written notice of objection is filed or delivered to the parties.** Any Class Member who files an objection remains eligible to receive monetary compensation from the Settlement unless s/he/it submits a timely and valid Request for Exclusion. If the Court overrules any objections and grants final approval of the Settlement, any Class Member who submitted an objection but did not submit a timely and valid Request for Exclusion will be bound by the Release set forth in Section 7 above.

**16. What's the difference between objecting and asking to be excluded?**

Objecting is simply telling the Court you do not like something about the Settlement. If you object, you are still a part of the Class. Excluding yourself is telling the Court that you do not want to be part of the Class.

### THE COURT'S FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the settlement. If you have filed an objection on time you may attend and you may ask to speak, but you don't have to.

**17. When and where will the Court decide whether to approve the settlement?**

The Court will hold a "Final Approval Hearing" on [final approval hearing date and time], in **Courtroom 7D** at the United States District Court for the Central District of California, located at **350 W. 1st Street Los Angeles, California 90012.** The hearing may be moved to a different date and/or time without additional notice. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will also decide how much to pay Class Counsel. After the hearing, the Court will decide whether to approve the Settlement. We do not know how long these decisions will take.

**18. Do I have to come to the hearing?**

No. Class Counsel will answer any questions the judge may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay (at your own expense) another lawyer to attend, but it is not required.

**19. May I speak at the hearing?**

If a Class Member wishes to appear at the Final Approval Hearing and orally present his or her objection to the Court, the objector's written statement should include the objector's statement of intent to appear at the Final Approval Hearing. Notwithstanding, in the discretion of the Court, any Class Member, or person purporting to object on behalf of any Class Member, may be received or considered by the Court at the Final Approval Hearing, regardless of whether a written notice of objection is filed or delivered to the parties.

### IF YOU DO NOTHING

**20. What happens if I do nothing at all?**

If you do nothing, you will automatically receive a payment from this Settlement as described above and you will be bound by the release of claims, subject to the Court's final approval of the terms of the Settlement.

### GETTING MORE INFORMATION

**21. How do I get more information?**

This notice summarizes the Settlement.  You may contact Class Counsel or the Settlement Administrator for more information.  The Settlement Administrator may be contacted at the previously-mentioned mailing address and fax telephone number, as well as at the following toll-free telephone number: [Settlement Administrator's toll-free telephone number].

**Do not contact the Court regarding this Notice or the Settlement.**

-7-

CLASS NOTICE

# EXHIBIT B

1  Jeffrey K. Compton (SBN 142969)
2  Email:  jcompton@mzclaw.com
   Daria Dub Carlson (SBN 150628)
3  Email:  dcarlson@mzclaw.com
4  MARKUN ZUSMAN FRENIERE & COMPTON LLP
   17383 W. Sunset Blvd., Suite A380
5  Pacific Palisades, CA 90272-4181
6  Telephone:  (310) 454-5900
   Facsimile:   (310) 454-5970
7
8  Jonathan Weiss (SBN 143895)
9  Email:  jw@lojw.com
   LAW OFFICE OF JONATHAN WEISS
10 10576 Troon Ave.
11 Los Angeles, CA  90064-4436
   Telephone:  (310) 558-0404
12
13 *Attorneys for Plaintiffs and the Proposed Class*

14

## UNITED STATES DISTRICT COURT

15

### CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

16

| | |
|---|---|
| 17  CITYWIDE CONSULTANTS & FOOD MANAGEMENT, LLC, and RANDY H. EVANS, individually and on behalf of all others similarly situated, | Case No.:  2:19-cv-04724-DSF-AFM |
| 18 | |
| 19 | CLASS ACTION |
| 20  *Plaintiffs*, | FIRST AMENDED CLASS ACTION COMPLAINT FOR: |
| 21  vs. | |
| 22  GRUMA CORPORATION, a Nevada corporation, dba MISSION FOODS CORPORATION; SMART & FINAL STORES, INC.; and STATER BROS. MARKETS, | 1. VIOLATION OF THE CARTWRIGHT ACT (Bus. & Prof. Code, § 16720 et seq.); |
| 23 | |
| 24 | 2. FAILURE TO PAY MINIMUM WAGE (Labor Code, § 1197 AND 1197.1); |
| 25 | |
| 26  *Defendants*. | |
| 27 | 3. FAILURE TO PAY OVERTIME COMPENSATION (Labor Code, § 1194 and 1198); |
| 28 | |

1

4.  FAILURE TO PROVIDE MEAL PERIODS (Labor Code, § 226.7 and 512);

5.  FAILURE TO PROVIDE REST PERIODS (Labor Code § 226.7 and 512);

6.  FAILURE TO PROVIDE PAID SICK LEAVE (Labor Code, § 245, et seq.);

7.  UNLAWFUL WAGE DEDUCTIONS;

8.  FAILURE TO PROVIDE ITEMIZED STATEMENTS (Labor Code, § 226);

9.  FAILURE TO TIMELY PAY WAGES
    (Labor Code, § 201, 202 and 203);

10. PRIVATE ATTORNEYS GENERAL ACT (Labor Code § 2699, et seq.);

11. UNLAWFUL BUSINESS PRACTICES (Bus. & Prof. Code, § 17200 et seq.)

Plaintiffs Citywide Consultants & Food Management, LLC and Randy H. Evans ("Plaintiffs") allege as follows on information and belief against Gruma Corporation, a Nevada corporation, doing business as Mission Foods Corporation, Smart & Final Stores, Inc. and Stater Bros. Markets as follows:

## <u>SUMMARY OF ACTION</u>

1.  Plaintiffs bring this action against Gruma Corporation, a Nevada corporation, doing business as Mission Foods Corporation ("Gruma"), Smart & Final Stores, Inc. and Stater Bros Markets (collectively, the "Chain Store Defendants") for violations of the Cartwright Act (Bus. & Prof. Code, § 16720 et seq), and the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.)

2

("UCL").  Plaintiffs also bring additional claims against Gruma for violations of various wage and hour laws as a result of Gruma's misclassification of Plaintiffs and other class members as independent contractors rather than employees, and for UCL and Private Attorneys General Act representative claims based on these wage and hour violations.

2.     Gruma, the world's largest tortilla maker, contracts with hundreds of delivery drivers to get its goods to market in California.

3.     To avoid employment-related expenses (such as 40-hour work weeks, days off, Social Security, and disability insurance) for its delivery drivers, Gruma uses what is purportedly an independent distributor model, effectuated through a so-called "Store Door Distribution Agreement" ("SDDA").

4.     Whether the class member delivery driver/distribution workers ("Class," "Class Members" or "Distributors") are classified as employees or independent contractors, Gruma's distribution model has one fatal flaw: the Distributors, who buy the products from Gruma before reselling them to Chain Stores, must resell the products at prices negotiated between Gruma and the Chain Stores.  In other words, Gruma and the Chain Stores require Resale Price Maintenance, which is vertical price-fixing in per se violation of the Cartwright Act and the UCL.

5.     One antitrust commentator describes the fatal flaw in Defendants' scheme:

> A supplier selling products or services through independent distributors may face a practical problem in dealing with large national accounts or multi-regional retail accounts.  Many such chain dealers desire, and often require, that purchase contracts be negotiated and approved centrally for all of their individual locations.  Further, such retailers often prefer to deal with and pay a single vender – generally the manufacturer – so as to reduce transaction costs and be able to hold a single party responsible for any marketing problems that might arise.  Therefore, suppliers selling through independent distributors seeking to respond to the realities of serving national accounts

3

1    must cope with antitrust risks.[1]

2    6.    Gruma acknowledges exactly this: "large and multi-regional

3    accounts," [2] which "require central purchasing and billing," [3] may "choose to

4    negotiate with [Gruma] regarding suggested mark-ups and/or other terms and

5    conditions of sale, ***pricing***, invoicing, allowances, promotions, and similar

6    matters pertaining to the sale of Products from Distributor." (SDDA, Spring 2018

7    Amendment, emphasis added.) In fact, those Material Customers, the Chain

8    Stores, only negotiate with Gruma.

9    7.    To meet the Material Customers' requirements of central purchasing

10    and billing, Gruma follows a scan-based trading ("SBT") model. Under SBT, for

11    each product a retail customer has *scanned* at the store checkout, the Chain Stores

12    pay Gruma the "resale price" they have agreed to (i.e., fixed) and have input into

13    a database.

14    8.    For each item scanned, Gruma passes the "resale price" to its

15    Distributors, who have previously purchased Gruma's products from Gruma at a

16    lower "distributor price." The difference between the distributor price and the

17    resale price is the "mark-up" percentage set forth in the SDDA. (The mark-up

18    varies from product to product, and Gruma has the sole prerogative to change it.

19    *See* SDDA, ¶ 4.b.)

20    9.    The Distributors cannot change the resale prices to Chain Stores, i.e.,

21    the prices in the database, and the Chain Stores simply will not negotiate with

22    Distributors.

23    10.    In addition, among other things, Gruma does not pay Distributors

24    minimum wage or overtime compensation, does not provide legally mandated

25    _____

26    [1] Irving Scher, *Antitrust Advisor* (5th ed. 2017 update) § 3:27 (Scher).

27    [2] Gruma uses the term, "Material Customers (i.e. national or regional chains)."
(SDDA Amendment Summary, California.)

28    [3] *Id.*

4

1   meal and rest periods, does not provide paid sick leave, does not provide itemized

2   wage statements and does not timely pay wages.  Gruma also makes improper

3   deductions from Distributors' wages and fails to reimburse them for ordinary

4   business expenses.

5       11.    Plaintiffs bring this action on behalf of themselves and the members

6   of a putative class consisting of all persons or entities who, between four years

7   before the date of the initial Complaint's filing, through to the present and

8   continuing to the time of trial (the "Class Period"), are or were signatories to an

9   agreement with Gruma for the distribution of Products within California (the

10  "Class").

11                    **THE PARTIES**

12  **A.    Plaintiffs**

13      12.    At all relevant times, Plaintiff Citywide Consultants & Food

14  Management, LLC ("Citywide"), was and is a Nevada corporation, with offices in

15  the County of San Bernardino, and a signatory to one or more agreements with

16  Gruma for the distribution of goods within California during the Class Period.

17  Citywide was damaged and lost money or property as a result of the counts

18  alleged herein.

19      13.    At all relevant times, Plaintiff Randy H. Evans ("Evans"), was and is

20  an individual residing in the County of San Bernardino, the sole proprietor and

21  member of Citywide, who personally provided substantially all of the services

22  under the above-alleged agreements.  Evans was damaged and lost money or

23  property as a result of the counts alleged herein.

24  **B.    Gruma**

25      14.    Defendant Gruma is, and at all times mentioned herein was, a Nevada

26  corporation with its principal place of business in Irving, Texas.  Gruma does

27  business as "Gruma" and "Mission Foods," within the State of California.

28  //

**C.    Chain Grocer Defendants**

15.    Defendant Smart & Final is, and at all times mentioned herein was, a Delaware corporation, with its principal place of business in Los Angeles County, California.  Smart & Final is warehouse-style food and supply chain operating 326 stores in California and the western United States.

16.    Defendant Stater Bros. is, and at all times mentioned herein was, a California corporation with its principal place of business in San Bernardino County, California.  Stater Bros. is a privately held supermarket chain, consisting of 172 stores located throughout Southern California.

17.    At all times mentioned herein, each Defendant was the agent, servant, and/or co-conspirator of the other Defendants and in acting and omitting to act as alleged herein did so within the course and scope of that agency and/or conspiracy.

## GENERAL ALLEGATIONS

**A.    Gruma's Business**

18.    Gruma manufactures and distributes baked goods, such as tortillas, under brand names including Mission, Guerrero, and Calidad.

19.    Gruma is among the world's largest producers of flatbread, tortilla and corn flour products with factories in Los Angeles County, including the world's largest tortilla plant in Los Angeles, California.

20.    Throughout this Complaint, unless otherwise required by context, the term "Products" shall include:  corn and flour tortillas, tortilla chips, and other food products manufactured or sold by Gruma to Class Members.

21.    Gruma contracts with Class Members to distribute Products.  The written agreement is entitled a Store Door Distribution Agreement and includes amendments thereto (herein "SDDA").

22.    The SDDA provides that "Title and risk of loss to the Products shall pass to Distributor upon delivery of the Products to Distributor."  (SDDA, ¶ 4.a.)

6

**59**

23.     Virtually all of the retail sales of Defendants' Products to consumers take place through third-party chain stores, such as supermarkets, food stores, warehouse stores, or convenience stores.  These entities are referred to herein as "Chain Stores" and include Smart & Final and Stater Bros., and other similar stores.

24.     With so-called "direct store delivery" (also known as "DSD"), the Chain Stores allocate a certain space and location within their establishments for the display of Gruma's products.  Gruma's Products are distributed to the Chain Stores during the stores' receiving hours by Class Members, who may also arrange the product on the shelves and displays.

25.     The SDDA explicitly states that Gruma's distributors, including Plaintiffs and other Class Members, are workers "engaged in … interstate commerce."  In accordance with the United States Supreme Court decisions in *New Prime, Inc. v. Oliveira* (2019) 586 U.S.___, 139 S. Ct. 532, 536, *Circuit City Stores v. Adams*, 532 U.S. 105, 112 (2001), and *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568, 63 S. Ct. 332, 335 (1943) they are exempt from the Federal Arbitration Act.

**B.     Gruma's "Supplier Agreements" with Chain Stores**

26.     Gruma enters into agreements with Chain Stores, sometimes known as supplier agreements, slotting fee agreements, authorization agreements, and/or customer marketing agreements (herein generally "Supplier Agreements") whereby Gruma commits to sell, deliver, market, and merchandise Products and the Chain Stores agree to provide shelf space for Gruma's products.  (To "merchandise" means to arrange products on shelves in a way that is generally attractive to customers, e.g., with labels readable and products filling the shelves' visible areas.)

27.     Gruma negotiates the terms in the Supplier Agreements, including the price at which the Chain Stores purchase Products, without the involvement of the Plaintiffs or the Class.

7

**60**

28.    The Supplier Agreements are generally confidential and not known or available to Class Members, who are effectively kept in the dark as to their existence and terms.

29.    Supplier Agreements are not always signed agreements.  In some circumstances, Gruma and the Chain Stores perform based on oral proposals as if a fully executed agreement were in place.

30.    Gruma introduces Products, sets prices, obtains authorizations, arranges for displays, obtains more space, determines the type and frequency of promotions, deals and in-store demonstrations, and deals with grocer and retail customer complaints.

31.    The prices fixed by Gruma and the Chain Stores are maintained in computerized databases which form the basis for Chain Stores' payments to Gruma for Products.

32.    Class Members cannot sell Products to some Chain Stores without using SBT.

33.    The SBT system does not allow Class Members to change the prices to Chain Stores.

34.    Based on the databases maintained by Defendants, including the computerized accounting system that the Class Members are required to use, Chain Stores pay Defendants directly for the Products sold and delivered to them by the Class Members, and then Gruma pays the Class Members the price fixed between Gruma and the Chain Stores.

C.    **Gruma's "Distribution Agreements" with Class Members**

35.    Gruma distributes Products through Distributors who sign SDDAs whereby they agree to buy Products from Gruma and resell them to retailers, including the Chain Stores.

36.     The SDDAs are standardized agreements drafted entirely by Gruma and, at least as to the terms described herein, Class Members are not able to

8

negotiate their terms.

37.    Through the SDDAs, Class Members receive a specific geographic area, known as a "Sales Area" or "Route," in which they are to distribute Gruma's Products to retail stores.  Class Members are not permitted to distribute Gruma's Products outside their designated areas.

38.    Class Members generally obtain the contractual right to buy then sell Gruma's Products by purchasing a Route from another distributor or, if the route has been abandoned or otherwise forfeited or is new, from Gruma.  The purchase price for the right to enter into a Distribution Agreement can range from approximately $20,000 to $120,000, with the route purchase price generally based on a multiple of (often ten times) the Route's average weekly gross sales.

39.    The SDDAs state that Class Members are independent contractors: "Distributor agrees that he or she is not an employee of Company for any purpose, but is an independent sales and distribution contractor. ….  Distributor shall in no event purport to be an employee of Company, but shall under all appropriate circumstances make it clear to interested parties that Distributor is an independent contractor."  (SDDA ¶ 11 ["Relationship Created."])  Gruma consistently insists on the independent contractor classification in litigation, arbitration and before governmental authorities.

**D.    Class Members Are Required to Sell Products to Chain Stores at Prices Set by Defendants and the Chain Stores**

40.    Class Members sell Products to Chain Stores and other retail stores. They are required to sell Gruma's Products to the Chain Stores at prices that are set between Gruma and the Chain Stores.

41.    Despite the fact that Class Members purchase the Products from the Defendants and take title to the products, Class Members have no ability to negotiate the price at which they sell Products to the Chain Stores.

42.    Chain Stores would refuse to do business with an independent

9

1  distributor if the distributor somehow offered a different price than that set with

2  Gruma.

3       43.    Defendants require Class Members to comply with the fixed prices

4  in at least the following ways:  (1) through express provisions in the SDDA

5  requiring the Class to sell Products on the terms fixed by Defendants and the

6  Chain Stores; (2) by requiring Class Members to use computer systems that are

7  pre-programmed with the prices fixed by Defendants and the Chain Stores and

8  which prices cannot be altered by Class Members; and (3) through other coercive

9  conduct such as Defendants' ability to terminate Class Members' distribution

10  rights or selling Products directly in Class Members' routes.

11       44.    Defendants are the only source for Products in the Distribution

12  Agreements, so Class Members cannot (or are not permitted to) obtain Products

13  for sale at the same or any lower price from any other source.

14       45.    The SDDA expressly authorizes Gruma to negotiate prices with

15  Chain Stores: "Pricing.  The Company and Distributor recognize that certain of

16  Distributor's **Material Customers** may, for their own convenience and efficiency,

17  **choose to negotiate with the Company regarding** suggested mark-ups and/or

18  other terms and conditions of sale, **pricing**, invoicing, allowances, promotions,

19  and similar matters pertaining to the sale of Products from Distributor.  ...."

20  (SDDA, Spring 2018 Amendment, emphasis added.)

21       46.    Although the SDDA nominally authorizes Distributors "to negotiate

22  pricing terms with any customer who consents to negotiate such pricing with the

23  Distributor," (SDDA Amendment Summary, California), this provision is

24  meaningless because the Distributors do not have the power to negotiate with

25  Chain Stores.

26       47.    Defendants have eliminated any ability or right by which Class

27  Members can sell Product to Chain Stores at a price other than that set by

28  Defendants.

10

**E.     Injury to Class Members**

48.     Class Members cannot set prices in accordance with their own judgment, e.g., raise prices when demand is high or lower them when demand is low.

49.     By not being able to raise prices to Chain Stores (in Class Members' exclusive territories) when demand will be high, Class Members' potential profits are reduced.

50.     By not being able to lower prices to move inventory, Class Members are unfairly saddled with the costs of unsold Products along with their time in delivering, then removing and disposing of Products.  (Most of the Products are perishable, so, unlike other goods, they cannot be saved and resold over an extended time.)

51.     Class Members are misclassified as independent contractors rather than employees, thereby injuring Class Members by depriving them of the compensation and protection contained within wage and hour and related laws.

## ANTITRUST ALLEGATIONS

**A.     Cartwright Act Is Broader than Federal Law in Prohibiting Price Fixing.**

52.     It has been said that "The crux of any price-fixing agreement is the relinquishment by a trader … of the freedom to set prices in accordance with his own judgment." (*Chisholm Bros. Farm Equipment Co. v. International Harvester Co.* (9th Cir. 1974) 498 F.2d 1137, 1142.)  "All price fixing is illegal." (*Balian Ice Cream Co. v. Arden Farms Co.* (S.D.Cal. 1952) 104 F.Supp. 796, 800, fn. 11.)  "A vertical price-fixing agreement, commonly known as resale price maintenance, involves the efforts of a supplier to control the distribution of its product or service by retailers or distributors.  [Citation.]  Such an agreement limits the distributor's freedom to sell the supplier's product at a price

11

1   independently selected by the distributor [citation]; instead, the supplier

2   establishes the price at which its distributors may sell the supplier's products,

3   resulting in maintenance of the resale price at a single level.  ….  A vertical price-

4   fixing or resale price maintenance agreement between supplier and distributor

5   'destroys horizontal competition as effectively as would a horizontal agreement

6   among distributors or retailers' [citation] and is per se unlawful under the

7   Cartwright Act.  [Citation.]"  (*Kunert v. Mission Financial Services Corp.* (2003)

8   110 Cal.App.4th 242, 263.)

9        53.     California's antitrust law, the Cartwright Act, was enacted in 1907

10   "in reaction to the perceived ineffectiveness" of the Sherman Act.  (ABA Section

11   of Antitrust Law, State Antitrust Practice and Statutes (3d ed. 2004), at p. 6-1.)  It

12   is "broader in range and deeper in reach than the Sherman Act …."  (*Cianci v.*

13   *Superior Court* (1985) 40 Cal.3d 903, 920.)  It "reaches beyond the Sherman Act

14   to threats to competition in their incipiency … and thereby goes beyond 'clear-cut

15   menaces to competition' in order to deal with merely 'ephemeral possibilities'

16   [citation]."  (*Id.* at p. 918.)

17        54.     "[H]istorical and textual analysis reveals that the [Cartwright] Act

18   was patterned after the 1889 Texas [antitrust] act and the 1899 Michigan

19   [antitrust] act, and

20

21   not the Sherman Act.  [Citation.]  Hence judicial interpretation of the Sherman

22   Act, while often helpful, is not directly probative of the Cartwright drafters'

23   intent, given the different genesis of the provision under review."  (*State of*

24   *California ex rel. Van de Kamp v. Texaco, Inc.* (1988) 46 Cal.3d 1147, 1164

25   [superseded by statute on other grounds by *Stop Youth Addiction, Inc. v. Lucky*

26   *Stores, Inc.* (1998) 17 Cal.4th 553, 570].)

27        55.     From 1931 until 1976, California expressly allowed vertical price

28   fixing under the so-called "Fair Trade Act."  (*See ABC Internat. Traders, Inc. v.*

12

*Matsushita Electric Corp.* (1997) 14 Cal.4th 1247, 1260-1261 ["In California, a fair trade law, authorizing retail price maintenance agreements with respect to trademarked products, had been passed in 1931 and strengthened in 1933.  (Stats. 1931, ch. 278, p. 583; Stats. 1933, ch. 260, § 1, p. 793, repealed Stats. 1975, ch. 402, § 1, p. 878.)"].)

56.     In 1975, California repealed the Fair Trade Act, "reflect[ing] a growing apprehension that fair trade laws [were] not in the public interest."  (*Rice v. Alcoholic Beverage Control Appeals Bd.* (1978) 21 Cal.3d 431, 438.)

57.     Regardless of their views on the economic benefits or detriments of vertical price fixing, courts have "neither the power nor the duty to determine the wisdom of any economic policy; that function rests solely with the legislature." (*Max Factor & Co. v. Kunsman* (1936) 5 Cal.2d 446, 454.)  "It is primarily a legislative and not a judicial function to determine economic policy."  (*Id.* at p. 155.)

58.     The Cartwright Act, Business and Professions Code section 16720, et seq., prohibits unlawful "trusts," defined in relevant part as follows:

[A] combination of capital, skill or acts by two or more persons for any of the following purposes:

…

(e) To make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description, by which they do all or any or any combination of any of the following:

…

(2) Agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure.

59.     California's position is simple: "vertical price-fixing" is a "per se violation of the Cartwright Act (Bus. & Prof. Code § 16720 et seq.), as well as the Unfair Competition Law (the 'UCL,' Bus. & Prof. Code § 17200 et seq.)."

13

(*State of California v. Bioelements, Inc.* (Super. Ct.  Riverside County, 2010, No. 10011659, Complaint, ¶ 1 [http://oag.ca.gov/system/files/attachments/press_releases/ n2028_bioelements_complaint.pdf]).  "Under current California Supreme Court precedent, vertical price restraints are per se unlawful under the Cartwright Act. [Citation.]  There is no indication that precedent is changing."  (*Darush v. Revision LP* (C.D.Cal. Apr. 10, 2013), No. CV 12-10296 GAF (AGRx), 2013 WL 1749539, at *6; *see* Richard M. Steuer, The Simplicity of Antitrust Law, 14 U. Pa. J. Bus. L. 543, 547 (2012) ["[T]he rule of per se illegality against minimum resale price maintenance remains under the laws of certain states. See, e.g., *California v. DermaQuest, Inc.*, 2010-1 Trade Cas. (CCH) P 76,922 (Cal. Super. Ct. Feb. 23, 2010)"].)

## CLASS ALLEGATIONS

**A.    Definition of Plaintiffs Class and Subclasses.**

60.    The Class consists of all persons or entities who/that are or were signatories to an agreement with Defendant for the distribution of Defendant's Product within California between March 26, 2015 through the Preliminary Approval Date, in addition to their owners, proprietors, partners and/or members.

61.    Plaintiffs signed an SDDA in or about April 2008 and an amendment thereto in or about March 2018.

62.    The Class defined herein may be divided, in this Court's discretion, into subclasses.  The aforementioned Class and any other sub-classes to be later defined are collectively referred to herein as the Class.

**B.    Maintenance of the Action.**

63.    Plaintiffs brings this action individually, on behalf of the Class, and as representative of all similarly situated persons pursuant to Business & Professions Code § 17203 and § 17204 and Federal Rule of Civil Procedure

14

1  23(b)(3).  Plaintiffs also bring representative claims pursuant to the Private

2  Attorneys General Act (California Labor Code, § 2699, et seq.).

3  **C.**     **Class Action Requisites.**

4       64.     At all material times, Plaintiffs were and are members of the Class.

5       65.     This Class Action meets the statutory prerequisites for the

6  maintenance of a Class Action as set forth in Federal Rule of Civil Procedure 23

7  in that:

8       (a)     The persons who comprise the Class are so numerous that the

9  joinder of all such persons is impracticable and the disposition of their

10  claims as a class will benefit the parties and the Court.  More than 100

11  individuals have signed the SDDA;

12       (b)     Nearly all factual, legal, statutory, declaratory and injunctive

13  relief issues that are raised in this Complaint are common to the Class and

14  will apply uniformly to every member of the Class;

15       (c)     Plaintiffs' claims are typical of the claims of each member of

16  the Class.  Plaintiffs, like all other members of the Class, have sustained

17  injury in fact and lost money or property as a result of Defendants'

18  violations of the laws of the State of California.  Plaintiffs and the members

19  of the Class were and are similarly or identically harmed by the same

20  unlawful, deceptive, unfair, systematic and pervasive pattern of misconduct

21  engaged in by the Defendants; and

22       (d)     Plaintiffs will fairly and adequately represent and protect the

23  interests of the Class, and have retained counsel who are competent and

24  experienced in class action litigation.  There are no material conflicts

25  between Plaintiffs' claims and the Class Members' claims that would make

26  class certification inappropriate.  Counsel for the Class will vigorously

27  assert the claims of all Class Members.

28       66.     In addition to meeting the statutory prerequisites to a class action,

         FIRST AMENDED CLASS
ACTION COMPLAINT

this action is properly maintained as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) in that:

(a)    Without class certification and determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual members of the Class will create the risk of:

1)    Inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the parties opposing the Class; or

2)    Adjudication with respect to individual members of the Class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudication or substantially impair or impede their ability to protect their interests.

(b)    The parties opposing the Class have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

(c)    Common questions of law and fact exist as to the members of the Class and predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy, including consideration of:

1)    The interests of the members of the Class in individually controlling the prosecution or defense of separate actions;

2)    The extent and nature of any litigation concerning the

3)    controversy already commenced by or against members of the Class;

16

**69**

<table>
<tr><td>1</td><td>4)</td><td>The desirability or undesirability of concentrating the</td></tr>
<tr><td>2</td><td></td><td>litigation of the claims in the particular forum; and</td></tr>
<tr><td>3</td><td>5)</td><td>The difficulties likely to be encountered in the</td></tr>
<tr><td>4</td><td></td><td>management of a class action.</td></tr>
</table>

1       4)    The desirability or undesirability of concentrating the
2              litigation of the claims in the particular forum; and
3       5)    The difficulties likely to be encountered in the
4              management of a class action.

5    67.    This Court should permit this action to be maintained as a class
6 action pursuant to Code of Civil Procedure § 382 because:

7       (a)    The questions of law and fact common to the Class
8             predominate over any question affecting only individual
9             members;

10      (b)    A class action is superior to any other available method for the
11            fair and efficient adjudication of the claims of the members of
12            the Class;

13      (c)    Plaintiffs and the other members of the Class will not be able to
14            obtain effective and economic legal redress unless the action is
15            maintained as a class action;

16      (d)    There is a community of interest in obtaining appropriate legal
17            and equitable relief for the common law and statutory
18            violations and other improprieties, and in obtaining adequate
19            compensation for the damages and injuries which Defendants'
20            actions have inflicted on the Class; and,

21      (e)    There is a community of interest in ensuring that the combined
22            assets and available insurance of Defendants are sufficient to
23            adequately compensate the members of the Class for the
24            injuries sustained.

25    68.    Gruma's SDDA contains a class action waiver; however, that waiver
26 is not enforceable under *Gentry v. Superior Court* (2007) 42 Cal.4th 443. (*Muro*
27 *v. Cornerstone Staffing Solutions, Inc.* (2018) 20 Cal.App.5th 784, 792-793
28 ["Because we have concluded the FAA is not applicable, the appropriate test

17

---

1  under California law to determine whether to enforce the 'class waiver'

2  provisions of an arbitration agreement remains the four-part analysis under

3  *Gentry*."].)

4      69.    A class action is likely to be a significantly more effective practical

5  means of vindicating the rights of the Class Members than individual litigation or

6  arbitration, and there would be less comprehensive enforcement of the applicable

7  laws if the class action device is disallowed.  Specifically, the following factors

8  favor a class action over individual actions:

9          (a)    The size of the recovery for Class Members would be too

10             modest to pursue individually in individual actions for antitrust

11             violations, wage and hour claims, and unfair business practices.

12         (b)    There is a strong potential for retaliation against Class

13             Members who pursue these claims.  For example, in 2017-

14             2018, Gruma terminated at least four distributors in retaliation

15             for their participation in a group, Association of Mission Food

16             Distributors (Southern California), which was organized to

17             represent the Distributors' interests.

18         (c)    Absent Class Members, many of who are individual drivers

19             operating small businesses and whose primary language is

20             Spanish, may not be well-informed of their rights including

21             their claims for antitrust violations, wage and hour violations,

22             and unfair business practices.

23         (d)    Other real world obstacles inhibit vindication of Class

24             Members' rights through individual actions.  Among other

25             things, Class Members' claims against the Chain Stores are not

26             subject to arbitration, because there is no arbitration agreement

27             between these parties.  Therefore, individual arbitrations will

28             not provide complete relief.

18

70.    Plaintiffs contemplate the eventual issuance of notice to the proposed Class that would set forth the subject and nature of the instant action. Defendants' business records may be used for assistance in the preparation and issuance of the contemplated notices.  To the extent that any further notices may be required, Plaintiffs would contemplate the use of additional media and/or mailings.

**D.    Common Questions.**

71.    Among the many *questions of law and fact* common to the class are whether:

(a)    Chain Stores require central purchasing and billing;

(b)    Chain Stores and Gruma use databases for purchasing and billing;

(c)    Chain Stores and Gruma negotiate the prices the Chain Stores will pay for products sold by Distributors;

(d)    Chain Stores are not willing to negotiate with Distributors the prices Chain Stores pay to Gruma for the Products sold by Distributors;

(e)    Gruma bills and collects from Chain Stores;

(f)    Class Members are entitled to the class-wide relief sought in this Complaint;

(g)    Defendants' price fixing arrangement constitutes an unreasonable restraint of trade in violation of the Cartwright Act (Bus. & Prof. Code, § 16720 et seq.);

(h)    Class Members are improperly classified as independent contractors rather than employees;

(i)    Gruma retains the right to control the manner and means of Class Members' fulfilling their distribution obligations under the SDDA.

(j)    Class Members are free from Gruma's control and direction in

19

1    connection with the performance of the work, both under the

2    SDDA and in fact;

3    (k)    Class Members perform work that is outside the usual course of

4    Gruma's business;

5    (l)    Class Members are customarily engaged in an independently

6    established trade, occupation, or business of the same nature as

7    that involved in the work performed;

8    (m)    Defendants' price fixing arrangement violates the UCL (Bus. &

9    Prof. Code, § 17200 et seq.);

10    (n)    The amount of damages to which the Class is entitled; and

11    (o)    The nature and amount of restitution and equitable relief to

12    which the Class is entitled.

13    72.    A class action is superior to all other methods for the fair and

14    efficient adjudication of this controversy, since joinder of all Class Members is

15    impracticable and since many legal and factual questions to be adjudicated apply

16    uniformly to all Class Members.  Further, as the economic or other loss suffered

17    by vast numbers of Class Members may be relatively small, the expense and

18    burden of individual actions makes it difficult for the Class Members to

19    individually redress the wrongs they have suffered.  Moreover, in the event

20    disgorgement is ordered, a class action is the only mechanism that will permit the

21    employment of a fluid fund recovery to ensure that equity is achieved.  There will

22    be relatively little difficulty in managing this case as a class action.

23    73.    The class action is superior to other available methods for a fair and

24    efficient adjudication of the claims and would reduce the financial, administrative

25    and procedural burdens on the parties and on the Court which individual litigation

26    would otherwise impose.

27    **VENUE**

28    74.    Plaintiffs bring this action in Los Angeles County – the location of

20

1  Gruma's world's largest tortilla plant.  (SDDA, Spring 2018 Amendment, § 15
2  ["Arbitration"], subsection c ["Claims not Covered by this Arbitration Clause"],
3  subsection iii ["In the event that the parties' waiver of the right to assert class and
4  collective action Claims is not legally enforceable, any and all Claims and causes
5  of action arising out of or relating to this Agreement asserted as a class action
6  under Federal Rule of Civil Procedure 23, any similar state statute or rule of
7  judicial procedure, or any equivalent arbitration procedure, shall be filed first in a
8  court of law of competent jurisdiction located within the State and County where
9  the affected Company's Facility is located."].)

10
11  **<u>FIRST CAUSE OF ACTION</u>**

12  (Cartwright Act, Bus. & Prof. Code, § 16720 et seq. – Against all Defendants)

13  75.    Plaintiffs re-allege and incorporate by reference each allegation
14  contained in the foregoing paragraphs.

15  76.    At all relevant times herein, Gruma has and continues to combine,
16  conspire, and agree with Chain Stores to fix the price at which Class Members
17  must sell Products to the Chain Stores.

18  77.    Defendants accomplish this price fixing by including provisions in
19  the Distribution Agreements which require Class Members to comply with the
20  terms of the agreements reached between Gruma and the Chain Stores and by
21  doing all of the billing to and collecting from the Chain Stores at the fixed prices.

22  78.    Defendants' vertical price fixing practices constitute *per se*
23  violations of the Cartwright Act.

24  79.    As a direct, foreseeable and proximate result of Defendants'
25  violations of the Cartwright Act described above, Class Members are not
26  permitted to either increase the resale price to the Chain Stores to generate more
27  profit on each unit of product they sell, decrease the price charged to Chain Stores
28  in the attempt to sell more units of product, or give direct discounts to consumers

21

1  in the attempt to sell more units of product.  Accordingly, Class Members have

2  suffered damages due to Defendants' conduct in an amount to be proven at trial.

3      80.     Class Members are entitled to injunctive relief to prevent and

4  preclude

5  Defendants' anticompetitive conduct.  Under the Cartwright Act, Class Members

6  may "recover … preliminary or permanent injunctive relief when and under the

7  same conditions and principles as injunctive relief is granted by courts generally

8  under the laws of this state and the rules governing these proceedings … ."  (Bus.

9  & Prof. Code, § 16750.)  In the absence of appropriate injunctive relief,

10  Defendants' violations of the antitrust laws will continue unabated in the State of

11  California and Plaintiffs and/or the Class will continue to suffer the harm

12  complained of in this action.

13      81.     Defendants acted intentionally, oppressively and maliciously toward

14  Class Members with a conscious disregard of their rights, or the consequences to

15  Class Members, with the intent of depriving Class Members of property and legal

16  rights and otherwise causing the Class Members injury.

17              **SECOND CAUSE OF ACTION**

18  (Failure to Pay Minimum Wage, Lab. Code §§ 1197, 1194 and 1197.1 – Against

19                          Gruma)

20      82.     Plaintiffs re-allege and incorporate by reference each allegation

21  contained in the foregoing paragraphs.

22      83.     California Labor Code § 1197 provides that the payment of a lower

23  wage than the minimum fixed by state or local law is unlawful.  An employer

24  must pay the minimum wage for each hour worked by the employee.

25      84.     Section 4B of Industrial Welfare Commission Wage Order 9 provides

26  that, "Every employer shall pay to each employee, on the established payday for

27  the period involved, not less than the applicable minimum wage for all hours

28  worked in the payroll period, whether the remuneration is measured by time,

1    piece, commission, or otherwise."

2    85.    At all times relevant hereto, from time to time, Class Members have

3    worked as Gruma's employees but have not been paid minimum wage for all

4    hours worked.

5    86.    Gruma has improperly designated Class Members as independent

6    contractors to avoid payment of minimum wage and other benefits in violation of

7    the

8    California Code of Regulations and the guidelines set forth by the Division of

9    Labor Standards and Enforcement.

10    87.    By virtue of Gruma's unlawful failure to pay minimum wage for all

11    hours worked, Class Members suffered, and will continue to suffer, damages in

12    amounts which are presently unknown to Plaintiffs, but which exceed the

13    jurisdictional limits of this Court and which will be ascertained according to proof

14    at trial.

15    88.    California Labor Code § 1194 provides that an employee who has not

16    been paid minimum wage may recover the unpaid balance of the full amount of

17    such minimum wage, as well as interest, reasonable attorneys' fees and costs of

18    suit.  The action may be maintained directly against the employer in his name

19    without first filing a claim with the Department of Labor Standards and

20    Enforcement.

21    89.    Class Members are also entitled to seek liquidated damages and

22    interest thereon pursuant to California Labor Code § 1194.2.

23    90.    California Labor Code § 1197.1 further provides that an employer

24    who pays an employee less than minimum wage shall be subject to a civil penalty,

25    restitution of wages, liquidated damages payable to the employee and any

26    applicable penalties imposed by § 203.

27    91.    By failing to keep adequate time records required by Labor Code

28    section 1174(d), Gruma has made it difficult to calculate the minimum wage due

23

1  Plaintiffs.

2       92.    Pursuant to Labor Code § 1174.5, Plaintiffs seek statutory penalties

3  against Gruma for failure to maintain such records, and any additional sums as

4  provided by the California Labor Code and/or other statutes.

5  **THIRD CAUSE OF ACTION**

6  (Failure to Pay Overtime Compensation, Lab. Code §§ 510, 558, 1194 and 1198 –

7  Against Gruma)

8       93.    Plaintiffs re-allege and incorporate by reference each allegation

9  contained in the foregoing paragraphs.

10       94.    California Labor Code § 1194 and 1198 provide that employees in

11  California shall not be employed more than eight hours in any workday, and/or

12  more than forty hours in any workweek, unless they receive additional

13  compensation beyond their regular compensation in amounts specified by law.

14       95.    California Labor Code § 1194 provides that an employee who has not

15  been paid overtime compensation as required by § 1198 may recover the unpaid

16  balance of the full amount of such overtime compensation, together with costs of

17  suit, as well as liquidated damages in an amount equal to the overtime

18  compensation unlawfully withheld, and interest thereon, in a civil action.  The

19  action may be maintained directly against the employer in his name without first

20  filing a claim with the Department of Labor Standards and Enforcement.

21       96.    Section 3 of the California Industrial Welfare Commission

22  Occupational Wage Orders applied and applies to Plaintiffs' employment by

23  Defendants.

24       97.    At all times relevant hereto, Section 3 of the California Industrial

25  Welfare Commission Occupational Wage Orders provides for payment of

26  overtime compensation equal to one and one-half times an employee's regular

27  rate of pay for all hours worked over 8 hours a day and/or forty (40) hours in a

28  work week, with double the hourly rate to be paid after 12 hours in a single day

24

1  and for working a seventh consecutive day in any work week.

2      98.    Gruma has improperly designated Class Members as independent

3  contractors to avoid payment of overtime compensation and other benefits in

4  violation of the California Code of Regulations and the guidelines set forth by the

5  Division of Labor Standards and Enforcement.

6      99.    At all times relevant hereto, from time to time, Class Members have

7  worked more than eight hours in a workday, and/or more than forty hours in a

8  workweek, as Gruma's employees.

9      100.   At all times relevant hereto, Gruma failed to pay to Class Members

10 overtime compensation for the hours they worked in excess of the maximum

11 hours

12 permissible by law as required by Labor Code § 1194, 1197 and 1198 and the

13 provisions of the applicable IWC order, set forth in Title 8 of the California Code

14 of Regulations.

15     101.   By virtue of Gruma's unlawful failure to pay additional compensation

16 for overtime hours worked, Class Members suffered, and will continue to suffer,

17 damages in amounts which are presently unknown to Plaintiffs, but which exceed

18 the jurisdictional limits of this Court and which will be ascertained according to

19 proof at trial.

20     102.   Gruma's failure to pay Class Members' overtime compensation has

21 violated and continues to violate Penal Code § 484 and § 532 (obtaining labor

22 through false pretenses), and also constitutes a misdemeanor punishable by a fine

23 or imprisonment under Labor Code § 1199.

24     103.   By failing to keep adequate time records required by Labor Code §

25 1174(d), Gruma has made it difficult to calculate the overtime compensation due

26 Plaintiffs.

27     104.   Class Members request recovery of overtime compensation according

28 to proof, interest, attorney's fees and costs pursuant to Labor Code § 218.5, 218.6

25

1  and 1194(a), as well as the assessment of any statutory penalties against Gruma

2  pursuant to section 558 and 1174.5, and each of them, and any additional sums as

3  provided by the California Labor Code and/or other statutes.

4      105.   Class Members are also entitled to seek liquidated damages and

5  interest thereon pursuant to Labor Code § 1194.2.

6  ## FOURTH CAUSE OF ACTION

7  (Failure to Provide Meal Periods, Lab. Code §§ 226.7 and 512; Cal. Code Regs.

8  §§ 11070 and/or 11090 – Against Gruma)

9      106.   Plaintiffs re-allege and incorporate by reference each allegation

10  contained in the foregoing paragraphs.

11      107.   California Labor Code § 226.7 and § 512 and California Code of

12  Regulations, Title 8, Division 1, Chapter 5, Group 2, §§ 11070(11)(A) and/or

13  11090(11)(A), provides that no employer shall employ any person for a work

14  period of more than five (5) hours without a meal period of not less than 30

15  minutes.

16      108.   California Labor Code § 226.7 and California Code of Regulations,

17  Title 8, §§ 11070(11)(D) and/or 11090(11)(D), provides that if an employer fails

18  to provide an employee a meal period in accordance with this section, the

19  employer shall pay the employee one (1) hour of pay at the employee's regular

20  rate of compensation for each workday that the meal period is not provided.

21      109.   At all times relevant hereto, Class Members have worked more than

22  five hours in a workday.

23      110.   At all times relevant hereto, Gruma failed to provide meal periods as

24  required by California Labor Code § 226.7 and 512 and California Code of

25  Regulations, Title 8, §§ 11070(11)(A) and/or 11090(11)(A).

26      111.   By virtue of the Gruma's unlawful failure to provide meal periods to

27  Class Members, they have suffered, and will continue to suffer, damages in

28  amounts which are presently unknown to Class Members, but which exceed the

26

**79**

1  jurisdictional limits of this Court and which will be ascertained according to proof

2  at trial.

3      112.    Further, Gruma's failure to provide meal periods has violated and

4  continues to violate California Penal Code § 484 and § 532 (obtaining labor

5  through false pretenses).

6      113.    Gruma purposely elected not to provide meal periods.

7      114.    Class Members request recovery of meal period compensation

8  pursuant to California Labor Code § 226.7 and California Code of Regulations,

9  Title 8, §§ 11070 (11)(D) and/or 11090(11)(D), in a sum as provided by the Labor

10  Code and/or other statutes.  Further, Class Members are entitled to seek and

11  recover reasonable attorneys'

12

13  fees and costs pursuant to California Labor Code § 218.5 and § 1194, and

14  penalties pursuant to § 558.

15                    **FIFTH CAUSE OF ACTION**

16      (Failure to Provide Rest Periods, Lab. Code §§ 226.7 and 512; Cal. Code of

17                Regs., Title 8, §§ 11070 and/or 11090 – Against Gruma)

18      115.    Plaintiffs re-allege and incorporate by reference each allegation

19  contained in the foregoing paragraphs.

20      116.    California Labor Code § 226.7 and California Code of Regulations,

21  Title 8, §§ 11070 (12)(A) and/or 11090(12)(A), provides that employers authorize

22  and permit all employees to take rest periods at the rate of ten (10) minutes net

23  rest time per four (4) work hours.

24      117.    California Labor Code § 226.7 and California Code of Regulations,

25  Title 8, §§ 11070 (12)(D) and/or §11090(12)(D), provide that if an employer fails

26  to provide an employee rest periods in accordance with this section, the employer

27  shall pay the employee one (1) hour of pay at the employee's regular rate of

28  compensation for each workday that the rest period is not provided.

27

118. Gruma has intentionally and improperly denied rest periods to Class Members in violation of California Labor Code section 226.7 and California Code of Regulations, Title 8, § 11090(12)(A).

119. At all times relevant hereto, Class Members have worked more than four hours in a workday.

120. At all times relevant hereto, Gruma has failed to provide rest periods as required by California Labor Code § 226.7 and California Code of Regulations, Title 8, §§ 11070 (12)(A) and/or 11090(12)(A).

121. By virtue of Gruma's unlawful failure to provide rest periods to the Class Members, Class Members have suffered, and will continue to suffer, damages in amounts which are presently unknown to them but which exceed the jurisdictional limits of this Court and which will be ascertained according to proof at trial.

122. Further, Gruma's failure to provide rest periods has violated and continues to violate California Penal Code § 484 and § 532 (obtaining labor through false pretenses).

123. Gruma knew or should have known that Class Members were entitled to rest periods and purposely elected not to provide rest periods.

124. Class Members request recovery of rest period compensation pursuant to California Labor Code § 226.7 and California Code of Regulations, Title 8, §§ 11070 (12)(B) and/or 11090(12)(B), in a sum as provided by the Labor Code and/or other statutes. Further, Class Members are entitled to seek and recover reasonable attorneys' fees and costs pursuant to California Labor Code § 218.5 and § 1194, as well as penalties pursuant to § 558.

## SIXTH CAUSE OF ACTION

(Failure to Provide Paid Sick Leave, Lab. Code § 245-249 – Against Gruma)

125. Plaintiffs re-allege and incorporate by reference each allegation contained in the foregoing paragraphs.

28

126.    California Labor Code § 245, et seq. provides that an employer must provide its employees (with certain exceptions not applicable here) paid sick days at the rate of one hour per every 30 hours worked or no less than 24 hours of accrued sick leave or paid time off by the 120th calendar day of employment or each calendar year, or in each 12-month period, or by providing not less than 24 hours or three days of paid sick leave made available on the 120th calendar day of employment.

127.    Gruma regularly did not pay Plaintiffs or the Class Members any paid sick leave. Gruma also failed to display the poster regarding paid sick leave, as required by § 247, and failed to maintain records regarding paid sick days, as required by § 247.5.

128.    Plaintiffs and the Class Members are therefore entitled to payment of sick days unlawfully withheld, in an amount unknown at this time but to be proven at time of trial, as well as an administrative penalty as set forth in Labor Code § 248.5(c).

## SEVENTH CAUSE OF ACTION

(Unlawful Wage Deductions and Failure to Reimburse, Lab. Code §§ 221, 2800 and 2802 – Against Gruma)

129.    Plaintiffs re-allege and incorporate by reference each allegation contained in the foregoing paragraphs.

130.    Labor Code § 221 makes it unlawful for an employer to make deductions from wages for business losses unless the employer can establish that the loss was caused by a dishonest or willful act, or by the culpable negligence of the employees.  This section is a further example of California's strong public policy favoring the protection of employees' wages.

131.    Labor Code § 2800 requires an employer to indemnify its employees for losses caused by the employer's want of ordinary care. Labor Code § 2802 requires an employer to "indemnify his or her employee for all necessary

29

1  expenditures or losses incurred by the employee in direct consequence of the

2  discharge of his or her duties, or of his or her obedience to the directions of the

3  employer, even though unlawful, unless the employee, at the time of obeying the

4  directions, believed them to be unlawful." (Lab. Code, § 2802, subd. (a).)

5  Pursuant to Labor Code § 2804, any agreement to the contrary is null and void.

6  An employee that sues to recover expenses and/or losses incurred in the discharge

7  of employment duties is entitled to recover attorney's fees.

8    132.    Gruma has made and continues to make unlawful deductions from

9  the wages of Class Members for business losses including, but not limited to,

10  debiting their paychecks for stales and otherwise unsalable product that were not

11  caused by any dishonest or willful acts or culpable negligence on the part of the

12  drivers.  As a result, Gruma is liable to Class Members for the amounts

13  unlawfully deducted.  Moreover, Gruma has failed to, and continues to fail to,

14  indemnify employees for expenditures and losses incurred in the discharge of

15  their job duties.

16    133.    Gruma, intentionally and willfully, has made and continues to make

17  unlawful deductions from Plaintiffs' and Class Members' wages.

18    134.    Class Members are entitled to recovery of the sums wrongfully

19  withheld or otherwise unpaid, plus interest thereon, attorneys' fees, and costs.

20  ## EIGHTH CAUSE OF ACTION

21  (Failure to Furnish Itemized Statements, Lab. Code §§ 226, 226.3 and 1174(d) –

22  Against Gruma)

23    135.    Plaintiffs re-allege and incorporate by reference each allegation

24  contained in the foregoing paragraphs.

25    136.    Labor Code § 226 requires that an employer to furnish employees, at

26  the time of payment of wages, an itemized statement showing, among other

27  things, gross wages earned, total hours worked by the employee, all deductions,

28  net wages earned, the inclusive dates of the period for which the employee is

30

1  paid, the name of the employee and only the last four digits of his or her social

2  security number or an employee identification number other than a social security

3  number, the name and address of the legal entity that is the employer, and all

4  applicable hourly rates in effect during the pay period and the corresponding

5  number of hours worked at each hourly rate by the employee.  In addition, an

6  employer is required to provide, for temporary service workers, the rate of pay

7  and the total hours worked for each temporary services assignment.   Pursuant to

8  Labor Code § 1174(d), an employer is required to maintain payroll records

9  showing the hours worked daily by and the wages paid to employees.

10      137.    Gruma intentionally failed to furnish to Class Members, upon each

11  payment of compensation, itemized statements accurately showing this

12  information.  Gruma also failed to maintain appropriate payroll records.

13      138.    Class Members were damaged by these failures because, among

14  other things, the failures led them to believe that they were not entitled to certain

15  wages, even though they were so entitled and because the failures hindered them

16  from determining the amounts of compensation owed to them.

17      139.    Class Members are entitled to the amounts provided in California

18  Labor Code § 226, subdivision (e), civil penalties pursuant to § 226.3, plus costs

19  and attorneys' fees.

20              **NINTH CAUSE OF ACTION**

21      (Failure to Timely Pay Wages; Lab. Code §§ 201, 202, 203, 204 and 210 –

22                  Against Gruma)

23      140.    Plaintiffs re-allege and incorporate by reference each allegation

24  contained in the foregoing paragraphs.

25      141.    Gruma willfully and intentionally failed to pay Class Members all

26  compensation they were due by the deadlines imposed under Labor Code §§ 201,

27  202, and 204.  Accordingly, Class Members are entitled to waiting time penalties

28  pursuant to Labor Code § 203 of up to 30 days' pay in an amount to be proven at

31

1    trial, as well as additional penalties as set forth in Labor Code § 210.

2    **TENTH CAUSE OF ACTION**

3    (Labor Code § 2699, et seq. – Against Gruma)

4    142.    Plaintiffs re-allege and incorporate by reference each allegation

5    contained in the foregoing paragraphs.

6    143.    As alleged above, Gruma failed to comply with various provisions of

7    the California Labor Code.  Gruma also failed to comply with the following

8    additional Labor Code provisions:

9        (a)    Labor Code § 201.3 (failure to pay temporary service workers

10            at the requisite times);

11        (b)    Labor Code § 226.8 (willful misclassification as an

12            independent contractor; unlawful fee charge to willfully

13            misclassified

14        (c)    employees; and charges and unlawful deductions from

15            compensation of misclassified employees);

16        (d)    Labor Code § 2751 (failure to set forth the methods by which

17            margins are computed and paid); and

18        (e)    Labor Code § 2810.5. (failure to provide written notice at time

19            of hiring, including but not limited to notice regarding rates of

20            pay, method of payment, allowances, payday, name of

21            employer, physical address and telephone number of the

22            employer's main office, the employer's workers compensation

23            carrier, and the employees' right to accrued sick leave).

24    144.    As such, Plaintiffs are "aggrieved employees" as defined in Labor

25    Code § 2699(a).  Pursuant to Labor Code § 2699, the Labor Code Private

26    Attorneys General Act of 2004, Plaintiffs bring this action on behalf of

27    themselves and other current and former Distributors against Gruma and seek

28    recovery of applicable civil penalties as follows:

32

(f)     Where civil penalties are specifically provided in the Labor Code for each of the violations alleged herein, Plaintiffs seek recovery of such penalties;

(g)     Where civil penalties are not established in the Labor Code for each of the violations alleged herein, Plaintiffs seek recovery of the penalties established in § 2699(e) of the Labor Code.

145.    On October 14, 2019, Plaintiffs caused to be serviced written notice via electronic submission of their intent to bring an action against Gruma under PAGA to the Labor and Workforce Development Agency ("LWDA") and to Gruma via certified mail on behalf of all current and former California distributors/delivery drivers of Gruma, including Plaintiffs.

146.    The LWDA did not respond to the notice within the time provided by Labor Code § 2699.3.

## ELEVENTH CAUSE OF ACTION

(Unfair Business Practices, Bus. & Prof. Code, § 17200 et seq. – Against all Defendants)

147.    Plaintiffs re-allege and incorporate by reference each allegation contained in the foregoing paragraphs.

148.    Defendants are "persons" as defined under Business and Professions Code § 17201.

149.    Class Members have suffered injury in fact and have lost money or property as a result of Defendants' price fixing.  For instance, by not being able to raise prices to Chain Stores (in their exclusive territories) when demand will be high, Class Members' potential profits are reduced.

150.    Defendants' price fixing is unfair, unlawful, and/or fraudulent as follows:

(a)     ***Unlawful.***  The price fixing practice, as alleged herein, is unlawful under the Cartwright Act.

33

(b) **Unfair.** The utility of Defendants' price fixing practice scheme – wherein Gruma sells Products to distributors and (along with the Chain Grocers) fixes resale prices on those Products – is outweighed by the injury to Class Members and to the general public. (*See Motors, Inc. v. Times Mirror Co.* (1980) 102 Cal.App.3d 735, 740 [balancing test].)

(c) **Unfair.** Defendants' price fixing "offends an established public policy" and is "immoral, unethical, oppressive, and unscrupulous..." (*Smith v. State Farm Mutual Automobile Ins. Co.* (2001) 93 Cal.App.4th 700, 719.)

(d) **Unfair.** Defendants' violation of public policy is "'tethered" to specific constitutional, statutory or regulatory provisions.'" (*Scripps Clinic v. Superior Court* (2003) 108 Cal.App.4th 917, 940.)

151.    In addition, Class Members have suffered injury in fact and have lost money or property as a result of Gruma's misclassifying them as independent contractors.

152.    Gruma's misclassification of Class Members as independent contractors rather than employees, as alleged above, constitutes unlawful, unfair and/or fraudulent activity prohibited by Business and Professions Code § 17200, et seq.

153.    Gruma has intentionally and improperly designated Class Members as independent contractors to avoid the payment of minimum wage, overtime compensation and other benefits in violation of California Labor Code § 510, 1197 and 1198, Penal Code §§ 484 and 532 (obtaining labor through false pretenses), California Code of Regulations, Title 8, § 11070 and/or § 11090, and the guidelines as set forth by the Division of Labor Standards Enforcement and the Industrial Welfare Council, which constitutes unlawful and/or unfair activity

34

1  prohibited by Business and Professions Code § 17200, et seq.

2      154.    Gruma's failure to provide legally required meal periods in violation

3  of the Wage Orders, as alleged above, constitutes unlawful and/or unfair activity

4  prohibited by Business and Professions Code § 17200, et seq.

5      155.    Gruma's failure to provide legally required rest periods in violation

6  of the Wage Orders, as alleged above, constitutes unlawful and/or unfair activity

7  prohibited by Business and Professions Code § 17200, et seq.

8      156.    Gruma's failure to provide legally required sick pay in violation of

9  the Labor Code, as alleged above, constitutes unlawful and/or unfair activity

10  prohibited by Business and Professions Code § 17200, et seq.

11      157.    Gruma's practice of making unlawful deductions from Class

12  Members' wages in violation of Labor Code § 221, and failure to reimburse

13  necessary business expenses in violation of Labor Code § 2802, as alleged above,

14  constitutes unlawful, unfair, and/or fraudulent activity prohibited by Business and

15  Professions Code § 17200, et seq.

16      158.    Gruma's failure to provide Class Members with workers

17  compensation insurance and to pay premiums therefore, in violation of Labor

18  Code § 3700, et seq., constitutes unlawful and/or unfair activity prohibited by

19  Business and Professions Code § 17200, et seq.

20      159.    Gruma's failure to contribute to the unemployment insurance fund

21  on behalf of Class Members in violation of Unemployment Insurance Code § 976

22  constitutes unlawful and/or unfair activity prohibited by Business and Professions

23  Code § 17200, et seq.

24      160.    Gruma's failure to pay excise taxes on behalf of Class Members in

25  violation of Federal Insurance Contributions Act (FICA; 26 U.S.C. § 3111) and

26  Federal Unemployment Tax Act (FUTA; 26 U.S.C. § 3301) constitutes unlawful

27  and/or unfair activity prohibited by Business and Professions Code § 17200, et

28  seq.

35

**88**

161.    As a result of their unlawful and/or unfair acts, Gruma has reaped and continue to reap unfair benefits and illegal profits at the expense of Class Members, law-abiding competitors, and the general public.  Gruma should be enjoined from these activities and made to disgorge their ill-gotten gains.

162.    Because injunctive relief is an appropriate remedy for Defendants' unfair and/or unlawful business practices, arbitration of this claim cannot be compelled notwithstanding the SDDA's arbitration provision.  (SDDA, Spring 2018 Amendment, § 15.)  Holding otherwise would allow Defendants to avoid the public policy underlying the Unfair Practices Act and particularly section 17203, i.e., "Any person who engages, has engaged, or proposes to engage in unfair competition ***may be enjoined*** in any court of competent jurisdiction.  …." (Emphasis added; *see* Civ. Code, § 1668 ["All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."]; and *see Gentry*, *supra*, 42 Cal.4th at p. 456 ["[A]rbitration agreement may not limit the damages normally available under the statute (*Armendariz*, *supra*, 24 Cal.4th at p. 103)"].)

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment as follows:

### **FIRST CAUSE OF ACTION (CARTWRIGHT ACT)**

a.  For damages in an amount yet to be ascertained;

b.  For treble damages;

c.  For punitive damages;

d.  For injunctive relief; and

e.  For prejudgment interest according to law in an amount yet to be ascertained.

36

1  **ELEVENTH CAUSE OF ACTION (UNFAIR COMPETITION LAW)**

2     a. For the equitable, injunctive, restitutionary, disgorgement, and

3       declaratory relief; and

4     b. For prejudgment interest according to law in an amount yet to be

5       ascertained.

6             **ALL CAUSES OF ACTION**

7     a. For Certification of the Classes defined herein, or such other Classes

8       and/or subclasses as the Court will certify;

9     b. For reasonable attorney' fees;

10     c. For costs of suit;

11     d. For penalties and liquidated damages as alleged herein; and

12     e. For such other and further relief as this Court may deem just and proper.

13

14  Dated: December 24, 2019      MARKUN ZUSMAN FRENIERE & COMPTON LLP

15

16

17

18                                 Jeffrey K. Compton

19                                 Attorneys for Plaintiffs and the Class

20

21                  **DEMAND FOR JURY TRIAL**

22     Plaintiffs demand a trial by jury on all claims so triable.

23

24  Dated: December 24, 2019      MARKUN ZUSMAN FRENIERE & COMPTON LLP

25

26

27

28                                 Jeffrey K. Compton

37

CASE NO. 2:19-CV-47424-DSF-AFM        FIRST AMENDED CLASS
                                            ACTION COMPLAINT