1  Jeffrey K. Compton (SBN 142969)
2  Email:  jcompton@mzclaw.com
   MARKUN ZUSMAN FRENIERE & COMPTON LLP
3  17383 W. Sunset Blvd., Suite A380
4  Pacific Palisades, CA 90272-4181
   Telephone:  (310) 454-5900
5  Facsimile:   (310) 454-5970
6
7  Jonathan Weiss (SBN 143895)
   Email:  jw@lojw.com
8  LAW OFFICE OF JONATHAN WEISS
9  10576 Troon Ave.
   Los Angeles, CA  90064-4436
10 Telephone:  (310) 558-0404
11
12 *Attorneys for Plaintiffs and the Class*

13            **UNITED STATES DISTRICT COURT**

14   **CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION**

15

16 | CITYWIDE CONSULTANTS & | Case No. 2:19-CV-04724-DSF-AFM |
   FOOD MANAGEMENT, LCC

17 individually and on behalf of all others
   similarly situated,                        **PLAINTIFFS' NOTICE OF MOTION
18                                             AND MOTION FOR FINAL
                                               APPROVAL OF CLASS ACTION
19            *Plaintiff,*                     SETTLEMENT; MEMORANDUM
                                               OF POINTS AND AUTHORITIES
20
21        v.

22 GRUMA CORPORATION, a Nevada              Date: July 6, 2020
   corporation, dba MISSION FOODS           Time: 1:30pm
23 CORPORATION; SMART & FINAL               Courtroom: 7D
   STORES, INC.; STATER BROS.
24 MARKETS; and DOES 1 through 100,          Judge: Honorable Dale S. Fischer
   inclusive,                                Complaint Filed: March 26, 2019
25
26            *Defendants.*                   Trial Date: None Set
27
28

PLEASE TAKE NOTICE THAT on July 6, 2020, at 1:30 p.m., or as soon thereafter as this matter may be heard in Courtroom 7D of the above-entitled Court, located at First Street Courthouse, 350 West First Street, Los Angeles, California, Plaintiffs Randy H. Evans ("Evans") and Citywide Consultants & Food Management, LLC ("Citywide") (collectively, "Plaintiffs"), on behalf of themselves and the settlement class of distributors/delivery drivers who contracted with Gruma Corporation ("Defendant" or "Gruma") in California from March 26, 2015 through March 5, 2020, will and hereby do seek final approval of the settlement of all claims set forth in Plaintiffs' First Amended Class Action Complaint.  Pursuant to Fed. R. Civ. P. 23(b)(3), Plaintiffs seek an order granting final approval of:

(1)   the proposed Class Action Settlement, adjudging the terms of the settlement to be fair, reasonable and adequate and that its terms and provisions be carried out;

(2)   the Settlement Amount of $5,000,000.00, with no reversion;

(3)   attorneys' fees of 25% of the gross settlement, $1,250,000 (the Motion for Attorneys' Fees, Costs and Enhancement is filed concurrently);

(4)   reimbursement of $26,973.87 in litigation costs;

(5)   payment of Seventeen Thousand Five Hundred Fifty Dollars ($17,550.00) in Settlement Administration Costs to Atticus Administration, LLC ("Atticus" or "Settlement Administrator");

(6)   payment of $793.05 to California Interpreting & Translation for translating the Class Notice from English to Spanish;

(7)   a single Enhancement Award of $15,000 for class representative Citywide and its owner/proprietor Randy H. Evans;

(8)   payment of $30,000 to the Labor and Workforce Development Agency ("LWDA") (75% of the $40,000 Labor Code Private Attorneys General Act of 2004 ("PAGA") allocation) and $10,000 (the remaining 25% of the PAGA allocation) to the Settlement Class; and

i

(9)     Granting final approval of the Net Settlement Amount of $3,659,683.08 payable to the 893 Class Members who have not opted out of the Settlement.

This Motion is made on the grounds that the proposed settlement is fair, reasonable, and adequate.

This Motion is based on this Notice and Motion, the Declarations of Jeffrey K. Compton, Esq., Jonathan Weiss, Esq., Randy Evans, and Christopher Longley and such other and further oral and/or documentary evidence as may be presented at the time of hearing.

Defendants do not oppose this Motion.

Respectfully submitted,

Dated:  June 8, 2020                    MARKUN ZUSMAN FRENIERE & COMPTON LLP


By:  */s/ Jeffrey K. Compton*_____
      Jeffrey K. Compton
      Attorney for Plaintiffs and the Class

# **TABLE OF CONTENTS**

1.  INTRODUCTION ................................................................................................. 1

2.  CLASS NOTICE AND RESPONSE .................................................................. 1

3.  STATEMENT OF FACTS AND PROCEDURAL HISTORY ........................... 2

    A.  Factual Allegations .................................................................................. 2

    B.  Procedural History ................................................................................... 3

    C.  The Amended Complaint .......................................................................... 5

    D.  Preliminary Approval .............................................................................. 6

    E.  Settlement Administration ........................................................................ 6

4.  SUMMARY OF SETTLEMENT TERMS ......................................................... 7

    A.  Class Definition ....................................................................................... 8

    B.  Allocation Plan ........................................................................................ 8

        (1)  Attorneys' Fees and Litigation Costs ........................................... 8

        (2)  Administration Costs .................................................................... 8

        (3)  Translator Costs ........................................................................... 8

        (4)  Plaintiff's Incentive Award .......................................................... 8

        (5)  PAGA Payment and Allocation .................................................... 9

        (6)  Net Settlement Fund ..................................................................... 9

        (7)  Uncashed Checks Will Be Paid to a Cy Pres Recipient ............. 10

5.  THE FINAL APPROVAL STANDARDS ARE SATISFIED ........................ 11

    A.  The Ninth Circuit's Eight Standards Are Met ...................................... 11

        (1)  Strength of Plaintiff's Case ........................................................ 11

            a)  Arbitration Agreement and Class Action Waiver

               are Major Procedural Threats ........................................ 12

            b)  "Rule of Reason" Could Kill the Cartwright Claim ................. 14

            c)  Wage and Hour Claims Present a Mixed Bag ........................... 18

        (2)  Risk, Expense, Complexity, and

            Likely Duration of Further Litigation ........................................ 19

|   |   |     |                                                                                              |    |
|---|---|-----|----------------------------------------------------------------------------------------------|----|
|   |   | (3) | Risk of Maintaining Class Action Status Throughout Trial...............                      | 19 |
|   |   | (4) | Amount Offered in Settlement ...........................................................      | 20 |
|   |   | (5) | Extent of Discovery Completed and Stage of Proceedings...............                        | 20 |
|   |   | (6) | Experience and Views of Counsel........................................................      | 20 |
|   |   | (7) | Presence of a Governmental Participant .............................................         | 21 |
|   |   | (8) | Class Members' Reaction...................................................................    | 21 |
|   | B. |     | The Additional Rule 23(e) Standards Are Met .........................................         | 21 |
|   |   | (1) | The Class Representative and Class Counsel Have Adequately Represented the Class.................................................................. | 22 |
|   |   | (2) | The Proposal Was Negotiated at Arm's Length................................                   | 22 |
|   |   | (3) | Effectiveness of Proposed Method of Distributing Relief ................                      | 23 |
|   |   | (4) | Terms of any proposed award of attorney's fees ..............................                 | 23 |
|   |   | (5) | Any Agreement to be Identified under Rule 23(e)(3)......................                      | 23 |
|   | C. |     | The Higher Pre-Certification Settlement Standards Are Met ...................                 | 23 |
|   |   | (1) | Counsel are not Receiving a Disproportionate Distribution ..............                      | 24 |
|   |   | (2) | No "Clear Sailing" Provision Problem................................................          | 24 |
|   |   | (3) | No Reverter......................................................................................... | 25 |
| 6. |   |     | CONCLUSION ..........................................................................................| 25 |

# **TABLE OF AUTHORITIES**

CASES

*ABC Internat. Traders, Inc. v. Matsushita Elec. Corp.*
14 Cal. 4th 1247 (1997)............................................................12, 18

*Alsheikh v. Superior Court*
2013 WL 5530508 (Cal. Ct. App. Oct. 7, 2013).......................................17

*Bert G. Gianelli Distrib. Co. v. Beck & Co.*
172 Cal. App. 3d 1020 (1985)............................................................14

*Boucher v. All. Title Co.*
127 Cal. App. 4th 262 (2005)............................................................13

*Cal. ex rel. Lockyer v. Powerex Corp.*
2006 WL 997717 (E.D. Cal. Apr. 14, 2006)..............................................17

*Cal. ex rel. Van De Kamp v. Texaco*
46 Cal. 3d 1147 (1988)..................................................................16

*Contreras v. Worldwide Flight Servs.*
2020 WL 2083017 (C.D. Cal. Apr. 1, 2020)...............................................1

*Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego, Inc.*
16 Cal. App. 4th 202 ...................................................................10

*Dynamex Operations W. v. Superior Court* (*Lee*)
4 Cal. 5th 903 (2018)...................................................................18

*Gentry v. Superior Court*
42 Cal. 4th 443 (2007)..............................................................13, 14

*Harden v. Roadway Packaging Sys.*
249 F.3d 1137 (9th Cir. 2001)...........................................................12

*Harris ex rel. Harris*
651 F.3d 1118 (9th Cir. 2011)...........................................................14

*Hudson v. Libre Tech. Inc.*
2020 WL 2467060 (S.D. Cal. May 12, 2020)...............................................22

*In re Cipro Cases I & II*
   61 Cal. 4th 116 (2015).....................................................................................14, 15

*In re High-Tech Emple. Antitrust Litig.*
   2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ...........................................24

*Johnson v. Gruma Corp.*
   614 F.3d 1062 (9th Cir. 2010).....................................................................18, 19

*Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*)
   654 F.3d 935 (9th Cir. 2011)......................................................................11, 24

*Kaye v. Immunocellular Therapeutics, Ltd.*
   2019 U.S. Dist. LEXIS 201657 (C.D. Cal. Nov. 19, 2019).......................11

*Leegin Creative Leather Prods. v. PSKS, Inc.*
   551 U.S. 877 (2007) ..................................................................................15, 17

*Mailand v. Burckle*
   20 Cal. 3d 367 (1978).........................................................................15, 16, 17

*Miles Med. Co. v. John D. Park & Sons Co.*
   220 U.S. 373 (1911) ......................................................................................15

*Moreno v. Guerrero Mexican Food Products, Inc.*
   Case No. CV 05-7737 DSF (PLAx) (C.D. Cal. Oct. 9, 2007)................19

*Mularkey v. Holsum Bakery*
   146 F.3d 1064 (9th Cir. 1998).....................................................................17

*Muro v. Cornerstone Staffing Sols., Inc.*
   20 Cal. App. 5th 784 (2018).......................................................................13, 14

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*
   221 F.R.D. 523 (C.D. Cal. 2004) ...............................................................21

*New Prime v. Oliveira*
   139 S. Ct. 532 (2019) ..................................................................................13

*Paul, Johnson, Alston & Hunt v. Graulty*
   886 F.2d 268 (9th Cir. 1989).......................................................................24

vi

*Rodriguez v. W. Publ'g Corp.*
563 F.3d 948 (9th Cir. 2009)........................................................................24
*Roes v. SFBSC Mgmt., L.L.C.*
944 F.3d 1035 (9th Cir. 2019)...............................................................23, 24
*S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*
48 Cal. 3d 341 (1989)..................................................................................18
*Six (6) Mexican Workers v. Ariz. Citrus Growers*
904 F.2d 1301 (9th Cir. 1990)...............................................................23, 24
*Smothers v. NorthStar Alarm Servs., L.L.C.*
2020 WL 1532058 (E.D. Cal. Mar. 30, 2020) ...........................................23
*Spann v. J.C. Penney Corp.*
211 F. Supp. 3d 1244 (C.D. Cal. 2016).......................................................21
*Walling v. Jacksonville Paper Co.*
317 U.S. 564 (1943) ....................................................................................12

FEDERAL STATUTES
9 United States Code
§ 1 ................................................................................................................12
Federal Rules of Civil Procedure
Rule 23(c)(2)(B) ..........................................................................................11
Rule 23(e)(2) ...............................................................................................11
Rule 23(e)(3) ...............................................................................................23

STATE STATUTES
California Business and Professions Code
§§ 16720 et seq.............................................................................................2
§§ 17200 et seq.............................................................................................3

California Code of Civil Procedure

§ 1281.2(c) .................................................................................................. 13

§§ 2180 et seq. ............................................................................................. 13

California Labor Code

§§ 201-204 ..................................................................................................... 5

§ 210 ............................................................................................................... 5

§ 221 ............................................................................................................... 5

§ 226 ............................................................................................................... 5

§ 226.3 ............................................................................................................ 5

§ 226.7 ............................................................................................................ 5

§§ 245-249 ..................................................................................................... 5

§ 510 ............................................................................................................... 5

§ 512 ............................................................................................................... 5

§ 558 ............................................................................................................... 5

§ 1174(d) ........................................................................................................ 5

§ 1194 ............................................................................................................. 5

§ 1197 ............................................................................................................. 5

§ 1197.1 .......................................................................................................... 5

§ 1198 ............................................................................................................. 5

§ 2800 ............................................................................................................. 5

§ 2802 ............................................................................................................. 5

§§ 2699 et seq. .............................................................................................. 5


OTHER AUTHORITIES

Federal Rules of Civil Procedure, Rule 23, Advisory Committee Notes .................... 21

1

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

2

## 1.   <u>INTRODUCTION</u>

3

Plaintiffs Randy H. Evans and Citywide Consultants & Food Management,

4

LLC, seek final approval of this $5,000,000 non-reversionary, common fund

5

settlement with Defendant Gruma Corporation.  On March 5, 2020, this Court

6

preliminarily approved the Settlement; provisionally certified the class and appointed

7

representatives and class counsel; and approved the notice plan.  Preliminary

8

Approval Order; Dkt. 27.  This matter is now before the Court on Plaintiffs' Motion

9

for Final Approval of the Class Action Settlement.  Plaintiffs have separately filed

10

their Motion for Attorney Fees, Costs, and Class Representative Enhancement ("Fee

11

Motion").  With no objections, it is appropriate to grant final approval without a

12

hearing.[1]

13

14

## 2.   <u>CLASS NOTICE AND RESPONSE</u>

15

The Preliminary Approval Order appointed Atticus Administration, LLC, as

16

the Settlement Administrator, appointed California Interpreting and Translation to

17

translate the Notice from English to Spanish and approved the Class Notice.  The

18

Settlement Administrator timely mailed the approved notice to all 896 class

19

_____

20

21

[1]*See, e.g.*, *Contreras v. Worldwide Flight Servs.*, No. CV 18-6036 PSG (SSx),
2020 WL 2083017, at *1 n.1 (C.D. Cal. Apr. 1, 2020):

22

23

On March 23, 2020, the Central District of California activated its
Continuity of Operations Plan ("COOP") in response to the COVID-19

24

pandemic.  *See* Order of the Chief Judge 20-042.  As part of the COOP,
no civil hearings are to "go forward except for emergency time sensitive

25

matters, such as requests for temporary restraining orders and
preliminary injunctions, as ordered by the assigned judicial officer."  *Id.*

26

at 2.  In light of the COOP, and given that no Class Members have
objected to the Settlement, the Court finds it appropriate to grant final

27

approval without a hearing.

28

1

members.  Declaration of Christopher Longley on Notice and Settlement Administration ("Longley Decl."), ¶ 5.

Class Members had until May 16, 2020 (or May 29, 2020, for those who received a remailed notice) to object or opt out.  Nobody objected; three opted out. Longley Decl., ¶ 9.

Class Members will be sent a Supplemental Notice on June 8, 2020, giving them an opportunity to review and object to the Fee Motion and allowing any objections to that motion to be filed by June 22, 2008.  *See* Longley Decl., ¶ 8.  Class Counsel will file a Reply if any objections to that motion are submitted.

## 3.    STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A.    Factual Allegations

Defendant Gruma distributes tortillas, chips, and other products through distributors ("Distributors"), including Plaintiffs and the other Class Members. During the Class Period, Distributors were required to sign "Store Door Distributor Agreements" ("SDDAs") with Gruma, agreeing to buy products from Gruma and resell them to certain retailers, including chain stores.  Distributors had to contract through an entity (e.g., an LLC), so Evans used Citywide for that purpose.  The SDDAs classify Distributors as independent contractors.  Declaration of Randy H. Evans Supporting Plaintiffs' Motion for Final Approval ("Evans Decl."), ¶ 3.

Gruma pays Distributors the difference between the price the Distributor agrees to pay Gruma and the price the chain store has allegedly negotiated with Gruma.  The latter prices are preprogrammed into computer databases and applied when an item is scanned at checkout.  Based on this alleged practice (Complaint, Dkt. 1, Exh. B, ¶¶ 30-34), Plaintiff Citywide asserted antitrust claims under California's Cartwright Act, which prohibits "acts by two or more persons" who "[a]gree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure."  Cal. Bus. & Prof. Code §§ 16720 et seq.

2

Plaintiffs contend that fixing the prices Class Members can charge chain stores constitutes "resale price maintenance" or "vertical price-fixing" in *per se* violation of the Cartwright Act. Plaintiffs also allege that such price fixing violates California's Unfair Business Practices Act (Cal. Bus. & Prof. Code §§ 17200 et seq.).

### B.   Procedural History

On March 26, 2019, Citywide filed its original Class Action Complaint in a California state court. On May 30, 2019, Defendants removed the case to this Court. Dkt. 1. On June 5, 2019, they moved to compel individual arbitration. Dkt. 13. Shortly thereafter, the parties agreed to mediation before David A. Rotman, Esq.

As part of the mediation, along with the pending antitrust claims, the parties agreed to attempt to resolve potential wage and hour claims associated with Gruma's classification of its Distributors as independent contractors. The misclassification claims included those for minimum wages, overtime, unreimbursed costs, and improper deductions; failure to provide meal and rest breaks, paid sick leave, timely wages, and itemized wage statements; and those arising under PAGA (Cal. Lab. Code, § 2698 et seq.). Declaration of Jeffrey K. Compton Supporting Plaintiffs' Motion for Final Approval ("Compton Decl."), ¶ 7.

Before and during the August 23, 2019 mediation, the parties exchanged information enabling them to analyze the value of settlement. For instance, Gruma provided: (1) templates/exemplars of SDDAs (and amendments); (2) information concerning Gruma's relationship with chain grocers; (3) pricing information; (4) Class Members' gross sales for the Class Period; and (5) extensive briefing supporting its defenses. Compton Decl., ¶ 8.

In turn, Plaintiffs documented for Gruma Plaintiffs': (1) sales to non-chain stores during the class period; (2) use of employees and/or independent contractors to distribute product, (3) distribution of non-Gruma products during the class period, and (4) purchase and sale of the business/route. Compton Decl., ¶ 8.

3

1      To determine the potential damages, Plaintiffs retained economist Jon M.

2  Riddle, Ph.D., who analyzed the difference between Gruma's Distributors' profits

3  and other grocery distributors' profits whose prices are not fixed.  Dr. Riddle

4  calculated potential damages resulting from the antitrust damages ranging from

5  $162.6 to $251.2 million.  Plaintiffs' counsel also considered Evans' hours worked

6  including overtime, meal and rest breaks taken, and deductions from wages and

7  unreimbursed expenses.  Plaintiffs and their counsel also asked other Gruma

8  Distributors about their particular facts and circumstances.  Plaintiffs' counsel

9  determined that costs and deductions were the largest component of the wage and

10  hour claims.  Plaintiffs' costs and deductions for the three years of the Class Period

11  averaged about $28,000 a year.  Because many of these costs are incurred by all of

12  Gruma's Distributors (e.g., handheld computers, etc.), counsel assumes that

13  Plaintiffs' costs are similar to those of the other Class Members.  Compton Decl., ¶ 9.

14      Counsel provided the mediator with extensive briefing.  Compton Decl., ¶ 10.

15  They also brought a good deal of experience litigating the issues at hand – including,

16  specifically, litigating against Gruma.  From 2001-2010, Plaintiffs' counsel

17  represented some of the same class members (with different representatives) in a

18  class action arbitration which began with the same antitrust and wage and hour

19  counts.  Though the arbitrator decided against the class, and although much of the

20  information from that case was privileged and, therefore, unavailable – counsel were

21  uncommonly familiar with Gruma's business.  Compton Decl., ¶ 10.a.  During 2005-

22  2009, Plaintiffs' counsel was also counsel in a wage and hour class action, before this

23  Court, on behalf of a class of sales drivers against Gruma's former Guerrero division.

24  Compton Decl., ¶ 10.b.  Additionally, from 2013 through 2019, Plaintiffs' counsel

25  Jonathan Weiss litigated similar claims against another bakery (Sara Lee/Bimbo)

26  which was represented by the same counsel who defended the Gruma arbitration and

27  who represent Gruma in the current case.  Declaration of Jonathan Weiss Supporting

28  Plaintiffs' Motion for Final Approval ("Weiss Decl."), ¶ 3.d.  In sum, the parties were

4

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR          2:19-CV-04724-DSF-AFM
FINAL APPROVAL OF CLASS ACTION SETTLEMENT            CITYWIDE V. GRUMA CORP.

thoroughly versed in the facts and laws to be addressed and their counsel had a history of advocacy between them.

With that extensive background, the parties participated in a full-day, arms-length mediation which produced a Memorandum of Agreement to resolve the antitrust and wage and hour claims.  Thereafter, on December 23, 2020, they entered into a Stipulation of Class Action and PAGA Settlement and Release (the "Settlement" or "Stipulation").  Compton Decl., ¶ 13 and Dkt. 22-3, pp. 9-45.

### C.   The Amended Complaint

Because the Settlement resolved potential wage and hour claims as well as the pending antitrust claims, the parties agreed that Plaintiffs would amend the Complaint to add the following causes of action:  (1) Failure to Pay Minimum Wage (Cal. Lab. Code §§ 1194, 1197, 1197.1); (2) Failure to Pay Overtime Compensation (Cal. Lab. Code §§ 510, 558, 1194, 1198); (3) Failure to Provide Meal Periods (Cal. Lab. Code §§ 226.7, 512); (4) Failure to Provide Rest Periods (Cal. Lab. Code §§ 226.7, 512); (5) Failure to Provide Paid Sick Leave (Cal. Lab. Code §§ 245-249); (6) Unlawful Wage Deductions and Failure to Reimburse (Cal. Lab. Code §§ 221, 2800, 2802); (7) Failure to Provide Itemized Wage Statements (Cal. Lab. Code §§ 226, 226.3, 1174(d) ); (8) Failure to Timely Pay Wages (Cal. Lab. Code §§ 201, 202, 203, 204, 210); and (9) Private Attorneys General Act Cal. Lab. Code §§ 2699 et seq. ).  The parties also agreed that the Amended Complaint would include Evans, the owner/proprietor of Citywide, as a named plaintiff.  Compton Decl., ¶ 14.

The First Amended Complaint and Stipulation to file First Amended Complaint were filed concurrently with the Motion for Preliminary Approval, and the Court approved the Stipulation on December 26, 2019.  The California Labor and Workforce Development Agency was served with the Motion for Preliminary Approval and all supporting documents on December 24, 2019.  Decl. of Kelsey Mejia re Submission of Motion for Preliminary Approval to LWDA, Dkt. 24, ¶ 2.

### D.   **Preliminary Approval**

Plaintiffs' Motion for Preliminary Approval was heard on March 2, 2020. The Court had several questions as well as a few revisions to the proposed Class Notice of Class Action Settlement, and it ordered the Parties to submit a revised Class Notice and Proposed Order addressing these concerns. On March 5, 2020, the Court entered its Order Granting Plaintiff's Motion for Preliminary Approval of Class Action Settlement. Dkt. 27. This Court stated:

> The Court finds that the proposed settlement is fair, reasonable, and adequate pursuant to Federal Rule of Civil Procedure 23(e)(2) because: (1) the class representatives and class counsel have adequately represented the class; (2) the settlement was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into account: (a) the costs, risks, and delay of trial and appeal; (b) the proposed method of distributing relief to the class, including the method of processing class-member claims, is effective; (c) the terms of the proposed award of attorney's fees, subject to the Court's approval, are reasonable; (d) the agreement is identified under Rule 23(e)(3); and (4) the settlement treats class members equitably relative to each other.
>
> The Court further finds there is no evidence of collusion because: (1) counsel will not receive a disproportionate distribution of the settlement; (2) although the parties have negotiated a "clear sailing" arrangement, it does not evidence collusion; and (3) there is no reverter that returns unclaimed funds to the defendant.

March 5, 2020, Order, pp. 2-3. The Court also approved Evans and Citywide as the Class and PAGA representatives, and it appointed Jeffrey K. Compton, Esq. and Daria Carlson of Markun Zusman Freniere & Compton LLP, and Jonathan Weiss of the Law Office of Jonathan Weiss as class counsel. *Id.*, p. 3.

### E.   **Settlement Administration**

On April 2, 2020, Atticus received from Defendants a list of 896 Class Members encompassed by this Settlement. Longley Decl., ¶ 4. The list provided contact information, as well as total sales of Gruma's product to Chain Stores in California during the Class Period, for each Class Member. *Id.*

6

On April 16, 2020, Atticus mailed the Notice Packet to all Class Members. Longley Decl., ¶ 5.  Atticus received 29 returned Notice Packets, was able to locate 18 new addresses, and re-mailed the Notice Packet to those individuals.  Longley Decl., ¶ 7.

No Class Member objected, and 3 of 896 Class Members (0.33% of the Class) opted out.  Longley Decl., ¶ 9.

Atticus has preliminarily calculated the settlement awards of the 893 participating Class Members.  These calculations are based on the assumptions that, from the $5,000,000 gross settlement amount, deductions are made for (1) attorneys' fees at $1,250,000; (2) attorneys' costs at $26,973.87; (3) representative plaintiffs' enhancement payment at $15,000; (4) settlement administration fees to Atticus at $17,550; (5) translation fees to California Interpreting & Translation at $793.05; and (6) payment to the LWDA at $30,000.  The remaining amount will be allocated pursuant to the terms of the Settlement to those 893 Class Members who did not opt out of the Settlement.  The minimum, maximum, average, and median awards for the Class are $820.55, $39,278.26, $4,102.78, and $3,224.93, respectively.  Longley Decl., ¶ 15.  Should the Court-awarded fees or costs differ from those set forth above, the award allocation calculations will change accordingly.  *Id.*

## 4.    SUMMARY OF SETTLEMENT TERMS

Defendants will pay $5,000,000 of which at least $3,659,683.08 will be allocated among the Class Members.  Class Members who did not opt out will be paid based primarily on their proportion of sales to chain stores during the Class Period (March 26, 2015 through March 5, 2020).  A further summary follows. \ \ \

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT

2:19-CV-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

## A.     Class Definition

The Court approved, for settlement purposes only, a class defined as "all persons or entities who/that are or were signatories to an agreement with Defendant for the distribution of Defendant's Product within California between March 26, 2015 through the Preliminary Approval Date [March 5, 2020], in addition to their owners, proprietors, partners and/or members."  Dkt. 27, p. 3.

## B.     Allocation Plan

### (1)     Attorneys' Fees and Litigation Costs

Class Counsel have filed their Fee Motion seeking $1,250,000 in attorneys' fees, which represents 25% of the Gross Settlement Amount.  Class Counsel also seek to recover their out-of-pocket costs of $26,973.87.  Compton Decl., ¶ 22; Weiss Decl., ¶ 16.  The Class Notice disclosed the request of up to $1,250,000 in fees and $50,000 in costs.

### (2)     Administration Costs

Plaintiffs request final approval of $17,550 to Atticus for administering the settlement, providing notice, distributing the settlement funds, and resolving any disputes raised by any Settlement Class Member.  Longley Decl., ¶ 16.  The Class Notice disclosed the request of up to $20,000.

### (3)     Translator Costs

Plaintiffs request final approval of $793.05 to California Interpreting & Translation for translating the Class Notice from English to Spanish.  Compton Decl., ¶ 24.  The Class Notice disclosed the request of up to $1,000.

### (4)     Plaintiff's Incentive Award

Plaintiffs request final approval of an enhancement award for Citywide and

8

Evans in the total amount of $15,000, as set forth in the Fee Motion filed concurrently herewith. This amount was disclosed in the Class Notice.

### (5)   PAGA Payment and Allocation

Plaintiffs request final approval of a $40,000 PAGA payment: $30,000 to the LWDA, with the remaining $10,000 going to the Net Settlement Fund. This amount was disclosed in the Class Notice.

### (6)   Net Settlement Fund

The balance (the "Net Settlement Amount") shall be distributed upon final approval to all Settlement Class Members without the need for any claims to be submitted. Each Settlement Class Member will get an equitable share based primarily on a distribution formula weighing the Distributor's sales against Gruma's total sales to chain stores in California during the Class Period, determined as follows: (i) 20% of the Net Settlement Amount will be divided equally among all of the Settlement Class Members; and (ii) the remaining 80% of the Net Settlement Amount will be distributed based on Settlement Class Members' percentage of gross sales to California chain stores. The sum of (i) and (ii) above will be paid to each Settlement Class Member. Each entity, together with its respective owners, proprietors, partners, and/or members shall constitute a single Settlement Class Member; for example, Evans and Citywide are considered a single Settlement Class Member, so they will get one share.

If the Court approves the requested fees and costs, the total amount available for distribution to the Settlement Class Members will be $3,659,683.08. Individual Settlement Payments will range from approximately $820 to $39,278, depending on the amount gross sales made to chain stores, which is largely a function of the number of routes owned and the length of time distributing; the average allocation will be about $4,103. Longley Decl., ¶ 15.

9

Each putative Class Member's Notice provided an estimate of that Class Member's anticipated distribution share. Class Members had the opportunity, if they disagreed with Gruma's records regarding their compensable gross sales as stated on their Class Notice, to dispute the information in writing to the Settlement Administrator, who would consult with the parties to determine whether an adjustment is warranted. Stipulation, ¶ 3.7, Dkt. 22-3 at p. 28. No Class Member disputed the compensable gross sales. Longley Decl., ¶ 9.

This allocation parallels the standard for setting damages under the Cartwright Act. Specifically, Cal. Bus. & Prof. Code § 16760(d) allows assessing damages "by the pro rata allocation of illegal overcharges or of excess profits, or by any other reasonable system of estimating aggregate damages as the court in its discretion may permit without the necessity of separately proving the individual claim of, or amount of damage to, persons on whose behalf the suit was brought." *See Diesel Elec. Sales & Serv., Inc. v. Marco Marine San Diego, Inc.*, 16 Cal. App. 4th 202, 218-20 (1993) (Cartwright Act does not require precision or certainty in damage calculations or distributions). Here, each Class Member's share of the damages is primarily based on that Class Member's total gross sales. This allocation also makes sense for the wage and hour claims because it is likely that the higher a Class Members' gross sales, the more hours they worked and (especially) the more costs they incurred. Compton Decl., ¶ 9.

### (7)    Uncashed Checks Will Be Paid to a Cy Pres Recipient

If an Individual Settlement Payment check is uncashed within 180 days after mailing, it will be voided and the funds given to the *cy pres* recipient, Feeding America, a non-profit entity which distributes 4.3 billion meals yearly through food pantries and meal programs throughout the United States. The parties and their counsel have no interest or involvement in the governance or work of Feeding America. Compton Decl., ¶ 26; Weiss Decl., ¶ 15; Evans Decl., ¶ 29.

10

## 5.   THE FINAL APPROVAL STANDARDS ARE SATISFIED

"In order to approve a settlement in a class action, the court must conduct a two-step inquiry.  First, the court must determine whether the notice requirements of Rule 23(c)(2)(B) have been satisfied.  Second, it must conduct a hearing to determine whether the settlement agreement is 'fair, reasonable, and adequate.'  *See* Fed. R. Civ. P. 23(e)(2); *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (discussing the Rule 23(e)(2) standard)."  *Kaye v. Immunocellular Therapeutics, Ltd.*, No. SA CV 17-3250 FMO (SKx), 2019 U.S. Dist. LEXIS 201657, at *7 (C.D. Cal. Nov. 19, 2019).  In determining whether a settlement is fair, reasonable, and adequate, courts in the Ninth Circuit must weigh some or all of the following factors:  "(1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement."  *Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575 (9th Cir. 2004)).

### A.   The Ninth Circuit's Eight Standards Are Met
#### (1)   Strength of Plaintiff's Case

Plaintiffs believe they have a strong case for price fixing and/or violating wage and hour laws, as outlined in sections 3.A and 3.C, above, and as detailed in the following sections.  They are also aware of their case's weaknesses, both procedural and substantive.

*Procedurally*, the Class Members' agreements to arbitrate and waive collective actions are significant hurdles.  So too is certification.  Gruma opposed certification in an earlier case on grounds that Distributors ranged from sole proprietors, running

single routes with no helpers, to "multi-route" owners, using several employees to run them – all having diverse views on whether they should be classified as employees or retain their independent contractor classification.  Compton Decl., ¶ 10.a.

*Substantively*, the chance of a court abrogating the *per se* standard applied to the Cartwright Act's prohibition on vertical price fixing and the possibility that the Legislature could (once again) allow vertical price fixing are big risks.  The latter possibility is not unprecedented.  Starting in the Great Depression, from 1931 until 1976, California expressly allowed vertical price fixing under the so-called "Fair Trade Act."  *See ABC Internat. Traders, Inc. v. Matsushita Elec. Corp.*, 14 Cal. 4th 1247, 1260-61 (1997) (*ABC Internat.*) ("In California, a fair trade law, authorizing retail price maintenance agreements with respect to trademarked products, had been passed in 1931 and strengthened in 1933. (citation omitted)").

### a)  Arbitration Agreement and Class Action Waiver are Major Procedural Threats

The SDDA contains a class action waiver and a provision compelling arbitration of "any disputes that may arise between the Company and Distributor" under the Federal Arbitration Act ("FAA").  At the time of the parties' mediation, Defendants' Petition to Compel Arbitration was pending before this Court.  Dkt. 13.  Plaintiffs contend Class Members are exempt from the arbitration mandate since the FAA excludes "transportation workers" engaged in "interstate commerce."  FAA §1, 9 U.S.C. § 1; *Walling v. Jacksonville Paper Co.*, 317 U.S. 564, 568 (1943).

Defendants contend that the "transportation worker" exemption does not apply because Class Members do not cross state lines in making their deliveries and that interstate delivery of goods is not the Class Members' primary responsibility.  *Harden v. Roadway Packaging Sys.*, 249 F.3d 1137, 1140 (9th Cir. 2001).  Defendants also contend that the FAA exemption does not apply because Citywide, which signed the SDDA with Gruma, is an entity as opposed to an individual and therefore cannot be a "worker" engaged in interstate commerce.  Plaintiffs respond that certain of Gruma's

12

product is manufactured in Mexico, triggering the interstate commerce exception, and that the definition of "worker" is broadly defined to include anyone who performs work for the employer. *New Prime v. Oliveira*, 139 S. Ct. 532, 535 (2019) (independent contractors are "workers" under the FAA). Nevertheless, Plaintiffs recognize that a court could find that the exemption does not apply to them, in which case they could be bound to arbitrate in individual arbitrations.

Even if Class Members are exempt from the FAA, the SDDA requires application of the California Arbitration Act ("CAA"), Cal. Code Civ. Proc., §§ 2180 et seq. Under the CAA, *Gentry v. Superior Court*, 42 Cal. 4th 443 (2007) would determine whether the case should be arbitrated with Gruma – and whether the class waiver is enforceable. *Muro v. Cornerstone Staffing Sols., Inc.*, 20 Cal. App. 5th 784, 792-93 (2018).

Plaintiffs believe this case should not be sent to arbitration because the co-Defendant Chain Stores are not signatories to the SDDA, which contains the arbitration provision. Defendants respond that Plaintiffs' claims against the Chain Store Defendants can nonetheless be compelled to arbitration because "a non-signatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the non-signatory are 'intimately founded in and intertwined' with the underlying contract obligations." *Boucher v. All. Title Co.*, 127 Cal. App. 4th 262, 271-72 (2005). Rather than compelling the claims against the non-signatories to arbitration, Plaintiffs would ask the Court to exercise its discretion under the CAA (Cal. Civ. Proc. Code § 1281.2(c)) to keep all parties before the Court. However, Plaintiffs recognize it is in the Court's discretion not to do so.

Concerning the waiver, under *Gentry*, a trial court may refuse to enforce a class action waiver if the party opposing the waiver establishes that "a class arbitration is likely to be a significantly more effective practical means of vindicating the rights of the affected employees than individual litigation or arbitration" (*Gentry*, 42 Cal. 4th at 463-64). Those factors considered are: (i) "the modest size of the potential individual

13

recovery;" (ii) "the potential for retaliation against members of the class;" (iii) "the fact that absent members of the class may be ill informed about their rights;" and (iv) "other real world obstacles to the vindication of class members' rights … through individual arbitration." *Muro v. Cornerstone Staffing Sols., Inc.*, 20 Cal. App. 5th at 787. Plaintiffs believe that the *Gentry* test is satisfied. But they expect Gruma would argue that the potential individual recovery is not "modest," that Class Members will not be retaliated against, and that Class Members have knowledge of their rights. Exercising its discretion, the Court could determine that the *Gentry* test is not satisfied and enforce the class action waiver.

### b) "Rule of Reason" Could Kill the Cartwright Claim

Some price fixing is considered so harmful that it is automatically punished and prohibited: it is considered *per se* unlawful, leading to strict liability. Vertical price fixing used to be in the *per se* category under the Sherman Act. It still is under the Cartwright Act. However, the authority for applying the *per se* standard is based on questionable precedent. Should a reviewing court follow Sherman Act precedent and abrogate the judicial *per se* standard, or should the Legislature make that change, that would essentially end Plaintiffs' Cartwright case.

The rule of reason standard is dramatically different from *per se* – and much more difficult for a plaintiff. "Generally, in determining whether conduct unreasonably restrains trade, '[a] rule of reason analysis requires a determination of whether … its anti-competitive effects outweigh its pro-competitive effects.' (*Columbia Broadcasting Sys.* v. *Am. Soc. of Composers* (2d Cir. 1980) 620 F.2d 930, 934.)" *Bert G. Gianelli Distrib. Co. v. Beck & Co.,* 172 Cal. App. 3d 1020, 1048 (1985). "The ultimate burden throughout rests with the plaintiff to show that a challenged [practice] is anticompetitive." *In re Cipro Cases I & II*, 61 Cal. 4th 116, 159 (2015). Thus, where a court applies a reasonableness standard, a battle of experts can ensue, so antitrust claims may not be legally or economically viable. *See Harris ex rel. Harris*, 651 F.3d 1118, 1149 (9th Cir. 2011) (dis. opn.) ("expense of full rule-

---

of-reason litigation").

Indeed, California's Supreme Court has already implied exceptions to the Cartwright Act' facially *per se*, strict liability – applying instead the Sherman Act's "rule of reason."

> Though the Cartwright Act is written in absolute terms, in practice not every agreement within the four corners of its prohibitions has been deemed illegal. …. The earliest common law decisions imposed an absolute rule, voiding "all contracts … which in any degree tended to the restraint of trade." [Citation.]  But the common law rule was soon modified and "as relaxed, tolerated such [restraints of trade] as were restricted in their operations within reasonable limits." [Citation.]  The United States Supreme Court looked to the common law in embracing a rule of reason for determining which agreements violated federal antitrust law [citation], and this court thereafter followed suit:  "[I]t may be assumed that the broad prohibitions of the Cartwright Act are subject to an implied exception similar to the one that validates reasonable restraints of trade under the federal Sherman Antitrust Act." [Citation.]  What was true under the common law, however, is true today:  "[T]he difficulty lies in determining what are reasonable and what unreasonable restrictions … ." [Citation.]

*In re Cipro Cases I & II*, 61 Cal. 4th at 136-37 (some ellipses added and citations omitted).

There continues to be speculation on whether California will judicially swap the *per se* analysis for rule of reason when it comes to vertical price fixing – as did the United States Supreme Court when *Leegin Creative Leather Prods. v. PSKS, Inc.*, 551 U.S. 877 (2007) broke with a century of precedent starting with *Miles Med. Co. v. John D. Park & Sons Co.*, 220 U.S. 373 (1911).  Cartwright Act vertical price fixing precedent is vulnerable because the seminal California case applying the *per se* standard to resale price maintenance – *Mailand v. Burckle*, 20 Cal. 3d 367 (1978) – stands on a foundation built from the California Supreme Court's *misunderstanding* of the Cartwright Act's genesis.  Specifically, the *Mailand* Court thought that the Cartwright Act was based on the Sherman Act, so it readily applied the Sherman Act's *per se* standard:

---

15

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT

2:19-CV-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

Certain violations of the antitrust laws are deemed to constitute an illegal restraint of trade as a matter of law.  Among these are price fixing.  ***Since the Cartwright Act is patterned after the Sherman Act*** (15 U.S.C. § 1 et seq.), federal cases interpreting the Sherman Act are applicable in construing our state laws.  (*Marin County Bd. of Realtors, Inc.* v. *Palsson* (1976) 16 Cal.3d 920, 925 [130 Cal.Rptr. 1, 549 P.2d 833]; *Oakland-Alameda County Builders' Exchange* v. *F. P. Lathrop Constr. Co.* (1971) 4 Cal.3d 354, 362, fn. 3 [93 Cal.Rptr. 602, 482 P.2d 226].)

In *U.S.* v. *Socony-Vacuum Oil Co.* (1940) 310 U.S. 150, 218, 221 [84 L.Ed. 1129, 1165, 1167, 60 S.Ct. 811], the United States Supreme Court declared, "[For] over forty years this Court has consistently and without deviation adhered to the principle that price-fixing agreements are unlawful *per se* under the Sherman Act and that no showing of so-called competitive abuses or evils which those agreements were designed to eliminate or alleviate may be interposed as a defense …. Any combination which tampers with price structures is engaged in an unlawful activity.

*Mailand*, 20 Cal. 3d at 376 (emphasis added).

Ten years after *Mailand*, the California Supreme Court said it was wrong about the Cartwright Act's origin:  "Admittedly, in past statements we have suggested that the Cartwright Act is patterned after the Sherman Act.  [Citation.]  As shown above, however, historical and textual analysis reveals that the Act was patterned after the 1889 Texas act and the 1899 Michigan act, and not the Sherman Act.  [Citation.]  Hence judicial interpretation of the Sherman Act, while often helpful, is not directly probative of the Cartwright drafters' intent, given the different genesis of the provision under review."  *Cal. ex rel. Van De Kamp v. Texaco*, 46 Cal. 3d 1147, 1164 (1988).

The California Supreme Court's admitted mistake – erroneously saying that "the Cartwright Act is patterned after the Sherman Act" (*Mailand*, 20 Cal. 3d at 376) – puts in question *Mailand*'s application of the *per se* standard to vertical price fixing under the Cartwright Act.  Some courts may choose not to follow *Mailand* believing it was based only on tracking the federal courts' application of Sherman Act.  If the *Mailand*  "federal cases interpreting the Sherman Act" foundation is removed – the

16

argument goes – then the *per se* standard *Mailand* applied based on Sherman Act precedent should fall as well.  Plaintiffs would respond that, notwithstanding its misperception of the Cartwright Act's provenance, the *Mailand* court's conclusion would have been the same; its *ratio dicidendi* is intact.  That argument carried the day in *Alsheikh v. Superior Court*, No. B249822, 2013 WL 5530508, at *3 (Cal. Ct. App. Oct. 7, 2013) ("the holding in *Mailand v. Burckle*, *supra*, 20 Cal.3d 367 that vertical price fixing is a per se violation of the Cartwright Act is the governing law of California").[2]  However, the *Alsheikh* opinion was unpublished, so trial courts may continue to follow the *Leegin* court's abandonment of the *per se* standard since some courts *still* think the Cartwright Act is based on the Sherman Act.  *See, e.g., Cal. ex rel. Lockyer v. Powerex Corp.*, No. CIV-S-05-01216 DFL DAD, 2006 WL 997717, at *4 (E.D. Cal. Apr. 14, 2006) ("Cartwright Act is based on the Sherman Act").

The result would be as bad for Plaintiffs if the Court accepts the argument that *Mailand*'s logic – but not its holding – would require applying the rule of reason to vertical price fixing under the Cartwright Act.  The argument goes that, since *Mailand* previously borrowed the judicial *per se* standard for vertical price fixing from the Sherman Act, then *Mailand* would today borrow the judicial rule of reason standard for vertical price fixing under the Sherman Act.

Because of this confusion, a court might be persuaded to follow a Sherman Act vertical price fixing case such as *Mularkey v. Holsum Bakery*, 146 F.3d 1064 (9th Cir. 1998), in which the Ninth Circuit found a bakery's negotiation of its distributor prices with a convenience store chain did not constitute vertical price fixing.

Plaintiffs believe that the Cartwright Act stands strong on its own without

---

[2] The *Alsheikh* decision was part of the *Kaewsawang v. Sara Lee Fresh* (Super. Ct. L.A. County, 2006, case no. BC 360109) litigation, succeeding *Kaewsawang v. Sara Lee Fresh, Inc.*, No. B231778, 2012 WL 1548290 (Cal. App. 2d Dist., May 3, 2012), which affirmed the trial court's refusal to certify misclassification claims.

reference to Sherman Act jurisprudence.  That said, convincing a judge or jury to allow consumers prices to be increased under the rubric of antitrust laws in order for Distributors to have a semblance of a middle-class lifestyle is a difficult cause. Indeed, the California Supreme Court divided over protecting competitors versus consumers, with the majority writing, the "dissenting opinion's … main argument seems to be that 'interbrand competition' is the sole proper end of antitrust legislation, that 'vertical restrictions' on trade are … unobjectionable, and that fair and open competition among wholesalers and retailers could not, therefore, possibly be considered worthy of legislative protection." *ABC Internat.*, 14 Cal. 4th at 1267; cf. *id.*, at 1260 ("'prosperous bourgeois class … has been considered one of the mainstays of our civilization.'  (Comment (1933) 22 Cal.L.Rev. 86, 101.)" (re antitrust Robinson-Patman Act) (emphasis omitted).

### c)  Wage and Hour Claims Present a Mixed Bag

Plaintiffs' wage and hour claims are clearer on the merits.  Plaintiffs contend they employees under the "B" of the "ABC Test" set forth in *Dynamex Operations W. v. Superior Court* (*Lee*), 4 Cal. 5th 903 (2018), inasmuch as Gruma cannot meet its burden of proving that Class Members "perform[] work that is outside the usual course of the hiring entity's business …." *Id.* at 957.  Gruma disagrees, contending that it is only a bakery; it is not in the business of product delivery and/or distribution.

Where the ABC Test does not apply, the Court (or arbitrator) would likely apply the test set forth in *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal. 3d 341 (1989), which focuses primarily on the right of the principal to control the manner and means of accomplishing the result desired.  *Id.* at 349-50.  Under that standard, things are less promising for Plaintiffs:  Gruma and a different plaintiff (with current Class Counsel) arbitrated a class action wherein JAMS arbitrator Hon. Richard C. Neal (Ret.) held, under the *Borello* test, that Gruma's distributors/delivery drivers were correctly classified as independent contractors.  *Johnson v. Gruma*

18

1    *Corp.*, 614 F.3d 1062, 1065 (9th Cir. 2010).  Weiss Decl., ¶ 8.

2         Plaintiffs further recognize that the federal Motor Carrier Act could preempt

3 some class members' overtime claims depending on the gross vehicle weight of their

4 delivery vehicles – a defense this Court held applied to sales drivers who were

5 utilized by Gruma in its former Guerrero division.  *Moreno v. Guerrero Mexican*

6 *Food Products, Inc.*, et al., Case No. CV 05-7737 DSF (PLAx) (C.D. Cal. Oct. 9,

7 2007), Dkt. 444, p. 15.  That dissimilarity also led this Court to state "Given this

8 disposition, it is likely that the class should be de-certified, because individual issues

9 will predominate over common issues."  *Id.*  The variety in truck weights is another

10 reason certification is uncertain.

11          **(2)**    **Risk, Expense, Complexity, and Likely Duration of Further**

12              **Litigation**

13         Although the sums expended by counsel at this time are not insignificant, if the

14 matter does not settle, Plaintiffs face protracted and expensive litigation, including

15 Defendants' pending petition to compel arbitration, written discovery, depositions

16 (including experts), likely motions to compel discovery, a motion for class

17 certification, possible motions for summary judgment, and preparing for and

18 participating in trial (whether before a Court or an arbitrator – or both).  Fees and

19 costs would quickly multiply.  There is also the possibility of an appeal and even

20 certification of a question to the California Supreme Court under Rule 8.548 of the

21 California Rules of Court, given the muddled state of the Cartwright Act law as

22 applied to vertical price fixing.  While counsel have proven their commitment in

23 similar cases (e.g., the *Kaewsawang v. Sara Lee Fresh* litigation settled after a dozen

24 years, and the *Johnson v. Gruma Corp.* suit spanned a decade), such delay does not

25 serve the Class Members.

26          **(3)**    **Risk of Maintaining Class Action Status Throughout Trial**

27         Because the parties settled before filing a motion for class certification,

28 Plaintiffs risk the class being decertified.  Accordingly, this factor weighs in favor of

19

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR        2:19-CV-04724-DSF-AFM
FINAL APPROVAL OF CLASS ACTION SETTLEMENT        CITYWIDE V. GRUMA CORP.

approving the settlement.  *Rosado v. Ebay Inc.*, No. 5:12-cv-04005-EJD, 2016 WL 3401987, at *4 (N.D. Cal. June 20, 2016) ("Although a class can be certified for settlement purposes, the notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement.").

### (4)   Amount Offered in Settlement

"[T]he very essence of a settlement is compromise, a yielding of absolutes and an abandoning of highest hopes."  *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (citation and internal quotation marks omitted).  "The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved."  *Id.* (citation and internal quotation marks omitted).  Because of mediation privilege, offers cannot be disclosed; however, a fair inference is that few plaintiffs would take less than offered.  Class Counsel believe that this result is the best that could be achieved for the Class.  Compton Decl. ¶ 11; Weiss Decl., ¶ 3.

### (5)   Extent of Discovery Completed and Stage of Proceedings

No formal discovery was conducted, however, informally, the parties cut to the chase.  What often takes months if not years of discovery – the extensive law and motion to enforce it – was shared in weeks.  Compton Decl., ¶ 8.  On top of that, Plaintiffs' counsel had years of written discovery, depositions, and a trial under their belts, having tried one earlier misclassification case and litigated another wage and hour case against Gruma.  *Id.*, ¶ 10.

### (6)   Experience and Views of Counsel

Counsel have been litigating bakery distributor and bakery/grocery antitrust cases (and similar cases) since 1998.  Weiss Decl., ¶ 3.  The Settlement here compares favorably to the similar bakery driver misclassification cases of *Creed v. Sara Lee* (Super. Ct. L.A. County, 1998, Case No. BC 185718) (post-trial settlement providing absent class members between $500 and $87,402 in compensation over a 9.5 year class period) and *Kaewsawang v. Sara Lee Fresh* (settlement providing

20

absent class members between about $92 and $75,500 over a 17 year class period). Weiss Decl., ¶¶ 3.b, 3.d.

### (7)   Presence of a Governmental Participant

There is no government participant in this matter.  Accordingly, this factor is inapplicable.  *See Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1257 (C.D. Cal. 2016) (concluding "[t]here is no government participant in this matter[,]" rendering "this factor [] not relevant.") (brackets original).

### (8)   Class Members' Reaction

This Class resoundingly supports the settlement:  of the 896 class members, none objected, and only 3 opted out.  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable").

### B.   The Additional Rule 23(e) Standards Are Met

Rule 23(e) was amended in 2018 to create uniformity amongst the circuits and to focus the inquiry on whether a proposed class action is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e), Advisory Committee Notes (2018 amendment).  As amended, Rule 23(e) provides that a court may approve a proposed class action settlement after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  "The first and second factors are viewed as 'procedural' in nature, and the third and fourth factors are viewed as 'substantive' in nature.  Fed. R. Civ. P. 23(e)(2), Advisory Committee Notes (2018 amendment)."  *Hudson v. Libre Tech. Inc.*, No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060, at *5 (S.D. Cal. May 12, 2020)  As follows, the additional Rule 23(e)(3) factors not addressed above also support final approval.

### (1)   The Class Representative and Class Counsel Have Adequately Represented the Class

As set forth in the Fee Motion, Mr. Evans provided extraordinary help to the Class and counsel.  Evans produced documents, liaised with other Class Members, and consulted with counsel and the expert to help analyze the claims and provide information relevant to the case.  He also traveled to San Francisco to actively participate in the mediation.  In all, Evans has provided hundreds of hours on behalf of the class, despite his relatively small stake (he had a single route).  Evans Decl., ¶¶ 20-23.

Counsel conducted substantial investigation into the facts and circumstances of this case before filing this lawsuit and thereafter.  Once the Parties agreed to mediate, counsel obtained all pertinent information from Gruma and retained the services of an expert to ascertain damages.  Counsel aggressively pursued the best result they could obtain at mediation, successfully obtained preliminary approval of the Settlement, and will assure that Settlement is consummated consistent with the terms of the Judgment.

### (2)   The Proposal Was Negotiated at Arm's Length

This case was resolved after a full day, arms-length mediation before respected and experienced mediator David A. Rotman.  Compton Decl., ¶ 11.

22

**(3)     Effectiveness of Proposed Method of Distributing Relief**

Gruma provided names and addresses for all class members, and class members were mailed a notice of approximately how much they would receive. There was no requirement for them to file a claim.  Checks will be sent by first class mail to the same addresses.  Longley Decl., ¶ 13.

**(4)     Terms of any proposed award of attorney's fees**

The Stipulation provides that Class counsel may seek $1,250,000, the 25% benchmark for recovery in the Ninth Circuit.  *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  Class counsel will receive this payment at the same time as the Class.  Plaintiffs' Fee Motion filed herewith fully briefs the bases and appropriateness of those fees, including a lodestar cross-check. *See Smothers v. NorthStar Alarm Servs., L.L.C.*, No. 2:17-cv-00548-KJM-KJN, 2020 WL 1532058, at *10 (E.D. Cal. Mar. 30, 2020).

**(5)     Any Agreement to be Identified under Rule 23(e)(3)**

The only agreements were the Memorandum of Agreement at the conclusion of the August 23, 2019, mediation and the Stipulation, which superseded it. Compton Decl., ¶ 13.

## C.     The Higher Pre-Certification Settlement Standards Are Met

When settlement is negotiated before a class has been certified, "settlement approval requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)."  *Roes v. SFBSC Mgmt., L.L.C.*, 944 F.3d 1035, 1048 (9th Cir. 2019) (quotation marks omitted).  "A district court should look for "subtle signs" of collusion such as:  "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a "clear sailing" arrangement" (i.e. an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed funds to the defendant."  *Id.* at 1049 (quotation marks omitted).

23

### (1)      Counsel are Not Receiving a Disproportionate Distribution

In *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 274 (9th Cir. 1989), the Ninth Circuit "established 25 percent of the fund as the 'benchmark' award that should be given in common fund cases." *Six (6) Mexican Workers*, 904 F.2d at 1311. As explained in section 2.C. of Plaintiffs' Fee Motion, the 25% benchmark is reasonable in this case's circumstances, where a common fund has been established. Indeed, the proposed distribution stands in stark contrast to cases where the distribution would have been disproportionate.  For instance, in *Jones*, 654 F.3d 935, the settlement paid the class "zero dollars" and the attorneys' fees were eight times the cy pres award." *Id.* at 938.  And in *Roes v. SFBSC Mgmt., L.L.C.*, 944 F.3d 1035, Plaintiffs inflated the settlement value, and thereby counsel's fees, through their valuation of injunctive relief and coupons.  *Id.* at 1060.

### (2)      No "Clear Sailing" Provision Problem

"[W]hen confronted with a clear sailing provision, the district court has a heightened duty to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefit to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Jones*, 654 F.3d at 948.  "As the Ninth Circuit has explained, however, a 'clear sailing' provision 'does not signal the possibility of collusion' where, as here, Class Counsel's fee will be awarded by the Court from the same common fund as the recovery to the class." *In re High-Tech Emple. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *14 (N.D. Cal. Sept. 2, 2015) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009)) ; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n.5 (9th Cir. 2009) ("*Cf. Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518, 524 (1st Cir. 1991) (inferring collusion from a 'clear sailing' provision when the attorney's fees were to be paid on top of the settlement fund as this is counterintuitive defense behavior).")

24

**(3)     No Reverter**

The Settlement provides that the funds from any uncashed checks will not revert to Defendants but will be paid to the *cy pres* recipient Feeding America.

**6.     CONCLUSION**

In light of the forgoing, Plaintiffs respectfully request that the Court grant the motion for final approval of the class action settlement and enter Judgment on the terms set forth herein.

Respectfully submitted,

Dated:  June 8, 2020                    MARKUN ZUSMAN FRENIERE & COMPTON LLP


By:  */s/ Jeffrey K. Compton*
      Jeffrey K. Compton
      Attorney for Plaintiffs and the Class

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
FINAL APPROVAL OF CLASS ACTION SETTLEMENT

2:19-CV-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.