Jeffrey K. Compton (SBN 142969)
Email:  jcompton@mzclaw.com
MARKUN ZUSMAN FRENIERE & COMPTON LLP
17383 W. Sunset Blvd., Suite A380
Pacific Palisades, CA 90272-4181
Telephone:  (310) 454-5900
Facsimile:   (310) 454-5970

Jonathan Weiss (SBN 143895)
Email:  jw@lojw.com
LAW OFFICE OF JONATHAN WEISS
10576 Troon Ave.
Los Angeles, CA 90064-4436
Telephone:  (310) 558-0404

*Attorneys for Plaintiffs and the Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| CITYWIDE CONSULTANTS & FOOD MANAGEMENT, LCC, individually and on behalf of all others similarly situated,<br><br>                    *Plaintiff,*<br><br>            v.<br><br>GRUMA CORPORATION, a Nevada corporation, dba MISSION FOODS CORPORATION; SMART & FINAL STORES, INC.; STATER BROS. MARKETS; and DOES 1 through 100, inclusive,<br>                    *Defendants.* | Case No. 2:19-CV-04724-DSF-AFM<br><br>**NOTICE OF MOTION AND MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE ENHANCEMENT**<br><br>Date: July 6, 2020<br>Time: 1:30 p.m.<br>Courtroom: 7D<br><br>Judge: Honorable Dale S. Fischer<br>Complaint filed: March 26, 2019<br><br>Trial Date: None Set |

PLEASE TAKE NOTICE THAT on July 6, 2020 at 1:30 p.m., or as soon thereafter as this matter may be heard in Courtroom 7D of the above-entitled Court, located at the First Street Courthouse, 350 West First Street, Los Angeles, California, Plaintiffs Randy H. Evans ("Evans") and Citywide Consultants & Food Management, LLC ("Citywide") (collectively, "Plaintiffs"), on behalf of themselves and the settlement class will and hereby do seek final approval of the following:

(1)  Class Counsel's attorneys' fees in the amount of $1,250,000, representing twenty-five percent (25%) of the net settlement amount of $5,000,000.  This amount is fair and reasonable and is in line with the Ninth Circuit benchmark;

(2)  Class Counsel's costs in the amount of $26,973.87, all of which were necessarily incurred in the course of this litigation; and

(3)  An enhancement payment to the Class Representatives in the amount of $15,000, in recognition of the Class Representatives' years of fighting for the rights of the Class Members.

No Class Members have objected to any of these payments.

This Motion is based on this Notice and Motion, the Declarations of Jeffrey K. Compton, Esq., Jonathan Weiss, Esq., Randy H. Evans, and Christopher Longley and on such other and further oral and/or documentary evidence as may be presented at the time of hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 21, 2020.  Defendants do not oppose this Motion.

Dated:  June 8, 2020          MARKUN ZUSMAN FRENIERE & COMPTON LLP


By:  */s/ Jeffrey K. Compton*
     Jeffrey K. Compton
     Attorney for Plaintiffs and the Class

i

MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND ENHANCEMENT
2:19-cv-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

# **TABLE OF CONTENTS**

1.   INTRODUCTION ..................................................................1

2.   THE REQUEST FOR ATTORNEYS' FEES SHOULD BE GRANTED .......2

  A. The Motion for Attorneys' Fees is Properly Made .......................2

  B. Class Counsel Seek the 25% Benchmark Fee.............................3

  C. The Benchmark is Reasonable in this Case's Circumstances .....................4

    (1)   The Result Achieved ..................................................5

    (2)   The Risk Involved in The Litigation .................................5

    (3)   The Skill Required and Quality of Work by Counsel ...........................5

    (4)   The Contingent Nature of the Fee ....................................7

    (5)   Awards Made in Similar Cases .......................................8

    (6)   No Objection to Date from the Class ..................................8

  D. Plaintiffs' Request for Attorneys' Fees is Reasonable by a Lodestar Cross-
     Check ................................................................9

    (1)   Lodestar Hours......................................................9

    (2)   Lodestar Rate ......................................................11

    (3)   Total Lodestar .....................................................11

3.   THE COURT SHOULD APPROVE THE REQUEST FOR
     REIMBURSEMENT OF COSTS .........................................12

4.   THE CLASS REPRESENTATIVE ENHANCEMENT FEE IS
     REASONABLE ......................................................19

  A. Courts Apply a Five-Prong Test in Evaluating Enhancement Fees............13

    (1)   Risk ..............................................................13

    (2)   Notoriety and Personal Difficulties....................................14

    (3)   Amount of Time and Effort...........................................14

    (4)   Duration ..........................................................14

    (5)   Personal Benefit ...................................................15

  B. The Amount of Evans' Enhancement is Not Unusual ................................16

5.   CONCLUSION ....................................................16

1

# **TABLE OF AUTHORITIES**

2

CASES

3    *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*

4      421 U.S. 240 (1975) ........................................................................ 3

5    *Amador v. City of Ceres*

6      2019 WL 935496 (E.D. Cal. Feb. 26, 2019) .................................. 11

7    *Boeing Co. v. Van Gemert*

8      444 U.S. 472 (1980) ........................................................................ 3

9    *Bond v. Ferguson Enters., Inc.*

10      2011 WL 2648879 (E.D. Cal. June 30, 2011) ................................ 16

11    *Ching v. Siemens Indus*

12      2014 WL 2926210 (N.D. Cal. June 27, 2014) ......................... 4, 5, 8

13    *Cook v. Niedert*

14      142 F.3d 1004 (7th Cir. 1998) ........................................................ 13

15    *Creed v. Sara Lee*

16      (Super. Ct. L.A. County, 1998) ........................................................ 8

17    *Diaz v. Albertson's Ltd. Liab. Co.*

18      2018 WL 6118556 (C.D. Cal. Apr. 2, 2018) .................................... 5

19    *Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*)

20      213 F.3d 454 (9th Cir. 2000) ............................................................ 4

21    *Ellison v. Madden, Ltd.*

22      2013 U.S. Dist. LEXIS 202269 (C.D. Cal. May 7, 2013) ............... 3

23    *Hanlon v. Chrysler Corp.*

24      150 F.3d 1011 (9th Cir. 1998) .......................................................... 6

25    *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*

26      2019 WL 6875472 (E.D.N.Y. Dec. 16, 2019) ................................. 6

27    *In re Immune Response Sec. Litig.*

28      497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................ 9

iii

MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND ENHANCEMENT
2:19-cv-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

*In re Rite Aid Corp. Sec. Litig.*
    396 F.3d 294 (3d Cir. 2005) ................................................................. 9

*In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act Litig.*
    295 F.R.D. 438 (C.D. Cal. 2014) ........................................................ 13

*In re Wash. Pub. Power Supply Sys. Secs. Litig.*
    19 F.3d 1291 (9th Cir. 1994) ............................................................ 7, 9

*Johnson v. Gruma Corp.*
    123 F. App'x 786 (9th Cir. 2005) ......................................................... 6

*Jones v. GN Netcom, Inc. (In re Bluetooth Headset Prods. Liab. Litig.)*
    654 F.3d 935 (9th Cir. 2011) .............................................................. 3

*Kaewsawang v. Sara Lee Fresh*
    (Super. Ct. L.A. County, 2006) ........................................................ 6, 8

*Knight v. Alabama*
    824 F. Supp. 1022, 1031 (N.D. Ala. 1993) ...................................... 6, 11

*Mancini v. Ticketmaster*
    2013 WL 3995269 (C.D. Cal. Aug. 2, 2013) ....................................... 13

*Metrow v. Liberty Mut. Managed Care L.L.C.*
    2018 WL 6265085 (C.D. Cal. June 14, 2018) ....................................... 4

*Morris v. Lifescan, Inc.*
    54 F. App'x 663 (9th Cir. 2003) .......................................................... 4

*New Prime Inc. v. Oliveira*
    139 S. Ct. 532 (2019) ....................................................................... 7

*Paul, Johnson, Alston & Hunt v. Graulty*
    886 F.2d 268 (9th Cir. 1989) ............................................................. 3

*Pierce v. Cty. of Orange*
    905 F. Supp. 2d 1017 (C.D. Cal. 2012) .............................................. 11

*Resnick v. Frank (In re Online DVD-Rental Antitrust Litig.)*
    779 F.3d 934 (9th Cir. 2015) ............................................................. 9

MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND ENHANCEMENT

*Rodriguez v. W. Mesquite Mines, Inc.*

    2012 U.S. Dist. LEXIS 49046 (S.D. Cal. Apr. 6, 2012) .......................................... 15

*Rodriguez v. W. Publ'g Corp.*

    563 F.3d 948 (9th Cir. 2009) ................................................................ 13

*Ross v. US Bank Nat'l Ass'n*

    2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ........................................ 16

*Shvager v. Viasat, Inc.*

    2014 WL 12585790 (C.D. Cal. Mar. 10, 2014) ............................... 13, 15

*Staton v. Boeing Co.*

    327 F.3d 938 (9th Cir. 2003) ............................................................. 3, 13

*Steiner v. Am. Broad. Co.*

    248 F. App'x 780 (9th Cir. 2007) ........................................................... 4

*Vizcaino v. Microsoft Corp.*

    290 F.3d 1043 (9th Cir. 2002) .................................................... 3, 4, 10

*Williamson v. Microsemi Corp.*

    2015 WL 13650045 (N.D. Cal. Feb. 19, 2015) ................................... 10

FEDERAL RULES

Federal Rules of Civil Procedure

    Rule 23 ................................................................................. 2, passim

STATE STATUTES

California Business and Professions Code

    § 16760 .................................................................................................. 6

California Civil Code

    § 1542 .................................................................................................. 15

v

MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND ENHANCEMENT
2:19-cv-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.   INTRODUCTION

Class Counsel seek attorneys' fees of $1,250,000, which is 25% of the $5,000,000 to be paid by Defendant Gruma Corporation ("Gruma") to settle this case.  This amount matches the Ninth Circuit's 25% benchmark, and it is supported by a lodestar cross-check using a multiplier of 1.42.

The case settled efficiently and in line with similar cases based on counsel's decades of successfully litigating misclassification and antitrust cases in the baked goods industry in general and their previous lawsuits against Defendant Gruma in particular.  The fee sought is fair and reasonable under the percentage of recovery method, given the result achieved, the risk involved, the skill required, the quality of work, the contingent nature of the fee, and awards in similar cases.  Class Counsel also seek reimbursement of $26,973.87 in costs, all of which were necessarily incurred in the prosecution of this case.

This Court is also asked to approve the $15,000 Class Representative enhancement.  Since 2014, Class Representative Randy H. Evans ("Evans"), the owner/principal of Citywide Consultants & Food Management, Inc. ("Citywide") (collectively, "Plaintiffs") spent five years and hundreds of hours fighting for distributors and members of the Class.  Through his persistence, he has obtained significant remuneration for the Class when nobody else could or did.

The Stipulation of Class Action and PAGA Settlement and Release (the "Settlement") has received overwhelming support from the Class, with not a single Class Member objecting and only 3 out of 896 Class Members opting out, representing just 0.33% of the total.  Moreover, all of the Class Members were notified that Class Counsel would seek a 25% fee, costs in an amount up to $50,000, and an enhancement for the Plaintiffs in the total amount of $15,000, yet not a single Class Member objected to any of these payments following receipt of the Class Notice.  The Class Members were also provided a Supplemental Notice

1

MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND ENHANCEMENT
2:19-cv-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

with a link to review this Motion and make any objections.  If any objections to this Motion are made, Plaintiffs will submit a Reply.  Plaintiffs respectfully request that the instant Motion be granted in its entirety.

## 2.   THE REQUEST FOR ATTORNEYS' FEES SHOULD BE GRANTED

### A.   The Motion for Attorneys' Fees is Properly Made

Federal Rules of Civil Procedure, Rule 23(h), addresses motions for attorneys' fees and costs in certified class actions as follows:

> In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.  The following procedures apply:
>
> (1) A claim for an award must be made by motion under Rule 54(d)(2), subject to the provisions of this subdivision (h), at a time the court sets.  Notice of the motion must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner.
>
> (2) A class member, or a party from whom payment is sought, may object to the motion.
>
> (3) The court may hold a hearing and must find the facts and state its legal conclusions under Rule 52(a).
>
> (4) The court may refer issues related to the amount of the award to a special master or a magistrate judge, as provided in Rule 54(d)(2)(D).

Plaintiffs make this motion consistent with Rule 23(h):  Notice has been provided to the parties and Class Members (Fed. R. Civ. P. 23(h)(1)), and no objections have been received as of the date of this Motion.  Longley Decl., ¶¶ 4-7, 9.  A Supplemental Notice was mailed to the class containing a link to review this Motion and to make any objections by June 22, 2020.  Longley Decl., ¶ 8.

**B.    Class Counsel Seek the 25% Benchmark Fee**

The Supreme Court has consistently recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) (*Van Gemert*). The common fund doctrine is a well-recognized exception to the general American rule that a litigant must bear its own attorneys' fees. *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257-58 (1975).

The common fund doctrine applies when:  (1) the class of beneficiaries is sufficiently identifiable; (2) the benefits can be accurately traced; and (3) the fee can be shifted with some exactitude to those benefitting. *Paul, Johnson, Alston & Hunt v. Graulty, 88*6 F.2d 268, 271 (9th Cir. 1989). These criteria are easily met where, as here, "each [class member] has an undisputed and mathematically ascertainable claim to part of a lump-sum settlement recovered on his behalf.'" *Id.* at 271 (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 479 (1980)).

District courts presiding over common fund cases have the discretion to award attorneys' fees based on either the lodestar method or the percentage method proposed here. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)). "Although there is discretion, use of the percentage method is the dominant approach in common fund cases. [Citation.]" *Ellison v. Madden, Ltd.*, No. CV 11 - 5935 PSG (AGRx), 2013 U.S. Dist. LEXIS 202269, at *23 (C.D. Cal. May 7, 2013).

The Ninth Circuit has generally established 25% as the benchmark for a reasonable fee award using the percentage method. *Staton v. Boeing Co.*, 327 F.3d 938, 968 (9th Cir. 2003); *Vizcaino*, 290 F.3d at 1048. "[U]nusual circumstances" are required to justify a departure. *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272; accord, *Jones v. GN Netcom, Inc.* (*In re Bluetooth Headset Prods. Liab. Litig.*), 654 F.3d 935, 942 (9th Cir. 2011) (there must be an

1  "adequate explanation in the record of any 'special circumstances' justifying a
2  departure").

3         Because the benchmark is not a cap, "[c]ourts in this circuit routinely award
4  percentages equal to approximately one-third of the settlement amount.
5  [Citations.]"  *Metrow v. Liberty Mut. Managed Care L.L.C.*, No. EDCV 16-01133
6  JGB (KKx), 2018 WL 6265085 (C.D. Cal. June 14, 2018), at (C.D. Cal. June 14,
7  2018); *see Dunleavy v. Nadler* (*In re Mego Fin. Corp. Sec. Litig.*), 213 F.3d 454,
8  463 (9th Cir. 2000) (affirming one-third of $1.725 million common fund) and
9  *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) ("we have
10 previously held that an attorneys' fee award of 33 percent was not an abuse of
11 discretion").  Notwithstanding the possibility of a greater percentage, Plaintiffs
12 seek the 25% benchmark.

13

14         **C.    The Benchmark is Reasonable in this Case's Circumstances**

15         Even where the requested fee is in line with the Ninth Circuit benchmark,
16 the fee award "must be supported by findings that take into account all of the
17 circumstances of the case." *Vizcaino* at 1048.  In *Vizcaino*, the Ninth Circuit
18 considered the following factors in determining that the percentage of recovery
19 (there, 28%) was reasonable:  1) the result achieved; 2) the risk involved in the
20 litigation; 3) the skill required and quality of work by counsel; 4) the contingent
21 nature of the fee; and 5) awards made in similar cases.  *Id.* at 1048-50[1]; *Ching v.*
22 *Siemens Indus.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *7 (N.D. Cal. June
23 27, 2014).  Here, each of these factors weighs in favor of the fees requested.

24

25         [1] In *Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 782 (9th Cir. 2007), the
26 Court noted that, "In *Vizcaino*, we did not set forth narrow legal standards cabined
   by the particular set of circumstances that the district court had found relevant.
27 Rather, we emphasized that in selecting a reasonable percentage fee award in a
   common fund case, the district court must consider all relevant circumstances."
28

### (1)   The Result Achieved

The overall result and benefit to the Class from the litigation is generally the most critical factor in granting a fee award.  *Ching*, 2014 WL 2926210, at *7. Here, the results achieved are exceptional.  First, the amount received by the Class Members is significant.  As reported in the accompanying Motion for Final Approval, the net settlement amount paid to the Class Members is $3,695,683. Class Members will receive on average $4,102.78, and the highest recovery is $39,278.26.  Second, the response by the Class is overwhelmingly positive; this is demonstrated by the lack of a single objection to any aspect of the Settlement – including the requested fee (as of the date of this filing).  Additionally, only three people out of 896 opt-outed of the settlement.  These figures underscore that the result achieved was excellent.  Plaintiffs submit that prompt payment of these guaranteed amounts is fair, reasonable, and adequate in light of the uncertainty of future litigation.

### (2)   The Risk Involved in The Litigation

The risks of litigation in this case were substantial, as detailed in section 5. of the Motion for Final Approval filed herewith.  One overriding risk was already facing Plaintiffs – the Court granting the pending motion to compel arbitration and enforcing class action waivers, likely resulting in most Class Members' claims never being adjudicated.  There were also risks of certification being reversed on appeal, losing on the merits at summary judgment or trial, and a judgment being reversed.

### (3)   The Skill Required and Quality of Work by Counsel

This Court has observed that "Class actions involving wage and hour claims under California law have become ubiquitous.  …. There is an overabundance of competent attorneys from law firms of all sizes willing to handle such actions."  *Diaz v. Albertson's Ltd. Liab. Co.*, No. CV 16-257 DSF (JEMx), 2018 WL 6118556, at *1 (C.D. Cal. Apr. 2, 2018).  In contrast, class

1  actions brought to compensate workers under the Cartwright Act are much less

2  common.  Counsel are aware of only one other case using the Cartwright Act:

3  *Kaewsawang v. Sara Lee Fresh* (Super. Ct. L.A. County, 2006, Case No.

4  BC360109) – a case pursued by Class Counsel and opposed by Gruma's defense

5  firm, Paul Hastings.  Weiss Decl., ¶¶ 3.d, 9.

6      The Cartwright Act claim here was aimed at defeating Gruma's arbitration

7  mandate and, especially, the contractual class action waiver imposed after Class

8  Counsel forced Gruma into arbitration in a previous wage and hour class action

9  where the contract did not bar collective actions.  *See Johnson v. Gruma Corp.*,

10  123 F. App'x 786, 787 (9th Cir. 2005) (vacating order prohibiting arbitration of

11  class-wide claims) (*Johnson*).  Weiss Decl., ¶ 8.  Since the Cartwright Act claim

12  implicates non-signatory parties (namely, the chain store defendants), the

13  Cartwright Act provided grounds to potentially avoid the class waiver and

14  arbitration provisions, although Gruma argued otherwise.  Additionally, the

15  Cartwright Act claim brought the potential for treble damages, fee shifting and

16  unique liberality allowing courts to estimate damages.  Cal. Bus. & Profs. Code §

17  16760(d).

18      The novelty and complexity of the antitrust aspect of the case makes this

19  case potentially more compelling than a run of the mill wage and hour case;

20  antitrust cases also require expertise not necessary in a standard wage and hour

21  case.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998)

22  ("complexity and novelty of issues presented" can justify upward departure from

23  lodestar); *see Knight v. Alabama*, 824 F. Supp. 1022, 1031 (N.D. Ala. 1993)

24  (accepting testimony that antitrust attorneys "charge higher rates because

25  generally the work is uniquely complex and only a small number of lawyers are

26  capable of performing that type of work"); and *see In re Payment Card*

27  *Interchange Fee & Merch. Disc. Antitrust Litig.,* No. 05-MD-1720 (MKB) (JO),

28  2019 WL 6875472, at *179 (E.D.N.Y. Dec. 16, 2019) ("antitrust cases are

6

typically complex"). Class counsel brought the necessary expertise. For decades, Attorney Weiss has handled both wage and hour cases *and* antitrust claims in the grocery industry. *See* Weiss Decl., ¶ 3. Attorney Compton brought additional skill and knowledge, including his awareness of facts directly relevant to opposing the application of the Federal Arbitration Act through its interstate commerce exception. *New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019) (FAA §1 "carves out from the Act's coverage 'contracts of employment of … workers engaged in foreign or interstate commerce.'"). To wit, as plaintiffs' counsel in *Moreno v. Guerrero Mexican Food Products, Inc., et al.*, Case No. CV 05-7737 DSF (PLAx)), Mr. Compton knew that Gruma engages in interstate commerce on some level, potentially belying its argument in *this* case – seeking to compel arbitration – that the workers at issue were *not* so engaged. Compton Decl., ¶ 10.b. Class Counsel's expertise in wage and hour and antitrust law, complemented by their familiarity with the industry in general and with Gruma in particular, uniquely served this Class.

### (4)   The Contingent Nature of the Fee

Counsel took this case on a contingency fee basis. Courts encourage attorneys to accept contingency cases – where they risk being paid nothing – by enhancing the award where they do prevail. *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("Contingent fees that may far exceed the market value" are "a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis").

None of the named Plaintiffs have the financial means to pay Class Counsel on an hourly basis to prosecute this case. Evans Decl., ¶ 16. Further, this is not a wage and hour case that other counsel were eager to handle. In fact, Mr. Weiss approached two firms that declined to represent Plaintiffs with him. Weiss Decl., ¶ 14. Later, Messrs. Weiss and Compton asked another firm to jointly represent Plaintiffs; it also declined. *Id*. Thus, without the willingness of Class Counsel to

take this complex and challenging case on a contingency fee basis, this case would not have been prosecuted and the Class would have received nothing.

Class Counsels' offices collectively have put in over 1269 hours on behalf of the Class. During this time, Class Counsel had to forego other cases and opportunities in order to prosecute this case on behalf of the Class Members. Compton Decl., ¶¶ 17, 20; Weiss Decl., ¶ 7. Class Counsels' efforts have been without compensation of any kind, and the fee has been wholly contingent upon the result achieved. Compton Decl., ¶ 17. Class Counsel also litigated the *Johnson* arbitration to conclusion and lost, highlighting the contingency risk of this engagement. Weiss Decl., ¶ 8.

### (5)   Awards Made in Similar Cases

As asserted in the Preliminary Approval Motion, the settlement here compares favorably to the similar bakery driver misclassification cases of *Creed v. Sara Lee* (Super. Ct. L.A. County, 1998, Case No. BC185718) (post-trial settlement providing absent class members between $500 and $87,402 in compensation over a 9.5-year class period) and *Kaewsawang v. Sara Lee Fresh* (Super. Ct. L.A. County, 2006, Case No. BC360109) (settlement providing absent class members between $92 and $75,500 over a 17-year class period). Weiss Decl., ¶¶ 3.b, d. Moreover, the result here is extraordinary compared to *Creed* and *Kaewsawang*, since neither had arbitration clauses or class action waivers.

### (6)   No Objection to Date from the Class

No Class Member objected to the requested fee following receipt of the Class Notice, further demonstrating its reasonableness and fairness. *See Ching*, 2014 U.S. Dist. LEXIS 89002, 2014 WL 2926210, at *8 (finding that "the lack of objection from the class after notice further demonstrates the reasonableness and fairness of Class Counsels' fee request") (citation omitted). Class Members continue to have an opportunity to object after having the opportunity to review this motion.

8

MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND ENHANCEMENT
2:19-cv-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

**D.**   **Plaintiffs' Request for Attorneys' Fees is Reasonable by a Lodestar Cross-Check**

Plaintiffs' fee request is reasonable based on the lodestar analysis as a final "cross-check on the percentage method."  *In re Wash. Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d at 1296-98.  The lodestar method is calculated by multiplying "the number of hours reasonably expended on the litigation … by a reasonable hourly rate."  *Resnick v. Frank* (*In re Online DVD-Rental Antitrust Litig.*), 779 F.3d 934, 949 (9th Cir. 2015).  When used as a cross-check, the lodestar can be based on a less exhaustive cataloguing and review of counsel's hours.  *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306 (3d Cir. 2005) ("The lodestar cross-check calculation need entail neither mathematical precision nor bean-counting."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ("Although counsel have not provided a detailed cataloging of hours spent, the Court finds the information provided to be sufficient for purposes of lodestar cross-check.").  Plaintiffs' counsel collectively have a lodestar of 1.42.

### (1)   **Lodestar Hours**

A chronological listing of services rendered by day by all timekeepers is set forth as Exhibit A to the Compton Declaration.  A summary of the total time by Uniform Task-Based Management System Litigation Code Set Activities categories is set forth below:

| UTBMS Activities Category | Hours | Rate | Lodestar |
|---|---|---|---|
| A101 Plan and prepare for | 55.6 | $680-750 | $40,773 |
| A102 Research | 204.9 | $500-750 | $142,886 |
| A103 Draft/revise | 515.6 | $200-750 | $344,892 |
| A104 Review/analyze | 195.5 | $200-750 | $139,778 |
| A105 Communicate (in firm) | 2 | $680-750 | $1,486 |

9

MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND ENHANCEMENT
2:19-cv-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

| A106 Communicate (with client) | 45.3 | $700-750 | $31,990 |
|---|---|---|---|
| A107 Communicate (other outside counsel) | 139.5 | $200-750 | $99,442 |
| A108 Communicate (other external) | 49.5 | $700-750 | $35,135 |
| A109 Appear for/attend | 59.2 | $680-750 | $41,324 |
| A110 Manage data/files | 2.1 | $680-750 | $745 |
| **TOTAL** | 1269 | | $878,451 |

That the lodestar is not higher reflects on counsel's experience and reputation – including with Defendants and their counsel.  Gruma knew that Plaintiffs' counsel would stick with the case for years, if necessary.  The prior Gruma litigation – in which Gruma prevailed – lasted from 2001-2010.  Weiss Decl., ¶ 8.  The Sara Lee/Earthgrains litigation covered 2006-2019.  *Id.*, ¶ 3.d. Counsel should not be docked for efficiency.  The Class gets the same proportionate benefit at the same proportionate expense.

As the Ninth Circuit has explained, "We do not mean to imply that class counsel should necessarily receive a lesser fee for settling a case quickly; in many instances, it may be a relevant circumstance that counsel achieved a timely result for class members in need of immediate relief.  The lodestar method is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee, since the lodestar method does not reward early settlement."  *Vizcaino*, 290 F.3d at 1050 n.5.  This Court will not reward attorneys for unnecessary litigation, nor punish them for resolving matters quickly, when such quick resolution is, as here, highly beneficial to the class. *Williamson v. Microsemi Corp.*, No. 5:14-cv-01827-LHK, 2015 WL 13650045,

10

at *2 (N.D. Cal. Feb. 19, 2015).  Bringing the case to an efficient resolution preserved funds for the Class while getting it to them relatively rapidly.

### (2)   Lodestar Rate

As detailed in section C(3), counsel's unique mix of disciplines and experience, especially in the antitrust field, allowed the class to reach a substantial settlement despite an arbitration clause and class action waiver.  The relatively few attorneys practicing in this area merit a higher hourly rate.  *Knight v. Alabama*, 824 F. Supp. 1022, 1031 (N.D. Ala. 1993), *supra*.

Attorney Compton has recently submitted approval for rates of $800 per hour for him and $725 per hour for Daria Carlson, the two attorneys at Markun Zusman Freniere & Compton, LLP who devoted the most time to this matter.  Compton Decl., ¶ 16.  Counsel is instead using rates of $750 for Mr. Compton and $680 for Ms. Carlson, consistent with rates that have been approved for them in other cases.  Compton Decl., ¶¶ 16, 20.  Courts have set Attorney Weiss' hourly rate at $600 for work done as long ago as 2010.  Weiss Decl., ¶ 4.c.  Based on his accrued experience in class action antitrust and wage and hour litigation in the bakery industry, he is submitting $700 per hour in this action, which he believes is fair and reasonable.  See, *Pierce v. Cty. of Orange*, 905 F. Supp. 2d 1017, 1038 (C.D. Cal. 2012) (rates increase as attorneys build experience and with traditional, across-the-board rise in firms' overall rates).

### (3)   Total Lodestar

With a lodestar of in excess of $878,000 which does not include any time spent on this Motion (Compton Decl., ¶¶ 19, 20), the $1,250,000 in attorneys' fees sought by Plaintiffs' counsel represents a multiplier of approximately 1.42.  This multiplier is well within the range of reasonableness.  *Amador v. City of Ceres*, 2019 WL 935496 at *6 (E.D. Cal. Feb. 26, 2019) (citing 4 Newberg on Class Actions § 14.7, which states "courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher").

11

MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND ENHANCEMENT
2:19-cv-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

**3.    THE COURT SHOULD APPROVE THE REQUEST FOR REIMBURSEMENT OF COSTS**

The following constitutes a breakdown of the categories of costs incurred by Class Counsel in the prosecution of this case:

| | |
|---|---:|
| E110 Out-of-town travel | $1,919.49 |
| E111 Meals | $281.48 |
| E112 Court fees | $2,647.90 |
| E119 Experts | $8,800.00 |
| E121 Arbitrators/mediators | $13,250.00 |
| E124 Other (LWDA fee) | $75.00 |
| | |
| Total | $26,973.87 |

All of these costs were necessarily incurred in the litigation of this case and are documented for the Court. *See* Compton Decl., ¶ 22 and Exh. B thereto.  Neither firm has included charges for copying, telephone, online research or postage even though expense for those categories were incurred by counsel.  This request for reimbursement of costs is fair and reasonable and should be approved.

**4.    THE CLASS REPRESENTATIVE ENHANCEMENT FEE IS REASONABLE**

Class actions settlements often grant incentive awards to the named plaintiffs for efforts on the class' behalf.  Here, the Settlement allows a $15,000 award in recognition of the risk and personal difficulty associated with Evans' five-year campaign on the Class' behalf.  It would not be an easy fight – a point made by a Gruma employee.  Evans Decl., ¶ 24.  In the face of that, and because of Evans' effort, Plaintiffs achieved an incredible result:  over 99.5% of the Class Members are participating in the multimillion-dollar settlement.

12

Motion for Approval of Attorneys' Fees, Costs and Enhancement
2:19-cv-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

**A.**   **Courts Apply a Five-Prong Test in Evaluating Enhancement Fees**

"Incentive awards are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009).  "Whether to authorize an incentive payment to a class representative is a matter within the court's discretion." *In re Toys "R" Us-Del., Inc. Fair & Accurate Credit Transactions Act Litig.,* 295 F.R.D. 438, 470 (C.D. Cal. 2014).  "Incentive awards may be made to class representatives based on '(1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulty encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation and; (5) the personal benefit (of lack thereof) enjoyed by the class representative as a result of the litigation.'  [Citation]."  *Mancini v. Ticketmaster*, No. CV 08-07509 DSF, 2013 WL 3995269, at *2 (C.D. Cal. Aug. 2, 2013).

**(1)   Risk**

"When a class representative shoulders some degree of personal risk in joining the litigation, such as workplace retaliation or financial liability, an incentive award is especially important.  *See Staton*, 327 F.3d at 977 (noting that fear of workplace retaliation is a relevant factor in evaluating the propriety of an incentive award)." *Shvager v. Viasat, Inc.*, No. CV 12-10180 MMM, 2014 WL 12585790, at (C.D. Cal. Mar. 10, 2014); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998) (relied on by *Staton v. Boeing Co.*, *supra*) ("Most significantly … in filing the suit, Cook reasonably feared workplace retaliation.").

Here, Evans saw real risk:  he believed Gruma terminated its distribution agreements with at least four distributors who participated in the group he formed. Evans Decl., ¶ 17.  Even after the threat of forfeiting his route had passed (with Evans having sold his route), risk remained:  Evans persisted despite knowing that he could have been subjected to costs from an adverse judgment which could have led to losing his home.  Evans Decl., ¶ 25.  Finally, Mr. Evans is still working in the same industry;

13

this lawsuit is public record, discussed among 900 distributors, and he risks being blackballed. *See* Evans Decl., ¶ 27.

### (2)   Notoriety and Personal Difficulties

The aforementioned risk – along with the amount of time spent necessarily led to health and other personal difficulties for Evans. Evans is prepared to detail those difficulties upon request of the Court if it would not end up in a public record or facilitate retaliation. Evans Decl., ¶ 26.

### (3)   Amount of Time and Effort

Evans started fighting for Class Members in 2014. He organized distributors, sought lawyers, collected information, consulted a forensic accountant, attempted informal negotiation, and ultimately filed the suit that lead to remuneration for Class Members. Evans Decl., ¶¶ 6-15. Despite working seven days a week, he dedicated hundreds of hours to the cause even before this litigation. Evans Decl., ¶¶ 5, 20. His time commitment did not wane after filing: he produced documents, liaised with other Class Members, and consulted with counsel and the expert economist to help analyze the claims and provide information. He also travelled to San Francisco to actively participate in the mediation. Evans Decl., ¶ 21. Apart from the mediation, he spent over 40 hours communicating with counsel. Weiss Decl., ¶ 12.

Evans (like Class Counsel) will continue to spend time assisting other Class Members. During this lawsuit, Evans has regularly communicated with Class Members. Evans Decl., ¶ 23. That continued after the class notice and will likely continue throughout the distribution process.

### (4)   Duration

It has taken Evans six years to get remuneration for distributors. In around Spring 2014, he helped organize the Association of Mission Food Distributors to represent the distributors' interests in connection with Gruma's business relationship with the distributors. Evans Decl., ¶¶ 6, 9. The effort outlasted his tenure, but Evans remained dedicated to it.

14

MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND ENHANCEMENT
2:19-cv-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

### (5)   **Personal Benefit**

Evans' share as a class member is relatively small, $2,624.03, given that he had a smaller route and was not working during the entire class period.  (Evans Decl., ¶ 28.)

> An incentive award may be appropriate when a class representative will not gain any benefit beyond that he would receive as an ordinary class member. See *Razilov*, 2006 U.S. Dist. LEXIS 82723, 2006 WL 331204 at *4 (approving the payment of an incentive award where the only benefit a class representative was going to receive from a settlement was the same statutory damages other class members would receive); *Van Vranken*, 901 F.Supp at 299 (where a class representative's claim made up "only a tiny fraction of the common fund," a substantial incentive award was appropriate).

*Shvager*, No. CV 12-10180 MMM (PJWx) *73-74.

Not only is Evans' portion relatively small, but he is also giving up more than any other Class Member:  Evans is releasing all claims, not just wage and hour and antitrust claims, as part of his release in this case.[2]  *Rodriguez v. W. Mesquite Mines, Inc.*, 2012 U.S. Dist. LEXIS 49046, at *6 (S.D. Cal. Apr. 6, 2012) ("Enhancement awards often are premised in part on class representatives agreeing to a general release of their claims against the defendant.  [Citations.]").

Moreover, unlike every other Class Member, Evans agreed "not to seek to enter into an agreement or purchase the rights to distribute Defendant's Product, unless asked to do so by Defendant in writing."  Stipulation, ¶ 3.2.5, Dkt. 22-3, p. 24.

---

[2] Paragraph 3.2.1 of the Settlement Agreement provides that "all Settlement Class Members, including Plaintiffs, who do not opt out of the Settlement, release the Released Parties from the Released Claims."  Evans' release at Paragraph 3.2.4 goes well beyond that and includes a general release of all potential claims against all Defendants.  Evans also expressly waives the protections of Cal. Civ. Code § 1542.

15

MOTION FOR APPROVAL OF ATTORNEYS' FEES, COSTS AND ENHANCEMENT
2:19-cv-04724-DSF-AFM
CITYWIDE V. GRUMA CORP.

### B.   The Amount of Evans' Enhancement is Not Unusual

The proposed incentive award is 0.3% of the settlement.  Courts have found awards comprising a significantly higher portion of the common fund to be reasonable. *Bond v. Ferguson Enters., Inc.*, No. 1:09-1662 OWW MJS, 2011 WL 2648879, at *2, 15 (E.D. Cal. June 30, 2011) ($11,250 incentive payment to each of the two named plaintiffs in a $2,250,000 gross settlement); *Alvarado v. Nederend*, No. 1:08-cv-01099 OWW DLB, 2011 WL 90228, at *5 (E.D. Cal. Jan. 11, 2011) ($7,500 incentive award to each of the five representatives with $505,058.60 gross settlement); *Ross v. US Bank Nat'l Ass'n*, No. C 07-02951 SI, 2010 WL 3833922, at *3 (N.D. Cal. Sept. 29, 2010) ($20,000 to each of four named plaintiffs in $1,050,000 settlement).

## 5.   CONCLUSION

In light of the forgoing, Plaintiffs respectfully request that the Court grant this Motion, award $1,250,000 in attorneys' fees, $26,973.07 in costs, and $15,000 as a class representative enhancement.

Respectfully submitted,

Dated:  June 8, 2020           MARKUN ZUSMAN FRENIERE & COMPTON LLP

By:  */s/ Jeffrey K. Compton*
         Jeffrey K. Compton
         Attorney for Plaintiffs and the Class